QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Aaron H. Perahia (Bar No. 304554)
 aaronperahia@quinnemanuel.com
865 S. Figueroa St., 10th Fl.
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

Sam S. Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:     (415) 875-6600

Margret M. Caruso (Bar No. 243473)
 margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000

*Attorneys for OpenAI, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENAI, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual,<br><br>                    Defendants. | Case No. 3:23-cv-3918<br><br>**COMPLAINT FOR:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))**<br>2. **COMMON LAW TRADEMARK INFRINGEMENT**<br>3. **FRAUDULENT REGISTRATION (15 U.S.C. § 1120)**<br>4. **CANCELLATION—NO BONA FIDE USE (15 U.S.C. § 1119)**<br>5. **CANCELLATION— MISREPRESENTING SOURCE (15 U.S.C. § 1119)**<br><br>**DEMAND FOR JURY TRIAL** |

1    OpenAI, Inc. ("OpenAI"), for its claims against Defendants Open Artificial Intelligence,

2    Inc. and its president, Guy Ravine (collectively, "Defendants"), alleges as follows:

3                                    **INTRODUCTION**

4        1.       OpenAI brings this lawsuit to stop Defendants from confusing the millions of users

5    of OpenAI's products into mistakenly believing that Defendants have any connection to,

6    association with, or sponsorship by OpenAI when, in fact, there is none.  Defendants unlawfully

7    adopted the name "Open AI" after OpenAI began operations, evidently to sow consumer

8    confusion by falsely associating themselves with OpenAI.

9        2.       As the senior user of the name "OpenAI" and the logos bearing that name as

10   trademarks (collectively, the "OpenAI Marks"), OpenAI has become closely associated in the

11   marketplace as the source of artificial intelligence models and applications, including ChatGPT.

12   In contrast, it was only after OpenAI's first use of one of the OpenAI Marks that Defendants

13   began using their confusingly similar mark, "Open AI" (the "Infringing Mark"), the only

14   difference with the OpenAI Marks being a space between "Open" and "AI."  Defendants have had

15   nothing to do with OpenAI's artificial intelligence models and applications.  They improperly seek

16   to misappropriate and monetize the hard work and goodwill that OpenAI has created by confusing

17   consumers and the marketplace into mistakenly believing they are the originators of, or affiliated

18   with, OpenAI's products.

19       3.       Defendants' motives are transparent.  The day OpenAI announced its founding,

20   which received widespread coverage in national and international news media, Ravine filed an

21   application with the United States Patent and Trademark Office ("USPTO") for the Infringing

22   Mark.  The USPTO refused to register the mark, noting that the initial submission had not shown

23   the Infringing Mark being used in commerce.  Undeterred, Defendants manufactured evidence

24   related to their website to mislead the USPTO into believing their mark was being used in

25   commerce even though Defendants had never used the Infringing Mark in connection with any

26   goods or services it offered in interstate commerce—i.e., as a trademark.  Indeed, during four

27

28

years of its existence, the domain associated with Defendants' trademark application redirected visitors to *OpenAI's* website.

4.      Not only have Defendants caused actual confusion through their website, but Defendants also have recently attempted to undermine OpenAI's efforts to register its own trademarks with the USPTO.  In addition, just last month, Ravine submitted paperwork to the USPTO "assigning" the Infringing Mark to Defendant Open Artificial Intelligence Inc., of which he claims to be the president.  The confusing similarity of that name to OpenAI's well-recognized name, "OpenAI, Inc.," leaves no doubt as to Defendants' intent to profit by confusing the public into thinking that there is an affiliation between Defendants and OpenAI.

5.      Defendants should not be allowed to profit from their misappropriation of OpenAI's established name, leverage for themselves OpenAI's goodwill, or fraudulently divert public interest in and demand for OpenAI's products.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over OpenAI's federal trademark infringement and federal unfair competition claims pursuant to 15 U.S.C. sections 1121(a) and 1125 and 28 U.S.C. section 1338(a) and supplemental jurisdiction over OpenAI's state law claims pursuant to 28 U.S.C. sections 1338(b) and 1367(a) as all claims herein form part of the same case or controversy.

