QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
 bobfeldman@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
 margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000

Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Aaron H. Perahia (Bar No. 304554)
 aaronperahia@quinnemanuel.com
865 S. Figueroa St., 10th Fl.
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

Sam S. Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:     (415) 875-6600

Dylan I. Scher (*pro hac vice*)
 dylanscher@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

*Attorneys for OpenAI, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OPENAI, INC., a Delaware corporation, | Case No. 4:23-cv-03918-YGR |
| Plaintiff, | Assigned to the Hon. Yvonne Gonzalez Rogers |
| vs. | **PLAINTIFF OPENAI, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** |
| OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual, | |
| Defendants. | Date:     November 7, 2023<br>Time:     1:00 p.m.<br>Place:    Oakland Courthouse<br>             Courtroom 1 (4th Fl.) |

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ................................................................................................................................2

I. OPENAI IS LIKELY TO SUCCEED ON THE MERITS .......................................2

    A. Defendants Did Not Rebut OpenAI's *Sleekcraft* Analysis. ......................2

    B. OpenAI Is The Senior User. .......................................................................3

        1. Defendants Cannot Establish Senior Trademark Use In Commerce. .............3

        2. Defendants Cannot Establish A Senior Protectable Interest. ........................5

    C. Laches Is No Bar To OpenAI's Claims Or This Injunction......................6

II. OPENAI WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION ......... 10

    A. Defendants Fail To Rebut That OpenAI Will Suffer Irreparable Harm Without An Injunction................................................................................ 10

    B. OpenAI Did Not Unreasonably Delay. ..................................................... 11

        1. OpenAI Acted Promptly Upon Receipt of Ravine's Protest Letters............. 11

        2. Delay Alone Does Not Preclude Preliminary Injunctive Relief. .................. 13

III. THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION ............................ 15

IV. THE BALANCE OF EQUITIES STRONGLY FAVORS AN INJUNCTION ................... 15

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*A.I.G. Agency, Inc. v. American International Group, Inc.*,
    33 F.4th 1031 (8th Cir. 2022) .................................................................................................. 7

*Activision Publishing, Inc. v. Activision TV, Inc.*,
    2013 WL 12145597 (C.D. Cal. July 18, 2013) ....................................................................... 8

*Adidas America, Inc. v. Payless Shoesource, Inc.*,
    540 F. Supp. 2d 1176 (D. Or. 2008) ....................................................................................... 9

*Alliance For the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................................................. 9

*American Automobile Association of Northern California, Nevada & Utah v.
    General Motors LLC*,
    367 F. Supp. 3d 1072 (N.D. Cal. 2019) ................................................................................... 5

*American Eagle Outfitters, Inc. v. American Eagle Furniture, Inc.*,
    2013 WL 6839815 (N.D. Ill. Decl. 27, 2013) ......................................................................... 8

*Arc of California v. Douglas*,
    757 F.3d 975 (9th Cir. 2014) ........................................................................................... 12, 13

*Athleta, Inc. v. Pitbull Clothing Co.*,
    2013 WL 142877 (C.D. Cal. Jan. 7, 2013) ........................................................................ 8, 13

*Automated Pet Care Products, LLC v. PurLife Brands, Inc.*,
    2023 WL 3046592 (N.D. Cal. Apr. 21, 2023) ......................................................................... 6

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ................................................................................................. 5

*Cisco Systems, Inc. v. Dexon Computer, Inc.*,
    2023 WL 6466384 (N.D. Cal. Oct. 3, 2023) ......................................................................... 14

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ................................................................................................. 6

*Dean v. Cortes*,
    2018 WL 3425016 (C.D. Cal. July 12, 2018) ......................................................................... 6

*Derek & Constance Lee Corp. v. Kim Seng Co.*,
    391 F. App'x 627 (9th Cir. 2010) ............................................................................................ 8

*Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*,
    2023 WL 4285504 (9th Cir. June 30, 2023) ......................................................................... 13

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
  224 F. Supp. 3d 957 (C.D. Cal. 2016) ............................................................................... 13
  869 F.3d 848 (9th Cir. 2017) ...................................................................................... 12, 13

*Feldenkrais Guild of North America v. Wildman*,
  2018 WL 2331905 (N.D. Cal. May 23, 2018) ................................................................. 14

*Gearsource Holdings, LLC v. Google LLC*,
  2020 WL 3833258 (N.D. Cal. July 8, 2020) ..................................................................... 5

*Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*,
  2018 WL 3816745 (C.D. Cal. July 24, 2018) ................................................................. 14

*Intenze Products, Inc. v. TATLAB Corp.*,
  2023 WL 5209729 (C.D. Cal. Aug. 1, 2023) ................................................................... 13

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009) (Opp. 20) ........................................................................ 7, 8

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
  287 F.3d 866 (9th Cir. 2002) ............................................................................................ 6

*Lambda Elecronics Corp. v. Lambda Technology, Inc.*,
  515 F. Supp. 915 (S.D.N.Y. 1981) ................................................................................... 8

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
  601 F. App'x 469 (9th Cir. 2015) ................................................................................... 14

*Metamorfoza D.O.O. v. Big Funny, LLC*,
  2021 WL 4572039 (C.D. Cal. July 27, 2021), *aff'd*, 2022 WL 16756362 (9th
  Cir. Nov. 8, 2022) ............................................................................................................. 6

