QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
 bobfeldman@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
 margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000

Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Aaron H. Perahia (Bar No. 304554)
 aaronperahia@quinnemanuel.com
865 S. Figueroa St., 10th Fl.
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

Sam S. Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:     (415) 875-6600

Dylan I. Scher (*pro hac vice*)
 dylanscher@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

*Attorneys for OpenAI, Inc.*

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (pro hac vice application
forthcoming)
 osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000

Brian M. Lutz (Bar No. 255976)
 blutz@gibsondunn.com
Rosemarie T. Ring (Bar No. 220769)
 rring@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     (415) 393-8200

*Attorneys for OpenAI, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENAI, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>       vs.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual,<br><br>       Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 4:23-cv-03918-YGR<br><br>Assigned to the Hon. Yvonne Gonzalez Rogers<br><br>**MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**<br><br>Date:    August 13, 2024<br>Time:    2:00 p.m.<br>Place:   Courtroom 1 (4th Fl.)<br>       1301 Clay St.<br>       Oakland, CA 94612 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 13, 2024, at 2:00 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 1 (4th Floor), 1301 Clay Street, Oakland, California 94612, Plaintiff OpenAI, Inc. ("OpenAI") will, and hereby does, move the Court for a motion to dismiss all amended counterclaims filed by Defendants Open Artificial Intelligence, Inc. and Guy Ravine (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12 and Civil Local Rules 7-2 and 7-4.

As detailed in the Proposed Order submitted with this Motion, OpenAI requests dismissal of all counterclaims.

This Motion is made on the grounds that each of these purported claims fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and/or should be stricken pursuant to Fed. R. Civ. P. 12(f).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Dylan I. Scher and attached exhibits, the Request for Judicial Notice, and all matters of which the Court may take judicial notice, all other pleadings on file in this action, and any other written or oral argument or evidence that OpenAI may present to the Court.

DATED: June 21, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____/s/ Margret M. Caruso_____
Margret M. Caruso
Attorneys for OpenAI, Inc.

## ISSUE TO BE DECIDED

Pursuant to Local Civil Rule 7-4(a)(3), OpenAI identifies the following issue to be decided:

1.      Do Defendants' false advertising counterclaims (Counts 1 and 5) fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), where Defendants allege that Plaintiff OpenAI's statements in 2015 about being a non-profit, having commitments for $1 billion in funding, and having certain researchers on staff were false, but fail to plead facts showing these statements were made in advertising, false when they were made, actually deceived consumers, or caused Defendants any direct, cognizable injury?

2.      Should Defendants' trademark infringement counterclaims (Counts 1, 2, and 4) be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because they are barred by the statute of limitations and laches given that Defendants were aware of Plaintiff's allegedly infringing use in 2015 when Ravine contacted Plaintiff OpenAI, or in the alternative, because Defendants failed to plead that they have valid trademark rights given that they did not plead inherent distinctiveness or secondary meaning?

3.      Does Defendants' trademark cancellation counterclaim (Count 3) fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) because "open" cannot misdescribe Plaintiff OpenAI's goods and services, no consumer is likely to believe that "open" exclusively means "open source," and Defendants have not, and could not have, plausibly alleged that Plaintiff OpenAI's mark lacks secondary meaning?

4.      Should Defendants' declaratory judgment counterclaims (Counts 6-9) be stricken under Federal Rule of Civil Procedure 12(f) because they are entirely redundant of relief sought by other claims in this action and their continued presence would serve no practical purpose and would needlessly consume additional judicial resources?

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS ....................................................................... 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT ......................................................................................................................... 3

I.   DEFENDANTS' FALSE ADVERTISING CLAIMS SHOULD BE DISMISSED .............. 3

    A.   The Lanham Act False Advertising Claim Should Be Dismissed ............................. 4

        1.   Defendants Do Not Allege Actionable Commercial Advertisements ............. 4

        2.   Defendants Do Not Adequately Plead Falsity ................................................ 5

        3.   Defendants Do Not Allege A Plausible Consumer Deception Theory ........... 8

        4.   Defendants Do Not Plead Actionable Injury and Causation .......................... 8

    B.   Defendants Fail to State A False Advertising State Law Claim .............................. 10

        1.   The Alleged Statements Are Not Actionable Advertising ........................... 10

        2.   Defendants Do Not Allege Any False or Misleading Statements ................ 11

        3.   Defendants Seek An Unavailable Remedy ................................................... 11

        4.   Defendants Do Not Plead Actionable Injury and Harm ............................... 12

II.  DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE
    DISMISSED ................................................................................................................ 13

    A.   The Statute of Limitations Bars Defendants' Trademark Infringement Claims ....... 13

    B.   Laches Bars Defendants' Trademark Infringement Claims .................................... 14

    C.   Defendants Fail To Plead Valid Trademark Rights ................................................ 18

    D.   Defendants Waived Their Ability To Rely On Their Supplemental
        Registration ......................................................................................................... 19

III. DEFENDANTS' CANCELLATION CLAIM SHOULD BE DISMISSED ..................... 20

IV.  DEFENDANTS' DECLARATORY JUDGMENT CLAIMS SHOULD BE
    DISMISSED ................................................................................................................ 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

### Cases

*Accuride International, Inc. v. Accuride Corp.*,
   871 F.2d 1531 (9th Cir. 1989) ............................................................. 15

*Alfasigma USA, Inc. v. First Databank, Inc.*,
   2022 WL 899848 (N.D. Cal. Mar. 28, 2022) .................................................9
   525 F. Supp. 3d 1088 (N.D. Cal. 2021) ............................................. 3, 5

*In re American Fertility Society*,
   188 F.3d 1341 (Fed. Cir. 1999) ........................................................... 19

*Anderson v. SeaWorld Parks & Entertainment., Inc.*,
   2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) ...................................... 10

*Ary v. Target Corp.*,
   2023 WL 2622142 (N.D. Cal. Mar. 23, 2023) .................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 8

*ATM Express, Inc. v. ATM Express, Inc.*,
   2009 WL 2973034 (S.D. Cal. Sept. 11, 2009)............................... 15, 17

*Automated Pet Care Products, LLC v. PurLife Brands, Inc.*,
   670 F. Supp. 3d 946 (N.D. Cal. Apr. 21, 2023)................................. 15

*Bamforth v. Facebook, Inc.*,
   2021 WL 4133753 (N.D. Cal. Sept. 10, 2021), *aff'd*,
   2023 WL 5925982 (9th Cir. Sept. 12, 2023) ............................... 13, 14

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..............................................................4

*Blocker v. Black Entertainment Television, LLC*,
   2019 WL 1416471 (D. Or. Mar. 6, 2019) .......................................... 14

*Broadcom Corp. v. SiRF Technology, Inc.*,
   2009 WL 10672527 (C.D. Cal. Dec. 16, 2009)............................... 6, 7

*Coastal Abstract Services Inc. v. First American Title Insurance Co.*,
   173 F.3d 725 (9th Cir. 1999) ......................................................... 4, 8

*Creel Abogados, S.C. & Carlos Creel Carrera v. Creel, Garcia-Cuellar, Aiza Y
   Enriquez, S.C.*,
   2022 WL 1773814 (T.T.A.B. 2022) .................................................. 22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ...................................................................................... 18

*Day Crush, LLC v. Ehren Jordan Wine Cellars*,
   2017 WL 6383269 (N.D. Cal. May 5, 2017) ................................................. 18

*Divino Group LLC v. Google LLC*,
   2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ...................................................... 4

*In Re Delta Faucet Co.*,
   2022 WL 1711104 (T.T.A.B. May 4, 2022) ................................................... 20

*E-Systems, Inc. v. Monitek, Inc.*,
   720 F.2d 604 (9th Cir. 1983) ........................................................................ 14

*Fitbug Ltd. v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) ..................................................... 16, 17

*Foundry IV Inc. v. Hard Carry Gaming Inc.*,
   2024 WL 211010 (C.D. Cal. Jan. 3, 2024) ................................................... 18

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
   378 F. Supp. 3d 823 (N.D. Cal. 2019) .......................................................... 8

*Grupo Gigante SA De CV v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004) .................................................................. 15, 16

*Harman International Industries, Inc. v. Jem Accessories, Inc.*,
   668 F. Supp. 3d 1025 (C.D. Cal. 2023).................................................... 15, 16

*Haskins v. Symantic Corp.*,
   2014 WL 2450996 (N.D. Cal. Jun. 2, 2014) .............................................. 10, 11

*HomeLight, Inc. v. Shkipin*,
   2023 WL 6284738 (N.D. Cal. Sept. 27, 2023) ................................................ 9

*Hoover Co. v. Royal Appliance Mfg. Co.*,
   238 F.3d 1357 (Fed. Cir. 2001) .................................................................... 20

*Hosseinzadeh v. Werlin*,
   2015 WL 13918008 (C.D. Cal. Sept. 22, 2015) ............................................. 19

