1  Ryan G. Baker (Bar No. 214036)
     rbaker@waymakerlaw.com
2  Scott M. Malzahn (Bar No. 229204)
     smalzahn@waymakerlaw.com
3  Jose R. Nuño (Bar No. 312832)
     jnuno@waymakerlaw.com
4  Patricia Rojas-Castro (Bar No. 339087)
     projas-castro@waymakerlaw.com
5  WAYMAKER LLP
   515 S. Flower Street, Suite 3500
6  Los Angeles, California 90071
   Telephone:    (424) 652-7800
7  Facsimile:    (424) 652-7850

8  *Attorneys for Defendants and Counterclaimants*
   *Guy Ravine and Open Artificial Intelligence, Inc.*

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                    **OAKLAND DIVISION**

13

14  OPENAI, INC., a Delaware corporation,          Case No. 4:23-cv-03918-YGR

15           Plaintiff and Counterclaim-           Assigned to the Hon. Yvonne Gonzalez Rogers
             Defendant,
16                                                 **COUNTERCLAIMANTS OPEN
17          v.                                     ARTIFICIAL INTELLIGENCE, INC.
                                                   AND GUY RAVINE'S OPPOSITION TO
18  OPEN ARTIFICIAL INTELLIGENCE, INC.,            COUNTERCLAIM-DEFENDANT
    a Delaware corporation; and GUY RAVINE,        OPENAI, INC.'S MOTION TO DISMISS**
19  an individual,
                                                   Date:   August 13, 2024
20           Defendants and                        Time:   2:00 p.m.
             Counterclaimants.                     Place:  Courtroom 1 (4th Fl.)
21                                                         1301 Clay St.
                                                           Oakland, CA 94612
22  ────────────────────────────────

23  AND RELATED COUNTERCLAIMS.

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Counterclaimants Open Artificial Intelligence, Inc. ("Open AI") and Guy Ravine ("Ravine") (together "Counterclaimants") ask the Court to decide, in response to Counterclaim-Defendant OpenAI, Inc.'s ("Counterclaim-Defendant" or "OAI") motion to dismiss, whether Counterclaimants have:

1.      Adequately pled under the Lanham Act and California False Advertising Law ("FAL") (Claims 1 and 5) that the statements and omissions made by OAI are false and misleading?

2.      Adequately pled under the Lanham Act and federal and California common law (Claims 1, 2, and 4) that they have a valid, protectable trademark that is not barred by the statute of limitations or laches and whose use of the Supplemental Registration to support these claims has not been waived?

3.      Pled an entitlement to an award of damages pursuant to 15 U.S.C. § 1117(a) and injunctive relief?

4.      Adequately pled viable registration application cancellation claims (Claim 3) based on deception and misdescription?

5.      Adequately pled that there exists sufficient case or controversy to warrant the entry of various trademark-related declaratory relief judgments (Claims 6 through 9)?

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

III.    LEGAL STANDARD ............................................................................................ 4

IV.     ARGUMENT ......................................................................................................... 5

    A. Counterclaimants Have Adequately Pled their False Advertising Claims ...................... 5

        1. Counterclaimants Pled a Viable Lanham Act Claim for False Advertising .......... 5

            (a) Counterclaim-Defendants' Statements are Actionable under the Lanham Act as Commercial Speech ........................................................... 7

            (b) Counterclaim-Defendants' Statements were False ..................................... 9

            (c) Counterclaim-Defendants' Statements were Misleading to Consumers .. 11

            (d) Counterclaimants Have Pled Actionable Injury and Causation .............. 12

        2. Counterclaimants Pled a Viable False Advertising State Law Claim ................. 14

    B. Counterclaimants Have Adequately Pled their Trademark Claims ............................. 15

        1. Counterclaimants Have Pled Valid Trademark Infringement Claims ................. 15

        2. Counterclaimants Have Not Waived the Ability to Rely on the Supplemental Registration ..................................................................................... 17

        3. Neither the Statute of Limitations nor Laches Bar Counterclaimants' Trademark Infringement Claims ......................................................................... 18

            (a) The Statute of Limitations Do Not Bar Counterclaimants' Trademark Infringement Claim ..................................................................... 18

            (b) The Doctrine of Laches is No Bar to Counterclaimants' Claims ............. 20

    C. Counterclaimants Stated a Registration Application Cancellation Claim .................... 22

    D. Counterclaimants Have Adequately Pled their Declaratory Judgment Claims ............ 24

V.      LEAVE TO AMEND SHOULD BE PERMITTED ............................................. 25

VI.     CONCLUSION .................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*24/7 Customer, Inc. v. 24-7 Intouch*,
  2015 WL 1522236 (N.D. Cal., Mar. 31, 2015) .................................................................. 21

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc*.,
  944 F.2d 1446 (9th Cir. 1991) ............................................................................................ 14

*Aguila Management LLC v. International Fruit Genetics, LLC*,
  2020 WL 736303 (D. Az. Feb. 13, 2020) .......................................................................... 21

*Alfasigma USA, Inc. v. First Databank, Inc.*,
  2022 WL 899848 (N.D. Cal. Mar. 28, 2022) ............................................................... 12, 13

*Ariix, LLC v. NutriSearch Corp*.,
  985 F.3d 1107 (9th Cir. 2021) ......................................................................................... 7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 4

*Ashlar Inc. v. Structural Dynamics Research Corp*.,
  1995 WL 639599 (N.D. Cal., June 23, 1995) .................................................................... 16

*Bamforth v. Facebook, Inc.*,
  2021 WL 4133753 (N.D. Cal. Sept. 10, 2021) ................................................................... 19

*BBK Tobacco & Foods LLP v. Cent*ral *Coast Agriculture, Inc*.,
  97 F.4th 668 (9th Cir. 2024) .............................................................................................. 22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 4

*Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav, D. D*.,
  2014 WL 12579802 (C.D. Cal. June 4, 2014) .................................................................... 14

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
  259 F. Supp. 3d 1087 (S.D. Cal. May 8, 2017) ................................................................ 5, 9

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) ........................................................................................................... 7, 8

*Brookfield Communications, Inc. v. W. Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................................................ 15

*Catch Curve, Inc. v. Venali*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) ............................................................................... 5

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ............................................................................................................. 7

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ............................................................................................... 5

*Creel Abogados, S.C. & Carlos Creel Carrera v. Creel, García-Cuéllar, Aiza Y Enríquez S.C.*,
  2022 WL 1773814 (T.T.A.B. May 27, 2022) ............................................................................ 22

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ................................................................................................... 20

*Day Crush, LLC v. Ehren Jordan Wine Cellars*,
  2017 WL 6383269 (N.D. Cal. May 5, 2017) ..................................................................... 16, 25

*Derek & Constance Lee Corp. v. Kim Seng Co.*,
  391 F. App'x 627 (9th Cir. 2010) ............................................................................................ 21

*Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*,
  656 F. Supp. 3d 1073 (C.D. Cal. 2023) ................................................................................... 19

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................................................................... 4

*Evergreen Safety Council v. RSA Network, Inc.*,
  697 F.3d 1221 (9th Cir. 2012) ................................................................................................. 20

*Fitness Anywhere, LLC v. Woss Enterprises, LLC*,
  2014 WL 4802432 (N.D. Cal. Sept. 26, 2014) ........................................................................ 25

*Foundry IV, Inc. v. Hard Carry Gaming, Inc.*,
  2024 WL 211010 (C.D. Cal. Jan. 3, 2024) .............................................................................. 16

*Genus Lifesciences Inc. v. Lannett Company, Inc.*,
  378 F. Supp. 3d 823 (N.D. Cal. 2019) ................................................................................. 6, 11

*Gorski v. The Gymboree Corporation*,
  2014 WL 3533324 (N.D. Cal. Jul. 16, 2014) .......................................................................... 15

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) ................................................................................................... 11

*HomeLight, Inc. v. Shkipin*,
  694 F. Supp. 3d 1242 (N.D. Cal. 2023) .................................................................................. 14

*Hosseinzadeh v. Werlin*,
  2015 WL 13918008 (C.D. Cal. Sept. 22, 2015) ...................................................................... 16

*Houston v. Ferguson*,
  2011 WL 13373825 (N.D. Cal. Jan. 13, 2011) ........................................................................ 17

*In re Budge Manufacturing Co.*,
  857 F.2d 773 (Fed. Cir. 1988) ................................................................................................. 24

*In re Denver Mattress, Co., LLC*,
  2019 WL 2371850 (T.T.A.B. May 3, 2019) ............................................................................. 24

*In re General Mills IP Holdings II, LLC*,
  124 U.S.P.Q.2d 1016 (T.T.A.B. Aug. 22, 2017) ..................................................................... 23

*In re Hunt*,
  238 F.3d 1098 (9th Cir. 2001) .................................................................................... 18

*In re Phillips-Van Heusen Corp.*,
  63 U.S.P.Q.2d 1047 (T.T.A.B. Mar. 28, 2002) ........................................................... 23

