1   QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2   Robert P. Feldman (Bar No. 69602)
     bobfeldman@quinnemanuel.com
3   Margret M. Caruso (Bar No. 243473)
     margretcaruso@quinnemanuel.com
4   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California 94065-2139
5   Telephone:    (650) 801-5000

6   Robert M. Schwartz (Bar No. 117166)
     robertschwartz@quinnemanuel.com
7   Aaron H. Perahia (Bar No. 304554)
     aaronperahia@quinnemanuel.com
8   865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017-2543
9   Telephone:    (213) 443-3000

10  Sam S. Stake (Bar No. 257916)
     samstake@quinnemanuel.com
11  50 California Street, 22nd Floor
    San Francisco, California 94111-4624
12  Telephone:    (415) 875-6600

13  Dylan I. Scher (*pro hac vice*)
     dylanscher@quinnemanuel.com
14  51 Madison Avenue, 22nd Floor
    New York, New York 10010
15  Telephone:    (212) 849-7000

16  *Attorneys for OpenAI, Inc.*

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
 osnyder@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone:    (212) 351-4000

Brian M. Lutz (Bar No. 255976)
 blutz@gibsondunn.com
Rosemarie T. Ring (Bar No. 220769)
 rring@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone:    (415) 393-8200

*Attorneys for OpenAI, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| OPENAI, INC., a Delaware corporation, | Case No. 4:23-cv-03918-YGR |
| Plaintiff, | Assigned to the Hon. Yvonne Gonzalez Rogers |
| vs. | **REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |
| OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual, | |
| Defendants. | Date:    August 13, 2024<br>Time:    2:00 p.m.<br>Place:    Courtroom 1 (4th Fl.)<br>          1301 Clay St.<br>          Oakland, CA 94612 |
| AND RELATED COUNTERCLAIMS. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      DEFENDANTS' FALSE ADVERTISING CLAIMS SHOULD BE DISMISSED..............2

        A.      Defendants' Lanham Act False Advertising Claims Fails.........................................2

                1.      Defendants' Allegations Are Not Sufficient To Plead Commercial
                        Advertising Or Promotion ..........................................................................2

                2.      Defendants' Allegations Are Not Sufficient To Plead Falsity ......................5

                3.      Defendants' Allegations Are Not Sufficient To Plead Consumer
                        Deception ................................................................................................7

                4.      Defendants' Allegations Do Not Show Injury And Causation......................7

        B.      Defendants Fail to State A False Advertising State Law Claim ................................9

II.     DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE
        DISMISSED .........................................................................................................9

        A.      The Statute Of Limitations Bars Defendants' Trademark Infringement Claims...........9

        B.      Laches Bars Defendants' Trademark Infringement Claims....................................10

        C.      Defendants Fail To Plead Valid Trademark Rights...............................................12

        D.      Defendants Waived Their Ability To Rely On Their Supplemental
                Registration ..........................................................................................13

III.    DEFENDANTS' CANCELLATION CLAIM SHOULD BE DISMISSED ......................14

IV.     DEFENDANTS' DECLARATORY JUDGMENT CLAIMS SHOULD BE
        DISMISSED .......................................................................................................15

CONCLUSION ..................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>P</u><small>AGE</small>

### <u>Cases</u>

*24/7 Customer, Inc. v. 24-7 Intouch*,
  2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ........................................................................ 10

*Aguila Management LLC v. International Fruit Genetics LLC*,
  2020 WL 736303 (D. Ariz. Feb. 13, 2020) ............................................................................ 12

*Alfasigma USA, Inc. v. First Databank, Inc.*,
  2022 WL 899848 (N.D. Cal. Mar. 28, 2022) ............................................................................ 7

*Ashlar Inc. v. Structural Dynamics Research Corp.*,
  1995 WL 639599 (N.D. Cal. June 23, 1995) ........................................................................... 13

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ............................................................................... 3, 4, 5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 6

*Automated Pet Care Products, LLC v. PurLife Brands, Inc.*,
  2023 WL 3046592 (N.D. Cal. Apr. 21, 2023) ........................................................................ 12

*Bamforth v. Facebook, Inc.*,
  2021 WL 4133753 (N.D. Cal. Sept. 10, 2021) ....................................................................... 11

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) ................................................................................................................ 3

*Children's Health Defense v. Facebook, Inc.*,
  546 F. Supp. 3d 909 (N.D. Cal. 2021) .................................................................................... 4

*Derek & Constance Lee Corp. v. Kim Seng Co.*,
  391 F. App'x 627 (9th Cir. 2010) .......................................................................................... 11

*Eidson v. Medtronic, Inc.*,
  981 F. Supp. 2d 868 (N.D. Cal. 2013) ................................................................................... 14

*Genus Lifesciences Inc. v. Lannett Co.*,
  378 F. Supp. 3d 823 (N.D. Cal. 2019) .................................................................................... 4

*HomeLight, Inc. v. Shkipin*,
  694 F. Supp. 3d 1242 (N.D. Cal. 2023) .................................................................................. 8

*In re Hunt*,
  238 F.3d 1098 (9th Cir. 2001) .............................................................................................. 13

*IMDb.com, Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ......................................................................... 3, 4

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
   559 F.3d 985 (9th Cir. 2009) ......................................................................... 11, 12

*Lasoff v. Amazon.com, Inc.*,
   741 F. App'x 400 (9th Cir. 2018) ........................................................................ 8

*Lexmark International, Inc. v. Static Control Components*, *Inc.*,
   572 U.S. 118 (2014) ........................................................................................ 7, 8

*Luna Distribution LLC v. Stoli Group (USA), LLC*,
   2018 WL 5099277 (C.D. Cal. July 10, 2018) ..................................................... 10

