| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | GIBSON, DUNN & CRUTCHER LLP |
| Robert P. Feldman (Bar No. 69602) | Orin Snyder (*pro hac vice*) |
| bobfeldman@quinnemanuel.com | osnyder@gibsondunn.com |
| Margret M. Caruso (Bar No. 243473) | 200 Park Avenue |
| margretcaruso@quinnemanuel.com | New York, New York 10166 |
| 555 Twin Dolphin Drive, 5th Floor | Telephone:    (212) 351-4000 |
| Redwood Shores, California 94065-2139 | |
| Telephone:    (650) 801-5000 | Brian M. Lutz (Bar No. 255976) |
| | blutz@gibsondunn.com |
| Robert M. Schwartz (Bar No. 117166) | Rosemarie T. Ring (Bar No. 220769) |
| robertschwartz@quinnemanuel.com | rring@gibsondunn.com |
| Aaron H. Perahia (Bar No. 304554) | One Embarcadero Center, Suite 2600 |
| aaronperahia@quinnemanuel.com | San Francisco, California  94111-3715 |
| 865 S. Figueroa St., 10th Fl. | Telephone:    (415) 393-8200 |
| Los Angeles, California 90017-2543 | |
| Telephone:    (213) 443-3000 | *Attorneys for OpenAI, Inc.* |

Sam S. Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:    (415) 875-6600

Dylan I. Scher (*pro hac vice*)
 dylanscher@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:    (212) 849-7000

*Attorneys for OpenAI, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| OPENAI, INC., a Delaware corporation, | Case No. 4:23-cv-03918-YGR |
| Plaintiff, | Assigned to the Hon. Yvonne Gonzalez Rogers |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |
| OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

Defendants' Objections (Dkt. 113, "Obj.") to OpenAI's request for judicial notice (Dkt. 110, RJN) are meritless. The materials that are the subject of the RJN—documents the nonmoving party does not challenge the accuracy of and which are incorporated by reference in a countercomplaint (Dkts. 110-2, 110-3, Scher Exs. A & B), a dictionary definition used as evidence of the public perception of a word's meaning (Dkt. 110-4, Scher Ex. C), and governmental records identifying registered trademarks (Dkts. 110-5, 110-6, Scher Exs. D & E)—are routine subjects of judicial notice. Defendants do not cite any authority that suggests that the Court should refuse to judicially notice them here.

## I. DEFENDANTS DO NOT CHALLENGE THE ACCURACY OF PLAINTIFF'S ANNOUNCEMENTS REFERENCED IN DEFENDANTS' COUNTERCLAIMS

Defendants challenge consideration of two blog announcements attached as Scher Exhibits A and B. Obj. 1. But Defendants do not dispute that the Amended Counterclaim (Dkt. 103, "ACC") expressly cites those two announcements and references their contents. *See id.*; *cf.* ACC ¶¶ 90 n.10, 150 n.25 (citing to Scher Ex. A); *id.*, ¶¶ 60 n.6, 93, 95 n.12 (citing to Scher Ex. B). Nor do Defendants dispute that their false advertising claims challenge statements made in those announcements. *See* Obj. 1; *cf.* Dkt. 112 ("Opp.") at 6 (arguing the announcement in Scher Ex. A contained the allegedly false statements and the announcement in Scher Ex. B shows the alleged falsity). Because the contents of these announcements "are alleged in a complaint," the Court should consider them. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *see also Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 895-96 (N.D. Cal. 2022) ("a 'document is incorporated by reference when the complaint 'refers extensively to the document or the document forms the basis of the plaintiff's claim'" (citation omitted)). "This doctrine 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" *Kang*, 620 F. Supp. at 896 (considering full internet articles to "assess the veracity of the challenged statement in context" and whether the plaintiff "inaccurately characterize[d] the contents of those documents" in its complaint) (citation omitted).

1  Although Defendants purport to dispute the "authenticity" of Scher Exhibits A and B, they
2  do "not truly contest that the documents presented are authentic copies of the documents that they
3  purport to be." *Harms v. Bank of New York Mellon*, 2017 WL 6049402, at *4 (N.D. Cal. Apr. 5,
4  2017) (taking judicial notice); *see also Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at
5  *3 (C.D. Cal. Apr. 2, 2024) (rejecting plaintiff's "objections to the authenticity" because "it is
6  sufficient … for Defense Counsel to authenticate the document by attesting to the authenticity and
7  providing the URL along with the date accessed").

8  Defendants do not argue (much less provide evidence) that the Plaintiff's announcements
9  referred to in their counterclaims differ in any way from what is reflected in Scher Exhibits A and B.
10 Defendants presumably reviewed the announcements before filing the Amended Counterclaims
11 (Dkt. 103, ACC), which purport to characterize their contents and allege (in a conclusory fashion)
12 that they are false. *See* ACC ¶¶ 60 n.6, 90 n.10, 150 n.25. If the contents of Scher Exhibits A and B
13 are different from the announcements Defendants are complaining about, they could have identified
14 the differences. They did not. They also could have chosen to attach the complete documents to
15 the ACC. They did not do that either. They are now seeking to defend their baseless false
16 advertising claims by preventing the Court from considering the actual contents of the statements
17 they claim form the basis of the claims. *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1396-98 (E.D.
18 Cal. 1994) (incorporating advertisements by reference where defendant's copies "contain the
19 language specifically attacked by plaintiff in the complaint," plaintiff "provided no competing
20 examples in which the context of the alleged misrepresentation is different," and a contrary ruling
21 would "deprive the defendant of the opportunity to make a motion to dismiss based on the context
22 of the particular statement").