7.      This Court has subject matter jurisdiction under 15 U.S.C. section 1121 (action arising under the Lanham Act); 28 U.S.C. section 1331 (federal question); and 28 U.S.C. section 1338(a) (act of Congress relating to trademarks).

8.      This Court has supplemental jurisdiction over OpenAI's state law claims under 28 U.S.C. section 1367(a).

9.      This Court has personal jurisdiction over Defendants because they committed acts in this District that give rise to all claims asserted here and are likely to confuse residents of this District and cause injury here.  In addition, on information and belief, Defendant Ravine resides within this District, and Defendant Open Artificial Intelligence, Inc.'s principal place of business

is in this district, and both otherwise have substantial, systematic, and continuous contacts with this District.

10.     Venue is proper in this District under 28 U.S.C. sections 1391 and 1400(b), at least because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants have committed, and is likely to commit acts of infringement, false designation of origin, and unfair competition in this District and has a regular and established place of business in this District.  In addition, venue is proper because OpenAI's principal place of business is in this District and OpenAI will suffer harm in this District.

## THE PARTIES

11.     OpenAI is a Delaware corporation with its principal place of business at 3180 18th Street, Suite 100, San Francisco, California 94110.

12.     Defendant Open Artificial Intelligence, Inc., on information and belief, is a Delaware corporation with its principal place of business at 95 3rd Street, San Francisco, California 94103.

13.     Defendant Ravine is an individual who, on information and belief, resides in San Francisco, California, and who holds himself out as the president of Defendant Open Artificial Intelligence, Inc.  Given the uncertainty over the relationship between these two, and as noted above, they are referred to herein collectively as "Defendants."

14.     OpenAI is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were, and are, the agents, servants, alter egos, and/or employees of each of the other Defendants, and all the things alleged to have been done by Defendants were done in the capacity of and as agent, servant, alter ego and/or employee of and for the other Defendants, with their knowledge, approval, and ratification.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### OpenAI And Its Valuable Marks

15.     OpenAI is an artificial-intelligence software research and deployment company.  Its mission is to ensure that artificial general intelligence benefits all of humanity.

COMPLAINT

16.     OpenAI announced its founding on December 11, 2015.  The announcement was widely covered in the media, including articles in *The New York Times*, *Wired*, and *Business Insider*.

17.     For the past seven years, OpenAI has researched and developed artificial intelligence models and applications.  This has led to the release of numerous AI tools, including the ChatGPT chatbot, the DALL·E text to image generation software, and the Whisper automatic speech recognition (ASR) system.  These products and services—in particular ChatGPT—have been extraordinarily popular.  For example, OpenAI's ChatGPT chatbot was widely adopted, with tens of millions of users in the months after it launched.

18.     Since its inception in 2015, OpenAI has developed valid and enforceable nationwide trademark rights in its OpenAI Marks.  OpenAI has continuously used the mark "OpenAI" in interstate commerce in connection with its artificial-intelligence research services since at least December 2015.  OpenAI filed applications with the USPTO to register its "OpenAI" word mark on the Principal Register, Ser. No. 97/238,896 (filed Jan. 26, 2022) and Ser. No. 98/010,861 (filed May 24, 2023).

19.     Since at least March 22, 2017, OpenAI has continuously used its logo in connection with its artificial-intelligence research services, depicted below.  The OpenAI Logo is registered on the Principal Register, Reg. No. 5,448,123.



20.     Since at least March 22, 2017, OpenAI has continuously used its composite logo in connection with its artificial-intelligence research services, depicted below.  OpenAI has filed an application with the USPTO to register its Composite Logo Mark, Ser. No. 97/238,902.



COMPLAINT

21.     In addition to its registered rights, OpenAI enjoys strong goodwill and common law rights in its OpenAI Marks, all of which are commercially and conceptually strong.  OpenAI's offerings under its OpenAI Marks include, but are not limited to, downloadable computer programs and software and software services for artificial intelligence, machine learning, and related software and computer programs.

22.     OpenAI has used the OpenAI Marks in connection with its goods and services.  For example, OpenAI's website prominently displays the OpenAI Marks on its webpages, and has done so continuously since on or around December 11, 2015.  The OpenAI Marks are prominently displayed on OpenAI's social media platforms, such as Twitter, which OpenAI joined in December 2015.  And the OpenAI Marks appear on pages or at the top of OpenAI's AI tools.