*National Customer Engineering Inc. v. Lockheed Martin Corp.*,
  1997 WL 363970 (C.D. Cal. Feb. 14, 1997) .................................................................... 7

*NBCUniversal Media, LLC v. Jay Kennette Media Group. LLC*,
  2023 WL 2628682 (C.D. Cal. Jan. 27, 2023) ................................................................... 9

*PTG, Inc. v. Reptilian Nation Expo*,
  2023 WL 3582131 (E.D. Cal. May 22, 2023) ................................................................. 15

*Robinson v. Best Price Distributors, LLC*,
  2023 WL 2203584 (C.D. Cal. 2023) ............................................................................... 15

*RSI Corp. v. International Business Machines Corp.*,
  2012 WL 3277136 (N.D. Cal. Aug. 9, 2012) ................................................................... 9

*Social Technologies LLC v. Apple Inc.*,
  4 F.4th 811 (9th Cir. 2021) ........................................................................................... 3, 5

*Synoptek, LLC v. Synaptek Corp.*,
    2018 WL 3359017 (C.D. Cal. June 4, 2018).................................................................. 7, 9

*TIBCO Software Inc. v. GatherSmart LLC*,
    2021 WL 4477902 (N.D. Cal. Mar. 5, 2021) ..................................................................... 5

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*,
    465 F.3d 1102 (9th Cir. 2006).......................................................................................... 7, 8

*U.S. Search, LLC v. U.S. Search.com Inc.*,
    300 F.3d 517 (4th Cir. 2002)................................................................................................ 6

*Vans, Inc. v. Walmart, Inc.*,
    2022 WL 1601530 (C.D. Cal. Mar. 31, 2022) ................................................................. 12

*Westchester Media v. PRL USA Holdings, Inc.*,
    214 F.3d 658 (5th Cir. 2000)................................................................................................ 8

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023)............................................................................................... 14

*Zest Anchors, LLC v. Geryon Ventures, LLC*,
    615 F. Supp. 3d 1206 (S.D. Cal. 2022), *aff'd in rel. part*, 2023 WL 2783175 (9th
    Cir. Apr. 5, 2023) ............................................................................................................... 12

**Statutes**

15 U.S.C. § 1116 ........................................................................................................... 10, 14

15 U.S.C. § 1058 ..................................................................................................................... 9

15 U.S.C. § 1091 ..................................................................................................................... 6

**Additional Authorities**

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION
    § 16:34................................................................................................................................... 6

Ninth Circuit Model Jury Instructions
    1.14 ........................................................................................................................................ 4

# INTRODUCTION

Defendants' use of "Open AI" is causing OpenAI irreparable harm that should be enjoined. They do not dispute the facts that cause the harm: their "Open AI" mark is virtually identical to OpenAI's mark, their image-generation and chatbot services compete directly with OpenAI's services, and they launched their services within the last year—just months following OpenAI's general launch of DALL·E 2 and ChatGPT. Nor do Defendants dispute that, one week before OpenAI filed this motion, they changed their website to copy OpenAI's website even more closely:

 

Defendants offer no rebuttal to the evidence of real-world confusion their actions have caused or to OpenAI's expert study showing that confusion is likely among users of Defendants' open.ai website. In fact, Defendants ignored the *Sleekcraft* factor analysis for assessing infringement.

Defendants attempt to distract from OpenAI's evidence by asserting meritless delay arguments, which ignore that Defendants launched their competing services only in November 2022. Nor can they identify a single user of any of their services before December 2022. They also ignore that OpenAI had no reason to know before March 2023 what Defendants were doing, when OpenAI learned that Defendants had sent protest letters about OpenAI to the PTO. Defendants cite no precedent holding that suing and moving for a preliminary injunction within six months of discovering such facts warrants denial of injunctive relief, much less a laches defense.

Instead, Defendants base their delay arguments on sham assertions about Ravine's supposed past use of "Open AI" in connection with other projects, which did not involve text-to-image or chatbot services, and for which Defendants cannot identify an actual user. Not only have Defendants failed to show any early activity that would significantly impact OpenAI's goodwill or business

reputation—which is what triggers any assessment of delay for purposes of irreparable harm or laches—but their evidence raises significant concerns about Ravine's veracity. Defendants offer no explanation why Ravine's PTO specimen features "posts" consisting of content that verbatim copied posts from a third-party website or why they were added to his website the day before the submission (not the year before, as represented). Seeing nothing wrong with presenting content he copied from other sources as his own, Ravine also submitted to the Court a "reconstructed" website that he claims existed in 2015, which contains language copied verbatim from a college textbook that was not published until two years later. He also submitted screenshots of websites captured in 2023, claiming that they existed earlier. Defendants also admit that they "restricted" access to other webpages that supposedly used "Open AI," preventing OpenAI and the Court from evaluating their bona fides.

Defendants rely on this same inauthentic evidence to establish that they have senior trademark rights. But even if their evidence were credible, it is insufficient to establish actual customer engagement or other commercial use necessary to acquire trademark rights. Without such evidence, Defendants' argument fails because, by registering "Open AI" on the Supplemental Register, Defendants conceded that their use of it is merely descriptive. Accordingly, no trademark interests could have arisen unless and until Defendants establish secondary meaning. Because Defendants present no such evidence, e.g., evidence of any pre-December 2015 (or even pre-December 2022) customers or commercial investment, they fail to rebut OpenAI's seniority.