*Houston Casualty Co. v. Crum & Forster Insurance Co.*,
   2016 WL 4494444 (E.D. Cal. Aug. 25, 2016).................................................. 23

*IT Casino Solutions, LLC v. Transient Path, LLC*,
   2022 WL 4913526 (N.D. Cal. Oct. 3, 2022) .............................................. 23, 24

*J.T. Colby & Co. v. Apple Inc.*,
    2013 WL 1903883 (S.D.N.Y. May 8, 2013),
    *aff'd*, 586 F. App'x 8 (2d Cir. 2014) ................................................................. 20

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ........................................................... 14, 16, 17

*Johnson v. Lucent Technologies Inc.*,
    653 F.3d 1000 (9th Cir. 2011), *as amended* (Aug. 19, 2011) ............................. 17

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ........................................................................ 18

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011).............................................................................. 11, 12

*LegalForce, Inc. v. LegalZoom.com, Inc.*,
    2019 WL 1170779 (N.D. Cal. Mar. 13, 2019) ..................................................... 9

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ......................................................................................... 9

*Luxul Technology Inc. v. Nectarlux, LLC*,
    78 F. Supp. 3d 1156 (N.D. Cal. 2015) .............................................................. 8

*Marsh & McLennan Agency, LLC v. Teros Advisors, LLC*,
    2021 WL 4846245 (N.D. Cal. Aug. 11, 2021) .................................................. 23

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975 (9th Cir. 2006) ......................................................................... 17

*Moon v. Board of Trustees of PAMCAH-UA Loc. 675 Pension Fund*,
    319 F. Supp. 3d 1193 (N.D. Cal. 2018) ........................................................... 19

*Network Automation Inc. v. Advanced Systems Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ....................................................................... 18

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    2016 WL 2621872 (N.D. Cal. May 9, 2016)...................................................... 8

*Parts.com, LLC v. Google Inc.*,
    2014 WL 12461256 (S.D. Cal. June 25, 2014) ........................................... 15, 17

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
    894 F.3d 1015 (9th Cir. 2018) ................................................................... 16, 17

*Pom Wonderful LLC v. Welch Foods, Inc.*,
    2009 WL 5184422 (C.D. Cal. Dec. 21, 2009)................................................... 11

*Power Quality & Electrical Systems, Inc. v. BP West Coast Products LLC*,
    2017 WL 119041 (N.D. Cal. Jan. 12, 2017)..................................................................... 10, 11

*Prager University v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ............................................................................................ 5

*R & A Synergy LLC v. Spanx, Inc.*,
    2019 WL 4390564 (C.D. Cal. May 1, 2019)................................................................ 8, 18

*RPost Holdings, Inc. v. Trustifi Corp.*,
    2012 WL 12952728 (C.D. Cal. May 11, 2012) ................................................................ 5

*RSI Corp. v. International Business Machines Corp.*,
    2012 WL 3277136 (N.D. Cal. Aug. 9, 2012) .............................................................. 16, 17

*Russell Road Food & Beverage, LLC v. Spencer*,
    829 F.3d 1152 (9th Cir. 2016) .......................................................................................... 13

*Schrader Cellars, LLC v. Roach*,
    2021 WL 9816545 (N.D. Cal. June 10, 2021)................................................................. 5

*Seawright v. M. Shanken Communications, Inc.*,
    2014 WL 4258311 (D. Md. Aug. 26, 2014), *aff'd*,
    594 F. App'x 132 (4th Cir. 2015) ................................................................................... 21

*In Re Shniberg*,
    79 U.S.P.Q.2d 1309 (T.T.A.B. 2006) ............................................................................. 22

*In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
    2024 WL 1786290 (N.D. Cal. Apr. 15, 2024) ................................................................. 3

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................................................................... 4, 8

*Strome v. DBMK Enterprises, Inc*,
    2014 WL 6485533 (N.D. Cal. Nov. 19, 2014) ............................................................ 23, 24

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association*,
    465 F.3d 1102 (9th Cir. 2006) ........................................................................................ 14

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) .......................................................................................................... 4

*VP Racing Fuels, Inc. v. General Petroleum Corp.*,
    673 F. Supp. 2d 1073 (E.D. Cal. 2009) .......................................................................... 10

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .......................................................................................... 9

*Wells Fargo & Co. v. ABD Insurance & Financial Services, Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ....................................................................... 4

*Worx4u2, Inc. v. Earthwhile Endeavors, Inc.*,
    2022 WL 1601399 (C.D. Cal. Apr. 5, 2022) ................................................. 15

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................... 13

*Yelp, Inc. v. ReviewVio, Inc.*,
    2024 WL 2883668 (N.D. Cal. June 6, 2024) ............................................... 12

*Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) .................................................................................. 11

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ...................................................................... 18

## Statutes

15 U.S.C. § 1052 ................................................................................................... 22

15 U.S.C. § 1091 ................................................................................................... 14

15 U.S.C. § 1115 ................................................................................................... 18

15 U.S.C. § 1119 ............................................................................................. 19, 21

15 U.S.C. § 1125 ............................................................................................... 4, 18

## Other Authorities

Fed. R. Civ. P. 1 ................................................................................................... 23

Fed. R. Civ. P. 8 ................................................................................................. 3, 8

Fed. R. Civ. P. 9 ............................................................................................. 3, 4, 5

Fed. R. Civ. P. 12(f) ....................................................................................... 3, 23

McCarthy on Trademarks and Unfair Competition (5th ed.) ..................... 13, 18, 20, 22

"Open" definition, Merriam-Webster's Collegiate Dictionary, 11th ed. 2024 ............................ 21

1

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

3      Defendants' amended counterclaims (Dkt. 103), filed nine months after Plaintiff's complaint,

4  make broad and baseless accusations that Plaintiff stole Defendant Ravine's "thunder," his

5  "secret sauce," his "recipe and promise," his "foundational principles," and his "mission."  What they

6  do not allege is a viable claim for false advertising, trademark infringement, or any other asserted

7  cause of action.

8      Viable false advertising claims require factual allegations regarding commercial advertising

9  that is false and deceives consumers, not rhetoric about "the most important question in human

10 history," inventing recipes, diverting stewardship, or the misappropriation of humanity's property.

11 The Lanham Act and California's False Advertising Law provide certain remedies for business

12 entities that lose sales due to false advertising, not for personal feelings of being aggrieved by

13 allegedly "dismissive" attitudes and indifference or individuals' decisions not to launch their own

14 ventures.   Wholly lacking the required legal elements, Defendants' counterclaims for false

15 advertising must be dismissed.

16     Defendants' trademark infringement counterclaims share a similar disconnect between legal

17 realities and the counterclaims' allegations.  On their face, the counterclaims reveal eight years of

18 Defendants' knowing failure to take any steps to enforce their purported rights, rendering their claims

19 fatally time barred.  Even if they were not, the counterclaims fail to allege facts sufficient to establish

20 legally enforceable trademark rights.   Consequently, all of Defendants' trademark infringement

21 counterclaims should be dismissed.

22     Defendants' remaining counterclaims fare no better.  Their cancellation counterclaim does

23 not contain allegations that could plausibly establish that Plaintiff's mark is deceptively

24 misdescriptive and lacks secondary meaning.  And the declaratory judgment counterclaims—which

25 concern non-infringement, trademark ownership, and trademark invalidity—are redundant of other

26 claims brought in this action and should be stricken, so that the action can proceed without undue

27 inefficiency.

28

CASE NO. 4:23-CV-03918-YGR
PLAINTIFF OPENAI, INC.'S MOTION TO DISMISS

## SUMMARY OF FACTUAL ALLEGATIONS

Defendants allege "on December 11, 2015, after Ravine already had begun using the Open AI mark and the open.ai domain, Sam Altman and Greg Brockman announced to the world that they had formed OpenAI, Inc. and had obtained $1 billion in funding commitments," Dkt. 103, Amended Counterclaims ("ACC") ¶ 58, and that Plaintiff's "OpenAI, Inc. was identical to Ravine's Open AI, except [funding and] the involvement of some 14 top AI researchers." *Id.* ¶ 80.  Defendants allege that this announcement "shocked" Ravine and made him "concerned" that Plaintiff, and Altman and Brockman, had "copied his own non-profit Open AI project." *Id.* ¶¶ 83, 86.  Ravine reached out to Plaintiff that very day, but he did not claim at that time that Plaintiff was infringing any of his alleged rights.  *Id.* ¶ 88.  Within a week, Ravine had met with Brockman, who he alleges was "dismissive" of Ravine, "refused to collaborate" with Ravine, and expressed Plaintiff's continued intent to operate as OpenAI, but once again, Ravine did not challenge Plaintiff's use of "OpenAI." *Id.* ¶ 91.