*Internet Specialties West, Inc. v. Milon-DiGiongio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009) ..................................................................................... 20

*Itex Corp. v. Global Links Corp.*,
  90 F. Supp. 3d 1158 (D. Nev. 2015) ........................................................................... 12

*Jackson v. Carey*,
  353 F.3d 750 (9th Cir. 2003) ..................................................................................... 25

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ..................................................................................... 20

*K & N Engineering, Inc. v. Spectre Performance*,
  2011 WL 4387094 (C.D. Cal. Sept. 20, 2011) ............................................................. 9

*Kimes v. Stone*,
  84 F.3d 1121 (9th Cir. 1996) ..................................................................................... 14

*LegalForce, Inc. v. LegalZoom.com, Inc.*,
  2019 WL 1170779 (N.D. Cal. Mar. 13, 2019) ..................................................... 13, 25

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .................................................................................................... 12

*Luna Distributing LLC v. Stoli Group (USA), LLC*,
  2018 WL 5099277 (C.D. Cal., July 10, 2018) ............................................................ 22

*Luxul Technology Inc. v. Nectarlux, LLC*,
  78 F. Supp. 3d 1156 (N.D. Cal. 2015) ............................................................... 11, 25

*Monster Energy Co. v. Vital Pharmaceuticals, Inc.*,
  2022 WL 1599712 (C.D. Cal. Apr. 19, 2022) .................................................. 9, 10, 11

*Moon v. Bd. of Trustees of PAMCAH-UA Loc. 675 Pension Fund*,
  319 F. Supp. 3d 1193 (N.D. Cal. 2018) ............................................................... 17, 18

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ....................................................................................... 9

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ..................................................................................... 25

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  2021 WL 922074 (C.D. Cal., Jan. 7, 2021) ................................................................. 16

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) ....................................................................................... 4

*National Customer Engineering Inc. v. Lockheed Martin Corp.*,
  1997 WL 363970 (C.D. Cal. Feb. 14, 1997) ............................................................. 20

*Olinsky & Associates., PLLC v. Nutting*,
  2021 WL 2779001 (N.D.N.Y. July 2, 2021) ......................................................... 23, 24

*Parks School of Business v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ....................................................................................... 4

*Petconnect Rescue, Inc. v. Salinas*,
  2021 WL 5178647 (S.D. Cal. Nov. 8, 2021) .............................................................. 15

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
  894 F.3d 1015 (9th Cir. 2018) ................................................................................... 18

*Prager University v. Google, LLC*,
  951 F.3d 991 (9th Cir. 2020) ....................................................................................... 8

*RPost Holdings, Inc. v. Trustifi Corp.*,
  2012 WL 12952728 (C.D. Cal. May 11, 2012) ............................................................ 8

*Sacramento Public Library Authority v. Sacramento Public Library Foundation*,
  2020 WL 4476123 (E.D. Cal. Aug. 4, 2020) .............................................................. 16

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ............................................................. 21

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
  2004 WL 2648370 (N.D. Cal. June 25, 2004) .............................................................. 8

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) ....................................................................... 5

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..................................................................................... 4

*Stickrath v. Globalstar, Inc.*,
  2008 WL 2050990 (N.D. Cal. May 13, 2008) ........................................................... 24

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  846 F. Supp. 2d 1063 (N.D. Cal. 2012) ..................................................................... 20

*Suntree Technologies, Inc. v. Ecosense International, Inc.*,
  693 F.3d 1338 (11th Cir. 2012) ................................................................................... 7

*Tone Brothers, Inc. v. Sysco Corp.*,
  28 F.3d 1192 (Fed. Cir. 1994) ................................................................................... 24

*United States v. United Healthcare Insurance Co.*,
  848 F.3d 1161 (9th Cir. 2016) ..................................................................................... 5

**Statutes**

15 U.S.C. § 1052(a) ........................................................................................................ 22

15 U.S.C. § 1114 ............................................................................................................ 15



15 U.S.C. § 1119 .................................................................................................... 22

15 U.S.C. § 1125(a)(1) ........................................................................................... 15

**Rules**

Fed.R.Civ.P. 8(a)(2) ................................................................................................. 4

Fed.R.Civ.P. 9(b) ..................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counterclaimants Guy Ravine ("Ravine") and Open Artificial Intelligence, Inc. ("Open AI") (collectively, the "Counterclaimants") respectfully oppose the motion to dismiss ("MTD" (Dkt. 109)) filed by Counterclaim-Defendant OpenAI, Inc. ("OAI" or "Counterclaim-Defendant").[1]

OAI's narrative is a facade attempting to obscure the troubling reality of its own behavior. As detailed in Counterclaimants' Amended Counterclaims ("ACC" (Dkt. 103)), it was not Ravine who sought to capitalize on OAI's renown, but rather it was OAI and its leadership – Sam Altman and Greg Brockman – who deceptively adapted Ravine's name and principles while making false and misleading public statements in an effort to push Ravine to the wayside.

It is not, and cannot be disputed that before Counterclaim-Defendants' company was in existence, Ravine was out promoting his "Open AI" concept as a collaborative, open-source, transparent, non-profit project, dedicated to all of humanity. Indeed, OAI has repeatedly attempted to purchase the open.ai domain and rights to the Open AI name from Ravine, even within OAI's first week of existence. In reality, OAI's public image was built on a foundation of lies. Counterclaim-Defendants made false statements such as a claim to have secured $1 billion in funding, and disingenuously parroted the altruistic principles of Ravine's Open AI, even though it has now been shown that these were simply marketing ploys meant to attract consumers, researchers, and investors. This was done so OAI could establish itself in the AI marketplace alongside the likes of Google and Facebook. These false statements harmed and continue to harm Counterclaimants and their mark, and Counterclaim-Defendants must face these allegations on the merits.

OAI attempts to evade responsibility by bringing a motion to dismiss. Its arguments contradict the weight of legal authority and are not amenable for resolution on a motion to dismiss. Ironically, after an eight-year delay in initiating this case, OAI now suggests that the timing of the

---

[1] OAI, together with counterclaim-defendants Samuel Altman and Gregory Brockman are collectively referred to as "Counterclaim-Defendants."

1   ACC somehow warrants dismissal because it was "filed nine months after [OAI's] complaint."

2   This, and the balance of OAI's arguments are erroneous. Counterclaimants have alleged sufficient

3   facts to state plausible claims for relief against all Counterclaim-Defendants. This Court should

4   deny OAI's motion to dismiss in its entirety, or in the alternative, grant leave to amend.

5   **II.      FACTUAL AND PROCEDURAL BACKGROUND**

6          Counterclaimant Ravine, an entrepreneur and innovator with extensive background in both

7   artificial intelligence and collaborative development has dedicated a lifetime to developing

8   innovative technologies. (ACC ¶¶ 2, 4, 27.) As rapid breakthroughs accelerated the field of AI in

9   the early 2010's, Ravine saw that almost all AI development was taking place inside well-funded

10   companies like Google. (*Id.* ¶ 31.) Ravine understood that if technologies like artificial general

11   intelligence ("AGI") – highly autonomous AI systems that can outperform humans in a wide range

12   of tasks – were owned solely by large, for-profit companies, it would lead to a concentration of

13   power where the lion's share of economic production was controlled by one or a few entities, with

14   little benefit to the countless people whose jobs stood to be replaced by AI. (*See id.* ¶ 28.) To stave

15   off this looming dystopia, Ravine saw the need to foster AI technology that was collectively

16   developed and owned, in a way that did not require a massive cash infusion. (*Id.* ¶¶ 30, 32.) By

17   late 2014, Ravine had devised a "recipe" by which an AI endeavor could compete with the big

18   players, not on money, but on ideology: Ravine would attract the best scientists and visionary

19   investors by founding an initiative to develop AI using technology that was developed by a

20   worldwide network of researchers, shared, transparent, and open sourced. (*Id.* ¶¶ 30-35.) Most

21   importantly, the endeavor would be a non-profit, and would be expressly dedicated to developing

22   AGI in a way that would benefit of all humanity. (*Id.* ¶ 34.)

23          By 2015, Ravine had created collaborative AI development tools and posted them online,

24   where they were used by a core group of researchers. (*Id.* ¶¶ 56-57, 63.) Ravine networked with

25   titans of industry and academia, seeking to raise about $100M for the project. (*Id.* ¶¶ 40, 49.) He

26   named the project "Open AI," a name that encapsulated the humanistic ethos of the project and

27   instantly communicated to others in the AI community that this technology would be open-source,

28   openly shared, transparent, and safe. (*Id.* ¶¶ 1, 33-35.) To further advance the Open AI project,

1   Ravine purchased the domain open.ai in March 2015, and launched various resources within that

2   domain under the "Open AI" name. (*Id.* ¶¶ 45-57.)