*Maffick LLC v. Facebook, Inc.*,
   2021 WL 1893074 (N.D. Cal. May 11, 2021) ....................................................... 8

*Monster Energy Co. v. Vital Pharmaceuticals, Inc.*,
   2022 WL 1599712 (C.D. Cal. Apr. 19, 2022) ....................................................... 7

*Mosafer Inc. v. Broidy*,
   2022 WL 793029 (C.D. Cal. Feb. 4, 2022) ........................................................... 3

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
   2021 WL 922074 (C.D. Cal. Jan. 7, 2021) .......................................................... 13

*In Re Organik Technologies, Inc.*,
   41 U.S.P.Q.2d 1690 (T.T.A.B. 1997) .................................................................. 14

*Parts.com, LLC v. Google Inc.*,
   2014 WL 12461256 (S.D. Cal. June 25, 2014) .................................................... 11

*Pinkette Clothing, Inc. v. Cosmic Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ........................................................................... 10

*Powelson v. Sausalito Police Department*,
   2023 WL 7392289 (N.D. Cal. Nov. 8, 2023) ........................................................ 6

*Prager University v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020) ..................................................................... 4, 5, 6, 7

*R & A Synergy LLC v. Spanx, Inc.*,
   2019 WL 4390564 (C.D. Cal. May 1, 2019) ......................................................... 9

*Rashdan v. Geissberger*,
   2011 WL 197957 (N.D. Cal. Jan. 14, 2011) .......................................................... 9

*RPost Holdings, Inc. v. Trustifi Corp.*,
   2012 WL 12952728 (C.D. Cal. May 11, 2012) ...................................................... 4

*Sacramento Public Library Authority v. Sacramento Public Library Foundation*,
    2020 WL 4476123 (E.D. Cal. Aug. 4, 2020)...........................................................................13

*Sensible Foods, LLC v. World Gourmet, Inc.*,
    2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ...........................................................................11

*Sigma Dynamics, Inc. v. E. Piphany, Inc*.,
    2004 WL 2648370 (N.D. Cal. June 25, 2004)...........................................................................4

*In Re Tapco International Corp.*,
    122 U.S.P.Q.2d 1369 (T.T.A.B. 2017) ....................................................................................14

*Theodosakis v. Contract Pharmacal Corp.*,
    172 F. App'x 772 (9th Cir. 2006) ......................................................................................9, 10

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ......................................................................................11

### Statutes

15 U.S.C. § 1052(a) ....................................................................................................................14

15 U.S.C. § 1052(e)(1) ...............................................................................................................14

### Other Authorities

Fed. R. Civ. P. 41........................................................................................................................15

McCarthy on Trademarks and Unfair Competition (5th ed.)................................................12, 14

## MEMORANDUM OF FURTHER POINTS AND AUTHORITIES

## INTRODUCTION

Defendants' Opposition, like the Amended Counterclaim ("ACC"), seeks to convert a trademark dispute into a referendum on Plaintiff's internal governance or a proxy for an idea theft case.  Lacking viable claims, Defendants should not be allowed to use the legal process to pursue delusional claims, harass executives, and needlessly increase the duration and cost of litigation.

The Opposition fails to justify the ACC for several reasons.  First, Defendants' arguments do not cure their failure to allege facts supporting a false advertising claim—i.e., a statement in commercial advertising made to promote a product or service that is false or misleading to consumers.  And the case law they rely on does not salvage the fundamental problem with the ACC: the story Defendants tell is not one of false advertising that affects consumers.  It is about disgruntled individuals who are not consumers.

Second, Defendants are unable to identify any facts that can change what they already pled regarding their trademark infringement claims—Guy Ravine knew of the allegedly infringing acts eight years before filing suit and was immediately "concerned" by them.  The ACC's detailed allegations as to knowledge and timing establish that these claims are unavoidably time barred, warranting dismissal at the pleading stage.  Independently, an essential factual element *not* pled also warrants dismissal of the trademark claims: Defendants point to no factual allegations that are sufficient to support a finding they acquired secondary meaning in their asserted trademark.  Alternatively, Defendants' express disavowal to the Court and OpenAI that they are not asserting their supplemental registration in this action compels dismissal.  Defendants' attempts to excuse their waiver boil down to the bold assertion that they are free to say whatever they want in open court and not be bound by it.

Third, Defendants fail to identify factual allegations necessary for their cancellation claim— whether under the "deceptive" standard they now argue or under the "misdescriptive" standard that the ACC invoked in its conclusory recitation of elements.  Defendants failed to allege either (i) what they now argue—that "open" is an "industry term of art in the artificial intelligence ('AI') community"—or (ii) that consumers of Plaintiff's products are likely to believe that "industry term

1  of art" applies to the products they are using.

2        Finally, Defendants provide no persuasive reason to maintain their redundant declaratory

3  judgment counterclaims, which merely mirror Plaintiff's affirmative claims.

4        Because the ACC suffers from multiple fatal defects that cannot be cured, the Court should

5  dismiss it in its entirety with prejudice.

6                                **ARGUMENT**

7  **I.     DEFENDANTS' FALSE ADVERTISING CLAIMS SHOULD BE DISMISSED**

8        The ACC fails to identify any statements that constitute commercial advertising or promotion;

9  instead, the only statements alleged have nothing to do with products, consumers, or anything else

10  that is cognizable under false advertising laws.  A prime example of that failure is the ACC's reliance

11  on a Delaware incorporation certificate filed when OpenAI was formed—a document that the

12  Opposition does not even try to defend as capable of supporting a false advertising claim.  The ACC's

13  conclusory allegations and misstatements do not meet the pleading requirements for false advertising

14  claims under either federal or state law.