23 Unlike the documents in the cases Defendant cite to, these announcements do not implicate
24 the "dynamic nature of internet shopping," by which the exhibits submitted for notice "present single
25 pages whereas consumers who accessed the site were exposed to a variety of pages with links and
26 scroll bars," *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167-68 (S.D. Cal. 2010), or
27 purport to be self-authenticating, *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782
28 (C.D. Cal. 2004) (printouts of earnings statements were not admissible under Rule of Evidence 902

1  as evidence for summary judgment motion).  Further, in the 14 to 20 years since those two cases
2  were decided, technology has emerged to confirm the accurate capture of documents printed from
3  websites.  *See* Dkts. 110-2 at 2, 110-3 at 2 (reflecting PageVault capture information), and the
4  announcements are accompanied by an attorney declaration.  Defendants' objections about the lack
5  of some other (unidentified) form of authentication only serve to waste judicial resources.

6        Defendants' having failed to reasonably question the accuracy of the exhibits to reflect what
7  Plaintiff announced (*see* Fed. R. 201(b)), the Court should take judicial notice of the two exhibits.

## II.  DEFENDANTS DO NOT CHALLENGE THE CONTENTS OF THE DICTIONARY DEFINITION OF "OPEN"

10       Defendants' objections to the appropriateness of taking judicial notice of dictionary
11 definitions (Obj. 2) are equally unfounded.  Defendants do not dispute that Scher Exhibit C
12 accurately reflects the Merriam-Webster dictionary definition of "open."  Nor do they cite any
13 authority holding that it is improper to take judicial notice of a dictionary definition.  Instead, they
14 point to cases declining to take judicial notice of a definition in a letter from the Chief Counsel of
15 the Office of Inspector General in a case involving suspension of a physician from California's
16 Medi-Cal program, *Guzman v. Shewry*, 552 F.3d 941, 956 n.11 (9th Cir. 2009), and of a slang term
17 for marijuana in criminal narcotics case, *United States v. Coronel-Estrada*, 951 F.2d 363 (9th Cir.
18 1991).  Obj. 2.

19       In contrast to Defendants' protestations, germane authority accepts that dictionary
20 definitions are relevant to assessing consumers' understanding of a word.  *See* McCarthy on
21 Trademarks and Unfair Competition § 12:13 ("[D]ictionary definitions are relevant and sometimes
22 persuasive in determining public usage…based upon the assumption that dictionary definitions
23 usually reflect the public's perception of a word's meaning and its contemporary usage.  Judicial
24 notice can be taken of dictionary listings.") (quotations omitted); *id.* § 11:69 ("The Trademark Board
25 will take judicial notice of a dictionary definition to help determine if a term has an accepted
26 descriptive meaning…dictionary definitions can help shed light on whether a designation is likely
27 to be perceived as directly descriptive of the goods or services.").  Defendants fail to identify any
28

1 reason the Court should not take judicial notice of the dictionary definition of "open" in assessing
2 the plausibility of their counterclaims.

### III. DEFENDANTS OBJECTIONS TO TAKING JUDICIAL NOTICE OF RECORDS FROM THE U.S. PATENT AND TRADEMARK OFFICE ARE UNFOUNDED

Defendants' objection that the RJN is "improper to the extent it seeks the purported facts [of the USPTO materials] for their truth" (Obj. 3) is misplaced. Plaintiff seeks judicial notice of USPTO registration information (Dkts. 110-5, 110-6, Scher Exhibits D & E) as evidence of the fact of such registrations (RJN 3), not the "truth" of the contents of the registrations, such as owners or first use in commerce dates. But even if Plaintiff did, Defendants cite no cases refusing to take judicial notice of trademark registrations based on challenges to their "truth," and they fail to distinguish any cases cited by Plaintiff. *Compare* RJN 3, *and Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145-46 (N.D. Cal. 2020), *with* Obj. 3.

Defendants also object "to the extent the information in the Exhibits [is] irrelevant." Obj. 3. But they fail to identify why they believe the Exhibits, or any part of them, are irrelevant. Lacking any argument on the issue of relevance to the motion to dismiss, this objection is meaningless. Trademark registrations containing or consisting of the word "Open," as well as the sheer number of such registrations, are relevant to the plausibility of Defendants' claims about the meaning of the word "open," including their cancellation claim (*see* RJN 3), and judicial notice of them is proper.

### CONCLUSION

For the reasons set forth above, Plaintiff OpenAI respectfully requests that the Court grant OpenAI's Request for Judicial Notice.

DATED: July 24, 2024                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Margret M. Caruso*
     Margret M. Caruso
     Attorneys for OpenAI, Inc.