23.     OpenAI's uses of its marks have significant reach. As of July 2023, OpenAI's website reportedly ranked as the world's 20th highest traffic website.  OpenAI has over 2.4 million Twitter followers, more than 1.6 million LinkedIn followers, and more than 600,000 YouTube subscribers.

24.     As a result of OpenAI's long-term and continuous use of the OpenAI Marks in connection with its products and services, and its substantial investment of time, effort, and money in the brand, OpenAI has built substantial goodwill and equity in its OpenAI Marks.  The OpenAI Marks are well known, and consumers in the United States and around the world have come to associate the OpenAI Marks with OpenAI and to recognize OpenAI as a leading company that studies, builds, and deploys artificial intelligence.  OpenAI's branded offerings have earned significant downloads and interactions from users in the United States, and the OpenAI Marks are exceptionally valuable assets to OpenAI.

25.     OpenAI, along with its widely popular products, has received significant unsolicited media coverage and social media attention, resulting in widespread recognition of the OpenAI Marks by both OpenAI's consumers and the general public.  OpenAI and its representatives have appeared on nationally televised shows and in widely watched online videos, which prominently display OpenAI Marks and discuss OpenAI and its products and services.  As

a result, the OpenAI Marks have become distinctive and source-identifying designations of OpenAI and its products and services.  Comments from major news publications, organizations, and other third parties reflect the widespread recognition and renown of the OpenAI Marks.  To cite just a few examples:

> a.    "In 2023, everyone knows OpenAI's name."  – *Forbes*

> b.    "OpenAI … is rocketing into the mainstream" – *The Washington Post*

> c.    "The popularity of OpenAI's surprisingly intelligent and conversant ChatGPT chatbot has sent a groundswell through the tech industry." – *Fast Company*

> d.    "OpenAI has really risen to fame …" – *World Economic Forum*

26.    As these comments reflect, consumers perceive "OpenAI" as a source-identifying trademark associated with OpenAI and its products and services.

**<u>Defendants And Their Fraudulent Registration</u>**

27.    In the evening of December 11, 2015, the same day after OpenAI publicly announced its founding, Ravine filed trademark application Ser. No. 86/847,151 for the Infringing Mark with the USPTO.  Ravine asserted section 1(a) as the "filing basis" for the application, which is reserved for marks that are being used in commerce at the time of the application.  In the application, Ravine declared that: (i) he first used the Infringing Mark in commerce on March 25, 2015, and (ii) he was currently using the Infringing Mark in commerce as of December 11, 2015.

28.    In support of his use-based application under section 1(a), Ravine submitted a specimen with the application.  Ravine described the specimen as "Website for Open AI."  Ravine further declared that the specimen showed Ravine's use of the Infringing Mark in commerce as of December 11, 2015.

29.    The initial specimen Ravine submitted with his application showed a screenshot of the domain name www.open.ai, which is itself confusing and conveys a false association with OpenAI.  The specimen depicted a website landing page with the terms "Open" and "AI" above

text that includes "ANNOUNCEMENT WILL BE MADE SOON."  It encouraged visitors to enter their "email to be informed of developments or join the initiative."  Ravine's specimen is below:



30.     On March 29, 2016, the USPTO issued an Office Action letter concerning Ravine's application.  In that letter, the USPTO notified Ravine it refused his application because of an "unacceptable specimen."  Specifically, the USPTO stated:  "Registration is refused because the specimen does not show the applied-for mark in use in commerce."  The USPTO further explained that "the specimen does not show the mark used in reference to or in connection with the services in the application."

31.     The USPTO's March 2016 letter informed Ravine that he may respond by either "(1) [s]ubmit[ing] a different specimen (a verified 'substitute' specimen) that (a) was in actual use in commerce at least as early as the filing date of the application or prior to the filing of an amendment to allege use and (b) shows the mark in actual use in commerce for the services identified in the application or amendment to allege use, [or] (2) [a]mend[ing] the filing basis to intent to use under Section 1(b), for which no specimen is required."