Given the unchallenged evidence of actual confusion and irreparable harm, the balance of hardships that favors OpenAI, and the public interest in avoiding consumer confusion, OpenAI is entitled to an injunction against Defendants' infringing conduct.

## ARGUMENT

### I. OPENAI IS LIKELY TO SUCCEED ON THE MERITS

#### A. Defendants Did Not Rebut OpenAI's *Sleekcraft* Analysis.

OpenAI explained how the *Sleekcraft* factors compel a finding of infringement, detailing the strength of the OpenAI mark, consumers' degree of care, instances of actual confusion, and a consumer survey. Mot. 8-18. Defendants do not dispute the OpenAI Mark has become a "household name," or that consumers have visited Defendants' website looking for OpenAI's products and

2  CASE NO. 4:23-CV-03918-YGR
PLAINTIFF OPENAI'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

services, or that the consumer perception survey clearly found a likelihood of confusion. Having failed even to address OpenAI's *Sleekcraft* analysis, Defendants effectively concede that their challenged use is likely to cause confusion.

**B.     OpenAI Is The Senior User.**

**1.     Defendants Cannot Establish Senior Trademark Use In Commerce.**

Defendants cannot show their use in commerce of "Open AI" before OpenAI's use. *Cf.* Opp. 16-19. "[T]rademark rights are not conveyed through mere intent to use a mark commercially." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021) (citations omitted). Mere "token use" or "adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient." *Id.* Genuine use in commerce requires "actual use" and "display" of the mark in a "sufficiently public" manner "to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.*

First, as to asserted use before 2016, Defendants' only evidence of use relating to the Wikineering website and "Initial Collaboration Tool" (Opp. 5) is Ravine's questionable say-so. Ravine says he used "Open AI" on a "portion" of that website, which he claims was available at "either wikineering.org or ineed.com/wikineering," from March 2015 to 2016. Dkt. 38-2 ¶ 5. However, in an email he wrote in December 2015, he referred to his Wikineering website as distinct from his "focus on AI" and his "initiative called Open.AI," which he said was still "in development." Declaration of Greg Brockman ("Brockman Decl.") ¶ 4 & Ex. B.

Ravine does not claim any contemporaneous records ever existed that would corroborate his story, much less introduce them—no screenshots, no code, no emails, no user logs, no advertising, no marketing plans, no business plans, no partnerships, no financial records, no press releases, and no news coverage. Nor does he claim that any users, business partners, website developers, or others support his version of events. Instead, he purports to attach a "true and correct" "screenshot of a reconstruction" of that website that he created sometime in the prior 2-3 months. Dkt. 38-4, 38-2 ¶ 5. Despite claiming he cannot remember the most basic details about that website, such as its address, his reconstruction contains supposedly vivid details, down to the specific content on the page.

1       The detail Ravine does provide raises even more questions about his credibility. A forensic analyst, Dr. Seth James Nielson, found Ravine's reconstruction implausible. He found that large swaths of Ravine's "reconstruction" perfectly match content from a textbook published by World Scientific in 2017—two years *after* Ravine said the content was on *his* website. Declaration of Seth James Nielson ("Nielson Decl.") ¶¶ 55-56 & Ex. I (excerpts of copied textbook), Ex. J (comparison of copying). Dr. Neilson also searched for, but was unable to find, any historical internet records related to the use of "Open AI" on the Wikineering website. *Id*. ¶¶ 48-52.

      Defendants' 2016 evidence of supposed use on hub.open.ai (Opp. 6), which consists of portions of their PTO specimen of use (Mot. 4; Dkt. 25-3) is similarly suspicious. This supposed use reflects "posts" that were added to the website on the day before the screenshot was submitted to the PTO and consist of verbatim copies of posts on a third-party website. Mot. 4. Defendants made no attempt to explain these facts, which, curiously, in their answer, they deny knowledge or information about. Dkt. 42 ¶ 34. Instead, they simply assert that the PTO, unaware of these facts, did not find it fraudulent. Opp. 23.

      Defendants also claim to have "debuted a 'Wiki' tool that was a sophisticated evolution of the Initial Collaboration Tool" in 2017 on beta.open.ai (Opp. 6) and launched "another AI collaboration tool" on decentralized.open.ai in October 2017 (*id*. 7). But again they offer no contemporaneous support. Instead, they attach what they claim to be screenshots from those websites that they captured last month—before Defendants "restricted" access to them this month (Opp. 6-7, n.1, 2), thus preventing the current websites' contents from being considered. Defendants do not identify any actual users of any of these websites, and the documents they filed with the PTO suggest that the decentralized.open.ai website, if indeed publicly available, lacked the functionality suggested, given subheadings such as "This is a test" and "testing." Declaration of Dylan I. Scher ("Scher Decl.") Ex. A. On this record, any fact-finder would be justified in not believing any of Ravine's testimony. *See, e.g.*, Ninth Cir. Model Jury Instruction 1.14.