As Plaintiff continued "actually building a multi-billion-dollar company" under the name OpenAI, ACC ¶ 94, Ravine did not even complain, much less or make any effort to assert his alleged rights; instead, he redirected visitors to his open.ai website to *Plaintiff's* website, *id.* ¶ 101.  Although Defendants claim that "Ravine continued to pursue his Open AI project under the Open AI Mark continuously from 2016 onwards," *id.* ¶ 56, when Altman reached out to Ravine in 2022 about visitors being redirected from the open.ai website to Plaintiff's website and inquired if Ravine would be interested in selling the domain, Ravine once again did not claim Plaintiff was infringing any of his rights, *id.* ¶ 101.  It was not until 2024, more than eight years after first being "concerned" about OpenAI, that Defendants claimed Plaintiff infringed their alleged trademark rights—after this action was filed and after OpenAI had received significant investments and released numerous artificial intelligence products and services, including its GPT, GPT-2, and GPT-3 models.  *Id.* ¶¶ 1, 93, 97, 154.

The Amended Counterclaims claim that OpenAI's success is not based on its technological breakthroughs or the talent of its scientists, but rather is in some manner based on allegedly false statements in OpenAI's 2015 certificate of incorporation and in its first blog post about its founding.  *See, e.g.*, ACC ¶¶ 79-81.  Defendants claim that statements in these documents allegedly created an

1   "insincere veneer of openness and a commitment to benefiting humanity," *id.* ¶ 95, which, along with

2   "assurances" allegedly privately made to him, *id.* ¶ 91, led Ravine to "elect[] not to proceed" with

3   his own "project," *id.* ¶ 160, thereby somehow diverting funds from him to OpenAI, *id.* ¶ 152.

## LEGAL STANDARD

5   "To survive a motion to dismiss for failure to state a claim … plaintiffs' allegations must

6   suggest that their claim has at least a plausible chance of success." *In re Soc. Media Adolescent*

7   *Addiction/Pers. Inj. Prod. Liab. Litig.*, 2024 WL 1786290, at *3 (N.D. Cal. Apr. 15, 2024).  "The

8   district court must assume that the plaintiffs' allegations are true and draw all reasonable inferences

9   in their favor."  *Id.*   "The court need not, however, construe as true conclusory statements or

10  unreasonable inferences."  *Id.*

11  Under Federal Rule of Civil Procedure 12(f), the Court may also strike from a pleading "any

12  redundant [or] immaterial … matter."

## ARGUMENT

### I.   DEFENDANTS' FALSE ADVERTISING CLAIMS SHOULD BE DISMISSED

15  The Amended Counterclaims have nothing to do with advertising, much less false

16  advertising.  "False advertising" appears to be an arbitrary label that Defendants applied to the story

17  they want to tell: allegedly, after years of "deep thinking," Ravine was the first person to conceive of

18  using artificial intelligence for the "benefit of humanity" through a "non-profit effort to develop AGI

19  openly with a fiduciary duty to humanity."  ACC ¶¶ 27-31, 39.  As the Amended Counterclaims

20  present it, OpenAI then announced its founding with the same purpose (through its certificate of

21  incorporation and a blog post), and "assurances" to Ravine that OpenAI "would fulfill his mission"

22  as "Ravine had envisioned."  *Id.* ¶¶ 80-81, 91.  Ravine then elected not to pursue his non-profit effort

23  and sat on the sidelines as OpenAI developed, with the time, talent, and treasure of investors and

24  researchers.  *Id.* ¶ 160.  Defendants now contend that "the misappropriation of humanity's AGI

25  property" has occurred because, they allege, OpenAI is not adhering to its alleged 2015 statements.

26  ACC ¶¶ 94, 111 & p. 28.  This is not an actionable false advertising claim.

27  Defendants' false advertising claims under the Lanham Act (Count 1) and California's False

28  Advertising Law ("FAL") (Count 5) do not come close to satisfying Rule 8, much less Rule 9(b).

1   *See, e.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (requiring "the

2   who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading

3   about a statement, and why it is false") (quotations omitted); *Alfasigma USA, Inc. v. First Databank,*

4   *Inc.*, 525 F. Supp. 3d 1088, 1102-03 (N.D. Cal. 2021) (holding Rule 9(b) applies to false advertising

5   claims, which sound in fraud, even though the "complaint does not explicitly allege fraud" and

6   "avoids averments that Defendant 'knowingly' or 'intentionally' made the alleged

7   misrepresentations").  Far from presenting "a short and plain statement of the claim showing that the

8   pleader is entitled to relief," or the particularity of the circumstances alleged to be deceptive, amidst

9   their voluminous irrelevancies, the Amended Counterclaims rely on conclusory allegations that

10  distort OpenAI's actual statements and fail to plead any of the required elements of false advertising.

## A.    <u>The Lanham Act False Advertising Claim Should Be Dismissed</u>

12          To state a Lanham Act false advertising claim, Defendants were required to plead that: (1)

13  OpenAI made a false statement in a commercial advertisement about its own or another's product;

14  (2) the statement actually deceives, or has a tendency to deceive, a substantial segment of OpenAI's

15  consumer audience; (3) the deception is likely to materially influence consumer purchasing

16  decisions; (4) OpenAI made the statement in interstate commerce; and (5) Defendants' injury as a

17  result.  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, *Inc.*, 758 F.3d 1069, 1071-72 (9th Cir. 2014)

18  (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  They did not.

### 1.    Defendants Do Not Allege Actionable Commercial Advertisements

20          The Lanham Act's false advertising provisions apply only to false or misleading statements

21  in "commercial advertisement or promotion." 15 U.S.C. § 1125(a)(1)(B).  Precedent establishes that

22  commercial advertising must consist of "(1) commercial speech, (2) by a defendant who is in

23  commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy

24  defendant's goods or services, … (4) [that is] disseminated sufficiently to the relevant purchasing

25  public."  *Divino Grp. LLC v. Google LLC*, 2021 WL 51715, at *8 (N.D. Cal. Jan. 6, 2021) (quoting

26  *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)); *see also,*

27  *e.g.*, *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001) (defining "commercial speech"

28  as "speech that does no more than propose a commercial transaction").

Defendants' claim does not identify a single statement that meets this standard. Instead, they vaguely allude to "repeated public announcements" about OpenAI's "intentions as a non-profit" (ACC ¶ 116), untethered to any specific product, service, or statement. This nonspecific reference does not satisfy either the definition of "commercial advertising" or Rule 9(b)'s requirement to "plead the specific misrepresentations alleged with sufficient particularity." *Schrader Cellars, LLC v. Roach*, 2021 WL 9816545, at \*3 (N.D. Cal. June 10, 2021) (dismissing Lanham Act claim because "the Court cannot address … whether the alleged statements were made in advertisements" until "it is clear what specific statements Defendant made").

Nor do any of the statements alleged in the paragraphs preceding Count 1 constitute commercial advertisements. Defendants do not allege that OpenAI's certificate of incorporation (ACC ¶ 79 & Ex. 1 (Dkt. 103-1)) was intended to, or actually did, influence consumer purchasing decisions—and it would be implausible to allege otherwise. As such, that certificate does not constitute "commercial speech." *See, e.g.*, *RPost Holdings, Inc. v. Trustifi Corp*., 2012 WL 12952728, at \*7 (C.D. Cal. May 11, 2012) ("statements to potential investors are not actionable under the Lanham Act" because they "were not made 'for the purpose of influencing consumers to buy defendant's goods'"). Similarly, OpenAI's blog post and statements about its founding, mission, and aims (ACC ¶¶ 80, 90 & n.10, 150 n.25)—untethered to the specific promotion of goods or services— are not commercial advertising related to consumer purchasing decisions. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (finding YouTube's statements about content moderation and restrictions not commercial advertising because they were made to "explain a user tool, not for a promotional purpose"; "[n]ot all commercial speech is promotional"). The simple reality is that statements in documents such as certificates of incorporation and blog posts about company missions and intentions are not the type of statements that fall within the purview of the Lanham Act. Having failed to allege commercial advertising or promotion, the false advertising portions of Count 1 should be dismissed.

### 2.   Defendants Do Not Adequately Plead Falsity

Even if Defendants had alleged actionable commercial advertising (which they did not), their false advertising claim would still fail for not adequately pleading falsity. *See, e.g.*, *Alfasigma USA*,

525 F. Supp. 3d at 1103 (requiring falsity to be alleged with particularity).  Defendants appear to take issue with three categories of statements: (1) OpenAI's blog statement that "funders have committed $1 billion," (2) OpenAI's statement regarding its founding research team, and (3) OpenAI's incorporation document stating it was a "non-profit" corporation for the public benefit.  But there are no factual allegations that, if proven, establish these are false statements.  ACC ¶¶ 6, 58, 79-81, 97-98, 149, 151.