3       Throughout 2015 and beyond, awareness of Ravine's Open AI grew rapidly in the nascent

4   and tiny AI community. (*See id.* ¶¶ 43-53.) His "Open AI" branded properties had hundreds of

5   online interactions with developers and users promoted various initiatives including an Open AI

6   school, and thousands of interested parties signed up to be on Open AI's email list. (*Id.* ¶ 40, 47,

7   49-50, 57, 75, 88.) Ravine worked tirelessly to raise awareness and capital for Open AI, seeking

8   investments from AI executives at Silicon Valley companies including Apple, Google, Facebook,

9   Collision and Stripe, to whom he emphasized the uniqueness of Open AI's mission as a nonprofit

10  initiative building AI that would benefit all humanity. (*Id.* ¶¶ 5, 40-41.) As but one example, Tom

11  Gruber, the co-founder of Siri and former head of Apple's Advanced Technology Group later

12  noted: "On March 19, 2015 I saw Guy Ravine proposing Open AI to Google CEO Larry Page and

13  requesting the backing of Open AI" presenting it as an initiative that "would be an open non-profit

14  AI organization to attract researchers who would publish their code openly and share the benefits

15  of AI with humanity." (*Id.* ¶ 42.) These Open AI activities began months before Counterclaim-

16  Defendants had formed a company. (*Id.*)

17      On December 11, 2015, after Ravine had already begun using the Open AI mark and the

18  open.ai domain, Counterclaim-Defendants usurped Ravine's principles, name, and groundwork,

19  announcing to the world the launch of their own company called "OpenAI, Inc.", copying

20  Ravine's promise to be an open, collaborative non-profit AI organization for the benefit of

21  humanity. (*Id.* ¶¶ 2, 58-59, 80, 86-87, 150-51.) Counterclaim-Defendants also claimed that they

22  had obtained $1 billion in funding from Elon Musk and others. (*Id.* ¶¶ 6, 58, 61, 80-81, 91, 151.)

23  These statements, among others, turned out to be false. In reality, Counterclaim-Defendants only

24  raised $13 million in their first year of operation. (*Id.* ¶¶ 6, 62, 81, 93.) And, although OAI stated

25  they would be a "nonprofit corporation" developing artificial intelligence technology as "open

26  source technology for the public benefit" with a "primary fiduciary duty to humanity," they

27  instead became a secretive, for-profit company that shuttered research, fired board members who

28  exercised their fiduciary duty to represent humanity, and disbanded its safety team. (*Id.* ¶ 1.) In

1  fact, recently revealed internal emails showed that this promise to be open for humanity was

2  simply a "recruiting strategy for the short and medium term" and it was "OK not to share the

3  science." (*Id.* ¶¶ 60, 95.) As for the Open AI name, Counterclaim-Defendants cannot dispute that

4  Ravine was the senior user with superior rights, as they tried to purchase it from Ravine on more

5  than one occasion. (*Id.* ¶¶ 3, 91, 101.) When Ravine refused to sell, Counterclaim-Defendants

6  willfully continued to use the purloined mark. (*Id.* ¶¶ 3, 92.)

7        Through Counterclaim-Defendants' actions as alleged throughout the ACC,

8  Counterclaimants have been irreparably damaged, including injuries to their mark, identity,

9  reputation, credibility, and goodwill. (*See e.g., id.* ¶¶ 13, 115, 117, 119-121, 127, 129-131.)

10  ## III.  LEGAL STANDARD

11        The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of

12  the claims in the litigation. *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

13  1995). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

14  pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

15  555-56 (2007). The trial court must accept all well-pleaded factual allegations as true and indulge

16  every reasonable inference in the plaintiff's favor. *See Moss v. U.S. Secret Service*, 572 F.3d 962,

17  967-68 (9th Cir. 2009). "If there are two alternative explanations, one advanced by defendant and

18  the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a

19  motion to dismiss. . ." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

20        Rule 8 does not impose a "probability requirement." It requires only that the plaintiff offer

21  "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

22  662, 678 (2009). A plausible claim need not be probable, but the facts must suggest that discovery

23  will reveal some evidence of a claim. *Twombly*, 550 U.S. at 556. In fact, "a well-pleaded

24  complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

25  improbable, and 'that recovery is very remote and unlikely.'" *Id*. "Specific facts are not necessary"

26  and a complaint need only give notice of the claims and the grounds upon which they rest.

27  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Finally, motions to dismiss for failure to state a claim

28

are generally "disfavored" and should be granted only in "extraordinary" cases. *Catch Curve, Inc.*
*v. Venali*, 519 F. Supp. 2d 1028, 1034 (C.D. Cal. 2007).

## IV.     ARGUMENT

### A.     Counterclaimants Have Adequately Pled their False Advertising Claims

Counterclaimants have sufficiently and plausibly pled their false advertisement claims
under the Lanham Act (Claim 1) and California's False Advertising Law (the "FAL") (Claim 5).[2]
OAI ignores the many detailed factual statements Counterclaimants set forth in the ACC that show
Counterclaim-Defendants repeatedly issued false and misleading statements meant to confuse
consumers and investors and that have damaged Counterclaimants. OAI's strained attempts to
dismiss these claims fail.

#### 1.     Counterclaimants Pled a Viable Lanham Act Claim for False Advertising

As an initial matter, OAI's argument that Rule 9(b)'s heightened pleading standard
somehow warrants dismissal falls flat. Rule 9(b)'s heightened pleading requirement simply
requires that the allegations be "specific enough to give defendants notice of the particular
misconduct which is alleged to constitute the fraud charged so that they can defend against the
charge and not just deny that they have done anything wrong." *Bobbleheads.com, LLC v. Wright
Brothers, Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. May 8, 2017). For example, in
*Bobbleheads.com*, plaintiff met Rule 9(b)'s heightened pleading requirement when it alleged
defendants falsely advertised "in various media" that their products were affiliated with a political
campaign. *Id.* at 1093. The court held that plaintiff's allegations "that the false advertisements
occurred through various internet service providers, [], and on Defendants' websites... is enough
to give Defendants fair notice of the alleged fraudulent conduct so that they can adequately defend
against the charge." *Id.* at 1096; *see also United States v. United Healthcare Insurance Co.,* 848
F.3d 1161, 1180 (9th Cir. 2016) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

---

[2] To assert an FAL claim, a party must "(1) establish a loss or deprivation of money or property
sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury
was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the
gravamen of the claim." *Stanwood v. Mary Kay, Inc*., 941 F. Supp. 2d 1212, 1217 (C.D. Cal.
2012) (alterations in original)).

1  (Rule 9(b) "does not require absolute particularity or a recital of the evidence" so that a "complaint

2  need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify

3  the 'precise method' used to carry out the fraud.").

4      Counterclaimants' detailed and factual allegations regarding Counterclaim-Defendants'

5  false statements disseminated *inter alia*, through their websites are clearly specific enough "to give

6  [Counterclaim-Defendants] notice of the particular misconduct which is alleged to constitute the

7  fraud, and when that fraud was discovered." For example, beginning with a December 11, 2015

8  website post and continuing to this day, OAI claimed the company was designed "to benefit

9  humanity as a whole, unconstrained by a need to generate financial return" and that, because its

10  research would be "free from financial obligations, [it could] better focus on a positive human

11  impact." (ACC ¶¶ 59, 150-51.) It further stated in that post that its "[r]esearchers w[ould] be

12  strongly encouraged to publish their work"; that its patents would "be shared with the world"; that

13  it would "freely collaborate with others across many institutions" to "research and deploy new

14  technologies." (*Id.* ¶¶ 90, 150.) These statements were later proven to be false as internal emails

15  demonstrate that this promise to be open for humanity was simply a "recruiting strategy for the

16  short and medium term" and it would not openly share the science as falsely claimed. (*Id.* ¶¶ 2, 60,

17  93.)

18      Turning to the merits, "[t]o state a false advertisement claim under the Lanham Act, a

19  plaintiff must allege: '(1) a false statement… in a commercial advertisement about its own or

20  another's product; (2) the statement actually deceived or has the tendency to deceive a substantial

21  segment of its audience; (3) the deception is… likely to influence the purchasing decision; (4) the

22  defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or

23  is likely to be injured as a result of the false statement, either by direct diversion of sales from

24  itself to defendant or by lessening of the goodwill associated with its products." *Genus*

25  *Lifesciences Inc. v. Lannett Company, Inc*., 378 F. Supp. 3d 823, 833 (N.D. Cal. 2019) (citations

26  omitted). OAI's arguments that the ACC does not adequately allege commercial statements, their

27  falsity, the requisite consumer deception, or injury, all miss the mark. (*See* MTD at 4-9.)