15        **A.      Defendants' Lanham Act False Advertising Claims Fails**

16        Defendants do not dispute that their Lanham Act false advertising claim requires pleading:

17  (1) a statement in a commercial advertisement or promotion, (2) that is false or misleading to a

18  substantial segment of the target audience, (3) that is likely to materially influence consumer

19  purchasing decisions, and (4) that has caused a direct injury to a commercial interest in reputation or

20  sales.  *Compare* Mot. 4, *with* Opp. 6.  Defendants have not sufficiently pled these required elements.

21              **1.      Defendants' Allegations Are Not Sufficient To Plead Commercial**

22                    **Advertising Or Promotion**

23        Defendants concede that the first element—whether the statement is "commercial advertising

24  or promotion"—requires an analysis of three elements: (i) commercial speech, (ii) made to influence

25  consumers to buy Plaintiff's goods or services, and (iii) disseminated sufficiently to the relevant

26  purchasing public. *Compare* Mot. 4, *with* Opp. 7.  Defendants must satisfy each of these elements,

27  but they do not identify factual allegations sufficient to establish any of them.

28        **(i) Commercial Speech.**  The first element of "commercial advertising or promotion" is

whether the statement is "commercial speech." The threshold test for "commercial speech" is whether the speech does "no more than propose a commercial transaction." *IMDb.com, Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020). Where the allegations "present a close question" regarding commercial speech (*id.*), courts consider three non-exclusive factors set forth in *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66-67 (1983) (Opp. 7). But if it is not a "close question" and the statement does not propose a commercial transaction, then it is not commercial speech. *IMDb.com*, 962 F.3d at 1122 ("Because [the challenged content does] not 'propose a commercial transaction,' we need not reach the *Bolger* factors."); *accord* Mot. 4. As Defendants implicitly concede, the allegedly false statements did not propose a commercial transaction. The challenged statements were made on or before December 11, 2015—the day Plaintiff's founding was announced. ACC ¶¶ 79, 80, 95.[1] These statements, which discuss Plaintiff's philosophy and governance, are purely informational or regulatory; they do not promote or even refer to any specific products or services, much less propose a commercial transaction for any products or services. *See id.* As they do not propose a commercial transaction, the Court's inquiry should end here. *IMDb.com*, 962 F.3d at 1122.

Defendants ignore the gating question of whether the statements proposed a commercial transaction and solely analyze the three *Bolger* factors. *See* Opp. 7. Even if the Court deemed the question sufficiently "close" to assess the *Bolger* factors, Defendants' claim would still fail. To satisfy *Bolger*, Defendants must show the challenged statements: (1) are advertisements, (2) referring to specific products, and (3) are by someone who "acted *primarily* out of economic motivation." *Ariix, LLC v. NutriSearch Corp*., 985 F.3d 1107, 1116 (9th Cir. 2021) (emphasis in original); *see also Mosafer Inc. v. Broid*y, 2022 WL 793029, at *6 (C.D. Cal. Feb. 4, 2022) ("Speech is not advertising speech where it does not promote the speaker's product for sale or encourage a

---

[1] Defendants incorrectly assert it is "undisputed" that Plaintiff's "statements" allude or refer to "products," that one "product permeated [Plaintiff's] website," and that Plaintiff "widely disseminated statements about the product beyond the website." Opp. 8-9 (citing Mot. at 2, 10, 17, 22; ACC ¶¶ 95-98). Plaintiff has no notice (or even an idea) of what Defendants are alleging. Defendants do not cite any concession, or statements in Plaintiff's announcements, supporting this assertion.

commercial transaction with the user.") (citation omitted).  Here, the first two factors are easily resolved:  the December 2015 blog post is not an advertisement, nor does it refer to a specific product. *Cf. Ariix*, 985 F.3d at 1116 (challenged nutrition guide referred to specific products).  On that basis alone, the Court need not reach the third.  *See IMDb.com*, 962 F.3d at 1122 (holding speech noncommercial where the first two *Bolger* factors were not satisfied); *see also Children's Health Def. v. Facebook, Inc*., 546 F. Supp. 3d 909, 936 (N.D. Cal. 2021) (rejecting the "assertion that a defendant can be held liable under the Lanham Act based on speech that is untethered to the sale of goods or services").  In any event, Defendants have not alleged any impermissible economic motivation.  *See Ariix*, 985 F.3d at 1117 (explaining that "not all types of economic motivation support commercial speech").

Defendants' attempt to distinguish Plaintiff's cited cases based on the form of the statements (*e.g*., emails and content moderation guidelines) (Opp. 8) misses the mark.  The proper inquiry focuses on the intended audience and purpose of the speech, not its format.  *See Mot. 5 (discussing Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) and *RPost Holdings, Inc. v. Trustifi Corp*., 2012 WL 12952728 (C.D. Cal. May 11, 2012)); *see also Sigma Dynamics, Inc. v. E. Piphany, Inc*., 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004) (Opp. 8) (statements made "primarily to influence investors that may have an incidental effect of promoting goods to customers" nonactionable); *Genus Lifesciences Inc. v. Lannett Co*., 378 F. Supp. 3d 823, 835 (N.D. Cal. 2019) (similar).