32.     On September 27, 2016, Ravine responded to the USPTO's March 2016 letter by submitting a new specimen purporting to show his use of the Infringing Mark (the "2016

COMPLAINT

Specimen").  In submitting the 2016 Specimen, Ravine represented that the "substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application."  The 2016 Specimen contained two screenshots from a subdomain of www.open.ai, www.hub.open.ai, which depicted a post titled "Deep reinforcement algorithm problem":





33.     On information and belief, the 2016 Specimen did not reflect the Infringing Mark's actual use in commerce as of December 15, 2015.  Rather, on information and belief, Ravine created the 2016 Specimen and the purported website posts to mislead the USPTO into believing that the Infringing Mark was being used in commerce, thereby resolving the defect the USPTO cited in refusing to register the Infringing Mark.

34.     Specifically, Defendants' www.hub.open.ai website shown in the 2016 Specimen had only two users as of September 27, 2016: "nikita" and "rick."  Both users registered on the website on September 26, 2016, the day before Ravine submitted the 2016 Specimen.  In addition, Defendants' website had only three post threads when Ravine submitted the 2016 Specimen.  All three of those threads were created by "nikita" and replied to by "rick" between 4:49 am and 6:08 am on September 26, 2016, the day before Ravine submitted the 2016 Specimen.

35.     Moreover, although Ravine's 2016 Specimen purported to show genuine user content created on Defendants' website, www.hub.open.ai, the content was copied from previous posts elsewhere on the internet.  Specifically, the three post threads on Defendants' website on September 26, 2016 all contain content copied nearly verbatim from prior posts on GitHub, an unaffiliated third-party website.

36.     For example, the content in the thread on Defendants' website titled "Target shape size is different to source" was taken—effectively verbatim—from an earlier August 31, 2016 thread on GitHub titled "An fatal error when using Scala-pkg."  The content Defendants copied in this thread, which was all written by a single GitHub user (zihaolucky), is shown below:

9

| **Source** | **Content** |
|---|---|
| GitHub | An fatal error when using Scala-pkg. #3185<br><br>✓ Closed  zihaolucky opened this issue on Aug 31, 2016 · 2 comments<br><br>zihaolucky commented on Aug 31, 2016 · edited ▾    Member<br><br>Hi @javelinjs<br><br>Background: I trained the model in Python and uploaded its `param` and `json` file which is to be used in Scala. I also change something in `json` to run the code below.<br><br>```<br>object MXNetPredict {<br>  def main(args: Array[String]) {<br>    val ndArray = NDArray.zeros(Shape(32,1,19,128))<br>    val data: IndexedSeq[NDArray] = IndexedSeq(ndArray)<br>    val label: IndexedSeq[NDArray] = IndexedSeq()<br>    val valData: NDArrayIter = new NDArrayIter(data, label)<br>``` |
| Defendants' hub.open.ai website | **Target shape size is different to source**<br><br>problem<br><br>nikita ·<br><br>I trained the model in Python and uploaded its param and json file which is to be used in Scala I also change something in json to run the code below.<br><br>```<br>object MXNetPredict {<br>  def main(args: Array[String]) {<br>    val ndArray = NDArray.zeros(Shape(32,1,19,128))<br>    val data: IndexedSeq[NDArray] = IndexedSeq(ndArray)<br>    val label: IndexedSeq[NDArray] = IndexedSeq()<br>    val valData: NDArrayIter = new NDArrayIter(data, label)<br>``` |

37.    Content in the thread on Defendants' website titled "Memory allocation failed after multiple call to Module.predict()" was copied essentially verbatim from a September 23, 2016 thread on GitHub titled "Memory allocation failed after multiple call to Module.predict()." The content Defendants copied in this thread, which was all written by a single GitHub user (PrismQ), is shown below:

| Source | Content |
|---|---|
| GitHub |  |
| Defendants' hub.open.ai website |  |

38. Notice that Defendants' website copied not only the text, but even the unnecessary line break in the second paragraph, after the word "software" and before the word "reported."