      Second, even if all of Ravine's evidence of prior use were credible, mere display of "Open AI" on these supposed websites does not suffice. For example, nothing about "Open AI" on the Wikineering website suggests that it was used as brand versus a topic, particularly given that the

homepage and other pages were branded "Wikineering." Nielson Decl. Ex. E. *See Am. Auto. Ass'n v. Gen. Motors LLC,* 367 F. Supp. 3d 1072, 1093 (N.D. Cal. 2019) ("The prominent use of [a different] mark instead of the [asserted mark]" on the website "diminish[es] the public's ability to associate a single mark with the service as it is unclear which mark to attach to the [service].") (quotations omitted). Likewise, the display of the term "Open AI" above "announcement will be made soon" on a webpage (Dkt. 38-5) does not reflect that it was being used in commerce in connection with the offering of any actual goods or services. Indeed, the PTO rejected it as an inadequate specimen of use for that exact reason. Mot. 4; Dkt. 25-2.

"As a matter of law, the mere appearance of the mark on a page, without evidence it was seen by a sufficient number of members of the consuming public … cannot support priority." *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *10 (N.D. Cal. July 8, 2020); *accord, e.g., TIBCO Software Inc. v. GatherSmart LLC*, 2021 WL 4477902, at *3 (N.D. Cal. Mar. 5, 2021) ("GatherSmart's website standing alone, without advertising, marketing, or selling trademarked goods or services in connection with its website does not constitute use of the mark in commerce."); *Am. Auto Ass'n.*, 367 F. Supp. 3d at 1092 ("limited mention" of mark on screen of website "does not constitute sufficient use"). Just as with Defendants' rejected 2015 specimen, Defendants' other screenshots are classic examples of uses that the PTO would ***not*** find adequate. *Compare* Dkt. 38-5-8 *with* Scher Decl. Ex. B at 28, 46, 52; *see also* Scher Decl. Ex. C (demonstrating insufficiency of Defendants' evidence).[1]

### 2. Defendants Cannot Establish A Senior Protectable Interest.

Even if Defendants had shown a bona fide trademark use of "Open AI" before OpenAI did, they nonetheless have no evidence that the use resulted in a protectable trademark interest. Seniority

---

[1] Ravine's other pre-2016 activities do not suffice, either. Ravine's open.ai domain name registration is "not sufficient to constitute commercial use." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999). Ravine's claim (Dkt. 38-2 ¶ 7) that he spoke with unidentified "executives" and sought "funding" for the "Open AI initiative" also does not constitute actual use. *Soc. Techs.*, 4 F.4th at 814 (no actual use despite "investor presentation outlining its business plan" and "unsuccessfully solicit[ing] investors"); *Am. Auto. Ass'n*, 367 F. Supp. 3d at 1100-01 ("communications with potential partners" shows "mere preparation" to use, not actual use, and that "private discussions with potential partners are not sufficiently public") (quotations omitted).

of trademark rights requires seniority of protectable rights, not merely first use of a term. 2 McCarthy on Trademarks and Unfair Competition § 16:34 (5th ed.). Because no protectable trademark interest exists in a descriptive mark until it has acquired secondary meaning, *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002), Defendants have no senior trademark rights. As reflected by Defendants' registration of "Open AI" on the Supplemental Register, the prior use they claim is at most of a mark that is descriptive, not suggestive. 15 U.S.C. § 1091; *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, 2023 WL 3046592, at *3 (N.D. Cal. Apr. 21, 2023) (registration on the Supplemental Register "constitutes an 'admission against interest' that the registered mark is not yet a protectable trademark."); *Dean v. Cortes*, 2018 WL 3425016, at *6 n.6 (C.D. Cal. July 12, 2018) ("an application for registration on the Supplemental Register is an 'implied admission' that a design is not inherently distinctive.").[2] Thus Defendants cannot not now claim that their Infringing Mark is suggestive. *Cf.* Opp. 16. Rather, Defendants can establish a protectable interest in the Infringing Mark only through a showing of secondary meaning **before** OpenAI's use. McCarthy § 16:34; *Metamorfoza D.O.O. v. Big Funny, LLC*, 2021 WL 4572039, at *5 n.2 (C.D. Cal. July 27, 2021), *aff'd*, 2022 WL 16756362 (9th Cir. Nov. 8, 2022). Having failed to point to a single user of any good or service ostensibly using "Open AI" as a brand before December 2022 (Opp. 8), they fall far short of the requisite commercial strength needed to establish secondary meaning. *See id.* That compels rejection of Defendants' claim of priority over OpenAI's trademark rights.

### C. Laches Is No Bar To OpenAI's Claims Or This Injunction.

First, irrespective of delay, laches "does not apply … when the defendant's actions are willfully calculated to exploit the advantage of an established mark." *DC Comics v. Towle*, 802 F.3d 1012, 1027 (9th Cir. 2015) (defendant "barred from asserting a laches defense to DC's trademark

---

[2] Because descriptiveness is an individualized determination based on the specific class of goods or services used in connection with the mark, Defendants' concession that *their* Infringing Mark is descriptive is not determinative of the strength of the OpenAI Mark. *See, e.g.*, *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) ("That the PTO deemed [defendant's] mark to be suggestive simply has no bearing on whether [plaintiff's] use of [the contested mark] in connection with different services (executive recruiting) is suggestive as well.").

infringement claim because he willfully infringed DC's trademarks"). OpenAI has pled willful infringement and shown that Defendants have acted in bad faith. Mot. 5-6.