**Funding Commitments in Blog Post.**  OpenAI's December 2015 blog post stated: "In total, these funders have committed $1 billion, although we expect to only spend a tiny fraction of this in the next few years."  ACC ¶¶ 80-81, 151.  Defendants do not allege that OpenAI lacked $1 billion in *commitments* at the time.  Instead, Defendants allege OpenAI did not have $1 billion on hand in 2015.  *Id.* ¶ 81.  But the Amended Counterclaim itself establishes that OpenAI never claimed to have the funds on hand—only that they were "committed."  *Id.* ¶¶ 80-81.  Defendants' other allegations, such as OpenAI spending only a fraction of the funds committed, are likewise consistent with OpenAI's actual statements and do not show falsity.  *Id.* ¶¶ 77, 93; *see also, e.g.*, *Broadcom Corp. v. SiRF Tech., Inc.*, 2009 WL 10672527, at *2-3 (C.D. Cal. Dec. 16, 2009) (holding plaintiff "failed to state a claim for false advertising" based on allegations that prior press release, which stated legal claims were "moving forward," was "currently untrue" because plaintiff "must show that the defendant's accused statement was false at the time it was made" and "[s]ubsequent events simply cannot render that statement false").

**Research Team in Blog Post.**  OpenAI's December 2015 blog post also identified OpenAI's research director and 11 "world-class research engineers and scientists" who are part of OpenAI's "founding members."  *See* Declaration of Dylan I. Scher ("Scher Decl."), Ex. A; Request for Judicial Notice ("RJN").  Defendants describe that statement in a variety of ways —*e.g.*, ACC ¶ 6 ("a long list of researchers"), ¶ 58 ("over a dozen leading researchers"), ¶ 80 ("14 top AI researchers"), ¶ 81 ("13 top researchers")—none of which appear in the actual blog post referenced, but do not allege those statements were false.  Instead, Defendants allege, without ever explaining how or why, that the statement was "misleading."  ACC ¶ 80.  To the extent Defendants seek to rely on their unsupported allegation that OpenAI "had fewer researchers committed to their project" at the end of

2016 "than announced at the outset" in 2015 (ACC ¶ 81) as "founding members" (Scher Decl., Ex. A), that does not establish falsity at the time the statement was made.

**Statements Concerning Public Benefit in Incorporation Certificate.** Defendants characterize OpenAI's incorporation certificate as providing "the promise of open sourcing their code for public benefit." ACC ¶ 79; *see also id.* ¶¶ 97-98. But the certificate actually stated that OpenAI's purpose is "to provide funding for research, development and distribution of technology related to artificial intelligence" and that "[t]he resulting technology will benefit the public and the corporation will seek to open source technology for the public benefit *when applicable.*" *Id.* ¶ 98 (emphasis added). Defendants do not specifically allege how any of the statements in OpenAI's certificate were false at the time they were made. Instead, when describing the statement in Count 5, they delete the qualifying phrase—"when applicable"—and replace it with ellipses. *Id.* ¶ 149.

As supposed proof of falsity, Defendants reference an internal OpenAI email dated January 2, 2016, which Defendants claim reveals that OpenAI's "commitment to a non-profit initiative for the benefit of humanity was simply a 'recruiting strategy.'" ACC ¶ 93. But Defendants mischaracterize the actual email, which says nothing about OpenAI's status as a non-profit, much less characterize OpenAI's non-profit status as a recruiting strategy. Scher Decl., Ex. B; RJN. Rather, it states:

> The article is concerned with a hard takeoff scenario: if a hard takeoff occurs, and a safe AI is harder to build than an unsafe one, then by openso[ur]cing everything, we make it easy for someone unscrupulous with access to overwhelming amount of hardware to build an unsafe AI, which will experience a hard takeoff.
>
> As we get closer to building AI, it will make sense to start being less open. The Open in openAI means that everyone should benefit from the *fruits of AI* after it[']s built, but it's totally OK to not share *the science* (even though sharing everything is definitely the right strategy in the short and possibly medium term for recruitment purposes).

*See* Scher Decl., Ex. B; RJN (emphasis added). Defendants have thus failed to adequately allege falsity because their factual allegations are contradicted by the face of the documents incorporated by reference, and as such the contradicted allegations are properly disregarded. *Broadcom Corp.*, 2009 WL 10672527, at *2-3 (finding falsity was inadequately alleged where the plaintiff's allegations were contradicted by documents properly considered on a motion to dismiss).

1

### 3.     Defendants Do Not Allege A Plausible Consumer Deception Theory

2       Even if Defendants had properly alleged a false commercial statement, their claim

3   nonetheless fails because they failed to plausibly allege such a statement "actually deceived or has

4   the tendency to deceive a substantial segment of [OpenAI's] audience."  *Southland Sod*, 108 F.3d at

5   1139; *see also R & A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019)

6   (anecdotal consumer comments attached to the complaint insufficient to pled deception); *Coastal*

7   *Abstract*, 173 F.3d at 735; *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at

8   *5 (N.D. Cal. May 9, 2016) ("isolated statements" to "a few customers" insufficient).

9       The Amended Counterclaims do not identify any consumer, much less a "substantial

10  segment" of consumers, who were or are likely to be deceived by reading any disputed statements.

11  For example, Defendants allege no facts to suggest that a substantial segment of consumers would

12  even access and rely upon OpenAI's certificate of incorporation to make a purchase decision, much

13  less be deceived by it.

14      Instead, Defendants parrot the legal conclusion that "repeated public announcements in

15  interstate commerce regarding [OpenAI's] intentions as a non-profit artificial intelligence company,

16  misrepresents the material nature, characteristics, and qualities of the products and services … in

17  commercial advertising and promotion, which had the capacity to deceive, and did in fact deceive, a

18  substantial segment of the public."  ACC ¶ 116.  This bare recitation of the legal element, "bereft of

19  any factual allegations" about how the statements deceived or tended to deceive consumers, is plainly

20  insufficient.  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1172 (N.D. Cal. 2015)

21  (dismissing Lanham Act claim); *see also Genus Lifesciences v. Lannett Co., Inc.*, 378 F. Supp. 3d

22  823, 840 (N.D. Cal. 2019) (dismissing claim based on "conclusory statements" that defendant's

23  statement "deceives, or has the capacity to deceive, a substantial segment of customers"); *Ashcroft*

24  *v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 … does not unlock the doors of discovery for a

25  plaintiff armed with nothing more than conclusions.").

26                ### 4.     Defendants Do Not Plead Actionable Injury and Causation

27      Defendants have also not pled a cognizable injury caused by OpenAI's alleged statements.

28  A plaintiff suing under the Lanham Act must satisfy "the zone-of-interests test" and "the proximate-

cause requirement." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130, 133 (2014). To "come within the zone of interests," a plaintiff must plead "injury to a commercial interest in reputation or sales." *Id.* at 131-32. And for this injury to be proximately caused by the challenged statement, the injury must "flow[] directly from the deception wrought by the defendant's advertising." *Id.* at 133. Defendants here have not satisfied either.

Defendants' factual allegations offer allegations of harm that are not cognizable under false advertising law, such as the purported "diversion of humanity's property," ACC p. 32 (cleaned up), and "diverting the stewardship" away from benefitting humanity, *id.* ¶ 59. They do not allege any *facts* showing injury to their own commercial interest in reputation or sales. ACC ¶¶ 117, 119 (summarily alleging harm to "their reputation and credibility, resulting in lost opportunities, diminished goodwill, and harm to [their] ability to expand and to achieve their plans and goals for the development, use, and future of AI"). Even less fanciful allegations—such as "lost revenue and market share," "reduced asset value," "increased advertising costs," and other harm to "business, reputation, and goodwill"—are insufficient to "plead injury" for a false advertising claim. *LegalForce, Inc. v. LegalZoom.com, Inc.*, 2019 WL 1170779, at *1-2 (N.D. Cal. Mar. 13, 2019) (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)).

Defendants also fail to plausibly allege that OpenAI's alleged statements proximately caused the required type of injury—i.e., that the alleged "deception of ***consumers*** causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133 (emphasis added). Instead, Defendants allege that OpenAI's December 2015 announcement "stole Ravine's thunder" in soliciting potential investors or employees. ACC ¶¶ 49, 58, 81. But loss of investors or employees—even if true—does not suffice to establish the "direct" proximate cause required for false advertising. *See Alfasigma USA, Inc. v. First Databank, Inc.*, 2022 WL 899848, at *9, 11 (N.D. Cal. Mar. 28, 2022) (quoting *Lexmark*, 572 U.S. at 140 and dismissing false adverting claim based on alleged false statements in a medical database relied upon by insurers in determining reimbursements, which plaintiff pled resulted in fewer consumers purchasing its product); *see also HomeLight, Inc. v. Shkipin*, 2023 WL 6284738, at *6 (N.D. Cal. Sept. 27, 2023) (dismissing false advertising claim where plaintiff alleged indirect theory of harm).