28



(a)  *Counterclaim-Defendants' Statements are Actionable under the Lanham Act as Commercial Speech*

Counterclaimants have sufficiently alleged false statements that meet the requirement of commercial speech actionable under the Lanham Act. A "commercial advertising or promotion" is a statement that is commercial in nature, made for the purpose of influencing consumers as to the defendant's or another's goods, services, or activities, and sufficiently disseminated to the relevant purchasing public. *Suntree Technologies, Inc. v. Ecosense International, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012). OAI's attempt to artificially narrow the confines of commercial speech is unpersuasive. Indeed, "courts have been reluctant to articulate a bright-line rule to identify commercial speech." *Cf. City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993). Thus, "commercial speech analysis is fact-driven," and courts "try to give effect to a common-sense distinction between commercial speech and other varieties of speech." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quotations omitted). In doing so, Courts consider three "*Bolger* factors" as part of the commercial speech analysis, whether: (1) the statements are in a traditional advertising format; (2) they refer to commercial products; and (3) the defendant had an economic motivation in making the statements. *Id.* at 1116 (citing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67 (1983)). Applying these *Bolger* factors in *Ariix*, the Ninth Circuit held that the "rigged" portion of ratings in a nutritional guide was actionable as commercial speech under the Lanham Act. *Id.* at 1119. Specifically, the plaintiff nutritional supplement company alleged that "the defendants conceived the [nutrional g]uide to juice sales of [competitor] Usana products, actively misled the public about their supposed independence, and fiddled with their own ratings criteria to boost a favored company that lavishes them with hundreds of thousands of dollars in compensation." *Id.* This speech, though in a nontraditional format, sufficiently referred to commercial products and was buoyed by defendant's economic motivation. *Id.* at 1117. Here, too, Counterclaimants' allegations clearly satisfy the *Bolger* factors.

First, the Ninth Circuit has described and sanctioned expansive examples of non-traditional advertisements that qualify as commercial speech like those alleged here. As explained above, in *Ariix,* 985 F.3d at 1116, the Ninth Circuit held that informational pamphlets, social media posts,

1    and a newsletter were commercial speech despite their non "traditional" nature (citations omitted);

2    *see also Sigma Dynamics, Inc. v. E. Piphany, Inc*., 2004 WL 2648370, at *3 (N.D. Cal. June 25,

3    2004) ("As statements on websites and in press releases are generally available to the public at

4    large, they satisfy the commercial speech requirement for purposes of a motion to dismiss.").

5         As in *Ariix* and *Sigma*, Counterclaim-Defendants' false and deceptive statements

6    disseminated through its website about OAI's openness and commitments to the benefit of

7    humanity, which were made to boost consumer support and attract talent, constitute actionable

8    commercial speech. (*See, e.g.,* ACC ¶¶ 59-60, 90-91, 93, 150, 152.) The cases relied on by OAI do

9    not change this analysis. *RPost Holdings, Inc. v. Trustifi Corp*., 2012 WL 12952728, at *7 (C.D.

10   Cal. May 11, 2012), is easily distinguishable as there, the court held that defendant's statements to

11   potential investors **via email** were not actionable under the Lanham Act because they were not

12   made for the purpose of influencing consumers to buy its goods or services and were not

13   "disseminated sufficiently to the relevant purchasing public to constitute advertising or

14   promotion." Here, Counterclaim-Defendants' alleged false statements promulgated on OAI's

15   website, in public filings, and in at least one public interview (ACC ¶¶ 6, 79, 95, 97, 150-151.)

16   were not only made to potential investors, but also made available to the relevant purchasing

17   public on websites and in the press. OAI's reliance on *Prager University v. Google, LLC*, 951 F.3d

18   991, 999-1000 (9th Cir. 2020) is similarly misplaced as the allegations at issue here are not

19   "content moderation" restrictions, but statements issued for clear commercial purposes in press

20   releases and websites.

21        As to the remaining *Bolger* factors, OAI continuously promoted an open-source, nonprofit

22   endeavor with technology would continue to be shared with the world. (ACC ¶¶ 90, 150, 153,

23   159.) Even though OAI argues that its "blog posts" did not mention its "products or services

24   available for purchase," it is undisputed that OAI's statements allude or refer to "numerous

25   artificial intelligence products" and "product distribution." (MTD at 2,10, 17, 22.) *See Ariix,* 985

26   F.3d at 1116 n. 6 (finding that "neither side materially disputes that the Guide refers to specific

27   products;" but the guide referred to numerous supplements.) OAI's product permeated its website,

28   and OAI widely disseminated statements about the product beyond the website itself, satisfying

WAYMAKER

the second *Bolger* prong. (ACC ¶¶ 95–98.) Similarly, as to the third factor, OAI's economic motivation for the speech alleged is detailed in the ACC and apparent on its face. OAI, in describing and promoting itself as open and for public benefit, knew it could attract consumers, talent, and scare away competitors in an industry where they could not otherwise compete. (*Id.* ¶¶ 2, 6, 60-61,74.) OAI's founder pointed to its structure of "freedom and openness and the ability to share" as part of its appeal. (*Id.* ¶ 95.) However, such structure was simply a "strategy in the short and possibly medium term for recruitment purposes." (*Id.*) The economic motivation behind these statements was to benefit Counterclaim-Defendants. The allegations set forth in the ACC are clearly actionable as commercial speech.

(b)    *Counterclaim-Defendants' Statements were False*

OAI's contention that Counterclaimants have failed to adequately plead falsity with particularity is erroneous. As stated above, the particularity requirement is satisfied if the claim "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Bobbleheads.com,* 259 F. Supp. 3d at 1095. That OAI has fair notice sufficient to defend the charges is evidenced by the simple fact that it has identified and challenged the various false statements in attempting to dismiss the claim. (*See* MTD at 6-7.)

Moreover, OAI's assertion that falsity is not plausibly alleged because the facts alleged, "if proven" cannot "establish [] false statements" is wrong. (MTD at 6.) The Lanham Act recognizes two kinds of false statements: (1) a statement that is "literally false, either on its face or by necessary implication," or (2) those that are "literally true but likely to mislead or confuse consumers." *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, 2022 WL 1599712, at *7–8 (C.D. Cal. Apr. 19, 2022). "Literal falsity is a question of fact." *K & N Engineering, Inc. v. Spectre Performance*, 2011 WL 4387094, at *9 (C.D. Cal. Sept. 20, 2011).

In their ACC, Counterclaimants specifically allege facts straight from Counterclaim-Defendants' own words that show literal and misleading false statements:

**Funding Commitments and Research Team.** The ACC clearly alleges that Counterclaim-Defendants claimed to have $1 billion in funding in 2015 and that these claims were

1  false. (ACC ¶¶ 6, 58, 61-62, 80-81, 91, 151.) OAI strains to sidestep these allegations, claiming

2  that they only said $1 billion was *committed*, not on hand, and thus there is no alleged falsity.

3  (MTD at 6.) But this ignores Counterclaimants' allegations that "through the end of 2016, [OAI]

4  would raise about $13 million" not the $1 billion in commitments it claimed to have, and that the

5  motive behind the false but enormous number was "to avoid sounding hopeless relative to what

6  Google or Facebook are spending." (ACC ¶¶ 6, 62, 77, 81, 93.) These allegations, accepted as

7  true, demonstrate falsity. Moreover, OAI ignores that true or half true statements are also

8  actionable so long as the statements are "likely to mislead or confuse consumers." *See Monster*

9  *Energy*, 2022 WL 1599712, at *7–8. In OAI's statement claiming $1 billion of funding

10  commitments, OAI claims that it would "only *spend* a tiny fraction" of the $1 billion in the "next

11  few years" implying that the funding was on hand at its disposal to mislead consumers, attract

12  more donations, and research talent. (ACC ¶¶ 80, 85.) As alleged in the ACC, OAI falsely claimed

13  in commercial speech that it had more money and investors than in actuality in order to appear

14  more lucrative to attract consumers and stamp out potential competitors.[3] (*Id.* ¶¶ 61, 83-85)

15  **Statements Concerning OAI Being an "Open" Company Meant to Benefit Humanity**

16  **and the Public.** As alleged in the ACC, Counterclaim-Defendants misappropriated and replicated

17  the principles of Ravine's initiative, but did not have the intention to follow through for the benefit

18  of humanity. (*Id.* ¶ 60, 82, 111, 155-158.) Counterclaim-Defendants falsely claimed (and continue

19  to this day to claim) in websites, press releases, and public documents, that OAI would be/is a

20  non-profit developing AGI for the benefit of humanity, would be open-source, and would not keep

21  its technology closed and secret for proprietary commercial reasons. (*Id.* ¶ 97.) It is clear from the

22  allegations that these misleading and deceptive statements are widely promulgated and promoted

23  by Counterclaim-Defendants with the intent to entice the relevant purchasing public and as a

24  recruiting strategy. Indeed, Counterclaim-Defendants used this mission statement in promoting

---

25  [3] Similarly, in December 2015, OAI's website also identified OAI's research director and 11

26  "world-class research engineers and scientists" who are part of OAI's "founding members." (MTD at 6.) Counterclaimants allege that the statement was false and misleading and meant to make OAI

27  appear more attractive to consumers and investors, and misleadingly meant to lure in more researchers and "scare away competitors" where they could not otherwise compete. (*See* ACC ¶¶

28  2, 6, 60-61, 74, 80.)