**(ii) Influencing Consumers.**  The second element of "commercial advertising or promotion" is whether the challenged statements were made "for the purpose of influencing consumers to buy [Plaintiff's] goods or services."  Mot. 5; *accord* Opp. 7-8.  Unlike the threshold "commercial speech" element, which looks at whether the statements were commercial in nature, this element looks at whether the statements were made to influence consumers to buy Plaintiff's goods or services.  *See Ariix*, 985 F.3d at 1120 (remanding to consider whether statements were made to influence consumer purchases of the defendant's products, despite finding commercial speech).  Here, Defendants do not identify any allegations that Plaintiff's statements were intended to influence consumers.  Instead, Defendants focus on the statements' purported effect on a former OpenAI board member, potential employees, and Ravine.  Opp. 8 (citing ACC ¶¶ 59-60, 90-91, 93, 150, 152).  This is plainly

insufficient.  *See Ariix*, 985 F.3d at 1120 (purpose must be to influence "consumers"); *Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (holding statements were not "commercial advertising or promotion" because speech did not have "promotional purpose" to attract consumers).

**(iii) Dissemination.**  The third element of "commercial advertising or promotion" is whether the challenged statements were disseminated to the relevant purchasing public.  Defendants made no factual allegations showing that the challenged statements, including the certificate of incorporation or private statements to Ravine, were disseminated to the relevant purchasing public.  *Compare* Mot. 4-5, *with* Opp. 8 (citing ACC ¶¶ 59-60, 90-91, 93, 150, 152).  The Opposition further claims that Plaintiff's "statements [were] disseminated through its website about [Plaintiff's] openness."  Opp. 8 (citing ACC ¶¶ 59-60, 90-91, 93, 150, 152).  But those allegations say nothing about "openness," nor have Defendants ever identified any statement on Plaintiff's website about "openness."

### 2.   Defendants' Allegations Are Not Sufficient To Plead Falsity

In addition to pleading "commercial advertising or promotion," Defendants must plead that the statement in the advertisement or promotion was false or misleading to a substantial segment of the target consumers.  The Opposition fails to identify any false factual allegations.  Each supposed false statement is addressed below.

**Funder Commitments in Blog Post.**  There is no allegation in the ACC that funders did not *commit* $1 billion to Plaintiff, and the Opposition points to no such allegation.  Instead, the Opposition argues that the amount funders committed in 2015 is disproved by the amount of "on hand funds" in later years.  Opp. 9-10.  The very nature of a financing *commitment* is that the money has not been transferred.  Defendants' argument ignores the plain language of the statements they point to, which repeatedly refer to "commitments," not cash on hand.  *See id.* (citing ACC ¶¶ 6, 58 ("$1 billion in funding commitments"), ¶¶ 61-62 ("$1 billion commitment"), ¶¶ 80-81 ("'$1 billion' in funding commitments"), ¶ 91 ("$1 billion in donor commitments"), ¶ 151 ("'committed $1 billion'")).  Defendants also ignore that a statement in December 2015 cannot be rendered false due to later changed circumstances.  *Compare* Mot. 6, *with* Opp. 9-10.

Defendants' attempt to recharacterize the ACC as alleging the funding commitment statement was "likely to mislead or confuse consumers" (Opp. 10) also fails.  Defendants do not identify factual

allegations to suggest why the statement was likely to mislead, or any allegations that the statement was misleading to consumers. Opp. 10 (citing ACC ¶¶ 61, 80, 83-85). Indeed, none of the mentions of "consumers" in the ACC have to do with Defendants' false advertising claims. *Compare* ACC ¶¶ 114, 125, 135 (referencing "consumers" related to trademark allegations under 15 U.S.C. §§ 1114, 1119, and 1125(a)(1)(A)), *with* ACC ¶ 116 (not referencing "consumers" related to false advertising allegations under 15 U.S.C. § 1125(a)(1)(B)). Defendants' argument "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Research Team in Blog Post.** Defendants fail to show how or why the statement in Plaintiff's December 2015 blog post about its research team was false or misleading when made. *Compare* Mot. 6-7, *with* Opp. 10 n.3 (citing ACC ¶¶ 2, 6, 60-61, 74, 80). And none of Defendants' cited paragraphs allege any effect the statement had on consumers. Opp. 10 n.3.

**Statements in Incorporation Certificate.** Defendants appear to have abandoned any pretense that Plaintiff's incorporation certificate can form the basis of their claim. *Compare* Mot. 7, *with* Opp. 9-11. As Defendants' silence implicitly concedes, they have no basis to proceed with a false advertising claim based on statements in Plaintiff's incorporation certificate. *See Powelson v. Sausalito Police Dep't*, 2023 WL 7392289, at *9 (N.D. Cal. Nov. 8, 2023) (dismissing claim with prejudice because plaintiff's failure to substantively respond in opposition constitutes waiver).

**Other Purported Statements.** Defendants argue Plaintiff said it would "be open-source" and "not keep its technology closed and secret for proprietary commercial reasons," but the ACC fails to allege that Plaintiff made such a public statement. Opp. 10. Instead, Defendants cite an alleged agreement a former board member claims he had with Altman and Brockman. *Id.* (citing ACC ¶ 97). Even if the alleged contents of the agreement were accurate, the ACC does not allege Plaintiff disseminated this private agreement to the relevant public to influence consumer purchasing decisions. *See id.*; *see also Prager*, 951 F.3d at 1000 ("contracts are not advertisements").

The remaining statements Defendants rely on (Opp. 10-11) are also not actionable. Alleged statements about "openness" and "the benefit of humanity," including statements published by third-parties (Opp. 11 (referring to ACC ¶ 95 but erroneously citing ACC ¶ 98)), are inherently subjective and nonactionable. *See Ariix*, 985 F.3d at 1121 (unquantifiable statements and opinion are

1    nonactionable); *Prager*, 951 F.3d at 1000 (statements from YouTube that "the world is a better place

2    when we listen, share and build community" and that YouTube believes "people should be able to

3    speak freely, share opinions, foster open dialogue" were nonactionable opinion).