39. Content in the thread titled "Deep reinforcement algorithm problem" was copied nearly verbatim from an August 20, 2016 GitHub thread on "How to run multiple GPUs – python."  The content Defendants copied in this thread, which was all written by a single GitHub user (ilkarman), is shown below:

| Source | Content |
|---|---|
| GitHub | **ilkarman** commented on Aug 22, 2016<br><br>@antinucleon Thanks for the help, so I have set the globals like so:<br><br>```<br>GPUS = 4<br>ctx = [mx.gpu(int(i)) for i in range(GPUS)]<br>BATCH_SIZE = 128 * GPUS<br>```<br><br>The params:<br><br>```<br>cnn = create_crepe()<br>mod = mx.mod.Module(cnn, context=ctx)<br>mod.bind(data_shapes=[('data', DATA_SHAPE)],<br>        label_shapes=[('softmax_label', (BATCH_SIZE,))])<br>mod.init_params(mx.init.Normal(sigma=SD))<br>mod.init_optimizer(optimizer='sgd',<br>                    optimizer_params={<br>                            "learning_rate": 0.01,<br>                            "momentum": 0.9,<br>                            "wd": 0.00001,<br>                            "rescale_grad": 1.0/BATCH_SIZE<br>                    })<br>``` |
| Defendants' hub.open.ai website | **rick**<br><br>The best permutation so far is:<br><br>```<br>GPUS = 4<br>ctx = [mx.gpu(int(i)) for i in range(GPUS)]<br>BATCH_SIZE = 128 * GPUS<br><br>// The params:<br><br>cnn = create_crepe()<br>mod = mx.mod.Module(cnn, context=ctx)<br>mod.bind(data_shapes=[('data', DATA_SHAPE)],<br>        label_shapes=[('softmax_label', (BATCH_SIZE,))])<br>mod.init_params(mx.init.Normal(sigma=SD))<br>mod.init_optimizer(optimizer='sgd',<br>                    optimizer_params={<br>                            "learning_rate": 0.01,<br>                            "momentum": 0.9,<br>                            "wd": 0.00001,<br>                            "rescale_grad": 1.0/BATCH_SIZE<br>                    })<br>``` |

40.   Ravine's deception to the USPTO went even further.  On information and belief, when Ravine copied the content in each GitHub thread, he took a post from a single GitHub user, split the post in two, and used the two pieces on his website to create a false "dialogue" between

two fictitious users.  For example, although all of the content that Ravine took in the second example above was posted by a single GitHub user (PrismQ), Ravine split up that content on his own website, using a portion of it in the initial post from user "nikita" and the rest of it in the reply post from user "rick."  This evidence strongly indicates that Ravine created false user dialogue on his website in a fraudulent effort to create an appearance of use in commerce that did not exist.

| Source | Content |
|---|---|
| GitHub | **PrismQ** commented on Sep 23, 2016<br><br>Hi,<br>I am using Module.predict to calculate some feature vector of my data. (outputshape=(batchsize,4096) ) |
| Defendants' hub.open.ai website | nikita  ·<br><br>Hi,<br>I am using Module.predict to calculate some feature vector of my data. (outputshape= (batchsize,4096) ) |
| GitHub | **PrismQ** commented on Sep 24, 2016<br><br>I checked if the result `ndarray.__del__()` is called by inserting `print` into `__del__()`<br><br>```\n    def __del__(self):\n        if hasattr(self,"x"):\n``` |
| Defendants' hub.open.ai website | rick<br><br>I checked if the result ndarray.**del**() is called by inserting print into **del**()<br><br>```\n    def __del__(self):\n        if hasattr(self,"x"):\n``` |

41.     In addition to the fraud, the 2016 Specimen did not show use of the Infringing Mark for the services covered in Ravine's application and subsequent registration, *i.e.*, "providing a web site featuring technology that enables internet users to share documents, images and videos."  Nor could it have shown use of the Infringing Mark in commerce "at least as early as the filing date of the application," as Ravine had represented that it did, because it depicted posts made in September 2016 (not December 2015).  On information and belief, Ravine could not have shown use for his Infringing Mark as of the date of his application or the 2016 Specimen because Ravine had not used it in commerce.