Second, the presumption of laches (Opp. 20) does not apply because the purported "eight-year long delay" Defendants claim (*id.*) is incorrect. OpenAI was "not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of its shotgun instantly upon spotting a possible infringer." *Synoptek, LLC v. Synaptek Corp.*, 2018 WL 3359017, at *7 (C.D. Cal. June 4, 2018) (quotations and brackets omitted). "Laches is not measured from a defendant's first use of the contested mark, but from the date that defendant began significantly impacting plaintiff's goodwill and business reputation." *Nat'l Customer Eng'g Inc. v. Lockheed Martin Corp.*, 1997 WL 363970, at *6 (C.D. Cal. Feb. 14, 1997). Knowledge of Ravine's unlaunched "initiative" in 2015 and his then-pending application in 2017, associated with an informational website, does not begin the period because that earlier activity "did not significantly impact[] [OpenAI]'s goodwill and business reputation." *Id*. Only late last year, when Defendants began offering a competing product (Mot. 5), did the parties reach analogous circumstances to those in in *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009) (Opp. 20), where laches was assessed beginning when both companies offered competing "internet access, e-mail, and web hosting." Given that OpenAI did not know about Defendants' activity until this March, the four-year statute of limitations does not trigger the presumption of laches.

Third, even if a presumption of laches exists based on Ravine's 2015 Collaboration Tool or announcement page, Defendants' progressive encroachment to compete with core OpenAI products (Mot. 5-6, 17-18) rebuts it. "Under this doctrine, the trademark owner need not sue in the face of *de minimis* infringement by the junior user. The owner may wait until 'the junior user of a mark moves into direct competition ... selling the same 'product' through the same channels and causing actual market confusion.'" *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006) (citations omitted). Accounting for the changing nature of defendants' harm is necessary to "save[] trademark holders from being hoisted upon the horns of an inequitable dilemma—sue immediately and lose because the alleged infringer is insufficiently competitive to create a likelihood of confusion, or wait and be dismissed for unreasonable delay." *A.I.G. Agency,*

*Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1034–35 (8th Cir. 2022) (quotations omitted). "This progressive encroachment doctrine allows a plaintiff some latitude in the timing of its bringing suit, permitting it to wait until the likelihood of confusion looms large." *Activision Publ'g, Inc. v. Activision TV, Inc.*, 2013 WL 12145597, at *7 (C.D. Cal. July 18, 2013) (quotations omitted).

Because OpenAI timely sued when Defendants "move[d] into direct competition," *Tillamook*, 465 F.3d at 1110, laches does not bar its claims. *See, e.g.*, *Activision Publ'g*, 2013 WL 12145597, at *7 (no unreasonable delay, despite Defendants having a "trademark registration since 2005," because system at issue "was not operational until 2012"); *Athleta, Inc. v. Pitbull Clothing Co.*, 2013 WL 142877, at *11 (C.D. Cal. Jan. 7, 2013) (no unreasonable delay where "recent conduct" created likelihood of confusion, not earlier demand letter and "discussions regarding a potential sale" of defendant's domain name).[3] Defendants' cases (Opp. 21) do not involve analogous changes in the alleged wrongful activity.

Fourth, Defendants have not demonstrated "prejudice as a result of the plaintiff's unreasonable delay in filing suit." *Tillamook*, 465 F.3d at 1108. Defendants' claimed "expectation prejudice" (Opp. 21-22) is deficient in the trademark context. What matters is whether a party makes "an investment in the mark [] as the identity of the business in the minds of the public." *Internet Specialties*, 559 F.3d at 991–93 (Opp. 20, 21); *id.* (no prejudice where defendant had not spent time "developing brand recognition of its mark."); *see also Derek & Constance Lee Corp. v. Kim Seng Co.*, 391 F. App'x 627, 628 (9th Cir. 2010) ("that [defendant's] business grew … is insufficient to establish prejudice"). Here, Defendants do not point to any alleged investment (such as efforts to advertise), nor do they claim that there was *any* public recognition of "Open AI" as a source for

---

[3] *See also Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) (no delay because new magazine was an "entirely new product and different" from old magazine); *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, at *11 (N.D. Ill. Dec. 27, 2013) ("shift from operating a warehouse under a different name to opening three retail stores under the name American Eagle Furniture in malls where AE Outfitters was already operating … is a prime example of progressive encroachment."); *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 923, 930 (S.D.N.Y. 1981) (no delay where defendant began as a "fledgling corporation that conducted no advertising" and plaintiff did not sue for three and half years, when "instances of confusion … began to occur").

1  Defendants' artificial intelligence services predating December 2022. Defendants' suggestion that
2  they would not have used the name "Open AI" (Opp. 22), without more, does not suffice. *See, e.g.*,
3  *Synoptek*, 2018 WL 3359017, at *8 ($50,000 spent on advertising not "significant enough to find
4  substantial prejudice"). Defendants' lack of advertising activity here makes *RSI Corp. v.
5  International Business Machines Corp.*, 2012 WL 3277136, at *16 (N.D. Cal. Aug. 9, 2012),
6  distinguishable; in that case, the plaintiff acknowledged that the defendant emphasized the allegedly
7  infringing name "in its marketing materials."