**B.**   **<u>Defendants Fail to State A False Advertising State Law Claim</u>**

**1.**   **The Alleged Statements Are Not Actionable Advertising**

Like the Lanham Act, California False Advertising Law ("FAL") is concerned with commercial advertising. As such, to be actionable under FAL, "a statement must be (1) widely disseminated to the public and (2) for the purpose of influencing consumers to purchase[] goods or services." *Anderson v. SeaWorld Parks & Ent., Inc*., 2016 WL 8929295, at *13 (N.D. Cal. Nov. 7, 2016) (quotations omitted).

Here, for similar reasons as above in Section I.A.1, neither OpenAI's incorporation certificate nor the blog post which Defendants invoke constitute actionable advertising under the FAL. Legal business formation documents, like OpenAI's incorporation certificate, are not widely disseminated to the public for the purpose of influencing consumers to purchase goods or services. *See Anderson*, 2016 WL 8929295, at *13; *VP Racing Fuels, Inc. v. Gen. Petroleum Corp*., 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009) ("The underlying element of a false advertising claim is some type of advertising statement."). Likewise, the OpenAI blog post announced the company's founding; it does not even mention OpenAI products or services available for purchase. *Haskins v. Symantec Corp.,* 2014 WL 2450996, at *2 (N.D. Cal. Jun. 2, 2014) (finding advertisements insufficient "in press releases or industry documents that an average consumer would be unlikely to read").

Defendants' allegations about Ravine's discussion with Greg Brockman in December 2015 fare no better. According to Defendants, "Brockman assured Ravine that OpenAI, Inc. was non-profit, operating for humanity, and had $1 billion in donor commitments," and that "Brockman . . . made his assurances to Ravine that they would fulfill his mission." ACC ¶ 91. Alleged private discussions do not constitute widely disseminated "advertising." *Power Quality & Elec. Sys., Inc. v. BP W. Coast Prod. LLC*, 2017 WL 119041, at *3 (N.D. Cal. Jan. 12, 2017) ("Since the claim does not concern advertising, the allegedly false statements made by the sales representatives are not actionable under section 17500."); *see also Anderson*, 2016 WL 8929295, at *13 (dismissing FAL claim based on false representations made to plaintiff by a Sea World employee). And Defendants did not allege (nor could they plausibly allege) that Brockman made these statements for the purpose of getting Ravine to buy OpenAI's goods or services.

### 2.      Defendants Do Not Allege Any False or Misleading Statements

For the same reasons as above in Section I.A.3, the FAL claim fails because Defendants do not plausibly allege that OpenAI induced members of the public to purchase OpenAI's products or services based on false or misleading advertising.  *Power Quality*, 2017 WL 119041, at *3 (dismissing FAL claim).  Courts routinely dismiss FAL claims for failure to meet this pleading burden.  *See, e.g.*, *Haskins*, 2014 WL 2450996, at *3 (dismissing FAL claim where plaintiff alleged statements with defective antivirus software, such as "[s]tay protected," "detects and removes spyware," and "blocks spyware and worms automatically," because plaintiff "has not pled facts from which it is plausible to infer that these statements are actionably false statements of fact").

### 3.      Defendants Seek An Unavailable Remedy

The Court should also dismiss the FAL claim because Defendants do not (and cannot) seek either of the two remedies available—restitution or an injunction.  *See* ACC ¶ 161 (alleging "actual injuries, in an amount to be proven at trial"), Prayer for Relief at 48-49 (not seeking injunction or restitution on FAL claim); *see Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337 (2011) (explaining injunction and restitution are the only available FAL remedies for private plaintiffs); *Ary v. Target Corp.*, 2023 WL 2622142, at *5 (N.D. Cal. Mar. 23, 2023) (dismissing without leave to amend plaintiff's "requests for restitution and disgorgement under the FAL").

Defendants' claimed injuries—their own lost potential business opportunities—are not the proper subject of restitution.  Rather, restitution is available only where "both that money or property have been lost by a plaintiff, on the one hand, and … [was] acquired by a defendant, on the other." *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013) (citation omitted).  Defendants do not allege that OpenAI took any money or property from them in which Defendants had a concrete interest.  Instead, Defendants claim they lost out on potential investments from third parties.  Such losses are not recoverable as restitution under the FAL.  *See Pom Wonderful LLC v. Welch Foods, Inc*., 2009 WL 5184422, at *3 (C.D. Cal. Dec. 21, 2009) (dismissing FAL claim because "Pom seeks to recover 'nonrestitutionary disgorgement of profits' that are nothing more than a 'contingent expectancy of payment from a third party'").  Further, Defendants do not seek injunctive relief under the FAL.  *See*

1   ACC, Prayer for Relief at 48-49.  Accordingly, because Defendants fail to seek either form of relief

2   authorized by the FAL, their claim should be dismissed.

3                    **4.       Defendants Do Not Plead Actionable Injury and Harm**

4          Defendants fail to allege a cognizable injury proximately caused by OpenAI's purported

5   statements, warranting dismissal of their FAL claim.  To state an actionable FAL claim, Defendants

6   must plead an immediate and actual economic loss as a result of their own reliance or consumer

7   reliance on OpenAI's alleged statements.  *See, e.g.*, *Kwikset Corp.*, 51 Cal. 4th at 323-24, 326-27

8   (plaintiffs asserting causes "based on a fraud theory involving false advertising and

9   misrepresentations to consumers" must show causation, which requires establishing reliance because

10  "reliance is the causal mechanism of fraud").

11         In conclusory fashion, Defendants allege they suffered "detriment" because they "elected not

12  to proceed" with their own project "in reliance on [OpenAI's] public assurances."  ACC ¶ 160.

13  Putting aside the lack of particularity in these allegations, such as the specific statements allegedly

14  relied upon, Defendants' supposed "detriment" is not a cognizable economic injury under the FAL,

15  which requires "lost money or property" as a result of the alleged statements.  *Kwikset*, 51 Cal. 4th

16  at 323.  Any purported detriment resulting from Defendants' decision not to pursue a hypothetical

17  business opportunity is entirely speculative and not an immediate "actual economic injury" directly

18  caused by reliance OpenAI's statements.  *Id.* at 327 ("a plaintiff must show that the misrepresentation

19  was an immediate cause of the injury-producing conduct") (citation omitted).

20         Nor do Defendants allege suffering a competitive injury caused by consumers' reliance on

21  OpenAI's statements.  The Amended Counterclaims contain no reference whatsoever to consumers

22  allegedly relying on OpenAI's statements.  Nor does it suffice that Defendants allege they were "in

23  discussions to raise up to $100 million to create Open AI for the benefit of humanity," but "on

24  information and belief," OpenAI's "representations diverted funds" from Defendants to OpenAI.

25  ACC ¶ 152.  Those conclusory allegations do not allege any consumer reliance resulting in lost sales.

26  *Cf. Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *10-11 (N.D. Cal. June 6, 2024) (finding that

27  competitor may show consumer reliance resulting in lost sales).

28

1   **II.      DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE**

2   **DISMISSED**

3       **A.      The Statute of Limitations Bars Defendants' Trademark Infringement Claims**

4           Defendants' trademark claims (Counts 1, 2, and 4) are barred by the statute of limitations.

5   "A party may raise a statute of limitations defense on a motion to dismiss if the running of the statute

6   is apparent on the face of the complaint."  *Bamforth v. Facebook, Inc.*, 2021 WL 4133753, at *4

7   (N.D. Cal. Sept. 10, 2021), *aff'd*, 2023 WL 5925982 (9th Cir. Sept. 12, 2023) (quotations and

8   brackets omitted); *see also Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1004 (N.D. Cal. 2015) ("A

9   plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with

10  the applicable statute of limitations is evident from the allegations of the complaint.").  Because the

11  Lanham Act does not have its own statute of limitations, courts look to "[t]he most analogous state

12  statute of limitations," which is California's four-year statute of limitations for trademark

13  infringement actions."  Dkt. 63 ("PI Order") at 18.

14          As is evident from the face of Defendants' counterclaims, whatever trademark infringement

15  claim Defendants arguably had against OpenAI, they knew about it dating back to December 2015.[1]

16  *See* ACC ¶¶ 86-91.  When he "heard of" of OpenAI's "announcement," Ravine was immediately

17  "concerned" that his project had been "copied," and he sought to "protect his intellectual property"

18  and contacted OpenAI representatives the very same day.  *Id.* ¶¶ 86-88.  Ravine met with OpenAI's

19  representative within a week and learned its plans, including that the company did not want to

20  collaborate with him.  *Id.* ¶¶ 89-91.  Defendants then monitored Plaintiff's activities and allegedly

21  "reasonably relied on the truthfulness" of statements made by OpenAI "between 2015 and 2023."