OAI, acknowledging that the companies "openness and ability to share what [researchers are] working on" was part of its appeal. (*Id.* ¶ 98.) These statements, false when given, and which are not contradicted in any of the documents in OAI's request for judicial notice, are clearly actionable.

     (c)   *Counterclaim-Defendants' Statements were Misleading to Consumers*

Further, OAI's contention that Counterclaimants failed to plausibly allege the false statements "actually deceived or ha[ve] the tendency to deceive a substantial segment of [OAI's] audience" is misplaced. (*See* MTD at 8.) As explained above, Counterclaimants have adequately alleged that Counterclaim-Defendants' statements were false, and "literal falsity of [the] claims creates the presumption" that consumers were deceived. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989).

Further, Counterclaimants have in either case pled sufficient facts to show that Counterclaim-Defendant's statements, are "likely to mislead or confuse consumers." *See Monster Energy Co.*, 2022 WL 1599712 at *7, 18 (holding that plaintiff's allegations that defendant's "disparaging statements that energy drinks from competitors cause sugar crashes" while literally true, were still likely to mislead or confuse consumers.) Even if Counterclaim-Defendants' statements that "funders ha[d] committed $1 billion" and that they "expect[ed] to only spend a tiny fraction of this amount" were true, the statements would likely lead deceive consumers, investors, into believing that they actually had the money on hand to spend, and were consequentially one of the few big-name players in the AI field. (ACC ¶¶ 62, 80-81, 91, 150-151.)

OAI's cited case law regarding the insufficiency of conclusory allegations is of no moment here where there are detailed and fact-based allegations. *See Luxul Technology Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1172 (N.D. Cal. 2015) (court dismissed false advertisement claim as insufficient when allegations were "bare recitations of the elements of a false advertising claim, bereft of any factual allegations."); *Genus Lifesciences*, 378 F. Supp. 3d at 840 (plaintiff's allegations conclusory because it did not allege that defendant intentionally set out to deceive its consumer base or that representation was an overtly false statement.).

1    In contrast to those cases, Counterclaimants assert detailed allegations regarding

2    Counterclaim-Defendants' false and misleading statements on its website and in the press, where

3    OAI asserted its false claims about its fundraising, openness, and public benefit. (ACC ¶¶ 6, 26,

4    58, 61, 95-96, 114, 116-117, 152-153, 160-163.) As alleged, these statements were clearly false

5    and "had the capacity to deceive, and did in fact deceive, a substantial segment of the public." *See*

6    *Itex Corp. v. Global Links Corp.,* 90 F. Supp. 3d 1158. 1172 (D. Nev. 2015) (false statements

7    made in press releases, promotional materials, and on defendant's public website were sufficient

8    to demonstrate that statements had a "tendency to deceive consumers").

9                    (d)        *Counterclaimants Have Pled Actionable Injury and Causation*

10   OAI primarily contends that Counterclaimants have not pled a cognizable injury that

11   satisfies the "zone-of-interests test" or causation. (MTD at 8.) Both contentions are makeweight

12   and erroneous.

13   First, OAI cites to *Lexmark International, Inc. v. Static Control Components, Inc.*, 572

14   U.S. 118, 130, 133 (2014), for the "zone of interests" test, but there, the test was actually used to

15   confirm that businesses like OAI may invoke the Lanham Act to protect against false advertising

16   injuring their business reputation and sales. *Id*. at 131-32; *see also Alfasigma USA, Inc. v. First*

17   *Databank, Inc.*, 2022 WL 899848, at *5 (N.D. Cal. Mar. 28, 2022) (The plaintiff's allegations of

18   lost sales were sufficient to satisfy the zone of interest test.). Here, Counterclaimants have

19   similarly alleged harm to business reputation and sales sufficient for a Lanham Act claim. (ACC

20   ¶¶ 13, 115, 117, 119-120, 129-131,143-145.)

21   Similarly, OAI's reliance on *LegalForce* to argue that "less fanciful allegations—such as

22   'lost revenue and market share,' 'reduced asset value,' 'increased advertising costs,' and other

23   harm to 'business, reputation, and goodwill'—are insufficient to 'plead injury' for a false

24   advertising claim" misrepresents the holding of the case. (*See* MTD at 9.) In *LegalForce*, the

25   district court found that plaintiff's allegations were "conclusory in nature" and "failed to allege

26   any facts to support a finding that whatever loss of revenue it experienced beginning in April 2014

27   was the result of LegalZoom's use of the challenged domain name." *LegalForce, Inc. v.*

28

WAYMAKER

1   *LegalZoom.com, Inc*., 2019 WL 1170779, at *2 (N.D. Cal. Mar. 13, 2019). Thus, it was because

2   plaintiff's allegations were conclusory that their claim failed. *Id.*

3       Counterclaimants' allegations are far more factually detailed that those in *Legal Force*.

4   Counterclaimants have alleged, *inter alia*, that as the larger junior company and user of the

5   "Open" mark, OAI grew into a mega company that saturated the market with a trademark similar

6   or identical to that of the smaller, senior Counterclaimants. (ACC ¶ 115.) Indeed, as alleged, the

7   "Open AI Mark and name are unique and represent to the public Open AI's identity, reputation,

8   credibility, and goodwill" and have been damaged by OAI's false statements that promised open-

9   source code, transparency, and AI safety – values that Counterclaimants seek to maintain. (*See id.*

10   ¶¶ 1, 115, 119, 130, 114, 152.) Thus, because of OAI's false statements and switch to a for-profit

11   company that fired board members who exercised their fiduciary duty to represent humanity, and

12   disbanded its safety team, Counterclaimants have suffered from not only the diversion of funds,

13   investors, and consumers, (*Id.* ¶¶ 1, 144), but also the goodwill and value of its own mark. (*Id.* ¶¶

14   13, 115, 117, 119-121, 127, 129-131.) OAI's statements about their funding, talent, and mission

15   were false, made solely for recruitment purposes and have misled consumers into utilizing OAI's

16   services rather than Counterclaimants who are the true stewards of the mission. (*Id.* ¶¶ 2, 59-60,

17   93, 95.) Moreover, as alleged in the ACC, the public has come to assume that Counterclaimants'

18   products are somehow connected to OAI, proximately resulting in the loss of Counterclaimants

19   trademark, product identity, corporate identity, and ability to move into new markets, among other

20   harms. (*See id.* ¶ 114-121.) These detailed factual allegations, taken as true, are more than

21   sufficient to move past the pleading stage.

22       For the reasons set forth above, OAI's reliance on *Alfasigma* and *Homelight, Inc.* does not

23   alter this analysis. *See Alfasigma*, 2022 WL 899848, at *11 (plaintiff did not allege "proximate

24   cause" between the alleged false advertising and plaintiff's asserted injury");[4] *HomeLight, Inc. v.*

25   _____

26   [4] Further, as the Court in *Alfasigma* observed, the "classic Lanham Act false advertising claim" is
    one "in which one competito[r] directly injur[es] another by making false statements about his
27   own goods [or the competitor's goods] and thus inducing customers to switch." *Alfasigma*, 2022
    WL 899848, at *5. This "classic Lanham Act" false advertising claim is exactly what
28   Counterclaimants have pled here. (*See, e.g.,* ACC ¶¶ 2, 6, 26, 58, 60-61, 81, 95-96, 114-117, 152-
    153, 160-163.)

*Shkipin*, 694 F. Supp. 3d 1242, 1255 (N.D. Cal. 2023) ("the pleaded facts [did] not establish a sufficiently direct chain of causation between HomeLight's statements and the commercial harm alleged.") In sum, Counterclaimants have adequately alleged their false advertising claims.

> 2.   Counterclaimants Pled a Viable False Advertising State Law Claim

As shown above, Counterclaimants have plausibly pled a false advertising claim under the Lanham Act, and "[f]alse advertising claims under [Cal. Bus. Prof. Code] Section 17500 are 'substantially congruent' to claims made under the Lanham Act." *Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav, D. D*., 2014 WL 12579802, at *2 (C.D. Cal. June 4, 2014); *see also Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc*., 944 F.2d 1446, 1457 (9th Cir. 1991) (holding that under both, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks") (internal quotations omitted)). Accordingly, since Counterclaimants have met their burden of pleading a plausible claim against Counterclaim-Defendants for violating the Lanham Act, they have likewise pled a legally sufficient claim for violation of the California FAL.

OAI's main point of contention is that Counterclaimants cannot recover restitution for its FAL claim and do not seek an injunction.[5] (MTD at 11.) These arguments do not warrant dismissal. With respect to the injunction, Counterclaimants plainly and clearly requested injunctive relief throughout the ACC, including in its Lanham Act claims. (*See* ACC ¶¶ 120-21, 131-132, 145.) It is axiomatic that the ACC should be read and analyzed in their entirety and the ACC is not to be dismissed for technical defects so long as the complaint gives fair notice of the claim and the grounds on which it rests. *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). Moreover, even if there was some unwritten requirement that allegations must be expressly "incorporate[d] by reference," the dismissal of the FAL claim on this hyper-technical a basis – one that could easily be cured by amendment – is unwarranted.