**3.     Defendants' Allegations Are Not Sufficient To Plead Consumer Deception**

5        Defendants were required to plead that each challenged statement "actually deceived or has

6    the tendency to deceive a substantial segment of [OpenAI's] audience."  Mot. 8.  The Opposition

7    points to no allegations that adequately plead consumer deception.  The allegations Defendants point

8    to as purportedly showing deception focus on *Ravine*'s perception as a would-be competitor, not the

9    perception of a consumer.  *See* Opp. 11 (citing ACC ¶¶ 62, 80-81, 91, 150-151); ACC ¶ 152 (alleging

10   "Counterclaimants believed" those statements).  And Defendants cannot rely on a presumption of

11   consumer deception (Opp. 11-12) because the ACC has no allegations that, if true, support literal

12   falsity.  *See Monster Energy Co. v. Vital Pharms., Inc*., 2022 WL 1599712, at *14 & n.11 (C.D. Cal.

13   Apr. 19, 2022) (Opp. 11) (rejecting presumption where Monster "has not established literal falsity").

**4.     Defendants' Allegations Do Not Show Injury And Causation**

15       Finally, Defendants were obligated to allege a direct injury to their commercial reputation or

16   sales as well as proximate causation.  Mot. 8-9.  Defendants insist they pled a "classic Lanham Act"

17   advertising claim, where "one competitor directly injures another by making false statements about

18   his own goods or the competitor's goods and thus inducing customers to switch."   Opp. 13

19   n.4.(cleaned up).  They did not.  The ACC does not allege any statement Plaintiff made about any

20   products that allegedly induced any consumer to "switch."

21       Defendants claim they allege "harm to business reputation and sales."  Opp. 12 (citing

22   *Lexmark Int'l, Inc. v. Static Control Components., Inc*., 572 U.S. 118 (2014) (Mot. 9) and

23   *Alfasigma USA, Inc. v. First Databank*, 2022 WL 899848 (N.D. Cal. Mar. 28, 2022) (Mot. 9).  But

24   their cited cases confirm the inadequacy of their allegations.  In *Lexmark*, the plaintiff supported its

25   reputational and sales harm with plausible factual allegations that the defendant disparaged its

26   "business and products," implying illegality, and showed a near 1:1 causal link in lost sales.  572

27   U.S. at 137, 138-139.  The *Alfasigma* claims were similarly concrete, with the plaintiff alleging detail

28   as to lost sales in payor reimbursement and patient buying changes.  2022 WL 899848, at *5.  Unlike

those cases, Defendants do not allege Plaintiff disparaged their business or products.  Nor does the ACC ever allege (despite what the Opposition claims) any lost "sales."  *See* Opp. 12 (citing ACC ¶¶ 13, 115, 117, 119-120, 129-131, 143-145.)  Defendants' conclusory assertions of harm to "reputation and credibility" and "goodwill" (ACC ¶ 117) are indistinguishable from those rejected in *LegalForce, Inc. v. LegalZoom.com*, *Inc.  See* 2019 WL 1170779, at *2 (N.D. Cal. Mar. 13, 2019) (finding "harm to business, reputation, and goodwill" conclusory).

Lacking factual allegations relating to harm from alleged consumers' deception, Defendants rely on trademark injuries.  *See, e.g.*, Opp. 13 (asserting harms to "trademark, product identity, [and] corporate identity").  But that does not suffice to plead false advertising injuries.  Trademark claims arise from consumer confusion about the source of goods or services; false advertising claims target misleading statements about the quality or traits of goods or services.  *Lexmark*, 572 U.S. at 133 (false advertising injury "occurs when deception of consumers causes them to withhold trade from the plaintiff").  Otherwise, the false advertising claim is merely duplicative and should be dismissed on that ground.  *See Lasoff v. Amazon.com, Inc*., 741 F. App'x 400, 402 (9th Cir. 2018) (dismissing "false advertising claim fails because it was duplicative of his infringement claim").

Even if Defendants could plead any actionable injury, they still fail to plead any facts showing that Plaintiff proximately caused that injury.  Opp. 13-14.  Defendants' cited authority undermines their position.  *See HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1255 (N.D. Cal. 2023) (holding plaintiff failed to plead facts showing direct causal link).  As in *HomeLight*, Defendants plead no facts directly tying their alleged losses to Plaintiff's statements.  The Opposition has no response to the Motion's point that alleged loss of investors or employees cannot proximately cause lost sales.  *Compare* Mot. 9, *with* Opp. 13-14.  Defendants' theory rests on a daisy-chain of speculative inferences, while ignoring their admitted choice to stop pursuing their business in 2015.

\*     \*     \*

Given Defendants' twice-failed efforts to adequately plead a Lanham Act false advertising claim, and the ACC's irreparable defects, the Court should dismiss this claim with prejudice.  *See Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021) ("the Lanham Act does not confer a special license to shoot first, and ask questions later").

**B.     Defendants Fail to State A False Advertising State Law Claim**

Defendants do not address Plaintiff's arguments about Ravine's purported meeting with Brockman, or about causation, reliance, or economic loss.  Mot. 10-12; Opp. 14; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323-24, 326-27 (2011).  Instead, they argue their California False Advertising Law ("FAL") claim is "substantially congruent" with the Lanham Act.  Opp. 14.  If so, the Court should dismiss the FAL claim for the same reasons as the Lanham Act claim.  *See R & A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *15 (C.D. Cal. May 1, 2019).