42.     In a November 2016 Office Action letter, the USPTO found Defendants' 2016 Specimen resolved the specimen defect noted in the USPTO's March 2016 letter.  However, in a further March 2017 Office Action letter, the USPTO refused registration of the Infringing Mark on the Principal Register, finding the Infringing Mark was descriptive.  In doing so, the USPTO advised that Ravine could "amend[] the application to seek registration on the Supplemental Register" instead.  After Ravine amended his application accordingly, the USPTO registered the Infringing Mark on the Supplemental Register on August 1, 2017, Reg. No. 5,258,002.  Unlike registration on the Principal Register, registration on the Supplemental Register does not provide prima facie evidence of the nationwide exclusive right to use the trademark, a presumption of validity for the registered trademark, or a presumption of ownership of the registered trademark.

43.     On or about June 30, 2023, Ravine purported to assign this registration to Defendant Open Artificial Intelligence Inc.  That choice of that name unmistakably attempts to confuse the public into thinking the company is, or is associated with or sponsored by, OpenAI.

**Defendants' Infringing Conduct**

44.     Although Defendants' website has displayed varied content over the years, at no point has either Defendant used the Infringing Mark as a trademark.

45.     According to September 2017 screenshots of Defendants' website, Defendants redirected their website visitors to OpenAI's website, www.openai.com, creating the inaccurate appearance that the two websites were officially connected.  The Internet Archive screenshots below show that Defendants' website redirected to OpenAI's website as of September 26, 2017:





46.     According to website screenshots archived from January 24, 2019, some 16 months later, Defendants' website continued to redirect visitors to OpenAI's website, www.openai.com. Accurate screenshots from the Internet Archive are below, which shows that open.ai redirected to OpenAI's website:





47.    Numerous Internet Archive screenshots of Defendants' website taken over the next five years, including in 2018, 2019, 2020, 2021, and 2022, showed that Defendants continued to redirect visitors to OpenAI's website for years.  For example, Internet Archive screenshots of

16

Defendants' website in January 2022 show that Defendants' website continued to redirect visitors to OpenAI's website, www.openai.com, as of January 24, 2022, as shown below:





      48.    In a February 19, 2022 email, OpenAI contacted Ravine to inform him that Ravine's website was redirecting to OpenAI's website.  In that email, OpenAI inquired about acquiring the domain from Ravine.

49.    Ravine responded the same day: "Elon Musk paid $11 million for the Tesla domain and trademark in 2017. As we both know, OpenAI holds the potential to become larger than Tesla, and in either event, will become one of the largest companies in the world in a relatively short period of time. So the ultimate value of the domain and the brand are substantial."

50.    On information and belief, Ravine has not taken any affirmative steps to use the OpenAI Marks in connection with goods or services in commerce.

51.    After OpenAI's February 2022 contact with Ravine, Defendants' domain name began directing users to a website titled "CryptoArt" by July 2022.  Notably, that "CryptoArt" website did not use or display the Infringing Mark.  Nor did the "CryptoArt" website provide the goods or services for which the Infringing Mark was registered.  Below is a screenshot from the Internet Archive of Defendants' "CryptoArt" website on July 1, 2022:



52.    Currently, Defendants' website displays the message "Open AI is working to make the world's best AI models open. In the meantime … Generate any image imaginable."  At the bottom of the website, Defendants provide an email form with the message "Let me know when you're done baking!"  Below is a screenshot of Defendants' website as of August 4, 2023:

COMPLAINT



53.     Defendants' current website has caused actual confusion.  Below is an accurate screenshot from a Twitter user asking if Defendants' website is a "legacy" website of OpenAI:



54.     On information and belief, Defendants have never offered in commerce the services covered by the Infringing Mark, namely, "[p]roviding a web site featuring technology that enables internet users to share documents, images and videos."

19

55.     On information and belief, Defendants are maintaining the supplemental registration in the Infringing Mark with the intent to profit off of OpenAI's legitimate use of its own OpenAI Marks, and engaged in fraud during the registration process for the Infringing Mark.

56.     Further demonstrating their bad faith, Defendants created subdomains of their "www.open.ai" domain name that mirror commonly-used subdomains of OpenAI's domain name. For example, since November 30, 2022, OpenAI has used the subdomain "chat.openai.com" to direct to OpenAI's ChatGPT chatbot.  On information and belief, as of April 8, 2023, Defendants created the subdomain "chat.open.ai," which redirected to Defendants' current website.