8  Nor have Defendants proven "evidentiary prejudice." They identify no unavailable witness,
9  no information they would have "preserve[d]" if sued earlier (Opp. 22), and no specifics about what
10 evidence, if any, is missing. They do not suggest any invoices, sales, or customer emails ever
11 existed—much less, before 2022—that would confirm their supposed use of "Open AI" in
12 commerce. Nor could they blame purported delay for any lost evidence concerning their ***competing***
13 uses, which began only last November. Opp. 8-9. Such "[c]onclusory statements that … there is
14 missing documentary evidence" are "not sufficient to establish evidentiary prejudice." *Adidas Am.,
15 Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1183 (D. Or. 2008). Moreover, putative
16 trademark owners know that they should retain evidence of their use to support the required, periodic
17 filings with the PTO to confirm continuous use. *See* 15 U.S.C. § 1058.

18 All other equitable factors strongly support OpenAI, including the OpenAI Mark's
19 commercial strength, the harm to OpenAI, Defendants' bad faith, and Defendants' recent direct
20 competition. *See* Mot. 2-4, 12, 14-18; Sections I.B, II.A. Defendants are therefore unlikely to prevail
21 on their laches claim, and they tellingly point to no decision denying a preliminary injunction on the
22 grounds that the defendant is likely to prevail on laches—an issue of such fact-specific determination
23 that it is rarely amenable to a finding of applicability except by a jury. *See, e.g.*, *NBCUniversal
24 Media, LLC v. Jay Kennette Media Grp. LLC*, 2023 WL 2628682, at *10 (C.D. Cal. Jan. 27, 2023).

25 In sum, OpenAI is likely to prevail on the merits, or, at minimum, has raised "'serious
26 questions' on the merits," which combined with "a hardship balance that tips sharply toward the
27 plaintiff," and satisfaction of the irreparable injury and public interest factors, "support issuance of
28 an injunction." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

1  **II.  OPENAI WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION**

2      **A.  Defendants Fail To Rebut That OpenAI Will Suffer Irreparable Harm Without An Injunction.**

Defendants concede, as they must, that irreparable harm is presumed as a matter of law upon showing of a likelihood of success on the merits. Opp. 15. Because OpenAI is likely to succeed, as discussed *supra*, and because Defendants failed to rebut the statutory presumption, OpenAI has established irreparable harm. 15 U.S.C. § 1116(a).

Even without the presumption, OpenAI demonstrated irreparable harm. It is undisputed that: (a) Defendants' website with an image generator causes actual confusion; (b) Dr. Swain's consumer perception survey reflects that further actual confusion is likely; (c) OpenAI will lose exclusive control of its reputation and goodwill due to the inevitable association with the Infringing Mark; (d) OpenAI will lose the ability to grow its business without false association with the Infringing Mark; and (e) OpenAI will be unable to control the quality or marketing of any products or services offered with the Infringing Mark. Mot. 19-20; Dkts. 25-21, 25-22, 22 ¶ 26. Defendants do not even acknowledge this evidence, much less dispute it. Nor do Defendants dispute that such evidence of a "potential loss of goodwill or the loss of ability to control one's reputation" establishes irreparable harm. Mot. 19 (citing cases). Defendants' silence on this evidence is dispositive of irreparable harm.

As to the limited evidence Defendants do address (Opp. 14-16), their arguments fail. Defendants claim that their display of harmful images does not establish irreparable harm because OpenAI does not establish a "single consumer" saw that content. Opp. 15. That is false. OpenAI's undisputed evidence, and Defendants' own admissions, indisputably show that Defendants' harmful images were all shown, at minimum, to the users who entered the text prompts resulting in those images on Defendants' website. Dkt. 38-2 ¶ 12; Dkt. 25 ¶ 21.

Defendants also do not dispute that those harmful images were shown on Defendants' public feed page, available for any of Defendants' "2.3 million" website visitors to see, even if they did not themselves enter the prompt to generate the image. Dkt. 38-2 ¶ 12; *see* Opp. 15 n.4; Dkt. 25 ¶ 17. Defendants' suggestion that *none* of the 2.3 million visitors to their website saw the harmful content (Opp. 15) strains credulity. Defendants concede they actively promote and facilitate sharing of their

images on social media, and Ravine's declaration concedes that anyone can "view, download, and/or share" those images beyond Defendants' website. Dkt. 38-2 ¶ 12; Dkt. 25 ¶ 17. Defendants also concede that every image downloaded or shared is watermarked with the Infringing Mark. Dkt. 25 ¶ 17. As a result, even non-visitors to Defendants who view Defendants' harmful images elsewhere are likely to associate the images with OpenAI.

Finally, Defendants' meritless attack on OpenAI's reputation concerning ChatGPT does not defeat OpenAI's showing of reputational harm concerning Defendants' images. Defendants identify no evidence that OpenAI is "already associated with" (Opp. 16) the type of harmful images generated on Defendants' website. Nor do they offer evidence that OpenAI is known as being reckless in the type of content ChatGPT provides. *Cf.* Scher Decl. Ex. D (third party articles regarding OpenAI's commitment to safety). Defendants' assertion that ChatGPT generates "more problematic content than Defendants' AI Image Generator" (*id.*) is baseless. Indeed, the three articles Defendants cite each acknowledge ChatGPT's safeguards, attempts to prevent harmful texts, and refusals to provide harmful content without adequate warnings and contextualization. *See* Dkt. 38-20 at 3; Dkt. 38-21 at 3; Dkt. 38-22 at 4. None of those articles suggests that OpenAI is associated with the type of inappropriate, explicit, and exploitive images displayed on Defendants' website and watermarked with "Open AI." *Id*; Dkt. 25-15.