22

23  _____

[1] For ease of reference, Defendants are referred to collectively, even though they do not allege

24  Defendant Open Artificial Intelligence, Inc. had any right in the purported mark before 2023.  *See*

ACC ¶ 108.  Because its rights as an assignee necessarily derive from any rights Ravine had,

25  however, so, too, do any defenses against Ravine apply equally to Defendant Open Artificial

Intelligence, Inc.  *See Russell Rd. Food & Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir.

26  2016) ("When a trademark is assigned, the assignee steps into the shoes of the assignor," and

"acquires … any burdens and limitations on use that were incumbent on the assignor.") (quotations

27  omitted); 2 McCarthy on Trademarks and Unfair Competition § 18:15 (5th ed.) ("An assignee, by

following in the footsteps of the assignor, acquires not only all the favorable rights and priorities of

28  the assignor, but also any burdens and limitations on use that were incumbent on the assignor.").

*Id.* ¶ 162; *see also id.* ¶ 154 (describing OpenAI's release of GPT in 2018, GPT-2 in 2019, and GPT-3 in 2020).  And Defendants themselves assert that they consider OpenAI's goods and services competitive with what Defendants purport to offer.  *See, e.g.*, *id.* ¶ 86 (Ravine concerned that Plaintiff had "copied his own non-profit Open AI project for the collaborative creation of open-source software for the benefit of humanity", ¶ 82 (chart claiming that the "similarities between the entities were quite profound").  Consequently, Defendants' trademark claims should be dismissed as untimely.  *See Bamforth*, 2021 WL 4133753, at *5 (dismissing common law trademark infringement claim with prejudice as "untimely"); *Blocker v. Black Ent. Television, LLC*, 2019 WL 1416471, at *4 (D. Or. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1413741 (D. Or. Mar. 28, 2019) (granting motion to dismiss trademark claims with prejudice as "untimely").

## B.    Laches Bars Defendants' Trademark Infringement Claims

Because Defendants filed their counterclaims long after the analogous statute of limitations expired on the first instances of alleged infringement, laches is presumed.  *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) ("If the plaintiff filed within" the statute of limitations period for "the most closely analogous action under state law," then "there is a strong presumption against laches.  If the plaintiff filed outside that period, the presumption is reversed."); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) (The "presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period.").  "Laches serves as the counterpart to the statute of limitations, barring untimely equitable causes of action."  *Jarrow*, 304 F.3d at 835.

Even independent of the presumption, laches applies because Defendants' delay was unreasonable and prejudicial.  *Tillamook Country Smoker*, 465 F.3d at 1108.  To assess whether delay was unreasonable and prejudicial in trademark cases, courts must analyze  the six *E-Systems* factors: "1) the strength and value of trademark rights asserted; 2) plaintiff's diligence in enforcing mark; 3) harm to senior user if relief denied; 4) good faith ignorance by junior users; 5) competition between senior and junior users; and 6) extent of harm suffered by junior user because of senior user's delay." *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983); *Tillamook Country Smoker*, 465 F.3d at 1108.  These factors compel a finding that laches applies.

*Factor 1: Defendants' Trademark Is Weak.*  The first factor is the relative strength of the mark, with a weak mark favoring laches.  *See, e.g., Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102 (9th Cir. 2004).  As reflected by registration of Defendants' "Open AI" on the Supplemental Register (ACC ¶ 106), their mark is merely descriptive, and thus weak.  15 U.S.C. § 1091; *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, 670 F. Supp. 3d 946, 951 (N.D. Cal. Apr. 21, 2023) (registration on the Supplemental Register "constitutes an 'admission against interest' that the registered mark is not yet a protectable trademark."); *see also* Section II.C.  Because Defendants' descriptive mark is weak, this factor favors laches.  *See, e.g., Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989) ("descriptive marks are weak"); *Parts.com, LLC v. Google Inc.*, 2014 WL 12461256, at *6 (S.D. Cal. Jun. 25, 2014) (granting motion to dismiss; first factor favors laches where mark was "descriptive, and thus inherently weak"); *ATM Express, Inc., v. ATM Express., Inc.*, 2009 WL 2973034 at *4 (S.D. Cal. Sept. 11, 2009) (factor favors laches where mark was descriptive).

*Factor 2: Defendants Have Not Been Diligent In Enforcing Their Mark.*  Despite being in contact with Plaintiff, Altman, and Brockman in December 2015 (ACC ¶¶ 88-91), Ravine never attempted to enforce his mark against them or raise with them any concerns about trademark infringement.  Nor did he reference any trademark infringement concerns when communicating with Plaintiff in 2022. *Id.* ¶ 101.  Defendants' lack of diligence over eight years favors the application of laches.  *See Harman Int'l Indus., Inc. v. Jem Accessories*, *Inc.*, 668 F. Supp. 3d 1025, 1042 (C.D. Cal. 2023) ("fail[ure] to contact [plaintiff] about the alleged infringement … falls short of the 'effective policing effort' the Ninth Circuit requires");*Worx4u2, Inc. v. Earthwhile Endeavors, Inc.*, 2022 WL 1601399, at *8 (C.D. Cal. Apr. 5, 2022) (4 year delay reflects lack of diligence and weights in favor of applying laches) (collecting cases).

*Factor 3: Defendants Will Not Suffer Harm If Relief Is Denied*.  The Amended Counterclaims show that Plaintiff's continued use of the name OpenAI will not harm Defendants.  Consistent with the record in this action, Defendants did not plead any revenue they ever generated, sales they lost, or any other harm to their business resulting from association with OpenAI.  Indeed, Defendants' delay even within this lawsuit—including their effort to delay filing their counterclaims

for more than nine months after the complaint was filed and their decision to move the case to trial as slowly as possible (Dkt. 41 at 5; Dkt. 70 at 7)—reflects the lack of harm they have and will suffer from OpenAI.

*Factor 4: OpenAI's Use Of Its Trademark Is In Good Faith.*  The pleadings establish OpenAI's "open and notorious" use of its mark (*e.g.*, ACC ¶¶ 154 (discussing Plaintiff's release of GPT, GPT-2, and GPT-3)), which reflects Plaintiff's good faith.  *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1028 (9th Cir. 2018) (affirming district court finding of good faith based on the fact that "there was no indication that Pinkette was ever trying to hide its use of the mark; it was open and notorious") ; *see also Harman*, 668 F. Supp. 3d at 1043 ("voluminous sales" that were "open and notorious" favors laches because it "supports … operating in good faith"). Moreover, at no point since December 11, 2015, when Ravine first reached out to OpenAI, through Defendants' filing of counterclaims this year did Defendant ever tell OpenAI not to use its mark or claim Plaintiff's use was infringing.  Accordingly, this factor favors laches.

*Factor 5: Competition Does Not Preclude Laches.*  Defendants' competition allegations (*e.g.*, ACC ¶ 82 (chart claiming that the "similarities between the entities were quite profound," including as to the parties' respective "descriptions")) do not overcome the other factors weighing in favor of laches, particularly where there is a presumption of laches.  *See, e.g.*, *Harman Int'l Indus.*, 668 F. Supp. 3d at 1043 (applying laches despite competition where there was a presumption of laches and several other factors weighed in favor of laches); *RSI Corp. v. Int'l Bus. Machines Corp.*, 2012 WL 3277136, at *18 (N.D. Cal. Aug. 9, 2012) (similar); *Grupo*, 391 F.3d at 1104 (affirming application of laches despite competition); *see also Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015) (competition factor is "insufficient to sway the overall weight of the factors" even assuming it "weighs strongly" against applying laches).

*Factor 6: OpenAI Will Be Prejudiced.*  Because Defendants' delay exceeded the statutory limitations period, Plaintiff is entitled to a "presumption of prejudice." *Jarrow*, 304 F.3d at 839-40. Even without the presumption, prejudice is evident.  Defendants' delay has lasted more than eight years.  *See* ACC ¶¶ 58, 80 (OpenAI 2015 announcement); *id.* ¶¶ 86-91 (Ravine communicating with OpenAI in 2015 about its introduction); *see generally id.* ¶¶ 113-121 (alleging OpenAI engaged in

1   infringement).  Such a lengthy delay makes prejudice "more likely to have occurred and less proof

2   of prejudice will be required."  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 1000 (9th Cir.

3   2006) (quotations omitted); *see also, e.g.*, *Parts.com*, 2014 WL 12461256, at *6 (5.5 years); *ATM*

4   *Exp.*, 2009 WL 2973034, at *3 (6 years); *Jarrow*, 304 F.3d at 832 (7 years).

5       Further, as the Amended Counterclaims allege, OpenAI has built a substantial company that

6   has produced exceptionally important goods and services, and obtained significant investment.  ACC

7   ¶¶ 1, 31, 154-55.  This extraordinary business growth and product distribution using the name

8   OpenAI easily establishes harmful prejudice caused by Defendants' delay in taking any action

9   against the Plaintiff.  *See RSI Corp.*, 2012 WL 3277136, at *16 (prejudice demonstrated "as a result

10  of … delay" based on "licensing revenues" from "seven different versions of" product); *Fitbug*, 78

11  F. Supp. 3d at 1194 (prejudice demonstrated by party's "efforts through [delay period] to build its

12  business, generating substantial sales, hiring large numbers of employees, and developing products").