Counterclaimants have alleged sufficient facts to state a plausible counterclaim for injunctive relief against Counterclaim-Defendants, and they are entitled to proceed on the merits.

---

[5] Counterclaimants hereby withdraw the remedy of "restitution" on their FAL claim only.

**B.      Counterclaimants Have Adequately Pled their Trademark Claims**

1.      Counterclaimants Have Pled Valid Trademark Infringement Claims

Counterclaimants have also pled actionable trademark infringement and false designation of origin claims under 15 U.S.C. Sections 1114 and 1125(a)(1), and state and federal common law. The parties do not dispute that to state a valid claim for trademark infringement, a claimant must plead: (1) that it owns rights to a valid, protectable mark; and (2) that the defendant's use of the mark is likely to cause confusion. *Petconnect Rescue, Inc. v. Salinas*, 2021 WL 5178647, at *3 (S.D. Cal. Nov. 8, 2021) Counterclaimants have clearly pled all of these elements and are entitled to proceed with its claims on the merits. Similarly, the elements for a claim for false designation of origin under 15 U.S.C. § 1125(a)(1) are identical to the elements of registered trademark infringement under 15 U.S.C. § 1114, except that the trademark need not be registered. *Gorski v. The Gymboree Corporation,* 2014 WL 3533324, at *5 (N.D. Cal. Jul. 16, 2014); *see also Brookfield Communications, Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (Section 15 U.S.C. § 1125(a)(1) applies to both registered and unregistered trademarks and is subject to the same standard as a claim for registered trademark infringement under 15 U.S.C. §§ 1114(1)).

It is clear from the face of the ACC that Counterclaimants have properly pled ownership of a valid and protectable mark through registration of the mark on the supplemental register and through common law rights. (ACC ¶¶ 123-24, 140-41). Additionally, Counterclaimants allege Counterclaim-Defendants' willful infringement of those rights and that this infringement is likely to and has caused confusion, or mistake and deceived the public. (*Id.* ¶¶ 125-128, 130-31, 141-44.)

OAI does not seriously dispute that the factual allegations properly plead the elements of Counterclaimants' trademark infringement claims. Instead, OAI's only challenge is the assertion that the Counterclaimants "do not plead secondary meaning or inherent distinctiveness" and that this somehow "compels dismissal." (MTD at 18.) This bald argument fails.

Counterclaimants have explicitly alleged that they have a valid and protectable mark (ACC ¶¶ 114, 123, 140) and have pled plausible facts that taken as true would establish rights through secondary meaning or otherwise. Indeed, these questions are inherently fact intensive and not

meant for resolution at the pleading stage. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, 2021 WL 922074, at *4 (C.D. Cal., Jan. 7, 2021) ("Whether a particular trade dress [or trademark] has acquired secondary meaning is a question of fact… [and] courts have determined that secondary meaning need only be pled generally for purposes of defeating a motion to dismiss.").

Moreover, "the law does not require plaintiff to specifically allege a secondary meaning to survive a motion to dismiss." *Sacramento Public Library Authority v. Sacramento Public Library Foundation*, 2020 WL 4476123, at *4 (E.D. Cal. Aug. 4, 2020); *see also Ashlar Inc. v. Structural Dynamics Research Corp.*, 1995 WL 639599, at *5 (N.D. Cal., June 23, 1995) aff'd (Fed. Cir. 1997) 124 F.3d 228 ("Although Graphsoft may ultimately be unable to prove a secondary meaning, the Court finds that Graphsoft is not required to plead secondary meaning in its countercomplaint" to proceed past the pleading stage.). In *Sacramento Public Library*, for example, the court held that at the pleading stage, it could "infer secondary meaning – or that the mark is associated with the plaintiff and its services – from allegations of consistent public use of the mark. 2020 WL 4476123, at *4. Here too, this Court can infer secondary meaning from the distinct and detailed allegations of Counterclaimants' consistent public use of the mark dating as far back as 2015. For example, they have alleged that they are the senior user of the "Open AI" mark having used it as early as March 2015, almost nine months before Counterclaim-Defendants announced the start of their company. (*See* ACC at ¶¶ 42, 44-45, 56, 65, 67, 82, 87, 105, 124, 140.) Moreover, since it first used the mark, Counterclaimants have acquired thousands of users and subscribers to its websites and services supporting an inference of public association. (*See id.* ¶¶ 50-57.) Given that a claimant need not specifically allege secondary meaning to survive a motion to dismiss, this argument fails. To that end, any issue as to whether secondary meaning was explicitly plead is easily curable by amendment as evidenced by OAI's own case law on this issue. (*See* MTD at 18-19 (citing *Day Crush, LLC v. Ehren Jordan Wine Cellars*, 2017 WL 6383269, at *4 (N.D. Cal. May 5, 2017) (plaintiff granted leave to amend to allege facts showing it had a valid, protectible ownership interest in disputed mark); *Foundry IV, Inc. v. Hard Carry Gaming, Inc.*, 2024 WL 211010, at *9 (C.D. Cal. Jan. 3, 2024) (same); *Hosseinzadeh v. Werlin*, 2015 WL 13918008, at *4 (C.D. Cal. Sept. 22, 2015) (same)).) This Court should not countenance

OAI's attempts to evade resolution on the merits through superficial, inapposite, and misapplied technicalities.

        2.    <u>Counterclaimants Have Not Waived the Ability to Rely on the Supplemental Registration</u>

OAI's half-baked argument that Counterclaimants waived their right to pursue their Section 1114 claim for infringement on a registered mark is unsupported by law or reason. Specifically, OAI asserts that statements made by Counterclaimants' counsel during an oral argument on OAI's preliminary injunction hearing somehow precludes asserting this claim now. (MTD at 19-21.) But contrary to OAI's contention, waiver only occurs with "the intentional relinquishment of a known right after knowledge of the facts." *Houston v. Ferguson*, 2011 WL 13373825, at *2 (N.D. Cal. Jan. 13, 2011); *see also id.* ("The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation).That standard is not met here.

OAI cites to one case, *Moon v. Bd. of Trustees of PAMCAH-UA Loc. 675 Pension Fund*, 319 F. Supp. 3d 1193, 1196 (N.D. Cal. 2018), to support its argument that this claim should be dismissed without leave for amend based on waiver. (MTD at 19.) In *Moon*, however, the court found that there was "a clear and intentional waiver of the Board's right to recover the pension payments it mistakenly paid" because the Board knew of plaintiff's ineligibility and after months of deliberation decided not to attempt to enforce the legal right it believed it possessed. *Moon*, 319 F. Supp. 3d at 1197. No such deliberate and intentional waiver exists here. Rather, the purported waiver at issue here was made during the hearing on OAI's motion for a preliminary injunction,[6] wherein this Court was asking counsel about the veracity of Counterclaimants USPTO registration specimen submitted as part of the record in OAI's injunction briefing (*See* Dkt. 56 at 22:9-24:2.) This purported "waiver" did not occur when this Court was questioning Counterclaimants' counsel about the affirmative claims it would bring, but whether the first use of the mark reflected in the registration application should be considered for purposes of the injunction. (*See id.* at 21-

---

[6] OAI erroneously cites to Dkt. 57, the transcript of an Initial Case Management Conference held on October 20, 2023 (MTD at 19) but the statements by counsel and the court cited by OAI, are actually found in Dkt. 56, the transcript of proceedings held on November 20, 2023.

25.) In fact, as the discussion with this Court continued, counsel for Counterclaimants specifically disputed that the supplemental register they now seek to enforce was unenforceable and maintained that Counterclaimants had rights pursuant to that registration. (*Id.* at 22:18-23, 25:3-23.) Moreover, this Court's admonition to counsel about being held to its admissions was about any disputes on "the general topic" of confusion, not claims that would be brought, as OAI misleadingly suggests. (*Id.* at 57:9-58:7.) These statements were not made after months of deliberation like in *Moon*, and they were not made at a hearing such as one on a motion for leave to amend Counterclaimants' claims. Instead, these statements were spontaneously made during a preliminary injunction hearing relating to OAI's affirmative claims. There is no showing of waiver here. *See, e.g. In re Hunt,* 238 F.3d 1098, 1102 (9th Cir. 2001) (Counsel's statement did not amount to a waiver of Appellant's rights, where counsel "merely stated" that the pleadings that were then before the court did not address attorney's fees and that he did not anticipate filing an amended pleading.)

        3.    <u>Neither the Statute of Limitations nor Laches Bar Counterclaimants'</u><br><u>Trademark Infringement Claims</u>

        (a)    *The Statute of Limitations Do Not Bar Counterclaimants'*<br>*Trademark Infringement Claim*

OAI's contention that the statute of limitations and doctrine of laches bar Counterclaimants' trademark infringement claims is erroneous. Neither doctrine applies here.