Separately, the FAL claim should be dismissed because Defendants do not seek any recoverable remedy.  Defendants withdrew their FAL restitution request, leaving an injunction as the only possible remedy.  Opp. 14 n.5; Mot. 11.  But they did not plead a request for injunctive relief for their FAL claim.  Defendants' assertion that the counterclaims "should be read and analyzed in their entirety" (Opp. 14) misconstrues the law, which does not permit shotgun pleadings.  *See Rashdan v. Geissberger*, 2011 WL 197957, at *10 (N.D. Cal. Jan. 14, 2011).  A request for an injunction to stop alleged infringement (ACC at 48-49) cannot be read or analyzed as a request to stop alleged false advertising.

Contrary to Defendants' assurances, amendment would not "easily" fix the problem (Opp. 14) because an injunction against false advertising requires imminent or certain impending false advertising injury.  *See* Mot. 12 (citing *Kwikset*, 51 Cal. 4th at 337).  Because Defendants' FAL claim is based on alleged past harm (Opp. 13 (citing ACC ¶¶ 1, 13, 115, 117, 119-121, 127, 129-131, 144)), amendment would be futile.

**II.     DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE DISMISSED**

**A.     The Statute Of Limitations Bars Defendants' Trademark Infringement Claims**

Defendants do not dispute that courts can dismiss a state law infringement claim under the statute of limitations.  *E.g.*, Opp. 18-19.  Nor could they.  *See* Mot. 13-14.  And, contrary to Defendants' contention (Opp. 18-19), a statute of limitations defense also applies to Lanham Act claims.  *See* Mot. 13-14; *accord*, *Theodosakis v. Cont. Pharmacal Corp.*, 172 F. App'x 772, 773 (9th

Cir. 2006) (Lanham Act infringement claim barred by statute of limitations).[2]

Defendants' effort to evade the statute of limitations defies logic.  They do not dispute the ACC's allegations that they knew of Plaintiff's use of "OpenAI" in 2015, that they were immediately "concerned" by it, and that Plaintiff's sale or offering for sale of "goods and services under a mark or name confusingly similar" form the basis of their infringement claims.  ACC ¶¶ 86-91, 114, 142. Yet they now argue that their trademark infringement claims did not accrue until Plaintiff's "recent switch to a wholly closed for-profit company."  Opp. 19.  But that alleged "switch" (which they seem to view as the accrual date for their false advertising claims) is wholly irrelevant to the source/affiliation confusion issue that underlies an *infringement* claim—as opposed to a false advertising claim, which accrues when the aggrieved party becomes aware of the alleged falsity. *E.g.*, *Theodosakis*, 172 F. App'x at 773 (affirming statute of limitations bars claim where party "knew about the potential infringement in late 1997, and did not file suit until 2003").  That Defendants decided only last year (after being sued) that they did not like the alleged confusion (Opp. 19) is immaterial to when their purported claim accrued.

### B.    Laches Bars Defendants' Trademark Infringement Claims

Defendants cite no reason laches does not bar their trademark claims.

Defendants fail to rebut the presumption of laches that applies because Defendants' asserted trademark claims accrued before the analogous statute of limitations period.  *See* Section II.A. Instead, they emphasize that laches is not usually an appropriate ground for dismissal at the pleading stage.  Opp. 21-22.  That is because it is rare for a plaintiff to allege it first learned of, and became concerned by, the defendant's use years outside of the statute of limitations.  *Cf.* Opp. 21-22 (citing *24/7 Customer, Inc. v. 24-7 Intouch*, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015)).  Or, if so, the plaintiff typically points to cease-and-desist letters or ongoing settlement negotiations to explain its delay, *see* Opp. 22 (citing *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL 5099277, at *8

---

[2]  That Congress left the limitations period for Lanham Act claims up to the states does not mean the defense does not exist; rather, by doing so, it preserves the robust concept of laches for such claims. *See, e.g.*, *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1018, 1021-25 (9th Cir. 2018) (distinguishing Lanham Act laches from Supreme Court's rejection of laches defenses to claims brought under the Copyright Act and Patent Act, which each specify a limitations period).

1   (C.D. Cal. July 10, 2018)), or relevant factual disputes that need to be resolved, *see* Opp. 21 (citing

2   *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011)).

3         That is not the case here. *E.g.*, ACC ¶ 86. This is the unusual case where the party asserting

4   trademark infringement makes perfectly clear that it was aware of its alleged claim years earlier and

5   had no excuse not to assert its claim within the limitations period. On these facts, Rule 12 dismissal

6   is proper. *See Parts.com, LLC v. Google Inc.*, 2014 WL 12461256, at *3-6 (S.D. Cal. June 25, 2014)

7   (dismissing with prejudice); *Bamforth v. Facebook, Inc.*, 2021 WL 4133753, at *12 (N.D. Cal. Sept.

8   10, 2021) (similar); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1020 (N.D. Cal. 2015) (similar).

9         Defendants' arguments concerning the *E-Systems* laches factors fare no better. Defendants

10  do not dispute that their alleged trademark is weak, that they were not diligent in enforcing it, that

11  they will not suffer harm if relief is denied, or that Plaintiff's use of its "OpenAI" trademark was

12  "open and notorious," which, as a matter of law, is evidence of good faith (*see* Mot. 16). *Compare*

13  Mot. 14-17, *with* Opp. 20-22. Instead, Defendants assert Plaintiff's alleged "unclean hands" and

14  "progressive encroachment." Opp. 20. But those phrases do not appear in the ACC, and Defendants

15  point to no alleged facts that would support either one. And Defendants' argument concerning

16  allegedly "willful infringement" (Opp. 20) rests entirely on the use of the conclusory word "willful"

17  (ACC ¶¶ 3, 118-120, 126, 128, 130-31, 141, 143), as well as vague and conclusory allegations that

18  Plaintiff had "actual knowledge of the … Open AI Mark," Defendants' prior use of it, and

19  Defendants' 2017 supplemental registration (ACC ¶¶ 118, 128)—with no factual allegations of what

20  use in commerce Plaintiff allegedly knew of, or when. Such conclusory allegations do not defeat

21  laches. *See* Mot. 3 (court need not construe as true conclusory statements); *cf. Parts.com*, 2014 WL

22  12461256, at *6 (bad faith insufficiently alleged).