**Ravine's Letters Of Protest**

57.     Between December 2015 and December 6, 2022, Defendants never objected to OpenAI's use or registration of the OpenAI Marks.  But after being contacted by OpenAI, Ravine filed a Letter of Protest with the USPTO regarding OpenAI's Application Ser. No. 97/238,896, on the grounds that the applied-for mark is allegedly confusingly similar to the Infringing Mark and should be refused registration.  On January 31, 2023, Ravine filed another Letter of Protest with the USPTO regarding OpenAI's Application Ser. No. 97/238,896, submitting additional evidence and continuing to argue that the applied-for mark is "confusingly similar" to Defendants' Infringing Mark.  The USPTO informed OpenAI that a Letter of Protest had been filed, but did not reveal who filed it.  Only by filing a FOIA request did OpenAI later obtain access to the Letters of Protest and learn that Ravine filed them.

**FIRST CAUSE OF ACTION**

**For Trademark Infringement and Unfair Competition**

**(15 U.S.C. § 1125(a))**

58.     OpenAI incorporates and realleges paragraphs 1 through 57 of this Complaint.

59.     OpenAI has nationwide, common law rights in the OpenAI Marks senior to any legitimate rights that Defendants may have.

60.     Defendants are using the Infringing Mark in a manner that is likely to cause confusion, mistake, and deception and that creates a false and misleading impression as to the

affiliation, connection, or association of Defendants with OpenAI and the OpenAI Marks, and as to the origin, sponsorship, endorsement, and approval of the contents, links, and information on Defendants' website with OpenAI.

61.     Defendants' selection, adoption, and use of the Infringing Mark are intended to reap the benefit of the goodwill in the OpenAI Marks and constitute unfair competition and false designation of origin.

62.     Defendants' conduct is intentional, willful, deliberate, in bad faith and undertaken with knowledge of OpenAI's prior rights in the OpenAI Marks, and with full knowledge that Defendants have no right, license, or authority to use the OpenAI Marks or any confusingly similar variation thereof.

63.     OpenAI is entitled to damages pursuant to 15 U.S.C. § 1117(a).

64.     Defendants' conduct has caused and is causing irreparable injury to OpenAI and its OpenAI Marks and, unless enjoined by this Court, will continue to both damage OpenAI and deceive the public.  OpenAI has no adequate remedy at law.

## SECOND CAUSE OF ACTION

## For Common Law Trademark Infringement

65.     OpenAI incorporates and realleges paragraphs 1 through 57 of this Complaint.

66.     OpenAI has nationwide, common law rights in the OpenAI Marks senior to any legitimate rights that Defendants may have.

67.     Defendants are using the Infringing Mark in a manner that is likely to cause confusion, mistake, and deception and that creates a false and misleading impression as to the origin, sponsorship, endorsement, approval, affiliation, connection, or association of Defendants and/or the contents, links, and information on Defendants' website with OpenAI and/or its OpenAI Marks.

68.     Defendants' conduct is intentional, willful, deliberate, in bad faith, and undertaken with knowledge of OpenAI's prior rights in the OpenAI Marks, and with full knowledge that

Defendants have no right, license, or authority to use OpenAI's OpenAI Marks or any confusingly similar variation thereof.

69.     Defendants' acts constitute common law trademark infringement and have created and will continue to create a likelihood of confusion, thereby causing irreparable harm to OpenAI and its OpenAI Marks, including injury to OpenAI's reputation and business identity and diminished goodwill and reputation of the OpenAI Marks.

70.     Defendants' conduct has caused and is causing monetary injury to OpenAI, in an amount to be determined at trial, including actual damages and lost profits, and merits punitive and exemplary damages in an amount sufficient to deter such conduct in the future.