### B. OpenAI Did Not Unreasonably Delay.

#### 1. OpenAI Acted Promptly Upon Receipt of Ravine's Protest Letters.

OpenAI filed its infringement action within six months of learning of Defendants' position, as expressed in Defendant Ravine's letter of protest to the Patent and Trademark Office, that its "Open AI" name in connection with "a web site featuring technology that enables internet users to share documents, images, and videos" should bar Plaintiff's registration of its "OpenAI" trademark (the "OpenAI Mark"). Dkt. 1; Mot. 5; Dkt 23-1 at 7. This knowledge came a few months after Defendants dramatically altered their website to *begin* making available artificial intelligence services that *compete* with OpenAI's goods and services—i.e., ChatGPT and DALL·E. Mot. 5-6. It is only from Defendants' newly added image generation service that the offensive images watermarked with "Open AI" began to appear. *See* Mot. 7-8. Moreover, Defendants have recently

11

CASE NO. 4:23-CV-03918-YGR

PLAINTIFF OPENAI'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

made *additional* changes to their website that increase the threat to OpenAI's trademark rights, such as redesigning their website to more closely reflect OpenAI's website design.  Mot. 6.

As reflected in the visual chronology of Defendants' website (Nielson Decl. ¶ 58), at no point before Defendants' November 2022 website revisions could OpenAI have had reason to believe that Defendants' operation of the open.ai website would cause irreparable harm.  Until those changes, the risk of confusion arising from that website did not carry remotely the same level of harm as a webpage offering a competing service; for years the open.ai website simply displayed an "announcement coming soon" message, redirected to OpenAI's own website, or displayed a completely different business branding ("CryptoArt").  *Id.*; Mot. 9; Brockman Decl. ¶¶ 7, 10.  Further, OpenAI had no reason to know of any of the other website pages Defendants referenced, which were not reachable through any menu links from the open.ai website.  Brockman Decl. ¶ 5; *see also* Nielson Decl. ¶ 58.

Given these facts, OpenAI has not engaged in the kind of delay that can rebut the presumption of irreparable harm.  As the Ninth Circuit has long recognized, "tardiness is not particularly probative in the context of ongoing, worsening injuries." *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014).  This is because, where the irreparable harm only becomes clear over time, "waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory."  *Id.* at 991.  Where "the magnitude of the potential harm becomes apparent gradually," it "undermin[es] any inference that the plaintiff was sleeping on its rights."  *Id.* at 990–91 (two-year delay unlikely to be probative given existence of "ongoing, worsening injuries").

Accordingly, courts regularly grant injunctive relief when sought in response to defendants' escalating harm, worsening infringement, or an emergent threat.  *See Disney Enters., Inc. v. Vid Angel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming irreparable harm where injunction sought when the alleged copyright infringement "expanded ... into a real threat"); *Zest Anchors, LLC v. Geryon Ventures, LLC*, 615 F. Supp. 3d 1206, 1238 (S.D. Cal. 2022), *aff'd in rel. part,* 2023 WL 2783175 (9th Cir. Apr. 5, 2023) (plaintiffs "not dilatory" by not seeking injunction until defendant's trademark infringement "pose[d] a legitimate threat" even though they knew of infringement for five years); *Vans, Inc. v. Walmart, Inc.*, 2022 WL 1601530, at *13 (C.D. Cal. Mar. 31, 2022) ("delay does not negate the presumption of irreparable harm" given "alleged escalating nature" of trademark

infringement); *Athleta*, 2013 WL 142877, at *11 ("plaintiff did not unreasonably delay" because "it was only defendants' recent conduct that created this likelihood of confusion").

The Ninth Circuit's affirmance of a preliminary injunction in *Disney* is dispositive. *See Zest Anchors*, 615 F. Supp. 3d at 1238 (S.D. Cal. 2022) (discussing same in trademark case). Although Disney and other studios first learned of defendant's infringing product when "it was in 'limited beta' and had fewer than 5,000 users," they waited more than one year to sue, after the defendant "started marketing itself more aggressively, expanded its content offering, and posed a more significant threat of harm." 224 F. Supp. 3d 957, 977 (C.D. Cal. 2016). The Ninth Circuit agreed with the district court that the studios' "delay in seeking an injunction was reasonable under the circumstances, their alleged harms are ongoing, and will likely only increase absent an injunction." *Disney Enters.*, 869 F.3d at 866. It confirmed that delay in seeking an injunction is reasonable when the plaintiff waits until the infringer "expand[s] ... into a real threat." *Id.*

OpenAI cannot be said to have unreasonably delayed seeking a preliminary injunction to stop actual confusion resulting from Defendants' website iterations that were not in existence before November 2022—especially when OpenAI had no reason to be aware of any use Defendants made of "Open AI" before that other than its "announcement coming soon" and redirecting actions. *Supra* 12. Just as Disney was not penalized for not filing suit while the defendant was in beta mode, *Disney Enters.*, 869 F.3d 848, OpenAI should not be penalized for "delay" while Defendants were not even making available any artificial intelligence goods or services. Defendants' cited authority (Opp. 12-14) does not hold otherwise, as none of their decisions address escalating or evolving harm.