13                                                                          ***

14      Defendants' allegations establish and reinforce the strong presumption that their delay was

15  unreasonable and prejudicial to Plaintiff.  Because no facts consistent with the Counterclaims can

16  cure the untimeliness of Defendants' trademark infringement claims (Counts 1, 2, and 4), leave to

17  amend would be futile.  *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1012 (9th Cir. 2011), *as*

18  *amended* (Aug. 19, 2011) ("We fail to see how Johnson could have amended his pleadings to cure

19  their deficiencies without contradicting the factual allegations in his complaint.  Leave to amend

20  would have therefore been futile.").[2]

21

22

23

---

24  [2]   The fact that Plaintiff's trademark claims are not barred by laches, while Defendants' claims are,
     is consistent with the parties' respective uses that are capable of triggering knowledge of a potential
25  claim.  Unlike Plaintiff, Defendants had no product or usage that Plaintiff was—or reasonably should
     have been—aware of that would have triggered the four-year statute of limitations to run before
26  Plaintiff filed its suit.  *See* PI Order at 18-20.  In contrast, Defendants allege that Ravine recognized
     at the outset that OpenAI and its founders "were already founding an AI lab, which was also the plan
27  for Ravine's Open AI."  ACC ¶ 88.

28

1

**C.      Defendants Fail To Plead Valid Trademark Rights**

2

Independently, Defendants' trademark infringement claims should be dismissed because they

3

fail to plead valid trademark rights.

4

For both registered and unregistered trademark claims, federal and state claim (Counts 1, 2,

5

and 4), a "plaintiff 'must prove … that it has a protectible ownership interest in the mark." PI Order

6

at 12 (quoting *Network Automation Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144

7

(9th Cir. 2011)).[3]  "To be valid and protectable, a mark must be 'distinctive.'" *Zobmondo Ent., LLC*

8

*v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  "[A]n identifying mark is distinctive and

9

is capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness

10

through secondary meaning." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042,

11

1047 (9th Cir. 1998) (quotations omitted); *see also* 1 McCarthy on Trademarks and Unfair

12

Competition § 11:2 (5th ed.) ("If a designation is not 'distinctive,' it is not a 'mark.'  Without

13

achieving distinctiveness, either inherently or through the acquisition of secondary meaning, then a

14

designation does not have the legal status of a 'trademark' or 'service mark.'  No distinctiveness—

15

no mark.").

16

Here, Defendants have not alleged facts sufficient to demonstrate that they have a valid and

17

protectable trademark.  They do not plead secondary meaning or inherent distinctiveness in even the

18

most conclusory fashion—let alone secondary meaning that predates OpenAI's allegedly infringing

19

use of the mark.  This failure compels dismissal.  *See Day Crush, LLC v. Ehren Jordan Wine Cellars*,

20

2017 WL 6383269, at *4 (N.D. Cal. May 5, 2017) (granting motion to dismiss where "Plaintiff does

21

not contend that the FAC adequately alleges that the DAY WINES mark is inherently distinctive or

22

that it has acquired a secondary meaning such that it is protectable"); *see also Foundry IV Inc. v.*

23

24

---

[3] To the extent Defendants argue Count 1 is based on some other theory (aside from the false
advertising theory discussed in Section I), that is not viable either.  *See, e.g.*, *R & A Synergy*, 2019
WL 4390564, at *15 (granting motion to dismiss section 1125(a) claim because "Plaintiff's true basis
for the false designation of origin claim is simply which company first came up with the general
concept of sleeved undergarments, but, as explained in *Dastar*, claims of false designation of origin
premised upon the origin of the 'idea' or 'concept' of a particular product is insufficient as a matter
of law") (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003)).

25

26

27

28

*Hard Carry Gaming Inc.*, 2024 WL 211010, at *5 (C.D. Cal. Jan. 3, 2024) (granting motion to dismiss trademark claim because "one-time instance of publicity does not constitute use in commerce sufficient to establish trademark ownership"); *Hosseinzadeh v. Werlin*, 2015 WL 13918008, at *3 (C.D. Cal. Sept. 22, 2015) (granting motion to dismiss where "Plaintiff has not alleged facts sufficient to demonstrate that she has a valid and protectable trademark").

Defendants' Supplemental Registration (ACC ¶ 106) does not overcome this deficiency. While a trademark registration on the Principal Register is "prima facie evidence of the validity of the registered mark," 15 U.S.C. § 1115(a), a "mark on the Supplemental Register is not presumed to be valid or exclusive."  PI Order at 13 (citing *In re Am. Fertility Society*, 188 F.3d 1341, 1343 (Fed. Cir. 1999) and concluding "defendants' registration of their mark on the Supplemental Register" is not "prima facie evidence that it is valid"); *id.* at 18 (recognizing the fact that "defendants have not attempted to [upgrade their mark to the Principal Register] after eight years is itself telling").

### D.  Defendants Waived Their Ability To Rely On Their Supplemental Registration

Defendants Section 1114 claim (Count 2) should also be dismissed because Defendants waived their ability to assert a trademark infringement claim based on their Supplemental Registration, Reg. No. 5,258,002.  "A waiver occurs when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  *Moon v. Bd. of Trustees of PAMCAH-UA Loc. 675 Pension Fund*, 319 F. Supp. 3d 1193, 1196 (N.D. Cal. 2018) (dismissing counterclaim without leave for amend based on waiver) (quotations omitted).

Months before asserting this claim, Defendants represented to this Court that they would not enforce the registration on the Supplemental Register in this case.  *See* Dkt. 57 at 22:14-17 ("[W]e're not trying to enforce a USPTO trademark registration.  We are simply enforcing common law rights.").  The waiver was made with full knowledge of the existence of the registration, was made voluntarily, and was unambiguous: "we are not bringing [a] claim to enforce a trademark ownership based on that supplemental registration."  *Id.* at 23:5-8; *see also id.* 23:1-4 ("[W]e are not seeking any rights independent of our common law rights. And we are not basing our common law rights on the supplemental registration.").  As the Court reminded Defendants at the PI hearing, they would be

1   bound by their admissions.  *Id.* at 57:22-58:7. Defendants cannot now recant them to pursue

2   enforcement of a trademark registration that they already represented they are "not trying to enforce."

3   **III.      DEFENDANTS' CANCELLATION CLAIM SHOULD BE DISMISSED**

4          Defendants' Count 3 (for cancellation of applications for registration under

5   15 U.S.C. § 1119) should be dismissed because Defendants have not plausibly alleged that Plaintiff's

6   mark is deceptively misdescriptive and presently lacks secondary meaning.

7          "A mark is classified as deceptively misdescriptive by the PTO when the term

8   (1) misdescribes the goods or services; and (2) consumers are likely to believe the

9   misrepresentation." *J.T. Colby & Co. v. Apple Inc.*, 2013 WL 1903883, at *9 (S.D.N.Y. May 8, 2013),

10  *aff'd*, 586 F. App'x 8 (2d Cir. 2014).   Courts also consider the degree to which the alleged

11  misdescription informs a consumer's purchasing decision.  *Hoover Co. v. Royal Appliance Mfg. Co.*,

12  238 F.3d 1357, 1361 (Fed. Cir. 2001) ("A mark may be 'deceptively misdescriptive' under § 2(e) if

13  it misrepresents any fact concerning the goods that may materially induce a purchaser's decision to

14  buy.").  Defendants fail to plausibly allege any of the required elements for cancellation.

15         ***First***, Defendants have not plausibly alleged that "OPENAI" misdescribes Plaintiff's goods

16  or services.  "In order for a term to misdescribe goods or services, the term must be merely

17  descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods

18  or services plausibly possess but in fact do not."[4]  *In Re Delta Faucet Co.*, 2022 WL 1711104, at *2

19  (T.T.A.B. May 4, 2022) (quotations omitted).  A mark is not "misdescriptive of the character, quality,

20  function, composition or use" of goods or services where non-misdescriptive interpretations of the

21  mark are "equally reasonable" as allegedly misdescriptive ones.  *See Hoover Co.*, 238 F.3d at 1361

22  ("THE FIRST NAME IN FLOORCARE" mark not misdescriptive despite allegation that mark's

23

24

---

25  [4]    Some examples of marks that have been barred from registration for being deceptively
    misdescriptive include: CAMEO for jewelry that did not contain a cameo; CLEAR for non-
26  transparent women's shoes, clothing, baggage tags, and bags; FURNITURE MAKERS for a retail
    furniture store that does not manufacture furniture; GLASS WAX for a metal and glass cleaner that
27  did not contain wax; and THCTea for tea which did not contain the active ingredient THC.  *See* 1
    McCarthy on Trademarks and Unfair Competition § 11:59 (5th ed.) (surveying case law).
28

1    owner is not actually the leading floorcare company where owner contended "that the term 'The First

2    Name' suggests general familiarity, as in being on a 'first name' basis with an individual").

3           Here, Defendants claim that "OpenAI" misdescribes Plaintiff's goods and services because

4    Plaintiff "suggests that the products and services … are open to the public" and "beneficial to all."

5    ACC ¶¶ 134, 112; *see also id.* ¶¶ 62, 153 (allegations concerning Plaintiff's nonprofit status and offer

6    of goods and services that are not "open-source").  Even assuming the truth of Defendants' false

7    allegations, there is no plausible claim of misdescription in the word "open"—an adjective that does

8    not mean opening source code technology to the public in all cases and says nothing about profit.