As an initial matter, OAI misleadingly argues that all of Counterclaimants' trademark infringement claims are barred by the statute of limitations because courts look to "the most analogous" state statute to determine the limitations period. (MTD at 13.) OAI cites to this Court's preliminary injunction order (Dkt. 63) as support for this proposition, but as this Court specifically stated, the Lanham Act has no statute of limitations and "[i]nstead, the Ninth Circuit applies the equitable doctrine of laches." (Dkt. 63 at 18.) *See also Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1023 (9th Cir. 2018) ("'the federal Lanham Act has no statute of limitations'… Rather, the Lanham Act vests courts with the power to grant relief according 'to the principles of equity.'") (Citations omitted). Thus, OAI's disingenuous argument that

Counterclaimants' federal trademark claims are barred by California's four-year statute of limitations fails.[7]

Assuming a limitations defense is available as to Counterclaimants' state law infringement claim (Claim 4), the defense still does not bar the claim here. The statute of limitations begins to run when the cause of action accrues, and it does not accrue until each element of the claim has been met. *See Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*, 656 F. Supp. 3d 1073, 1087 (C.D. Cal. 2023) ("Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements."). As alleged throughout the ACC, the larger junior company OAI used the "Open" mark and saturated the market with a trademark similar or identical to that of the smaller, senior Counterclaimants. (*Id.* at ¶¶ 115, 125-129.) This saturation has caused reverse confusion in the marketplace, causing harm to Counterclaimants' goodwill and value of its own mark after OAI's recent switch to a wholly closed for-profit company. (*Id.* ¶¶ 1, 155-159, 162.) Counterclaimants themselves only became aware this switch in 2023, when OAI released GPT-4, keeping its design a secret to everyone except OAI and Microsoft in an attempt to maximize Microsoft's profits, reinstated Altman as CEO, and replaced the majority of OAI's Board of Directors. (*See id.* ¶¶ 111, 155-159, 162.) The public in turn has voiced the diminished value of Counterclaimants' mark and principles that were coopted by Counterclaim-Defendants, claiming their use of "Open" is misleading and misdescriptive. (*Id.* ¶¶ 99-100.) The public has come to assume that Counterclaimants' products and services are somehow connected to OAI, resulting in the loss of Counterclaimants trademark value, corporate identity, and ability to move into new markets, among other harms. (*See id.* ¶ 13, 115, 120, 127.) The ACC is not subject to a statute of limitations dismissal on its face.

---

[7] Moreover, OAI misleadingly cites to *Bamforth v. Facebook, Inc.*, 2021 WL 4133753, at *4 (N.D. Cal. Sept. 10, 2021), and *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1004 (N.D. Cal. 2015) for the general proposition that a party may raise a statute of limitations defense if the defense is evidence on its face of the complaint. (MTD at 13.) Neither of those cases dealt with claims brought under the Federal Lanham Act where there is no statute of limitations.

1              (b)      *The Doctrine of Laches is No Bar to Counterclaimants' Claims*

2       For these same reasons, OAI's laches argument also sinks. To prevail on a laches defense,

3   OAI must first establish that Counterclaimants unreasonably delayed in filing suit, and that OAI

4   will suffer prejudice resulting from this purported unreasonable delay. *See Internet Specialties*

5   *West, Inc. v. Milon-DiGiongio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009). Courts

6   evaluate delay by looking at the most analogous statute of limitations period. *Id.* If a suit is filed

7   within the limitations period, the presumption of laches does not apply, if it is filed outside the

8   period, the presumption does apply. *Id.* As explained above, any analogous statute of limitations

9   period has not expired based on the allegations set forth in the ACC, precluding the presumption

10  of laches in this action.

11      Even if a presumption of laches exists, OAI's willful infringement, progressive

12  encroachment, and unclean hands negate the application of laches here. First, Counterclaimants

13  have sufficiently alleged willful infringement against Counterclaim-Defendants (*see* ACC at ¶¶ 3,

14  118-120, 126, 128, 130-31, 141, 143), thus precluding a defense of laches at this stage. *Evergreen*

15  *Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) ("the doctrine of laches

16  does not apply in cases of willful infringement") (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942,

17  956 (9th Cir. 2001)). Second, "[a] party with unclean hands may not assert laches" (*Jarrow*

18  *Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)), and courts are reluctant

19  to deny injunctive relieve based on delay in bringing suit when "the defendant knowingly and

20  deliberately adopted the mark charged as an infringement." *SunEarth, Inc. v. Sun Earth Solar*

21  *Power Co.*, 846 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012). Counterclaimants have sufficiently

22  alleged Counterclaim-Defendants unclean hands and knowing and deliberate adoption of a

23  Counterclaimants' mark. (ACC ¶¶ 3, 118-120, 126, 128-129, 141, 143-144.) Third, OAI's alleged

24  progressive encroachment precludes laches at this stage. (*See* Dkt. 63 at 19, quoting *National*

25  *Customer Engineering Inc. v. Lockheed Martin Corp.*, 1997 WL 363970, at *6 (C.D. Cal. Feb. 14,

26  1997) ("Laches is not measured from a defendant's first use of the contested mark, but from the

27  date that defendant began significantly impacting plaintiff's goodwill and business reputation.").

28  The allegations reflect this reality by asserting that as OAI switched from a non-profit for the

1   benefit of humanity company to a for-profit, closed organization, it stole Open AI's momentum,

2   leading to a loss in value of the trademark, in goodwill, and in ability to move into new markets.

3   (ACC ¶¶ 1, 115.)

4          Moreover, even if there was an unreasonable delay in filing suit (there was not), OAI's

5   argument fails at this stage because they have not and cannot sufficiently show that they will

6   suffer prejudice if this action proceeds. *See Aguila Management LLC v. International Fruit*

7   *Genetics, LLC*, 2020 WL 736303, at *4 (D. Az. Feb. 13, 2020) (not reaching E-System factors and

8   holding that "[e]ven finding a presumption in favor of laches, the application of laches at this

9   [motion to dismiss] stage is inappropriate because prejudice is not apparent on the face of the

10  Complaint"). Here, OAI can only point to de-contextualized allegations that OAI has grown into a

11  large company during the time it stole Counterclaimants' trademark name and thus it will suffer

12  prejudice by facing this suit. (MTD at 17 (citing ACC ¶¶ 1, 31, 154-55).) However, business

13  growth alone is "insufficient to establish prejudice." *See Derek & Constance Lee Corp. v. Kim*

14  *Seng Co.*, 391 F. App'x 627, 628 (9th Cir. 2010); *see also Internet Specialties*, 559 F.3d at 991–92

15  ("Laches is meant to protect an infringer whose efforts have been aimed at 'build[ing] a valuable

16  business *around its trademark* ' and 'an important reliance *on the publicity of [its] mark*'")

17  (emphasis in original, citations omitted). There is nothing in the complaint to suggest "an

18  important reliance on the publicity of [OAI's] mark." *Id.* To the contrary, the ACC alleges that

19  OAI has had its USPTO registration applications denied multiple times for being "highly

20  descriptive" and lacking the requisite distinction for protection. (ACC ¶¶ 109-111.)

21         Finally, but importantly, because the statute of limitations and laches defenses are fact

22  intensive inquiries, they are improper for resolution on a motion to dismiss. *See Sensible Foods,*

23  *LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011) ("[F]actual

24  determinations concerning when [a plaintiff] knew or should have known about the alleged

25  [claim] ... [are] inappropriate for resolution on a motion to dismiss."); *24/7 Customer, Inc. v. 24-7*

26  *Intouch*, 2015 WL 1522236, at *4 (N.D. Cal., Mar. 31, 2015) ("laches and statute of limitations

27  defenses often require a fact-intensive investigation that is inappropriate on a motion to dismiss.")

28  In *24/7 Customer*, the court held that plaintiff's complaint could only be properly dismissed on

21

1  laches or limitations grounds "if the complaint itself contained factual allegations demonstrating

2  that plaintiff definitively filed suit outside of the limitation period, or unreasonably delayed in

3  filing the suit and that defendant was prejudiced by this delay." *Id.* Similarly, in *Luna Distributing*

4  *LLC v. Stoli Group (USA), LLC*, 2018 WL 5099277, at *8 (C.D. Cal., July 10, 2018), the court

5  denied a motion to dismiss based on laches, noting that the defendant bears the burden of proving

6  the affirmative defense. It held that "a court will rarely be able to determine at the motion to

7  dismiss stage that laches applies, because a plaintiff's complaint, read with the required liberality,

8  is unlikely to establish as a matter of law that any delay by the plaintiff was unreasonable, or,

9  further, that the defendant was prejudiced by the delay." *Id.* As explained above, the ACC "read

10  with the required liberality" does not "establish as a matter of law that any delay by

11  [Counterclaimants] was unreasonable" or that Counterclaim-Defendants were prejudiced.

12  Because, at best, these are questions of fact regarding the appropriate statute of limitations, OAI's

13  motion to dismiss should be denied.