23        Finally, Defendants are incorrect that Plaintiff cannot show prejudice (Opp. 21) based on its

24  "business growth and product distribution using the name OpenAI" over the near decade during

25  Defendants' delay (Mot. 16-17). Defendants ignore every supporting case that Plaintiff cited on this

26  point (Mot. 17), and their cited cases (Opp. 21) are factually inapposite. *See Derek & Constance Lee*

27  *Corp. v. Kim Seng Co.*, 391 F. App'x 627, 628 (9th Cir. 2010) (no prejudice where "very little

28  evidence that there was any public association between its company and the … brand"); *Internet*

*Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 992 (9th Cir. 2009) (no prejudice where party "did not spend the time … developing brand recognition of its mark"); *Aguila Mgmt. LLC v. Int'l Fruit Genetics LLC*, 2020 WL 736303, at *4 (D. Ariz. Feb. 13, 2020) (no prejudice where party did not show investment in "relevant marks as the identity of its business").

Further, Defendants are incorrect that "nothing in the complaint … suggest[s]" the "right" kind of prejudice, such as the accused infringer "building a valuable business around its trademark.'" Opp. 21 (cleaned up) (quoting *Internet Specialties*, 559 F.3d at 991-92). In fact, the ACC alleges Plaintiff used its "cynically-named" trademark "to become the world's most powerful AI company." ACC ¶ 2; *see also id*. ¶ 2 (alleging Plaintiff "deployed the Open AI name" as a tool), ¶ 7 (alleging Plaintiff became one of the three most successful AI companies). It is hard to imagine more straightforward allegations showing prejudice from delay.

## C. Defendants Fail To Plead Valid Trademark Rights

Defendants concede that they must sufficiently plead ownership of a valid, protectable mark. Opp. 15. But the sole factual allegations they point to as proof of the sufficiency of their counterclaims are registration on the Supplemental Register and continuous use in commerce. *Id.* (citing ACC ¶¶ 123-24, 140-41). Neither is sufficient to allege valid protectable rights. A supplemental registration does *not* establish trademark rights. 2 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 19:38 (5th ed.) ("a designation on the Supplemental Register is not a 'trademark' at all but is capable of someday in the future becoming a trademark"). Rather, it is "an 'admission against interest' that the registered mark is not yet a protectable trademark." *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, 670 F. Supp. 3d 946, 951 (N.D. Cal. Apr. 21, 2023).

Defendants concede they did not plead secondary meaning, but contend they alleged facts sufficient to establish it. Opp. 16-17. They are mistaken. Alleged continuous use since 2015 alone is not sufficient to establish secondary meaning, especially given the allegations that Plaintiff began using OpenAI in 2015 (¶¶ 86-87), rendering its use non-exclusive. *See OpenAI, Inc. v. Open A.I., Inc.*, 2024 WL 1218331, at *7 (N.D. Cal. Feb. 28, 2024) (listing secondary meaning factors); *see also* ACC ¶¶ 51, 57 (alleging fewer than 400 "users" submitted their email addresses to Defendants' "announcement will be made soon" webpage before December 11, 2015). As such, Defendants are

not in the same position as the trademark owner in *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 2021 WL 922074, at *5 (C.D. Cal. Jan. 7, 2021), which pled exclusive use *and* significant advertising, or the plaintiff in *Sacramento Public Library Authority v. Sacramento Public Library Foundation*, 2020 WL 4476123, at *4 (E.D. Cal. Aug. 4, 2020), which had used its mark for over 40 years.

Defendants cite two cases that they contend excuse their failure to allege secondary meaning. *See* Opp. 16. But both cases pointed to the opposing party's failure to cite precedent dismissing claims for failure to allege secondary meaning. *See Sacramento Pub. Libr. Auth.*, 2020 WL 4476123, at *4 ("defendants cite no authority to the contrary relevant on a motion to dismiss"); *Ashlar Inc. v. Structural Dynamics Research Corp.*, 1995 WL 639599, at *5 (N.D. Cal. June 23, 1995) ("Ashlar has not cited one case ... that requires a party claiming trademark infringement to plead that its trademark has a secondary meaning"). That is not the case here. *See* Mot. 18-19. Defendants simply ignore Plaintiff's cited authority.

### D.   Defendants Waived Their Ability To Rely On Their Supplemental Registration

Defendants do not dispute that their attorney said they are "not trying to enforce a USPTO registration," that they are "not bringing [a] claim to enforce a trademark ownership based on that supplemental registration," and that they are "not seeking any rights independent of our common law rights." Mot. 19. Defendants seek to be excused from these admissions by arguing that these multiple statements were "spontaneously made during a preliminary injunction hearing" and made without deliberation and intention. Opp. 17-18. That contradicts the record. Those statements were made knowingly, voluntarily, unambiguously, and after deliberation by prior counsel; they were the reason Defendants chose not to respond to Plaintiff's challenges to the validity of Defendants' supplemental registration in their opposition and tried to sidestep the Court's questioning at the hearing—seven weeks after receiving Plaintiff's initial brief. *See* Mot. 19-20. That Defendants' counsel claimed the supplemental registration is not *generally* unenforceable (Opp. 18) is irrelevant; Defendants' counsel represented that it was not enforcing the supplemental registration *in this action*.