71.     Defendants' conduct has caused and is causing irreparable injury to OpenAI and, unless enjoined by this Court, will continue to both damage OpenAI and deceive the public. OpenAI has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### For Civil Liability for False and/or Fraudulent Registration

### (15 U.S.C. § 1120)

72.     OpenAI incorporates and realleges paragraphs 1 through 57 of this Complaint.

73.     Defendants' procurement of the Infringing Mark (Reg. No. 5,258,002) included one or more material false representations, including the submission of fraudulent specimens purporting to show that Ravine made use of the Infringing Mark in commerce when he had not made such use.

74.     OpenAI has suffered injury as a consequence of Defendants' registration and maintenance of the Infringing Mark.

75.     Defendants' conduct has caused and is causing monetary injury to OpenAI, in an amount to be determined at trial, including actual damages and lost profits.

**FOURTH CAUSE OF ACTION**

**For Cancellation of Registration No. 5,258,002**

**(15 U.S.C. § 1119)**

**Based On No Bona Fide Use**

76.      OpenAI incorporates and realleges paragraphs 1 through 57 of this Complaint.

77.      The Infringing Mark (Reg. No. 5,258,0002) creates a likelihood of confusion with the OpenAI Marks, for which OpenAI has priority.

78.      Ravine filed the application for the Infringing Mark based on alleged use of the Infringing Mark in commerce under Section 1(a).  At the time, Ravine had no bona fide use of the Infringing Mark.  Neither Defendant makes—or has ever made—bona fide use of the Infringing Mark in commerce.

79.      Neither Defendant has made continuous use of the Infringing Mark and neither has acquired or maintained the goodwill associated with any rights they may have been assigned in the Infringing Mark.

80.      OpenAI believes it will be damaged by the continued registration of the Infringing Mark, and thus hereby petitions to cancel it.

81.      Thus, the Registration of the Infringing Mark should be cancelled under 15 U.S.C. §§ 1119, 1052, and/or 1064.

**FIFTH CAUSE OF ACTION**

**For Cancellation of Registration No. 5,258,002**

**(15 U.S.C. § 1119)**

**Based On Misrepresenting Source**

82.      OpenAI incorporates and realleges paragraphs 1 through 57 of this Complaint.

83.      A registration is subject to cancellation if the mark "is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used."  15 U.S.C. § 1064(3).

84.     Defendants have used the domain name www.open.ai to redirect visitors from that domain name to the domain name and website of OpenAI.  Such activity is not a bona fide use of the Infringing Mark in connection with goods or services offered by Defendants.

85.     Such redirection suggests Defendants offer services that in fact originate from OpenAI itself.

86.     In this way, Defendants have misrepresented to consumers that the parties' services originate from the same source.

87.     Such conduct by Defendants is calculated to trade on the goodwill and reputation of OpenAI.

88.     The Registration for the Infringing Mark should therefore be cancelled under 15 U.S.C. §§ 1119 and/or 1064(3) because, Defendants have misrepresented the source of the services on or in connection with which the Infringing Mark is allegedly used.

## **PRAYER FOR RELIEF**

WHEREFORE, OpenAI prays for relief, as follows:

A.      A judgment that Defendants:

1.      have infringed OpenAI's federal and common law trademark rights;

2.      is unfairly competing with OpenAI, and has been unjustly enriched;

3.      acted willfully and with malice, oppression, and/or fraud;

B.      An order and judgment preliminarily and permanently enjoining Defendants and all of their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further acts of infringement and unfair competition;

C.      Actual damages suffered as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as all pre-judgment and post-judgment interest, at the maximum rate permitted law;

D.      An accounting of Defendants' profits;

E.      A judgment trebling any damages award;

COMPLAINT

1        F.      Punitive damages;

2        G.      Restitution against Defendants and in favor of OpenAI, including disgorgement of

3 any wrongfully obtained profits and any other appropriate relief;

4        H.      Costs of suit and reasonable attorneys' fees;

5        I.       An order cancelling Defendants' Infringing Mark and transferring the www.open.ai

6 domain name to OpenAI; and

7        J.       Any other remedy to which OpenAI may be entitled in law or equity.

DATED: August 4, 2023           QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By _____
          Robert M. Schwartz
      Attorneys for OpenAI, Inc.

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, OpenAI respectfully demands a trial by jury on all issues triable by jury.

DATED: August 4, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____
Robert M. Schwartz
Attorneys for OpenAI, Inc.