### 2. Delay Alone Does Not Preclude Preliminary Injunctive Relief.

Even where delay is established, it is "but a single factor to consider in evaluating irreparable injury; courts are loath to withhold relief solely on that ground." *Arc of California*, 757 F.3d at 990, 979 (emphasis added) (remanding for "reconsideration of the propriety of injunctive relief in the changed circumstances, applying the correct irreparable harm analysis"); *see also, e.g.*, *Desirous Parties Unlimited, Inc. v. Right Connection, Inc.,* 2023 WL 4285504, at *1 (9th Cir. June 30, 2023) (affirming grant of preliminary injunction with alleged 13-month delay in trademark dispute); *Intenze Prod., Inc. v. TATLAB Corp.*, 2023 WL 5209729, at *8 (C.D. Cal. Aug. 1, 2023) ("It is a stretch to

PLAINTIFF OPENAI'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

suggest that six months is inherently unreasonable, let alone that it is so unreasonable that the Court should withhold relief solely on this ground."). Delay alone cannot be dispositive because courts balance the elements of the preliminary injunction test, including irreparable harm, on a "sliding scale." *See* Mot. 8; *Feldenkrais Guild of N. Am. v. Wildman*, 2018 WL 2331905, at *2 (N.D. Cal. May 23, 2018) (granting preliminary injunction in trademark dispute, recognizing "[s]o long as the plaintiff makes a threshold showing of irreparable harm and likelihood of success on the merits, a stronger showing on one element may offset a weaker showing on another").

The decision earlier this month in *Cisco Systems, Inc. v. Dexon Computer, Inc.*, 2023 WL 6466384 (N.D. Cal. Oct. 3, 2023), is instructive. The court rejected the defendant's argument that the preliminary injunction should be denied solely due to the plaintiff's having alleged **15 years** of infringing conduct. *Id.* at *5-6. Judge Breyer pointed to defendants' failure to cite any "Ninth Circuit case holding that delay, standing alone, rebuts the presumption of irreparable harm under the Lanham Act—particularly where the movant marshals evidence of loss of reputation and consumer goodwill and the non-movant makes no attempt to rebut that evidence." *Id.*

As in *Cisco,* the record here includes evidence of loss of reputation and consumer goodwill. Further, the undisputed evidence of actual confusion (Mot. 6-8), "substantiate[s] the threat to [plaintiff's] goodwill and reputation, which is sufficient to establish a likelihood of irreparable harm." *Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*, 2018 WL 3816745, at *9 (C.D. Cal. July 24, 2018); *see also Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 474 (9th Cir. 2015) (evidence of actual confusion established irreparable harm).

Defendants' cited opinions (Opp. 13-14) do not salvage—nor justify—the position that delay is dispositive. All but three pre-date the Trademark Modernization Act of 2020 (the "TMA"), which modified the Lanham Act's injunctive relief provision to establish a presumption of irreparable injury for a party seeking a preliminary injunction "upon a finding of likelihood of success on the merits." 15. U.S.C. § 1116(a); *see also* Mot. 18. Of those remaining three, one involved the Ninth Circuit ***vacating*** the denial of a permanent injunction. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023). In another, the analysis of delay was based on a local rule specific to temporary restraining orders, there was no evidence defendants had even been served with the complaint, and

14

CASE NO. 4:23-CV-03918-YGR

PLAINTIFF OPENAI'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

1 plaintiff failed to explain "why it is likely to succeed on the merits." *PTG, Inc. v. Reptilian Nation Expo*, 2023 WL 3582131, at *3 (E.D. Cal. May 22, 2023). The only case of the three that denied an injunction outside the TRO context did so where a jury trial did not involve evidence of irreparable harm or consumer confusion. *Robinson v. Best Price Distributors, LLC*, 2023 WL 2203584, at *3-5 (C.D. Cal. Jan. 1, 2023).

**III.    THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION**

Defendants do not dispute the arguments OpenAI made in its moving brief—that the purpose of trademark law is to avoid defrauding the public, that Defendants' continued use of the Infringing Mark will mislead the public into thinking Defendants' website and the images generated using it are associated with OpenAI, and that the public interest is best served by protecting OpenAI's goodwill and enabling consumers to distinguish between the services offered by the parties. *See* Mot. 20-21. Defendants make no independent argument on this factor, claiming only that this factor favors them "because [OpenAI's] case on merits is weak and irreparable harm is not established." Opp. 23-24. As discussed above in Sections I & II, this is incorrect.

**IV.    THE BALANCE OF EQUITIES STRONGLY FAVORS AN INJUNCTION**

Defendants also do not address OpenAI's arguments concerning balance of the equities (Mot. 21) apart from pointing to OpenAI's purportedly "unreasonable delay" (Opp. 24)—debunked above. *See* Sections I.C & II.B. Notably, Defendants do not claim that an injunction will harm any of their business interests or cost them any money. They have no physical products to rebrand, no labels to reprint, no placed ads to recall. Balanced against the actual confusion and irreparable harm OpenAI is facing, the equities favor requiring Defendants to change the text of their website's homepage.

## CONCLUSION

For the reasons above, OpenAI respectfully requests that this Court grant the Motion and preliminarily enjoin Defendants from using the Infringing Mark.

Dated: October 24, 2023         QUINN, EMANUEL, URQUHART &
                                SULLIVAN, LLP

                                By  */s/ Margret M. Caruso*
                                    Margret M. Caruso
                                *Attorneys for OpenAI, Inc.*