9    *See, e.g.*, Scher Decl., Ex. C (Merriam-Webster's Collegiate Dictionary, 11th ed. 2024) (definition

10   of "open" as, *inter alia*, "available to follow or make use of" and "being in operation").  Consistent

11   with the expansive meanings of the word "open," the PTO has registered hundreds of marks with the

12   term "OPEN," including marks for technology companies whose services are rendered for profit and

13   are not entirely open source.  *See, e.g.*, Scher Decl., Ex. D (attaching search results for live OPEN-

14   formative registrations) and Ex. E (attaching trademark registrations for various OPEN-formative

15   marks).

16          ***Second***, Defendants have not plausibly alleged that consumers believe the alleged

17   misdescription.    Conclusory   statements   regarding   consumer   beliefs   about   a   mark's

18   misdescriptiveness are insufficient to state a claim for relief under 15 U.S.C. § 1119.  *See Seawright*

19   *v. M. Shanken Commc'ns, Inc.*, 2014 WL 4258311, at *4 (D. Md. Aug. 26, 2014), *aff'd*, 594 F. App'x

20   132 (4th Cir. 2015) (denying motion for reconsideration regarding dismissal of cancellation claim;

21   plaintiff's motion for reconsideration offered only "plain legal conclusions," such as "to tell the

22   public that the meaning of the word cigar aficionado is an American magazine that is dedicated to

23   the world of cigars is deceptively misdescriptive … because most would understand the word cigar

24   aficionado to mean something similar to a cigar enthusiast.").

25          Defendants provide two screenshots that allegedly support their misdescriptiveness claim,

26   neither of which tends to show that consumers are likely to believe any alleged misdescription.  *See*

27   ACC ¶¶ 99-100 (third party tweet asking OpenAI to change its name; unverified X user complaining

28   about OpenAI).  A consumer's statement regarding their unhappiness with a particular mark's

meaning is not evidence that consumers are likely to believe a related alleged misrepresentation.  In other words, a consumer's stated belief that "OpenAI" is not a fitting name does not tend to prove that any consumers are likely to believe, based on the "OPENAI" mark, that the company will always open source its technology and never partner with for-profit interests.  Because Defendants have not pointed to any facts that suggest that consumers are likely to believe that Plaintiff's mark misdescribes its goods or services, Defendants fail to state a claim under 15 U.S.C. § 1119.

*Third*, Defendants have not alleged that any misdescription is relevant to a purchasing decision—as it must be to warrant cancellation.  *See, e.g.,* 1 McCarthy on Trademarks and Unfair Competition § 11:55 (5th ed) (misdescription must be a "relevant factor that may be considered in purchasing decisions" for a mark to be found deceptively misdescriptive).  Defendants' references to negative comments on social media are not allegations that the extent to which Plaintiff's products and services are "open" is relevant to any consumer's purchasing decision.  *See* ACC ¶¶ 99-100.  Absent are any allegations that consumers are looking for AI tools that are open source or that they assume those tools to be open source.  *Cf. In Re Shniberg*, 79 U.S.P.Q.2d 1309 (T.T.A.B. 2006) (misdescriptive "SEPTEMBER 11, 2001" mark, used to describe goods and services that were not concerned with the events of September 11, 2001, "would be relevant to consumers who would be interested in books or entertainment services concerning the terrorist attacks of September 11, 2001").

*Finally*, even if Plaintiff's mark were deceptively misdescriptive, Defendants did not allege that, as of the time the counterclaims were filed, "OPENAI" does not have secondary meaning.  This is fatal because "[d]eceptively misdescriptive marks may be registered on the Principal Register through a showing of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f)."  *Creel Abogados, S.C. & Carlos Creel Carrera v. Creel, Garcia-Cuellar, Aiza Y Enriquez, S.C.*, 2022 WL 1773814, at *11 (T.T.A.B. 2022); *see also* 1 McCarthy on Trademarks and Unfair Competition § 11:55 (5th ed.) (even a deceptively misdescriptive mark, "can be registered upon proof of secondary meaning").  Nor could Defendants plausibly make such an allegation.  *See, e.g.,* PI Order at 16 ("[Plaintiff's] website … is one of the most visited on the planet").  Indeed, the

1  Counterclaims acknowledge Plaintiff's general commercial success and competition with established

2  companies.  *See* ACC ¶¶ 1, 7.

3  **IV.      DEFENDANTS' DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED**

4          The Court should dismiss Defendants' counterclaims for declaratory judgment (Counts 6-9)

5  because they are redundant.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an

6  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); Fed. R. Civ.

7  P. 1 ("[The Rules] should be construed, administered, and employed by the court and the parties to

8  secure the just, speedy, and inexpensive determination of every action and proceeding.").

9          "Courts have discretion whether to hear a counterclaim for declaratory judgment." *Marsh &*

10 *McLennan Agency, LLC v. Teros Advisors, LLC*, 2021 WL 4846245, at *6 (N.D. Cal. Aug. 11, 2021)

11 (quotations omitted).  "The Declaratory Judgment Act gives the Court the authority to declare the

12 rights and legal relations of interested parties, but not a duty to do so."  *Id.* (quotations omitted).

13 "When the issues to be decided in a declaratory judgment would be redundant of other causes of

14 action already before the court, a court may decline to provide declaratory relief." *Strome v. DBMK*

15 *Enterprises, Inc*, 2014 WL 6485533, at *5 (N.D. Cal. Nov. 19, 2014).  "Numerous courts have used

16 that discretion to dismiss counterclaims under Rule 12(f) where they are either the 'mirror image' of

17 claims in the complaint or redundant of affirmative defenses." *IT Casino Sols., LLC v. Transient*

18 *Path, LLC*, 2022 WL 4913526, at *2 (N.D. Cal. Oct. 3, 2022) (quotations and brackets omitted).

19 "Courts in this circuit have struck counterclaims that present identical factual and legal issues as

20 affirmative defenses of patent or trademark invalidity."  *Id.* (quotations omitted).

21         Here, Defendants' declaratory judgment counterclaims are redundant.   Defendants'

22 counterclaims regarding non-infringement under the Lanham Act (Count 6), non-infringement of

23 common law trademark (Count 7), trademark ownership (Count 8), and trademark invalidity

24 (Count 9) do not raise any issues that are not covered by Plaintiff's trademark infringement claims.

25 "[I]f a plaintiff filed a cause of action for copyright or trademark infringement, it would be a waste

26 of judicial resources to permit the defendant to pursue a declaratory judgment counterclaim that seeks

27 a court determination that the defendant did not commit infringement."  *Houston Cas. Co. v. Crum*

28 *& Forster Ins. Co.*, 2016 WL 4494444, at *4 n.4 (E.D. Cal. Aug. 25, 2016).  Similarly, Defendants'

declaratory judgment claims regarding trademark ownership and validity are subsumed by Plaintiff's trademark claims.  Courts have not hesitated to dismiss similar counterclaims.  *See, e.g.*, *Strome*, 2014 WL 6485533, at *5 (granting motion to dismiss because the issue of trademark ownership "is an issue entirely subsumed in plaintiffs' cause of action for trademark cancellation, and that declaratory relief would therefore be duplicative and redundant"); *IT Casino Sols.*, 2022 WL 4913526, at *3 (striking declaratory judgment counterclaims regarding patent invalidity and unenforceability; "defendants' arguments about invalidity can be heard as a defense to ITCS's infringement claims; counterclaims seeking declaratory judgment to infringement are unnecessarily duplicative").

## **CONCLUSION**

For the reasons above, Plaintiff OpenAI respectfully requests that this Court grant this Motion and completely dismiss Defendants' amended counterclaims with prejudice.  Although the responses of Samuel Altman and Gregory Brockman, whom Defendants also seek to hold individually liable, are not due until July 29, 2024, for the reasons set forth above, the Amended Counterclaims fail to plausibly allege viable claims against anyone.


DATED: June 21, 2024                              QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP


                                      By        */s/ Margret M. Caruso*
                                                  Margret M. Caruso
                                              Attorneys for OpenAI, Inc.