14      **C.**    **Counterclaimants Stated a Registration Application Cancellation Claim**

15      The third claim for relief seeks cancellation of OAI's pending applications with the

16  USPTO to register "OpenAI" on the Principal Register, Ser. Nos. 97/238,896 (filed Jan. 26, 2022)

17  and 98/010,861 (filed May 24, 2023). 15 U.S.C. § 1119. (*See also* ACC ¶¶ 133-137.) The basis for

18  the cancellation is that the "highly descriptive" mark "is impermissibly misdescriptive" in

19  violation of Sections 2(a) and 2(e)(1) of the Lanham Act. 15 U.S.C. § 1052(a) and 15 U.S.C. §

20  1052(e)(1). (*See also* ACC ¶¶ 3, 112, 116, 134-135. ) A claim of deceptiveness under Section 2(a)

21  and deceptiveness misdescriptiveness under Section 2(e)(1) "are intertwined because the Section

22  2(a) claim subsumes the Section 2(e)(1) claim." *Creel Abogados, S.C. & Carlos Creel Carrera v.*

23  *Creel, García-Cuéllar, Aiza Y Enríquez S.C.*, 2022 WL 1773814, at *10 (T.T.A.B. May 27, 2022).

24  A mark is "deceptive" if "it is misdescriptive of the character, quality, function, composition or

25  use of the goods or services." *Id*. District courts have the authority and are empowered to cancel or

26  otherwise decide disputes over trademark applications. *See BBK Tobacco & Foods LLP v. Cent*ral

27  *Coast Agriculture, Inc*., 97 F.4th 668, 670 (9th Cir. 2024).

28

WAYMAKER

The Lanham Act prohibits the registration of any requested trademark that when used on or in connection with the goods or services of the applicant is deceptively misdescriptive of them. *See Olinsky & Associates., PLLC v. Nutting*, 2021 WL 2779001, at *10 (N.D.N.Y. July 2, 2021). Registration should not be permitted if the mark both misdescribes the goods and services and consumers are likely to believe the misdescription. *See In re Phillips-Van Heusen Corp*., 63 U.S.P.Q.2d 1047 (T.T.A.B. Mar. 28, 2002). Counterclaimants have adequately and plausibly alleged both elements. (ACC ¶¶ 1, 3, 62, 95, 99-100, 112, 116, 134-135, 153.) Finally, Counterclaimants have alleged they "will be damaged by the registration of the" misdescriptive mark. (*Id*. ¶ 137.) A plausible and adequate cancellation claim has been stated.

OAI's arguments lose sight that the ACC is at the sufficiency of the pleading stage, not summary judgment, where admissible factual evidence and expert reports are essential. (MTD at 20-23.) Indeed, Counterclaimants' cancellation allegations exceed the "notice pleading" threshold of Rule 8. Fed. R. Civ. P. 8. For example, at this stage direct evidence of consumer deception is not required to overcome a motion to dismiss. Moreover, OAI's quarrelling with the meaning of factual allegations and screenshots demonstrating confusion and deception only serve to raise facts issues not amenable to resolution now. (MTD at 21; ACC ¶¶ 99-100.) The allegations must be accepted as true.[8]

Additionally, OAI baldly contends that to prevail on their cancellation claim the Counterclaimants must prove that "'OPENAI' does not have secondary meaning." (MTD at 22.) Not only is this argument irrelevant to a cancellation analysis, OAI well knows that its assertion/defense that its purported mark has acquired secondary meaning status is hotly disputed by the Counterclaimants, and in fact is a major component of their pending Ninth Circuit appeal. In fact, the ACC alleges that OAI has had its USPTO registration applications denied multiple

---

[8] OAI also seeks to use extrinsic evidence to argue the meaning of "open" and relies on search results for "OPEN-formative" and other trademark registrations. (Dkt. 109 at 21.) Not only is the use this type of extrinsic evidence improper, "[e]ach case must be decided on its own facts and issues, and prior registrations are not dispositive." *In re QVC, Inc.*, 2020 WL 599525, at *5 (T.T.A.B. Jan. 21, 2020); *see also In re General Mills IP Holdings II, LLC*, 124 U.S.P.Q.2d 1016, 1027 (T.T.A.B. Aug. 22, 2017) (comparisons to other cases "are rarely helpful").

1    times for being "highly descriptive" and lacking the requisite distinction for protection. (ACC ¶¶

2    109-111.) Further, whether a mark has acquired secondary meaning is a paradigm question of fact.

3    *See, e.g., Tone Brothers, Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994).

4         Finally, and more importantly, the Federal Circuit has made clear that: "[I]t is too well

5    established for argument that a mark which includes deceptive matter is barred from registration

6    and cannot acquires distinctiveness." *In re Budge Manufacturing Co.*, 857 F.2d 773, 777 (Fed. Cir.

7    1988); *see also In re Denver Mattress, Co., LLC*, 2019 WL 2371850, at *1 (T.T.A.B. May 3,

8    2019) (Section 2(a) bars the registration of a mark that consists of or comprises deceptive matter.

9    Such "[a] descriptive mark cannot be registered on the Principal or Supplemental Register, and

10   neither acquired distinctiveness nor a disclaimer of the deceptive matter can make it registrable.");

11   *Olinsky*, 2021 WL 2779001, at *11 ("Not only is a misdescriptive mark barred from registration, it

12   cannot gain distinctiveness.")

13        **D.     Counterclaimants Have Adequately Pled their Declaratory Judgment Claims**

14        Counterclaimants' declaratory judgment claims are also properly brought and should

15   survive the instant motion to dismiss. OAI does not challenge the factual sufficiency of the claims,

16   but simply argue that the claims should be stricken as "redundant" of OAI's trademark claims.

17   (*See* MTD at 23.) But declaratory judgment counterclaims should not be stricken "simply because

18   they concern the same subject matter or arise from the same transaction as the complaint."

19   *Stickrath v. Globalstar, Inc.*, 2008 WL 2050990 at *4 (N.D. Cal. May 13, 2008) (citations

20   omitted). "In patent and trademark infringement cases, for example, a court may find a defendant

21   has no liability for infringement 'without adjudicating the validity of the underlying intellectual

22   property.'" *Id*.

23        Moreover, declaratory relief is appropriate when the judgment will serve a useful purpose.

24   *Id.* (the court should focus on whether the counterclaims 'serve any useful purpose.'") In this

25   instance, Counterclaimants' declaratory judgment counterclaims are not merely "redundant" but

26   all serve a useful purpose. For example, the declaratory judgment claims for non-infringement of

27   OAI's statutory and common law trademark claims (Nos. 6 and 7) permits Counterclaimants to

28   continue seeking a declaration of non-infringement even should OAI voluntarily dismiss its

infringement claims. *See Fitness Anywhere, LLC v. Woss Enterprises, LLC*, 2014 WL 4802432, at *3 (N.D. Cal. Sept. 26, 2014) (denying dismissal of the counterclaims as duplicative where they served the purpose of allowing the accused infringer to continue seeking a declaration of non-infringement even should the plaintiff voluntarily dismiss its infringement claims). Similarly, a declaratory judgment as to the ownership of the "Open AI" mark (No. 8) is useful as it provides for an outcome that is not reached should this Court or jury simply find that Counterclaimants have not infringed on OAI's purported trademark rights. Moreover, as stated in *Strickrath*, Counterclaimants' declaratory judgment claim for invalidity of OAI's trademark (No. 9) is certainly proper as "courts should decline to dismiss counterclaims that seek a declaration that the patent or trademark is invalid." 2008 WL 2050990, at *4.

## V.     LEAVE TO AMEND SHOULD BE PERMITTED

If this Court for some reason finds that the ACC is somehow deficient in any respect, Counterclaimants respectfully request leave to file an amended pleading to cure any deficiency. The policy favoring amendment is to be applied with "extreme liberality" and dismissals with prejudice should occur in only "extraordinary" cases. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "[D]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by the amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). This is borne out by many of OAI's cited case authority. *See, e.g.*, *Luxul Tech.*, 78 F. Supp. 3d at 173 (granting plaintiff leave to amend its false advertising claim); *LegalForce*, 2019 WL 1170779, at *2 (affording plaintiff leave to amend to add "particularized allegations"); *Day Crush*, 2017 WL 6383269, at *4 (affording plaintiff leave to amend to allege facts that show plaintiff had valid, protectible ownership interest in disputed mark). Although the Counterclaimants believe no amendments are necessary, as described above, they are ready and able to clarify or add allegations should the Court find such additional allegations necessary.

## VI.    CONCLUSION

For all the foregoing reasons, Counterclaimants respectfully request that this Court find that Counterclaimants have adequately pled their claims in the ACC and therefore deny OAI's motion to dismiss in its entirety.

1

2    DATED:  July 10, 2024                WAYMAKER LLP

3

4                                        By: _____

5                                            RYAN G. BAKER
                                             *Attorneys for Guy Ravine & Open Artificial*
6                                            *Intelligence, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28