Defendants' cited authority, which did not involve representations to the Court during a hearing (Opp. 17-18), does not excuse Defendants' waiver. *See, e.g.*, *In re Hunt*, 238 F.3d 1098, 1102 (9th Cir. 2001) (alleged waiver as to counsel's statements during a deposition about whether he

1  "anticipate[d] filing an amended pleading," and where he "indicated that he recognized that there had

2  been no waiver" and "explicitly acknowledged the possibility that Hunt would change his mind").

3  Nor does the fact that the Court later in the hearing told the parties that they would be bound by their

4  admissions.  Opp. 17-18.  Defendants' notion that representations to the Court only matter if the

5  Court issues a specific admonition before each one defies reason.

6  ### III.  DEFENDANTS' CANCELLATION CLAIM SHOULD BE DISMISSED

7          Defendants' arguments fail to salvage their defective and implausible cancellation claim.

8  First, Defendants argue that secondary meaning in the OpenAI mark is "irrelevant" because a

9  deceptive trademark can be cancelled under 15 U.S.C. § 1052(a) irrespective of secondary meaning.

10  Opp. 23-24.  But the cancellation claim is not premised on Section 1052(a)'s relief for deceptive

11  marks; it is predicated on, and cites, 15 U.S.C. § 1052*(e)(1)*, which addresses marks that are

12  deceptively *misdescriptive*, and the ACC alleges that the Plaintiff's mark is "impermissibly

13  *misdescriptive*" and "*misdescribes* the goods and services to which it applies, and that consumers are

14  likely to believe the *misdescription.*"  ACC ¶¶ 134-135 (emphases added).   Thus, Defendants'

15  arguments based on Section 1052(a) are irrelevant—notwithstanding the reference to "Section 2(a)

16  of the Lanham Act" (ACC ¶ 134).  *See, e.g.*, *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 891

17  (N.D. Cal. 2013) (dismissing claim based on its substance, rather than how it was styled).

18          Further, even if Defendants had alleged "deceptiveness" in violation of 15 U.S.C. § 1052(a),

19  that claim would also fail because it requires pleading the alleged deception "is 'material' in that it

20  is likely to significantly induce a purchaser's decision to buy."  1 McCarthy § 11:55 (5th ed.)

21  (collecting cases).  Defendants do not allege (or argue in the Opposition) that whether the goods and

22  services that Plaintiff sells satisfy Defendants' definition of "open to the public" is "material" to

23  consumers' purchasing decisions.  And it would strain credulity for them to have done so.  *Cf. In Re

24  Organik Techs. Inc.*, 41 U.S.P.Q.2d 1690, *4 (T.T.A.B. 1997) (ORGANIK mark for textiles and

25  clothing that was not derived from organic plant or free of chemical processing satisfied § 2(a)

26  materiality prong because "prospective purchasers with allergies or an interest in purchasing

27  'environmentally friendly' products would be *strongly affected* by their belief that the goods are

28  'organic'") (emphasis added); *In Re Tapco Int'l Corp.*, 122 U.S.P.Q.2d 1369, *7 (T.T.A.B. 2017)

(KLEER mark for building adhesive that was not transparent satisfied § 2(a) materiality prong because "a clear finish is often touted in advertising or product reviews" and "clear adhesives have important and desirable advantages over non-transparent adhesives"). Thus, Defendants' cancellation claim can only be maintained if Plaintiff's mark *currently* lacks secondary meaning. *See* Mot. 22. A dispute about *when* that secondary meaning was acquired (*see* Opp. 23) is not the relevant inquiry and cannot cure the ACC's failure to allege it was never acquired. *See* Mot. 22-23.

Second, Defendants' claim fails because they do not identify any factual allegations that adequately plead misdescriptiveness or that consumers are likely to believe it. None of Defendants' cited paragraphs (Opp. 23 (citing ACC ¶¶ 1, 3, 62, 95, 99-100, 112, 116, 134-135, 153)) alleges what they now argue—that "open" is an "industry term of art in the artificial intelligence ('AI') community" (Dkt. 113 at 2), or that consumers are *likely to believe* that a product they are acquiring is open source if, in fact, it is not (Opp. 23). Because Count 3 of the ACC is missing these facts, it must be dismissed. Paragraphs 99-100 of the ACC do not change that. Plaintiff does not need to "quarrel" about the screenshots in those paragraphs. Opp. 23. The paragraphs themselves (like the screenshots) fail to allege any consumer deception or alleged consumer understanding of "open."

## IV.   DEFENDANTS' DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED

Defendants do not dispute that courts can dismiss redundant counterclaims, nor do they provide a compelling reason to keep the superfluous declaratory judgment claims here. Contrary to Defendants' argument (Opp. 24-25), the mirror-image counterclaims are not needed to protect Defendants if Plaintiff voluntarily dismisses its own claims. Rule 41 fully addresses that concern. Fed. R. Civ. P. 41 (after answer filed, plaintiff's claims may be voluntary dismissed only with (a) Defendants' consent, or (b) the Court's permission "on terms that the court considers proper").

The sole authority Defendants cite (Opp. 24-25), which predates Plaintiff's cited cases (Mot. 23-24)—all of which Defendants ignore—does not mandate otherwise; none of their cited cases denied requests to strike redundant claims in a trademark case where confusion is not contested.

## CONCLUSION

For the reasons above, and the reasons set forth in the Motion, Plaintiff respectfully requests that the Court grant the Motion and dismiss Defendants' amended counterclaims with prejudice.

1  DATED: July 24, 2024                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP

2

3

4                                          By      */s/ Margret M. Caruso*
                                                  Margret M. Caruso
5                                              Attorneys for OpenAI, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28