```
 1
 2                    IN THE UNITED STATES DISTRICT COURT
 3                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
 4                             OAKLAND DIVISION
 5
    OPENAI, INC.,                    )  CV-23-3918-YGR
 6                                   )
                    PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 7                                   )
             VS.                     )  AUGUST 13, 2024
 8                                   )
                                     )  PAGES 1-41
 9  OPEN ARTIFICIAL INTELLIGENCE,    )
    INC., ET AL,                     )
10                                   )
                    DEFENDANTS.      )
11
     _____
12
                       TRANSCRIPT OF PROCEEDINGS
13           BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
                     UNITED STATES DISTRICT JUDGE
14
15  A P P E A R A N C E S:
16  FOR THE PLAINTIFF:    BY:  ROBERT P. FELDMAN
                               MARGRET CARUSO
17                             AARON PERAHIA
                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
18                        555 TWIN DOLPHIN DRIVE, 5TH FLOOR
                          REDWOOD SHORES, CA 94065
19
20       FOR THE DEFENDANT: BY:  JOSE R. NUNO
                            WAYMAKER LLP
21                          777 S. FIGUEROA STREET, SUITE 2850
                            LOS ANGELES, CA 90017
22
23  OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
24
25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1              SAN JOSE, CALIFORNIA              AUGUST 13, 2024

2                        P R O C E E D I N G S

3         (COURT CONVENED AT 3:37 P.M.)

4              THE CLERK:  CALLING OUR NEXT MATTER.  23-CV-3918-YGR.

5     OPEN, AI INCORPORATED VERSUS OPEN ARTIFICIAL INTELLIGENCE,

6     INCORPORATED, ET AL.

7              PARTIES PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR

8     THE RECORD STARTING WITH THE PLAINTIFF.

9              MR. FELDMAN:  GOOD AFTERNOON, YOUR HONOR.

10             ROBERT FELDMAN FOR THE PLAINTIFF.  WITH ME IS MARGARET

11    CARUSO AND AARON PERAHIA.

12             WITH THE COURT'S PERMISSION, I WILL ADDRESS FALSE

13    ADVERTISING AND MS. CARUSO WILL ADDRESS THE REMAINDER.

14             MR. NUNO:  GOOD AFTERNOON, YOUR HONOR.

15             JOSE NUNO FROM WAYMAKER, LLP ON BEHALF OF DEFENDANTS AND

16    COUNTER CLAIMANTS, GUY RAVINE AND ARTIFICIAL INTELLIGENCE, INC.

17             AND WITH ME SITTING HERE AT COUNSEL TABLE IS THE CLIENT,

18    GUY RAVINE.

19             THE COURT:  OKAY.  ALL RIGHT.  A LOT TO DISCUSS

20    TODAY.

21             LET'S START WITH THE UCL AND FALSE ADVERTISING.  THE UCL

22    CAN ONLY PROCEED ON ONE OF THREE PRONGS UNDER CALIFORNIA LAW,

23    AND IT'S MY UNDERSTANDING THAT THE PRIMARY BASIS UPON WHICH THE

24    CROSS-PLAINTIFF WOULD LIKE TO PROCEED IS BY CONNECTING THAT TO

25    THE FALSE ADVERTISING CLAIM.
```

```
1              WOULD YOU AGREE WITH THAT, MR. NUNO?

2         MR. NUNO:  WELL, THE CLAIM WASN'T BROUGHT UNDER THE

3    UCL, UNDER 17200 YOUR HONOR, IT WAS BROUGHT UNDER 17500, THE

4    FALSE ADVERTISING LAW, WHICH IS DISTINCT FROM THE LANHAM ACT

5    CLAIM.

6         THE COURT:  THE UCL, I THOUGHT, WAS -- MAYBE I SAID

7    THIS WRONG.  THE UNFAIR COMPETITION CLAIM IS BROUGHT UNDER THE

8    LANHAM ACT FALSE ADVERTISING CLAIM.  THE FALSE ADVERTISING

9    CLAIM UNDER SECTION 17500, WHICH IS THE CALIFORNIA CLAIM AS

10   OPPOSED TO A FEDERAL CLAIM, THE FACTUAL BASIS FOR THOSE TWO

11   CLAIMS ARE THE SAME; AM I NOT RIGHT?

12        MR. NUNO:  THEY'RE SIMILAR, YOUR HONOR, THEY ARE

13   RELATED.  THE LANHAM ACT FALSE STATEMENT CLAIM DOES ALLEGE IN

14   THE FIRST CAUSE OF ACTION, DOES HAVE EXTRA ELEMENTS OF CONSUMER

15   NOTICE AND THE LOST OPPORTUNITIES AND DIVERSION OF SALES AND

16   BUSINESS REPUTATION.

17       THE FALSE ADVERTISING CLAIM, WHICH HAS AN EXTRA ELEMENT OF

18   RELIANCE BY THE PARTY IN RECEIPT OF THE FALSE STATEMENTS,

19   THAT'S BEEN ALLEGED FOR PURPOSES OF THE STATE CLAIM, AND AS AN

20   ELEMENT OF THE BUSINESS-TO-BUSINESS DAMAGE.

21        THE COURT:  ON THE FALSE ADVERTISING CLAIM, WE CAN

22   START WITH THE LANHAM ACT, THERE IS NO -- I SEE NO ALLEGATION

23   IN THE COMPLAINT OF A COMMERCIAL ADVERTISEMENT OR PROMOTION.

24   THE RELIANCE ON A FILING OF SECRETARY OF STATE IS INSUFFICIENT.

25   A SINGLE BLOG POSTING IS INSUFFICIENT.
```

1      IF I GRANT THE MOTION ON THAT ELEMENT ALONE, IS THERE

2  ANYTHING ELSE YOU CAN ALLEGE?

3          MR. NUNO:  WELL, YOUR HONOR, IF I MAY, THE BLOG

4  POST -- THE CLAIMS ARE NOT JUST LIMITED TO --

5          THE COURT:  ANSWER MY QUESTION FIRST, IS THERE

6  ANYTHING ELSE THAT YOU CAN ALLEGE OR DO YOU STAND ON THE NOTION

7  THAT A SINGLE BLOG POSTING IS A COMMERCIAL ADVERTISING OR

8  PROMOTION?

9          MR. NUNO:  IT WAS NEVER OUR CONTENTION THAT IT WAS

10  ONLY A SINGLE BLOG POSTING.  THE ALLEGATIONS MAKE CLEAR THAT

11  THESE STATEMENTS CONTINUE TO BE MADE.

12      YOU CAN GO FIND THAT BLOG POST CURRENTLY ON THEIR WEBSITE.

13  THERE ARE ALLEGATIONS THAT MR. ALTMAN MADE STATEMENTS IN AN

14  INTERVIEW.  THERE'S --

15          THE COURT:  I'M NOT GOING TO GO LOOK AT ANYTHING,

16  THAT'S NOT APPROPRIATE, AND YOU SHOULD KNOW IT'S NOT

17  APPROPRIATE.  NOT THAT I HAVE ANY TIME TO GO LOOK FOR ANYTHING.

18      WHEN I LOOK AT YOUR COMPLAINT, THAT'S THE REFERENCE THAT

19  YOU ARE MAKING IN TERMS OF A COMMERCIAL ADVERTISEMENT.  WHAT

20  ELSE AM I SUPPOSED TO LOOK AT?  BECAUSE I'VE LOOKED AT THE

21  COMPLAINT, AND EVEN THOUGH IT'S VERBOSE, ALL OF THAT -- WELL,

22  THERE'S AN AWFUL LOT OF EXTRA ALLEGATIONS THAT HAVE NOTHING TO

23  DO WITH ANYTHING, NOT UNCOMMON FOR LAWYERS TO DO THAT, BUT IT

24  DOESN'T SATISFY THE ELEMENTS.

25      SO IN GENERAL, WHEN YOU ALL DO THAT KIND OF THING, I

1    IGNORE MOST OF IT UNLESS IT'S RELEVANT TO THE ELEMENTS IN FRONT

2    OF ME.

3         SO I LOOKED AT EVERY SINGLE PARAGRAPH THAT YOU REFERENCE

4    IN YOUR MEMO ON THIS TOPIC AND I DON'T FIND THAT THERE IS A

5    SUFFICIENT BASIS.  SO WHAT ELSE IS THERE THAT YOU CAN ALLEGE?

6         MR. NUNO:  WELL YOUR HONOR, IF I MAY POINT YOU TO

7    EXHIBIT B OF THE SCHER DECLARATION THAT WAS SUBMITTED IN

8    SUPPORT FOR REQUEST FOR JUDICIAL NOTICE BY COUNTERCLAIM

9    DEFENDANT.

10        THE COURT:  I'M NOT GRANTING THE MOTION FOR JUDICIAL

11   NOTICE, IT'S INAPPROPRIATE, EXCEPT FOR I THINK ONE -- THERE WAS

12   ONE ISSUE THAT I THOUGHT WAS APPROPRIATE FOR JUDICIAL NOTICE.

13        MR. FELDMAN, WHAT WAS THE VERY FIRST THING IN YOUR

14   REQUEST?  HERE IT IS, THE POST.  ALL RIGHT.  IS THAT THE ONE --

15   THAT I CAN TAKE JUDICIAL NOTICE OF BECAUSE IT'S RELIED UPON.

16   EVERYTHING ELSE, NONE OF IT WILL I TAKE JUDICIAL NOTICE OF.

17   THIS ISN'T SUMMARY JUDGEMENT, I'M NOT MAKING FACTUAL FINDINGS,

18   SO I WON'T BE DOING THAT.

19        MR. NUNO:  UNDERSTOOD, YOUR HONOR.  THE REASON I WAS

20   REFERRING THE COURT TO EXHIBIT B OF THE JUDICIAL NOTICE --

21        THE COURT:  B, AS IN BOY?  OR D, AS IN DOG?

22        MR. NUNO:  B, AS IN BOY.

23        THE COURT:  GO AHEAD.

24        MR. NUNO:  ON PAGE 5 OF THE ECF DOCKET, THERE'S

25   COMMUNICATIONS BETWEEN ELON MUSK AND --

```
 1                 THE COURT:  IS THIS THE BLOG OR NOT?

 2                 MR. NUNO:  IT'S DISCUSSING THE BLOG, YOUR HONOR.

 3                 THE COURT:  IT IS THE BLOG ITSELF?

 4                 MR. NUNO:  IT IS NOT THE BLOG ITSELF.

 5                 THE COURT:  THEN DO NOT TALK TO ME ABOUT WHAT IS

 6      OUTSIDE THE RECORD.

 7                 MR. NUNO:  YOUR HONOR, RESPECTFULLY, I THINK IT GOES

 8      TO THE COURT'S PLAUSIBILITY OF THAT BEING SUFFICIENT COMMERCIAL

 9      SPEECH.

10                 THE COURT:  I AM NOT REVIEWING ANYTHING OUTSIDE OF

11      THE RECORD.  YOU CAN MAKE AN ARGUMENT IF YOU WANT.

12                 MR. NUNO:  UNDERSTOOD, YOUR HONOR.

13           THERE IS COMMUNICATIONS BETWEEN -- AND I'M ALSO ATTEMPTING

14      TO RESPOND TO YOUR REQUEST WHETHER OR NOT THERE WAS ANYTHING

15      ELSE WE COULD ALLEGE.

16           THERE ARE COMMUNICATIONS BETWEEN MR. ALTMAN, MR. BROCKMAN

17      AND MR. MUSK THAT ARE SPECIFICALLY DISCUSSING THIS BLOG POST,

18      AND THEY ARE DISCUSSING HOW THEY NEED TO MAKE THE BLOG POST

19      MORE APPEALABLE TO THE GENERAL PUBLIC AND THAT WOULD BE OF

20      GREAT VALUE TO THE COMPANY AND ITS SUCCESS TO ENSURE THE

21      COMPANY IS INVESTED IN ITS SUCCESS.

22           WE CONTEND THOSE ARE COMMERCIAL STATEMENTS, THOSE ARE

23      INTENDED TO GARNER GOOD WILL, TO INCREASE THE BRAND IMAGE.  THE

24      CASE THAT WE CITED, THE ARIIX CASE THAT WE CITED EXPLAINS THAT

25      COMMERCIAL STATEMENTS NEED NOT BE JUST A STRAIGHT PROPOSAL OF A
```

1          TRANSACTION FOR A GOOD OR SERVICE IN EXCHANGE FOR MONEY.

2                    THE COURT:  THAT WASN'T A NINTH CIRCUIT CASE, WAS IT?

3                    MR. NUNO:  I BELIEVE ARIIX WAS A NINTH CIRCUIT CASE,

4          YOUR HONOR.

5                    THE COURT:  SO THE FIRST FACTOR UNDER THAT CASE IS

6          WHETHER THE SPEECH IS AN ADVERTISEMENT, IT IS NOT.  WHETHER THE

7          SPEECH REFERS TO A PARTICULAR PRODUCT AND WHETHER THE SPEAKER

8          HAS AN ECONOMIC MOTIVATION.

9                    MR. NUNO:  WELL, YOUR HONOR, THE COURT IN ARIIX

10         RECOGNIZE THAT ADVERTISEMENTS COULD BE A NONTRADITIONAL FORMAT.

11         AND IN THAT CASE, THE COURT FOUND THAT GUIDE BOOKS COMPARING

12         REVIEWS OF NUTRITIONAL SUPPLEMENTS WERE COMMERCIAL SPEECH.

13             IN ANOTHER CASE WE CITED, SIGMA DYNAMICS, THE COURT HELD

14         THAT STATEMENTS ON WEBSITES AND PRESS RELEASES AVAILABLE TO THE

15         PUBLIC SATISFIED THE COMMERCIAL SPEECH REQUIREMENTS.

16                    THE COURT:  I'M HAPPY TO TAKE A BROAD VIEW, BUT THERE

17         ISN'T A SINGLE STATEMENT IN THE COMPLAINT THAT TETHERS ITSELF

18         TO THE SPECIFIC PROMOTION OF GOODS OR SERVICES.  AND IF THERE

19         IS, I WANT YOU TO GIVE ME A PARAGRAPH AND A LINE.

20             SO TELL ME WHERE IT IS.  I'M LOOKING AT YOUR COMPLAINT

21         RIGHT NOW, WHAT PARAGRAPH TETHERS THE STATEMENT TO THE SPECIFIC

22         PROMOTION OF GOODS OR SERVICES FOR PURPOSES OF ADVERTISEMENT?

23         PEOPLE ADVERTISE ALL THE TIME, I'M NOT SEEING IT IN YOUR

24         COMPLAINT.

25                    MR. NUNO:  UNDERSTOOD, YOUR HONOR.

```
1              AND IF I MAY HAVE A SECOND TO FIND THOSE SPECIFIC

2     PARAGRAPHS -- BUT JUST ON THAT POINT, ADVERTISEMENTS AND

3     COMMERCIAL SPEECH DON'T NEED TO BE TRADITIONAL ADVERTISEMENTS.

4              THE COURT:  I AM TELLING YOU WHAT I AM READING.  I DO

5     NOT SEE IT THERE.  CAN YOU POINT ME TO YOUR BEST CASE?

6              MR. FELDMAN:  YOU MEAN THE BEST PARAGRAPH?

7              THE COURT:  BEST CASE AND BEST LINE IN THE COMPLAINT

8     THAT SATISFIES THE ELEMENT.  WHAT IS YOUR BEST ARGUMENT BASED

9     UPON THE WORDS OF THIS COMPLAINT?

10         (PAUSE IN PROCEEDINGS.)

11             THE COURT:  WHY DON'T WE MOVE ON.

12             MR. NUNO:  WELL, YOUR HONOR, IN PARAGRAPH 95 WE

13    REFERENCE AN INTERVIEW PUBLISHED WITH MR. ALTMAN WHERE HE

14    DESCRIBES THAT ONE THING THAT THE COMPANY WAS GOING TO PROVIDE

15    WAS A FREEDOM AND OPENNESS AND ABILITY FOR RESEARCHERS TO SHARE

16    WHAT THEY ARE WORKING ON AND THE MISSION AND THE VALUE AND THE

17    STRUCTURE REALLY APPEALS TO PEOPLE.

18         AND YOU KNOW, THIS IS JUST ANOTHER EXAMPLE OF THIS TYPE OF

19    SPEECH BEING COMMERCIAL IN THIS CONTEXT.  THIS WAS AN EXTREMELY

20    LIMITED -- CUTTING EDGE AND LIMITED INDUSTRY AT THE TIME.  AND

21    SO THEY ARE MAKING STATEMENTS THAT THEY ARE GOING TO BE AN OPEN

22    COMPANY FOR THE BENEFIT OF HUMANITY, OPEN SOURCE, AND THEY ARE

23    GARNERING --

24             THE COURT:  OKAY.

25             MR. NUNO:  THEY ARE MAKING THESE STATEMENTS TO GARNER
```

1    SUPPORT AND GOOD WILL.  AND COURTS HAVE HELD THAT INCREASE IN

2    BRAND IMAGE IS SUFFICIENT FOR COMMERCIAL SPEECH, IT DOESN'T

3    NEED TO PROPOSE AN EXACT TRANSACTION TO BE CONSIDERED

4    COMMERCIAL SPEECH.

5            THE COURT:  ALL RIGHT.

6        RESPONSE, MR. FELDMAN?

7            MR. FELDMAN:  YES, YOUR HONOR.

8        WITH RESPECT TO THE QUESTION THAT YOUR HONOR ASKED, THERE

9    IS NOTHING IN THE COMPLAINT THAT LINKS AN ADVERTISEMENT TO A

10   PRODUCT.  AND THE ONLY THING THAT I WOULD ADD THAT'S RESPONSIVE

11   TO THE COURT'S QUESTION, AND IT'S ONE OF THE FEW THINGS THAT I

12   HAD INTENDED TO MENTION, IS THAT THERE ARE -- I WOULD BRING TO

13   THE COURT'S ATTENTION FOUR PARAGRAPHS, THEY DON'T NEED TO BE

14   REVIEWED NOW, I'M GOING TO RECITE THEM OR REFER TO THEM.

15       PARAGRAPH 61, PARAGRAPH 94, PARAGRAPH 96 AND PARAGRAPH 97.

16   IN THOSE PARAGRAPHS, THE COMPLAINT SAYS THAT THE STATEMENTS

17   THAT ARE COMPLAINED OF HERE WERE USED EITHER TO ATTRACT FUNDERS

18   OR TALENT IN THE FORM OF EMPLOYEES.

19       SO NOT ONLY IS THERE NOTHING THAT COULD BE ADDED

20   CONSISTENT WITH RULE 11, BUT THE SPECIFIC ALLEGATIONS IN THOSE

21   PARAGRAPHS, THOSE PARAGRAPHS BEING 61, 94, 96 AND 97, EXPRESSLY

22   ALLEGE THAT THE PURPOSE OF THE PARAGRAPHS, INCLUDING THE ONE

23   THAT YOUR HONOR WAS JUST TREATED TO, WAS TO ATTRACT INVESTORS

24   AND EMPLOYEES, THAT HAS NOTHING WHATSOEVER TO DO WITH PRODUCTS.

25   SO THE COMPLAINT PLEADS ITSELF OUT OF A FALSE ADVERTISING

```
 1     CLAIM, UNQUESTIONABLY.
 2              THE COURT:  RESPONSE?
 3              MR. NUNO:  AND YOUR HONOR --
 4              MR. FELDMAN:  EXCUSE ME, I'M SORRY, WITHOUT THE
 5     POSSIBILITY OF AMENDMENT.
 6              MR. NUNO:  YOUR HONOR, THE LANHAM ACT SPECIFICALLY
 7     SAYS THAT FALSE ADVERTISEMENT UNDER THE LANHAM ACT DOES NOT
 8     NEED TO BE SPECIFIC TO PRODUCTS BUT IT COULD ALSO BE GENERALLY
 9     TO COMMERCIAL ACTIVITIES, WHICH IS WHAT'S AT ISSUE HERE.
10         THEY ARE CLAIMING THAT THEIR GENERAL COMMERCIAL ACTIVITIES
11     ARE ABOUT AN OPEN SOURCE, NONPROFIT, ARTIFICIAL INTELLIGENCE
12     COMPANY THAT'S FOR THE BENEFIT OF HUMANITY.  THOSE ARE
13     COMMERCIAL ACTIVITIES, THAT LANGUAGE IS SPECIFICALLY DELINEATED
14     IN THE LANHAM ACT, IT DOESN'T NEED TO BE TIED TO A SPECIFIC
15     PRODUCT.  AND CERTAINLY THESE STATEMENTS THAT WERE --
16              THE COURT:  WELL, OKAY.  FINISH YOUR STATEMENT.
17              MR. NUNO:  AND THESE STATEMENTS THAT ARE -- WERE ON
18     COUNTER-CLAIMANT DEFENDANT'S WEBSITE AND CONTINUE TO BE ON
19     COUNTER-CLAIMANT DEFENDANT'S WEBSITE, MEET THAT STANDARD AND
20     THEY ARE NOW ON THAT WEBSITE AND CONTINUE TO BE MADE WHEN THERE
21     ARE PRODUCTS REFERENCED ON THAT WEBSITE.
22         SO IT'S A NARROW VIEW OF THE LAW, THE FALSE ADVERTISING
23     LAW, TO SAY THAT IT NEEDS TO REFER TO A SPECIFIC PRODUCT,
24     THAT'S JUST A STARTING POINT OF WHAT COULD BE CONSTITUTED AS
25     COMMERCIAL SPEECH, AND WE FUNDAMENTALLY DISAGREE THAT IT NEEDS
```

1    TO BE LIMITED TO A CERTAIN PRODUCT.

2         THE COURT:  SO ARE YOU CONCEDING THAT THERE IS NO

3    PRODUCT?  THAT'S WHAT I HEAR YOU SAYING.  YOU ARE CONCEDING

4    THAT THERE IS NO PRODUCT THEN.

5         MR. NUNO:  NO, YOUR HONOR.  IF I CAN DIRECT YOU TO

6    THE BLOG POST WHERE THEY DISCUSS THE ARTIFICIAL INTELLIGENCE

7    TECHNOLOGY THAT THEY ARE GOING TO BE INTRODUCING GENERALLY.

8    THEY RELEASED --

9         THE COURT:  YOU JUST SAID IN RESPONSE TO COUNSEL'S

10   STATEMENT THAT THERE IS NO NEED FOR THERE TO BE A PRODUCT

11   BECAUSE IT'S GENERAL COMMERCIAL ACTIVITIES.

12        SO MY QUESTION TO YOU IS THEN ARE YOU CONCEDING THAT THE

13   COMPLAINT DOESN'T HAVE A PRODUCT?  YOU EITHER DO OR DON'T, I

14   JUST WANT TO KNOW WHAT YOUR POSITION IS.

15        MR. NUNO:  WELL, YOUR HONOR, OUR POSITION IS THEY

16   CONTINUE TO PUBLISH THIS STATEMENT ON THEIR WEBSITE, THEIR

17   STATEMENT CONTINUES TO SAY THAT --

18        THE COURT:  NO, NO, NO, NO.  IT'S IMPORTANT THAT YOU

19   FOCUS ON SPECIFIC ELEMENTS OF SPECIFIC CLAIMS, AND IF YOU DON'T

20   WANT TO DO THAT, THEN I CAN SAY TO BOTH OF YOU, SUBMITTED AND

21   I'M DONE.

22        THIS IS NOT -- REMEMBER, THIS IS NOT JUST COMPLAINING

23   ABOUT THE FACT THAT YOUR CLIENT IS UPSET ABOUT WHAT ALTMAN DID.

24   THERE IS A LOT OF JUST COMPLAINTS IN HERE, AND I UNDERSTAND

25   HE'S VERY UNHAPPY.  THAT'S NOT IN FRONT OF ME, WHETHER OR NOT

1    HE'S UNHAPPY OR NOT IS NOT RELEVANT TO THE CLAIM.  I AM GOING

2    TO LOOK AT EVERY SINGLE ELEMENT OF EVERY SINGLE CLAIM, THAT'S

3    MY JOB, NOT ANYTHING ABOUT HIS RELATIONSHIP WITH ALTMAN.  IT'S

4    NOT RELEVANT.

5         SO THE FIRST ELEMENT I AM ASKING WHETHER YOU WERE

6    CONCEDING OR NOT THAT IT NEEDS TO BE TIED TO A PRODUCT.

7              MR. NUNO:  WE DISAGREE THAT IT NEEDS TO BE TIED TO A

8    SPECIFIC PRODUCT, YOUR HONOR.

9              THE COURT:  OKAY.  SO YOUR PERSPECTIVE IS IT DOESN'T

10   HAVE TO BE TIED TO A PRODUCT, DOES THAT MEAN THAT YOU DO NOT

11   ALLEGE THAT IT IS TIED TO A PRODUCT?

12             MR. NUNO:  I CAN CONCEDE, YOUR HONOR, THAT THE BLOG

13   POST DOES NOT REFERENCE A SPECIFIC PRODUCT BUT THE WEBSITE

14   GENERALLY THAT DISCUSSES THEIR OPEN SOURCE AND FOR BENEFIT OF

15   HUMANITY AND NONPROFIT STATUS, THOSE POSTINGS AND THOSE

16   STATEMENTS DO HAVE LINKS AND ACCESS TO PRODUCTS THAT THEY ARE

17   DELIVERING TO THE PUBLIC.

18             THE COURT:  SO DO YOU NOW HAVE A PARAGRAPH FOR ME OR

19   SHOULD I JUST LOOK AT 61, 94, 96 AND 97?

20             MR. NUNO:  EXCUSE ME, YOUR HONOR, ARE YOU ASKING

21   SPECIFICALLY FOR A PRODUCT OR JUST SPECIFIC STATEMENTS IN

22   GENERAL?

23             THE COURT:  I AM ASKING COUNSEL FOR THE BASIS FOR

24   YOUR ALLEGATION WITH RESPECT TO THAT ELEMENT.  THE FACTUAL

25   BASIS.  BECAUSE YOU'VE GOT A LOT OF CONCLUSORY PARAGRAPHS IN

```
1    THIS COMPLAINT THAT SAY NOTHING OTHER THAN RECITE ELEMENTS OF A

2    CLAIM.  I'M ASKING FOR THE FACTUAL BASIS FOR THE ELEMENT.

3        AND YOU JUST TOLD ME IT'S NOT THE BLOG, SO WHAT IS IT?

4            MR. NUNO:  WE CONTEND IT IS THE BLOG, YOUR HONOR.  I

5    WAS RESPONDING TO YOUR --

6            THE COURT:  YOU JUST SAID THE BLOG DOESN'T REFERENCE

7    A PRODUCT.

8            MR. NUNO:  BUT IT REFERENCES GENERAL COMMERCIAL

9    ACTIVITIES AND IT REFERENCES GENERAL ARTIFICIAL INTELLIGENCE

10   TECHNOLOGY.

11           THE COURT:  LET'S MOVE ON.

12       IN ORDER FOR ME TO DO THE SECOND ELEMENT, THE SECOND

13   ELEMENT REFERS TO FALSITY, SO I HAVE TO TIE IT BACK TO THE

14   FIRST, RIGHT?

15           MR. NUNO:  CORRECT.

16           THE COURT:  YOU ARE SAYING THE BLOG IS FALSE.

17           MR. NUNO:  CORRECT.

18           THE COURT:  AND YOU ARE SAYING THE WEBSITE IS FALSE?

19           MR. NUNO:  THE WEBSITE CONTAINS FALSE STATEMENTS,

20   CORRECT.

21           THE COURT:  AND WHERE DO I FIND THESE IN YOUR

22   COMPLAINT?

23           MR. NUNO:  YOUR HONOR, I APOLOGIZE, I DON'T WANT TO

24   HOLD UP THE COURT'S TIME.  I AM HAPPY TO CONTINUE PULLING OUT

25   THE EXACT PARAGRAPHS, TO THE EXTENT THAT THEY ARE IN HERE.  AND
```

1    RESPECTFULLY, TO THE EXTENT THAT THEY ARE NOT, WE WOULD

2    RESPECTFULLY ASK FOR LEAVE TO AMEND TO INCLUDE THOSE STATEMENTS

3    ON THE WEBSITE BECAUSE WE DO THINK THEY ARE A BASIS FOR

4    COMMERCIAL STATEMENTS.

5         THE COURT:  ANY COMMENTS, MR. FELDMAN?

6         MR. FELDMAN:  IT'S A LITTLE HARD TO RESPOND.

7    THE ALLEGATIONS WITH -- SO -- BECAUSE I'M NOT EXACTLY SURE

8    PRECISELY WHERE WE ARE, I UNDERSTAND YOUR HONOR'S QUESTION TO

9    BE ABOUT FALSITY, AND THERE ARE SEVERAL --

10        THE COURT:  WHAT HE'S SAYING IS, IF I UNDERSTAND HIS

11   ARGUMENT --

12        MR. FELDMAN:  YES.

13        THE COURT:  -- IS THAT IF I ASSUME FOR PURPOSES OF

14   ARGUMENT THAT ANY GENERAL COMMERCIAL ACTIVITY IS SUFFICIENT,

15   THEN THE BLOG IS SUFFICIENT AND THE WEBSITE, BOTH OF THOSE

16   CONTAIN FALSE STATEMENTS.

17        MR. FELDMAN:  WELL LET ME JUST BACK UP.

18   FIRST, IT HAS TO BE TIED TO ATTEMPTED TO INFLUENCE

19   CONSUMERS, AND THE PARAGRAPHS I GAVE YOU INCLUDE EXACTLY THE

20   OPPOSITE, AND CAN'T, CONSISTENT WITH RULE 11, ALLEGE THAT THESE

21   WERE INTENDED TO AFFECT CONSUMERS.  THAT'S NUMBER ONE.

22   NUMBER TWO, WITH RESPECT TO YOUR HONOR'S QUESTION ABOUT

23   FALSITY, THERE ARE SEVERAL THINGS THAT I THINK HAVE BEEN

24   IDENTIFIED.  ONE IS A FUNDING COMMITMENT.

25   IF YOU LOOK AT THE ACTUAL TEXT THAT'S CITED IN THE

1    COMPLAINT, THE TEXT OF THE STATEMENT SAYS THAT ONLY A TINY

2    FRACTION OF THE BILLION WOULD BE CALLED UPON IN THE NEXT FEW

3    YEARS.  THAT'S EXACTLY WHAT HAPPENED.  THERE'S NO ALLEGATION IN

4    THE COMPLAINT -- THERE IS NO ALLEGATION IN THE COMPLAINT THAT

5    THE STATEMENT ABOUT THE BILLION DOLLAR COMMITMENT WAS FALSE AT

6    THE TIME IT WAS MADE.

7         WITH RESPECT TO THE ALLEGATION REGARDING THE NUMBER OF

8    RESEARCHERS, THERE IS NO ALLEGATION IN THE COMPLAINT, CERTAINLY

9    NO FACTUAL ALLEGATION IN THE COMPLAINT THAT THE NUMBER OF

10   RESEARCHERS OR EVEN THE IDENTITY OF THE RESEARCHERS WAS KNOWN

11   TO BE FALSE OR TURNED OUT TO BE FALSE.

12        AND WITH RESPECT TO THE STATEMENTS ABOUT OPENNESS, THEY

13   FALL PRECISELY WITHIN THE CASES THAT THE NINTH CIRCUIT AND

14   OTHER COURTS IN THIS DISTRICT, THE NINTH CIRCUIT BEING THE

15   PRAGER CASE AND THE DISTRICT COURT OPINIONS THAT FOLLOW IT,

16   THAT STATEMENT ABOUT OPENNESS FALLS PRECISELY WITHIN THE

17   GENERAL RUBRIC OF PUFFERY AND STATEMENTS ABOUT HOW PEOPLE ARE

18   GOING TO BEHAVE AND GENERAL CORPORATE ADVERTISEMENT.

19        AND I WOULD ADD, IF YOUR HONOR LOOKS AT THE PRECISE

20   STATEMENT THAT IS QUOTED IN THE COMPLAINT, IT TALKS ABOUT BEING

21   OPEN WHEN APPLICABLE, WHATEVER OPEN MEANS, WHICH IS NOT

22   SOMETHING THAT COULD BE PROVEN TRUE OR FALSE OR QUANTIFIABLE.

23        SO I WILL TELL YOU THAT THIS COMPLAINT, AS YOUR HONOR'S

24   QUESTIONS MAY BE HINTING, IS NONSENSE.  THIS IS NOT A FALSE

25   ADVERTISING CASE, THIS IS A CASE ABOUT SOMEBODY WHO IS UNHAPPY,

1    BASED UPON PARAGRAPH 160 OF THE COMPLAINT, BECAUSE HE MADE A

2    DECISION NOT TO MOVE FORWARD WHEN HE MET WITH THESE PEOPLE.

3         THAT'S IN PARAGRAPH 160 OF THIS COUNTERCLAIM, HE ALLEGES

4    THAT HE MET WITH THESE GUYS AND HE DECIDED NOT TO MOVE FORWARD.

5    THAT'S WHAT THIS IS.  AND HE'S UNHAPPY ABOUT IT.  AND IN ALL

6    HONESTY, THERE IS NOTHING ELSE HERE, AT LEAST WITH RESPECT TO

7    FALSE ADVERTISING.

8         MS. CARUSO WILL ADDRESS THE OTHER CLAIMS.  I REALLY HAVE

9    NOTHING ELSE TO SAY, UNLESS OF COURSE YOU TELL ME I DO.

10         MR. NUNO:  YOUR HONOR, IF I MAY RESPOND.

11         THE COURT:  WHAT DID HE RELY ON IN TERMS OF THE STATE

12    CLAIM?  WHAT DID HE RELY ON TO CREATE AND CAUSE INJURY?

13         MR. NUNO:  STATEMENTS FROM THE COUNTERCLAIM

14    DEFENDANTS, YOUR HONOR, THAT THEY WERE GOING TO BE A NONPROFIT

15    OPEN SOURCE COMPANY THAT'S GOING TO SERVE THE BENEFIT OF

16    HUMANITY.  THESE STATEMENTS WHICH INCREASE THE GOOD WILL OF

17    COUNTERCLAIM DEFENDANTS, ALLOW THEM TO POACH RESEARCHERS FROM

18    OTHER BIG COMPANIES, ALLOW THEM TO GET TENS OF MILLIONS OF

19    DOLLARS OF INVESTMENTS, THOSE ARE OPPORTUNITIES THAT WERE --

20         THE COURT:  THAT HAS NOTHING TO DO WITH HIM.  THAT

21    HAS NOTHING TO DO WITH HIS DAMAGE.  HOW DOES THAT HAVE -- HOW

22    DOES THAT HAVE ANYTHING TO DO WITH HIM?

23         MR. NUNO:  WELL YOUR HONOR, THESE ARE INVESTORS AND

24    INVESTMENTS AND RESEARCHERS THAT HAVE BEEN USURPED FROM

25    MR. RAVINE AND HIS COMPANY.

```
 1              THE COURT:  NOTHING IN HIS COMPLAINT INDICATES THAT

 2    ANY OF THESE PEOPLE -- THAT HE HAD CONVERSATIONS WITH THEM,

 3    THAT HE HAD COMMITMENTS FROM THEM, THAT THEY HAD ANY

 4    INCLINATION TO DO BUSINESS WITH HIM AT ALL.

 5              THERE IS NOTHING IN THE COMPLAINT REGARDING HIS RELIANCE

 6    ON THESE STATEMENTS TO CREATE DAMAGE OR CAUSATION -- OR CAUSE

 7    DAMAGE IN A WHOLLY SEPARATE -- IN A SEPARATE CIRCUMSTANCE.

 8    AGAIN, THERE IS A LOT OF DISGRUNTLEMENT, BUT I HAVEN'T SEEN YOU

 9    TIE THOSE THINGS IN TERMS OF RELIANCE AND THAT HE RELIED ON

10    THEM.

11              THERE IS NOTHING IN HERE THAT SAYS HE RELIED ON THAT, SO I

12    HAD MEETINGS WITH JOE AND BOB AND SALLY AND STOPPED MEETING

13    WITH THEM, THERE IS NOTHING TO THAT EFFECT.

14              MR. NUNO:  WELL YOUR HONOR, THERE'S ALLEGATIONS THAT

15    HE RELIED ON THESE STATEMENTS THAT WERE MADE IN THE PUBLIC'S --

16              THE COURT:  WHAT PARAGRAPH?  THERE'S NO ALLEGATIONS

17    HERE THAT HE MET WITH ANYONE, THAT HE HAD MEETINGS SET UP, THAT

18    HE HAD AGREEMENTS OR CONVERSATIONS OR THAT ANYBODY WAS GOING TO

19    DO BUSINESS WITH HIM.  WHERE IS THAT?

20              MR. NUNO:  PARAGRAPHS 151 THROUGH 160 DETAIL THAT

21    MR. RAVINE WAS IN THE PROCESS OF FUNDRAISING OF UP TO A HUNDRED

22    MILLION DOLLARS FOR HIS COMPANY, OPEN AI.

23              THE COURT:  SO DO YOU KNOW HOW MANY FUNDRAISERS ARE

24    OUT HERE IN SILICON VALLEY WHO GET NO TRACTION WHATSOEVER?  THE

25    MERE FACT THAT SOMEONE IS TRYING WITHOUT MORE SAYS NOTHING.
```

1          SERIOUSLY, DO YOU PRACTICE UP HERE ALL THE TIME?

2          MR. NUNO:  I DO NOT, YOUR HONOR.

3          THE COURT:  OKAY.  WELL I TELL YA, I GET THESE

4    COMPLAINTS ALL THE TIME.  THERE ARE PLENTY OF PEOPLE IN THE BAY

5    AREA WHO COMPLAIN ABOUT WHAT HAPPENS TO THEM, AND THERE ARE

6    PLENTY OF PEOPLE TRYING TO FUND COMPANIES WHO CAN'T GET

7    FUNDING.

8          MR. NUNO:  UNDERSTOOD, YOUR HONOR.

9          BUT THESE CLAIMS -- IF WE TAKE JUST A QUICK STEP BACK,

10   THESE CLAIMS ARE BASED ON THE FALSE STATEMENTS BY COUNTERCLAIM

11   DEFENDANTS.

12         SO MR. RAVINE AND HIS COMPANY AND COUNTERCLAIM

13   DEFENDANTS --

14         THE COURT:  UNDER THE STATE CLAIM, YOU HAVE TO

15   SPECIFICALLY LINK THE STATEMENTS TO SPECIFIC RELIANCE, TO

16   SPECIFIC INJURY.

17         YOU CAN'T DO IT.  THE MERE FACT THAT HE MAY NOT HAVE BEEN

18   ABLE TO GET FUNDING IS INSUFFICIENT.

19         MR. NUNO:  WELL YOUR HONOR, IT'S NOT SOLELY BASED ON

20   THE INABILITY TO GET FUNDING.

21         IF I MAY, COUNTERCLAIM DEFENDANTS WERE ASSERTING THESE

22   FALSE STATEMENTS THAT ALLOWED THEM TO ATTRACT INVESTORS,

23   TALENT, RESEARCHERS, ET CETERA, THAT THEY WERE THIS OPEN SOURCE

24   COMPANY THAT THEY WERE GOING TO BE FOR THE BENEFIT OF HUMANITY,

25   THAT THEY WERE A SAFE COMPANY.

```
1              THE COURT:  I HAVEN'T READ MUSK'S COMPLAINT, WHICH I

2    JUST RECEIVED AS WELL.  I WILL HAVE TO SEE WHAT MUSK SAYS ABOUT

3    THAT, NOT THAT THAT REALLY MATTERS HERE.  BUT AGAIN, YOU DON'T

4    HAVE ANYTHING SPECIFIC.

5              MR. NUNO:  WELL GOING TOWARDS PLAUSIBILITY,

6    YOUR HONOR, YOU JUST MENTIONED MR. MUSK'S COMPLAINT, HE ASSERTS

7    THE SAME LANHAM ACT FALSE ADVERTISING CLAIMS.  AND THE SAME

8    STATE LAW FALSE ADVERTISING CLAIMS --

9              THE COURT:  WELL HE KEEPS GIVING MONEY TO THESE

10   FOLKS.  SO AGAIN, I DON'T KNOW WHAT'S GOING TO HAPPEN WITH

11   THAT.  OKAY.

12             MR. NUNO:  UNDERSTOOD, YOUR HONOR.

13       IF I COULD JUST FINISH MY STATEMENT, THEY WERE MAKING

14   THESE STATEMENTS THAT GOT THEM TO GET A LOT OF GOOD WILL FROM

15   THE PUBLIC, FROM INVESTORS, FROM --

16             THE COURT:  AND AGAIN, THAT HAS NOTHING TO DO WITH

17   YOUR CLIENT'S OWN RELIANCE.

18             MR. NUNO:  WELL YOUR HONOR, OUR CLIENT WAS AT THE

19   SAME TIME OFFERING A COMPANY THAT HAD A SIMILAR VISION AND A

20   SIMILAR PLAN.  THE RESULT THAT -- THE INCREASE IN GOOD WILL AND

21   REPUTATION AND POPULARITY THAT COUNTERCLAIM DEFENDANTS GOT WAS

22   A RESULT OF FALSE STATEMENTS.

23       AND NOW AS YOUR HONOR HAS SEEN THROUGHOUT THE COURSE OF

24   THIS LITIGATION, OUR CLIENT HAS BEEN RECOGNIZED OR

25   CHARACTERIZED AS A TROLL, WHEN HE WASN'T, HE WAS THE FIRST IN
```

1    COMMERCE, HE WAS THE FIRST WHO CAME UP WITH THIS IDEA.

2        THE COURT:  AND JUST HAVING AN IDEA IS NOT GOOD

3    ENOUGH.  THAT'S REALLY WHAT'S GOING ON, ISN'T IT?  IN MANY

4    WAYS, HE HAD A NICE IDEA, BUT IT'S NOT GOOD ENOUGH.

5        MR. NUNO:  WELL, YOUR HONOR --

6        THE COURT:  BRINGING THESE KINDS OF CLAIMS IF YOU

7    HAVE NO COMMERCIAL BUSINESS --

8        MR. NUNO:  YOUR HONOR, RESPECTFULLY, WE HAVE PLED A

9    COMMERCIAL BUSINESS IN THE COMPLAINT.  WE TALK ABOUT ALL OF THE

10   USE IN COMMERCE THAT MR. RAVINE AND HIS COMPANY USED STARTING

11   BACK IN 2015.  HE HAD TENS OF THOUSANDS OF USERS ON HIS

12   WEBSITE, THE AI EVOLUTION, AND HE LATER ACQUIRED THREE MILLION

13   CUSTOMERS AND USERS UNDER THE SAME OPEN AI NAME WITH ARTIFICIAL

14   INTELLIGENCE PRODUCTS.

15       SO THERE ARE ALLEGATIONS OF USE IN COMMERCE.  OF COURSE HE

16   WASN'T ABLE TO GET THE SAME TRACTION THAT COUNTERCLAIM

17   DEFENDANTS DID, BUT HE ALSO WASN'T MAKING FALSE STATEMENTS, HE

18   WAS STAYING TRUE TO THE MISSION OF WHAT HE HAD SET OUT TO

19   ACCOMPLISH.

20       AND SO THAT DOES TRANSLATE INTO DAMAGE TO HIS BUSINESS AND

21   HIS GOOD WILL, YOUR HONOR, BECAUSE HE WASN'T GIVEN THE BENEFIT

22   OF THESE FALSITIES, AND HE WASN'T CLAIMING THAT HE HAD A

23   BILLION DOLLARS IN FUNDING WHEN HE DIDN'T.

24       THE COURT:  I THOUGHT THE COMPLAINT SAID A BILLION

25   DOLLARS IN COMMITMENTS, NOT A BILLION DOLLARS IN FUNDING.

```
 1              MR. NUNO:  WELL --

 2              THE COURT:  ISN'T THAT WHAT THE COMPLAINT SAYS?

 3              MR. FELDMAN:  ABSOLUTELY.

 4              THE COURT:  YEAH.  NO, IT'S BLACK AND WHITE.

 5              MR. NUNO:  WELL THE COMPLAINT SAYS THAT THEY

 6    RAISED -- THE COMPLAINT SAYS THAT THEY -- FALSELY SAID THEY

 7    RAISED A BILLION DOLLARS, BUT THAT'S DIFFERENT THAN --

 8              THE COURT:  NO, YOUR COMPLAINT SAYS A BILLION DOLLAR

 9    COMMITMENT.

10              MR. NUNO:  YOUR HONOR, RESPECTFULLY, WE ALSO SAY THAT

11    THEY RAISED A BILLION DOLLARS.  BUT ALSO, THE LITERAL FALSITY

12    IS ONLY ONE ASPECT IN WHICH A STATEMENT CAN BE FALSE.  A

13    STATEMENT CAN BE LITERALLY TRUE AND HAVE A TENDENCY TO DECEIVE,

14    AND THIS CERTAINLY WAS THAT.

15         AND IF YOU LOOK AT EXHIBIT B TO THE SCHER DECLARATION,

16    THERE IS A CONVERSATION BETWEEN MUSK AND ALTMAN, AND MR. --

17              THE COURT:  IS THIS SOMETHING THAT I'VE TOLD YOU IS

18    OUTSIDE THE SCOPE?

19              MR. FELDMAN:  YES.

20              MR. NUNO:  WELL, YOUR HONOR --

21              THE COURT:  IS IT OUTSIDE THE SCOPE?

22              MR. NUNO:  IT'S OUTSIDE THE SCOPE IN TERMS OF WE ONLY

23    QUOTED A PART OF THAT EXCHANGE BUT NOT THE ENTIRE --

24              THE COURT:  THAT'S NOT WITHIN THE SCOPE OF THE

25    ANALYSIS.  I'M NOT TAKING ONE DOCUMENT UNDER JUDICIAL NOTICE.
```

```
 1         THAT'S IT.

 2              MR. NUNO:  UNDERSTOOD, YOUR HONOR.  BUT I THINK THIS

 3    ALSO GOES TO PLAUSIBILITY A, AND ABILITY TO AMEND --

 4              THE COURT:  THEN ARGUE PLAUSIBILITY, DO NOT -- YOU

 5    OBVIOUSLY DIDN'T DO YOUR HOMEWORK.  DO NOT ARGUE THINGS OUTSIDE

 6    OF THE RECORD WHEN YOU ARE IN FRONT OF ME, DO YOU UNDERSTAND?

 7              MR. NUNO:  YES, YOUR HONOR.

 8              THE COURT:  TRADEMARK.

 9         IN TERMS OF THE CANCELLATION ISSUE, CANCELLATION APPEARS

10    TO ME, AND YOU DIDN'T ARGUE IT, NEITHER OF YOU DID THIS WAY,

11    CANCELLATION APPEARS TO BE A REMEDY, NOT AN INDEPENDENT CAUSE

12    OF ACTION.

13         I HAVEN'T -- AND IF IT IS AN INDEPENDENT CAUSE OF ACTION,

14    WHAT ARE THE ELEMENTS?  BECAUSE IT APPEARS TO BE A REMEDY FOR

15    TRADEMARK INFRINGEMENT.

16              MS. CARUSO:  OUR MOTION IS ADDRESSED TO THE

17    CANCELLATION FOR MIS-DESCRIPTIVENESS.  THE COUNT -- I BELIEVE

18    IT'S COUNT --

19              THE COURT:  WE LOOKED FOR THE ELEMENTS OF THAT CLAIM

20    AND COULDN'T FIND THEM.  SO WHERE IS THIS COMING FROM, IS IT A

21    REMEDY OR NOT?

22              MR. NUNO:  IT'S CERTAINLY A REMEDY, YOUR HONOR.

23              THE COURT:  OKAY.  SO IT'S A REMEDY FOR WHAT CAUSE OF

24    ACTION?

25              MR. NUNO:  FOR A -- WELL I GUESS IT WOULD BE A REMEDY
```

1    FOR THEIR AFFIRMATIVE CLAIM OVER TRADEMARK RIGHTS.

2              THE COURT:  YOU ARE NOT ASSERTING THIS AS AN

3    AFFIRMATIVE DEFENSE, YOU ARE ASSERTING THIS AS A CAUSE OF

4    ACTION.

5              MR. NUNO:  YES, YOUR HONOR.  AND --

6              THE COURT:  OKAY.  SO IS IT A CAUSE OF ACTION OR IS

7    IT A REMEDY TO SOME OTHER CAUSE OF ACTION?

8              MR. NUNO:  IT CAN BE ASSERTED AS A CAUSE OF ACTION.

9              THE COURT:  ALL RIGHT.  WHAT ARE THE ELEMENTS AND

10   WHERE DID YOU GET IT -- WHERE DO YOU HAVE THOSE ELEMENTS FROM

11   OR WHAT IS THE SOURCE OF THOSE ELEMENTS?  BECAUSE I COULDN'T

12   FIND THIS CLAIM.

13             MR. NUNO:  THE SOURCE OF THE ELEMENTS WOULD COME FROM

14   15 USC 1052, YOUR HONOR, WHICH DISCUSSES THAT NO TRADEMARK BY

15   WHICH --

16             THE COURT:  HOLD ON.  WHAT CODE SECTION DID YOU GIVE

17   ME?

18             MR. NUNO:  15 USC 1052.

19             THE COURT:  WELL YOU BRING THIS UNDER SECTION 1119,

20   NOT 1052.

21             MR. NUNO:  CORRECT, YOUR HONOR.

22             THE COURT:  THEN --

23             MR. NUNO:  SO SECTION 1119 SAYS, ANY ACTION OF

24   REGISTERED MARK, THE COURT MAY DETERMINE A RIGHT TO

25   REGISTRATION, ORDER THE CANCELLATION REGISTRATIONS, RESTORE

```
1        CANCELLED REGISTRATIONS --

2              THE COURT:  SO YOU NEED TO SLOW DOWN OR YOU ARE NOT

3        GOING TO HAVE A TRANSCRIPT FOR THIS.

4              MR. NUNO:  I APOLOGIZE, YOUR HONOR.

5              THE COURT:  SECTION 15 USC 1119 TALKS ABOUT THE POWER

6        OF THE COURT OVER REGISTRATION, IT DOES NOT STATE, WILL PROVIDE

7        A CAUSE OF ACTION OR CANCELLATION.

8              MR. NUNO:  WELL, YOUR HONOR, THIS WOULD BE THE

9        MECHANISM TO GET THIS IN FRONT OF THE COURT TO RESOLVE.

10              THE COURT:  DO YOU HAVE ANY AUTHORITY FOR THE

11        PROPOSITION THAT THIS IS A STANDALONE CAUSE OF ACTION AS

12        OPPOSED TO A -- AS OPPOSED TO AN ARTICULATION OF THE COURT'S

13        POWER TO PROVIDE A REMEDY FOR A DIFFERENT CAUSE OF ACTION?

14              MR. NUNO:  YOUR HONOR, ONLY ALL OF THE AUTHORITY THAT

15        WE CITED IN OUR OPPOSITION BRIEF THAT DISCUSSES --

16              THE COURT:  WHAT I SAID TO YOU BOTH IS THAT NEITHER

17        OF YOU BRIEFED THIS, BUT YOU BROUGHT A COMPLAINT, AND I'M

18        ASSUMING THAT YOU LOOKED AT THE CLAIMS IN ORDER TO STATE A

19        CLAIM.

20              MR. NUNO:  CORRECT.  AND THE ELEMENTS OF THOSE CLAIMS

21        IS WHY I REFERENCED YOUR HONOR TO 15 USC 1052.

22              THE COURT:  BUT 1052 IS NOT CITED IN YOUR COMPLAINT.

23              MR. NUNO:  NO, BUT 1052 DISCUSSES THE CASES IN WHICH

24        TRADEMARK APPLICATIONS OR TRADEMARK REGISTRATION SHOULD BE

25        REFUSED.
```

```
 1              THE COURT:  SO WHY WASN'T IT -- WHY DIDN'T YOU BRING

 2      IT UNDER 1052?

 3              MR. NUNO:  BECAUSE 1119 IS WHAT GIVES THE COURT THE

 4      DISCRETION TO CANCEL THE REGISTRATION.

 5              THE COURT:  BACK TO MY CLAIM, WHICH IS THAT THIS

 6      SEEMS LIKE IT IS A REMEDY, NOT A SEPARATE CAUSE OF ACTION.  IS

 7      IT A JURY ISSUE?  HOW AM I SUPPOSED TO INSTRUCT A JURY ON A

 8      CLAIM WHERE THE ONLY THING THAT YOU CITE IS THE REMEDY, OR IS

 9      IT NOT A JURY ISSUE?  IS IT A JURY ISSUE, IS MY QUESTION.

10              MR. NUNO:  I WOULD NEED TO LOOK INTO THAT FURTHER TO

11      GIVE YOU AN ANSWER, YOUR HONOR.

12              THE COURT:  DO YOU KNOW?

13              MS. CARUSO:  I'M AWARE OF NO AUTHORITY THAT THERE IS

14      A JURY RIGHT ON THIS ISSUE.

15              THE COURT:  ONE OF THE REASONS THAT I RAISE THIS IS

16      BECAUSE COULD IT BE DUPLICATIVE OF SOMETHING THAT'S ALREADY

17      BEEN BROUGHT, JUST SEEKING A DIFFERENT REMEDY.  YES OR NO?

18          MR. NUNO, IS IT DUPLICATIVE OF SOME OTHER CLAIM YOU'VE

19      ALREADY BROUGHT, IT JUST SEEKS A DIFFERENT REMEDY?

20              MR. NUNO:  CLAIM 9, YOUR HONOR, SEEKS DECLARATION OF

21      DECLARATORY JUDGMENT THAT COUNTERCLAIM DEFENDANT HOLDS NO VALID

22      TRADEMARK IN THE MARK.  SO I SUPPOSE THAT COULD BE ANOTHER WAY

23      TO CANCEL THE TRADEMARK.

24              THE COURT:  AND WHAT IS THE DIFFERENCE BETWEEN THE

25      TWO?
```

1          MR. NUNO:  WELL, 1119 IN WHICH WE INCORPORATED 1052

2     IS SPECIFICALLY ABOUT TRADEMARK BEING A MORAL, DECEPTIVE OR

3     SCANDALOUS OR MERELY DESCRIPTIVE AND MIS-DESCRIPTIVE.  THE

4     DECLARATORY JUDGMENT ACTION IS NOT SO LIMITED.

5          THE COURT:  DOES THAT MEAN IT'S DUPLICATIVE OR NOT?

6          MR. NUNO:  NO, YOUR HONOR, THEY ARE OVERLAPPING, BUT

7     THEY ARE NOT DUPLICATIVE.

8          THE COURT:  SO I GO BACK TO MY ORIGINAL QUESTION

9     WHICH IS WHAT ARE THE ELEMENTS OF THIS CLAIM?  JUST STATE THEM

10    FOR ME, 1, 2, 3, 4, WHAT ARE THE ELEMENTS OF THE CLAIM?

11         MR. NUNO:  THAT A REGISTERED MARK IS COMPRISED OF A

12    MORAL, DECEPTIVE OR SCANDALOUS MATTER, OR MATTER WHICH MAY

13    DISPARAGE OR FALSELY SUGGEST A CONNECTION WITH PERSONS -- AND

14    THEN I CAN CONTINUE ACCORDING TO THE LANGUAGE OF THE STATUTE,

15    YOUR HONOR, THAT'S 1052(A).

16         THE COURT:  THAT'S NOT IN 1119.

17         MR. NUNO:  NO, IT'S IN 1052, YOUR HONOR.

18         THE COURT:  SO YOU WOULD LIKE TO AMEND IT TO ALLEGE

19    1052?

20         MR. NUNO:  WELL YOUR HONOR, WE DO ALLEGE 1052 WITHIN

21    THE LANGUAGE OF THE COMPLAINT, OF THAT CAUSE OF ACTION

22    SPECIFICALLY.

23         THE COURT:  IF I DO NOT TAKE JUDICIAL NOTICE OF

24    EVERYTHING YOU'VE ASKED ME TO, WHERE DOES THAT LEAVE ME?

25         MS. CARUSO:  THAT DOESN'T SUBSTANTIVELY CHANGE OUR

1    ARGUMENTS, YOUR HONOR.  THEY HAVE NOT PLED THE ELEMENTS UNDER

2    1052 IN ORDER TO ENTITLE THEM TO CANCELLATION, THEY HAVE MIXED

3    AND MATCHED SECTIONS 2(A), 2(E), TO TRY AND PATCH TOGETHER

4    SOMETHING, AND NEITHER OF THEM SUCCEEDS, NOR CAN IT.

5          THEY HAVE NOT PLED THAT THE MARK IS -- THE DECEPTION, THE

6    ALLEGED DECEPTION IS MATERIAL.  THEY HAVE ALLEGED THAT IT IS --

7             THE COURT:  WELL RARELY, IF EVER, WOULD I RESOLVE AN

8    ISSUE OF MATERIALITY ON A MOTION TO DISMISS UNLESS IT WAS A

9    SECURITIES CLAIM.

10            MS. CARUSO:  UNDERSTOOD, BUT THEY DIDN'T EVEN ALLEGE

11   THAT IT WAS.

12         THEY DIDN'T ALLEGE HOW IT COULD BE CONSTRUED AS DECEPTIVE

13   AS A MATTER OF LAW.

14         THIS IS NOT AN ISSUE LIKE A TRADEMARK THAT SAYS LAMBSKIN

15   BUT HAS NO LAMBSKIN, OR DOWN THAT HAS NO DOWN.

16            THE COURT:  THE ALLEGATION IS THAT YOU CLAIM TO SAY

17   IT'S OPEN AND IT'S NOT, BECAUSE PEOPLE ARE PAYING TO USE THE

18   PRODUCT.  THAT'S THE BEST CASE.  IT'S NOT OPEN, AT LEAST NOT

19   ANYMORE.

20            MS. CARUSO:  RIGHT.  AND I THINK THAT IF THEY ARE

21   PAYING TO USE THE PRODUCT, THEY KNOW THAT IT'S NOT -- THAT THEY

22   ARE PAYING FOR IT.  SO IT CAN'T NECESSARILY BE DECEIVING THEM.

23   THEIR PURCHASE DECISION IS NOT MISLEAD BY THAT BELIEF.

24            THE COURT:  RESPONSE?

25            MR. NUNO:  YOUR HONOR, THE ALLEGATIONS ARE NOT JUST

1    THAT "OPEN" REFERS TO A FREE PRODUCT, IT'S ALSO THAT IT'S OPEN

2    SOURCE, WHICH THEY ARE CLEARLY NOT -- WE'VE ALLEGED IN THE

3    COMPLAINT THAT THEY HAVE AGREED NOT TO SHARE THE SCIENCE, AND

4    THAT WAS JUST AN INITIAL PLOY.

5         AND SO I GUESS TO THAT POINT, THE "OPEN" DOESN'T JUST MEAN

6    A FREE PRODUCT, BUT ULTIMATELY --

7              THE COURT:  SO YOU AGREE WITH HER ON THE FIRST PART,

8    THAT'S NOT WHAT YOU ARE ARGUING, WHAT YOU ARE ARGUING IS THE

9    OPEN SOURCE?

10             MR. NUNO:  WELL WE ARE ARGUING OPEN SOURCE.

11        AND I DISAGREE WITH COUNSEL ON THAT POINT AS WELL.  IT'S

12   NOT TIED TO STRICTLY WHETHER A USER ACTUALLY PURCHASED THE

13   PRODUCT, IT'S TIED TO ANY USER WHO CAN GO ON THEIR WEBSITE, WHO

14   CAN UTILIZE THEIR SERVICES, WHETHER THEY ARE FREE OR NOT.  I

15   UNDERSTAND NOT ALL THE SERVICES ARE PAID SERVICES.  AND SO THE

16   TRADEMARK IS ULTIMATELY STILL DESCRIPTIVELY -- MIS-DESCRIPTIVE.

17             THE COURT:  ALL RIGHT.

18        WHAT I SHOULD HAVE DONE AT THE OUTSET IS THROW THIS NAME

19   OUT FOR BOTH OF YOU AS NOT A VERY GOOD MARK.  OVERLY

20   DESCRIPTIVE.  BUT ANYWAY, I DIGRESS.

21             MS. CARUSO:  YOUR HONOR, ANOTHER PROBLEM WITH THIS

22   CLAIM -- SO THE SORT OF THREE PIECES THAT ARE NECESSARY TO SHOW

23   DECEPTION ARE LAID OUT IN THE CREEL ABOGADOS CASE THAT'S CITED

24   BY US ON PAGE 22, AND JUST ON THE OPPOSITION AT PAGE 22 AS

25   WELL.

 1          AND SO THE FIRST IS MISDESCRIPTIVE OF THE CHARACTER,

 2    QUALITY, FUNCTION, COMPOSITION AND USE.  AND SO WHEN YOU LOOK

 3    AT THE CASES THAT ADDRESS THESE KINDS OF CLAIMS WHERE YOU HAVE,

 4    FOR EXAMPLE, AN OPPOSER SEEKING TO PREVENT REGISTRATION OR

 5    SEEKING CANCELLATION FROM THE PTO, WHAT YOU FIND ARE CASES IN

 6    WHICH THE TRADEMARKS AT ISSUE ARE THINGS THAT MAKE FACTUAL

 7    REPRESENTATIONS ABOUT WHAT IS IN THE PRODUCT OR WHAT THE

 8    PRODUCT IS LIKE, SUCH AS ORGANIC, WHEN IT'S NOT ORGANIC, OR

 9    THAT IT IS DOWN WHEN IT IS NOT DOWN.  SOMETHING THAT IS A

10    GENERAL KIND OF ADJECTIVE THAT'S LAUDATORY AND PLEASANT IS NOT

11    THAT KIND OF A MARK.  SO THAT'S THE FIRST ELEMENT.

12          THE SECOND THING, THE PROSPECTIVE PURCHASERS ARE LIKELY TO

13    BELIEVE THE MISDESCRIPTION ACTUALLY DESCRIBES THE GOODS OR

14    SERVICES.

15          AGAIN, WE HAVE THESE TWO SCENARIOS WHERE YOU HAVE

16    CONSUMERS WHO ARE USING THE SERVICES.  AT THE TIME OF USE, IT

17    IS READILY APPARENT TO THEM WHETHER OR NOT THEY ARE PAYING FOR

18    IT AND WHETHER OR NOT IT IS AN OPEN SOURCE PRODUCT.

19          THE COURT:  HOW DO THEY KNOW THE SECOND?  OBVIOUSLY

20    PEOPLE KNOW IF THEY ARE USING IT, WHETHER THEY ARE USING THE

21    FREE -- A FREE PRODUCT VERSUS PAYING THE MONTHLY FEE FOR THE

22    PAID PRODUCT, BUT WHAT ABOUT THE OPEN SOURCE ISSUE?

23          MS. CARUSO:  WELL THE OPEN SOURCE ISSUE IS IF SOMEONE

24    IS LOOKING FOR AN OPEN SOURCE PRODUCT TO DEVELOP AND TO ADD TO,

25    THE WAY THAT PEOPLE USE OPEN SOURCE, THEY EITHER FIND IT OR

1          THEY DON'T.

2              IN TERMS OF WHETHER CONSUMERS KNOW THAT THE SORT OF GUTS

3      OF A PRODUCT HAVE AN OPEN SOURCE COMPONENT OR NOT, THERE'S NO

4      ALLEGATION THAT THAT IS SOMETHING THAT'S LIKELY TO MATTER TO

5      CONSUMERS.

6              SO FOR ALL OF THOSE REASONS, NONE OF THOSE THINGS ARE IN

7      THE COMPLAINT.

8                  THE COURT:  WELL THERE IS NO ALLEGATION THAT THERE IS

9      ANY CONFUSION REGARDING AI OR ARTIFICIAL INTELLIGENCE, CORRECT?

10                 MR. NUNO:  CORRECT.

11                 THE COURT:  YOU ARE REALLY JUST COMPLAINING ABOUT

12     WHETHER THE OPEN PART IS -- MIS-DESCRIBES LITTLE GOODS OR

13     SERVICES, RIGHT?

14                 MR. NUNO:  CORRECT.

15                 THE COURT:  YOU ALL USE THE OPEN PART TOO AND YOU ARE

16     SAYING YOUR VERSION OF IT IS THE RIGHT VERSION, NOT THEIR

17     VERSION OF IT.

18                 MR. NUNO:  CORRECT.

19          AND -- BUT YOUR HONOR, IT'S TIED TO THE ARTIFICIAL

20     INTELLIGENCE COMPONENT; BUT YES, WE DON'T BELIEVE THAT THE

21     ARTIFICIAL INTELLIGENCE IS MISDESCRIPTIVE.

22                 THE COURT:  I HAVEN'T SEEN, AND TYPICALLY IN

23     CONFUSION CASES, WHERE THERE'S ALLEGATIONS THAT A MARK CONFUSES

24     PEOPLE, WE GET LOTS OF WINE CASES HERE, LOTS OF OTHER KINDS OF

25     CASES, THERE'S ALWAYS ALLEGATIONS OF SPECIFIC REFERENCES TO

1    CONSUMERS WHO ARE ACTUALLY CONFUSED ABOUT THE TWO DIFFERENT

2    MARKS.  THERE'S NOTHING, NO ALLEGATIONS.

3         CAN YOU AMEND?  IF GIVEN LEAVE TO AMEND, DO YOU HAVE

4    EVIDENCE WHERE PEOPLE SAY -- I MEAN, THEY HAVE ALLEGED IT ON

5    THE OTHER SIDE THAT PEOPLE CONFUSE OPEN AI WITH OPEN ARTIFICIAL

6    INTELLIGENCE.  I'VE GOT ALLEGATIONS FROM THEM, BUT I SEE

7    NOTHING FROM YOUR SIDE.

8         MR. NUNO:  WELL, YOUR HONOR, I THINK WE HAVE PIVOTED

9    FROM THE TRADEMARK -- FROM THE CLAIM FOR CANCELLATION, WHETHER

10   OR NOT IT'S MISDESCRIPTIVE.  AND TO THAT POINT, OUR

11   ALLEGATION --

12        THE COURT:  THE SECOND ELEMENT IS THE CONSUMER'S --

13   AT LEAST WHAT YOU ALL HAVE GIVEN TO ME, AND MAYBE THIS ISN'T --

14   AGAIN, NO GREAT DESCRIPTION OF WHAT THE ELEMENTS ARE, BUT THE

15   SOUTHERN DISTRICT OF NEW YORK CASE HAS TWO ELEMENTS.  ONE, IT

16   MIS-DESCRIBES THE GOODS AND SERVICES; AND TWO, CONSUMERS ARE

17   LIKELY TO BELIEVE THE MISREPRESENTATION.

18        SO I DON'T SEE ANY REFERENCE OR ANY ALLEGATION TO ACTUAL

19   CONSUMERS WHO ARE LIKELY TO BELIEVE THE MISREPRESENTATION THAT

20   YOU'VE IDENTIFIED.

21        MR. NUNO:  WELL YOUR HONOR, IN PARAGRAPHS 99 AND 100

22   OF THE COMPLAINT, WE CITE TWO INSTANCES IN WHICH CONSUMERS ARE

23   COMPLAINING ABOUT THE MIS-DESCRIPTIVENESS OF THE OPEN AI MARK

24   AND IT ACTUALLY SHOULD BE CLOSED AI AND THEY SHOULD CHANGE

25   THEIR NAME AND THAT NOT SHARING THE SOURCE --

```
 1              THE COURT:  ARE THEY COMPLAINING ABOUT IT OR ARE THEY

 2      SAYING THEY ARE CONFUSED?

 3              SO 99 RELATES TO MUSK, HE HAS HIS OWN LAWSUIT, AND THEN

 4      100 HAS COMPLAINTS ABOUT THE NAME, BUT THERE ISN'T ACTUALLY --

 5      THEY DISAGREE ABOUT THE USE OF IT.  THERE IS NOT A STATEMENT

 6      THAT THEY DON'T UNDERSTAND.  THERE IS NO CONFUSION.  THERE

 7      ACTUALLY IS -- THERE ACTUALLY IS LACK OF CONFUSION, THAT'S WHAT

 8      THEY ARE COMPLAINING ABOUT.

 9              MR. NUNO:  WELL YOUR HONOR, THERE IS LACK OF

10      CONFUSION IN TERMS OF MUSK, OR THIS ACCOUNT, WEARESOCIAL.COM.

11      I CAN SEE THE COURT'S INTERPRETATION OF THAT.  BUT ALSO, THIS

12      GOES TO A PLAUSIBILITY ISSUE, AND WE HAVE PLED THAT CONSUMERS

13      HAVE BEEN DECEIVED AND ARE LIKELY TO BELIEVE --

14              THE COURT:  WHAT IS WHAT I CALL A BALD -- AND NO

15      OFFENSE TO BALD PEOPLE -- BUT A BALD STATEMENT.  THERE IS

16      NO SUBSTANCE BEHIND IT.  YOU'VE GIVEN ME -- MUSK ABSOLUTELY

17      KNOWS WHAT'S GOING ON.

18              MR. NUNO:  EXACTLY, YOUR HONOR.

19              THE COURT:  SO THERE IS NO CONFUSION.

20              MR. NUNO:  EXACTLY.  MUSK DOES KNOW EXACTLY WHAT'S

21      GOING ON, AND THE --

22              THE COURT:  THAT'S WHY HE HAS HIS OWN CASE.  MY POINT

23      IS THERE IS NO CONFUSION.  AND THE SECOND --

24              MR. NUNO:  BUT THE MAJORITY OF CONSUMERS DON'T,

25      YOUR HONOR.
```

1          THE COURT:  BUT YOU HAVEN'T GIVEN ME AN ALLEGATION OF

2     ANYBODY WHO SAYS THEY DON'T UNDERSTAND.

3          MR. NUNO:  OKAY, YOUR HONOR, RESPECTFULLY, WE BELIEVE

4     WE CAN -- TO THE EXTENT THAT THE COURT FINDS THAT THAT'S

5     DEFICIENT, WE BELIEVE WE CAN AMEND TO CLARIFY AND MEET THE

6     COURT'S CONCERNS.

7          THE COURT:  IN TERMS OF THE DEC RELIEF CLAIMS, THEY

8     HAVE IDENTIFIED THE REASON WHY TO KEEP A DEC RELIEF CLAIM IN

9     THE EVENT THAT PLAINTIFFS DISMISS THEIR CLAIMS.  IT SEEMS LIKE

10    AN APPROPRIATE BASIS TO KEEP A DEC RELIEF CLAIM, IT'S THE

11    OPPOSITE SIDE OF THE COIN.

12         MS. CARUSO:  YOUR HONOR, RESPECTFULLY, WE THINK THAT

13    IF THE PLAINTIFFS WERE TO WITHDRAW THEIR CLAIMS, WHICH THERE

14    HAS BEEN NO DISCUSSION OF HAPPENING, AND THE DEFENDANTS WERE

15    CONCERNED ABOUT BEING PREJUDICED BY THAT, OBVIOUSLY WE WOULD

16    NEED THE COURT'S PERMISSION AT THIS POINT TO DISMISS AND THAT

17    WOULD HAVE TO BE ON THE TERMS THAT THE COURT THOUGHT WERE JUST,

18    AND IF THAT INCLUDED REINSTATING --

19         THE COURT:  WHAT DOES IT MATTER?  YOU KNOW, I'M IN A

20    FOUR-MONTH JURY TRIAL --

21         MS. CARUSO:  UNDERSTOOD, YOUR HONOR.

22         THE COURT:  -- WHAT DOES IT MATTER TO THE RESOLUTION

23    OF THIS LAWSUIT AS TO WHETHER OR NOT THE OPPOSITE SIDE OF THE

24    COIN IS PLED?  WHAT DOES IT MATTER?

25         MS. CARUSO:  WE WOULD PUT IT THE SAME WAY, BUT

1    YOUR HONOR WE HAVE NO SIGNIFICANT OBJECTION, WE WERE TRYING TO

2    STREAMLINE THE PLEADINGS.

3            THE COURT:  SO THERE ARE FOUR OF THEM HERE, ARE ALL

4    FOUR OF THOSE, AS I SAID, THE OPPOSITE SIDE OF THE COIN OF YOUR

5    AFFIRMATIVE CLAIMS?

6            MS. CARUSO:  YES, THEY ALL WOULD BE RESOLVED BY

7    RULINGS ON OUR CLAIMS.

8            THE COURT:  ALL RIGHT.  AND THOSE CAN STAY, THE

9    MOTION IN THAT RESPECT IS DENIED.

10       I WILL GO BACK AND LOOK AT THE OTHER.  AND AT SOME POINT

11   YOU WILL GET A RESPONSE IN WRITING, BUT I'M NOT EXACTLY SURE

12   WHEN.

13           MS. CARUSO:  YOUR HONOR, WE WOULD ALSO LIKE TO RAISE

14   THE LACHES ARGUMENTS AND THE SECONDARY MEANING CHALLENGES TO

15   THEIR TRADEMARK ALLEGATIONS.

16           THE COURT:  SO I'M NOT PERSUADED BY LACHES, I'M NOT

17   GOING TO HEAR ARGUMENT ON IT.

18           MS. CARUSO:  THANK YOU, YOUR HONOR.

19       ON SECONDARY MEANING, THERE IS NO ALLEGATIONS IN THE

20   COMPLAINT THAT SUPPORT THEY HAVE A VALID TRADEMARK THAT WAS IN

21   USE BEFORE THE PLAINTIFF BEGAN USING ITS MARK.

22           THE COURT:  RESPONSE?

23           MR. NUNO:  YOUR HONOR, COURTS IN THIS DISTRICT HAVE

24   HELD THAT THERE IS NO NEED TO PLEAD SECONDARY MEANING

25   SPECIFICALLY WHEN ASSERTING A TRADEMARK INFRINGEMENT CLAIM,

```
1     IT'S CERTAINLY A DEFENSE THAT THEY CAN RAISE BUT IT'S NOT

2     AMENABLE FOR RESOLUTION AT THE MOTION TO DISMISS, AND THE COURT

3     CAN INFER SECONDARY MEANING FROM THE ALLEGATIONS THAT WERE PLED

4     IN THE COMPLAINT, INCLUDING MOST SIGNIFICANTLY PRIORITY AND

5     SENIORITY AND USE, WHICH HAS BEEN ALLEGED.

6          THE COURT:  THE BASIS UPON WHICH I UNDERSTOOD YOU

7     WERE PROCEEDING?  THERE IS NO ALLEGATION THAT SUPPORTS

8     SECONDARY MEANING.  YOU HAVE OTHER ARGUMENTS, BUT IT'S NOT

9     THAT.

10         MR. NUNO:  WELL YOUR HONOR, CERTAINLY WE HAVE ALLEGED

11    THAT WE HAVE A VALID REGISTRATION AND THAT'S GROUNDS FOR THE

12    11414 CLAIM.

13         THE COURT:  AND TO THE EXTENT YOU HAVE A CLAIM,

14    THAT'S YOUR CLAIM.

15         MR. NUNO:  CORRECT, YOUR HONOR.

16         THE COURT:  THERE ARE NO -- AND CERTAINLY WHAT WOULD

17    BE HELPFUL IN THIS CASE IS TO TRIM THIS TO SOMETHING THAT CAN

18    BE LITIGATED WITHOUT ALL OF THE BACK AND FORTH, AND THERE IS

19    NOTHING THAT YOU'VE ALLEGED THAT INDICATES THAT THERE IS ANY

20    SECONDARY MEANING WHATSOEVER.  WHAT PARAGRAPHS ARE YOU RELYING

21    ON FOR THAT?

22         MR. NUNO:  YOUR HONOR, 51 THROUGH 57 DEMONSTRATES THE

23    USE IN COMMERCE THAT STARTED BACK IN 2015, THE RESOURCES --

24         THE COURT:  JUST USE TO GET SECONDARY MEANING?

25         NO, YOUR HONOR, WE BELIEVE IT'S A QUESTION OF FACT,
```

1    AND THESE ALLEGATIONS, IF TAKEN AS TRUE, WOULD DEMONSTRATE.

2           THE COURT:  I DISAGREE.  THERE IS VERY LITTLE HERE.

3           MR. NUNO:  OKAY, YOUR HONOR.

4       I UNDERSTAND THAT YOU DISAGREE THAT THE ALLEGATIONS IN THE

5    COMPLAINT, AS PLED, ARE INSUFFICIENT FOR SECONDARY MEANING.  WE

6    CAN CERTAINLY AMEND TO INCLUDE MORE DETAIL, AND IT'S A

7    QUINTESSENTIAL QUESTION OF FACT, YOUR HONOR, IT'S NOT SOMETHING

8    THAT'S AMENABLE FOR RESOLUTION ON THE MOTION TO DISMISS.

9           THE COURT:  IT'S JUST WHEN IT'S SO VACUOUS, IT IS.

10          MR. NUNO:  UNDERSTOOD, YOUR HONOR.

11      AND YOU KNOW, LIKE HER HONOR MENTIONED, THERE ARE OTHER

12   BASIS FOR THE TRADEMARK INFRINGEMENT CLAIMS, INCLUDING A VALID

13   REGISTRATION, THAT WE HAVE PLED, AND OWNERSHIP AND SENIORITY.

14          THE COURT:  THAT, I UNDERSTAND.

15          MR. NUNO:  AND THE TRADEMARK.

16          THE COURT:  BUT SECONDARY MEANING, THERE IS NOT

17   ENOUGH THERE.

18          MR. NUNO:  UNDERSTOOD, YOUR HONOR.

19      TO THE EXTENT THE COURT INTENDS TO MAKE THAT PART OF ANY

20   RULING ON THIS, WE WOULD JUST RESPECTFULLY REQUEST LEAVE TO

21   AMEND TO ADD ADDITIONAL DETAIL ON THAT ISSUE.

22          MS. CARUSO:  YOUR HONOR, MR. FELDMAN HAS RAISED AN

23   EXCELLENT POINT TO ME WHICH IS IN TERMS OF THE DECLARATORY

24   RELIEF CLAIMS, THEY INCORPORATE BY REFERENCE EVERYTHING THAT

25   PRECEDES THEM AND THEY ARE AT THE END.

1      SO IF THE COMPLAINT WAS TRIMMED, WE WOULD WANT TO BE VERY

2      CLEAR THAT THEY DO NOT REVIVE ANY OF THOSE ALLEGATIONS THAT

3      HAVE NOTHING TO DO WITH THE DECLARATORY RELIEF CLAIMS BUT HAVE

4      TO DO WITH THESE OTHER COMPLAINTS THAT DO NOT SUPPORT, FOR

5      EXAMPLE, FALSE ADVERTISING.

6              THE COURT:  OKAY.  I'M NOT SURE I UNDERSTOOD YOU.

7              MR. FELDMAN:  WE DON'T WANT SOMEBODY TO SAY THAT --

8              THE COURT:  PLEASE USE THE MIC.

9              MR. FELDMAN:  WE DON'T WANT SOMEONE TO SAY THAT

10     BECAUSE, AS CAUSES OF ACTION TYPICALLY DO, BECAUSE THESE

11     DECLARATORY RELIEF CLAIMS REINCORPORATE EVERYTHING ELSE IN THE

12     COUNTERCLAIM, THAT HYPOTHETICALLY IF THE ONLY THINGS LEFT AFTER

13     YOUR HONOR RULES ARE THE DECLARATORY RELIEF CLAIMS, THAT

14     DISCOVERY AND OTHER BEHAVIOR ON EVERYTHING THAT IS IN THE

15     COUNTERCLAIM IS THEREFORE FAIR GAME.

16      I CAN SAY THAT AGAIN IF I DIDN'T SAY IT CLEARLY.  THE

17     DECLARATORY RELIEF CLAIMS, EACH ONE OF THEM IN THE BEGINNING OF

18     THE CLAIM SAYS THE COUNTERCLAIM IS INCORPORATED BY REFERENCE AS

19     THOUGH FULLY SET FORTH HEREIN, THE ALLEGATIONS OF THE

20     PARAGRAPHS PRECEDING OF THIS COUNTERCLAIM.

21      SO IF, HYPOTHETICALLY, YOUR HONOR GRANTED OUR MOTION WITH

22     RESPECT TO SOME OR ALL OF THE ENTIRE COUNTERCLAIM OTHER THAN

23     THE DECLARATORY RELIEF CLAIMS, I COULD SEE SOMEONE SAYING THAT

24     DISCOVERY ON THE CLAIMS, THE PARAGRAPHS THAT YOU'VE KNOCKED

25     OUT, WOULD BE APPROPRIATE.  AND THAT WOULD BE UNFORTUNATE,

1    SINCE AS I TAKE YOUR HONOR'S INTENTION, IT'S TO LEAVE THESE

2    CLAIMS IN BECAUSE THEY MIRROR OUR CLAIMS, THE FLIP SIDE OF OUR

3    CLAIMS.

4            THE COURT:  OKAY.

5        WELL I AGREE WITH THAT.  OKAY.  SUBMITTED?

6        MS. CARUSO:  YOUR HONOR, JUST ONE POINT OF

7    CLARIFICATION.  I KNOW IT'S BEEN A VERY LONG DAY, BUT IN TERMS

8    OF THE SECONDARY MEANING ISSUE, THAT GOES TO THEIR SECTION 1,

9    THEIR 1114 CLAIM, AS WELL AS THEIR 1125(A) CLAIM BECAUSE A

10   REGISTRATION ON THE SUPPLEMENTAL REGISTER IS NOT A VALID

11   TRADEMARK, IT NEEDS TO BE DISTINCTIVE TO BE A VALID TRADEMARK

12   THAT CAN BE ENFORCED IN FEDERAL COURT.  SO THEY NEED SECONDARY

13   MEANING TO SUPPORT THAT AS WELL.

14           THE COURT:  BUT THEY DON'T NEED IT FOR THE CALIFORNIA

15   COMMON LAW TRADEMARK.

16           MS. CARUSO:  THEY DO NEED IT FOR THAT TOO, THEY NEED

17   IT FOR ALL OF THEIR TRADEMARK CLAIMS BECAUSE OTHERWISE THEY

18   HAVE NO DISTINCTIVE MARK TO BE ENFORCED.

19           THE COURT:  WELL THEN I MAY HAVE TO WALK THAT BACK.

20           MR. NUNO:  YOUR HONOR, IF I JUST MAY RESPOND TO THAT?

21           THE COURT:  THIS CASE, IN MY VIEW, IS ABOUT

22   FUNDAMENTALLY THE TRADEMARK ISSUES, WHO HAS THE TRADEMARK?

23   PLAINTIFFS, DEFENDANT, COUNTER-CLAIMANTS, COUNTER-DEFENDANT, SO

24   THAT IS WHAT I AM PREPARED TO LITIGATE.

25           THE FACT THAT THIS IS FALSE ADVERTISING, THE BATTLE IS

1    INCREDIBLY HIGH, YOU HAVE AN UPHILL BATTLE ON THIS, THIS IS NOT

2    A FALSE ADVERTISING CASE, SO I MAY LET THAT STAND.  IF I'M

3    GOING TO LITIGATE IT ANYWAY, I MIGHT AS WELL LITIGATE BOTH

4    SIDES.  BUT IT'S A STRETCH.  IT'S AN INCREDIBLE STRETCH.

5         ALL RIGHT.  ANYTHING ELSE?

6         MR. NUNO:  YOUR HONOR, I'M SORRY, FOR CLARIFICATION,

7    WHEN YOU SAY INCREDIBLE STRETCH, YOU ARE REFERRING TO THE FALSE

8    ADVERTISING CLAIM?

9         THE COURT:  WELL, THAT FOR ONE, BUT THE SECOND IS

10   THAT THERE'S SECONDARY MEANING.  I DON'T SEE HOW YOU CAN MAKE

11   THAT ARGUMENT.  I MAY ALLOW YOU TO MAKE IT SINCE I'M GOING TO

12   LITIGATE THE TRADEMARK ISSUES ANYWAY, BUT IT IS A STRETCH TO

13   SAY THAT YOU'VE ACQUIRED SECONDARY MEANING.

14        MS. CARUSO:  YOUR HONOR, I WOULD LIKE TO POINT OUT

15   ONE ISSUE WITH ALLOWING THAT TO REMAIN IN THE CASE.

16        I APPRECIATE THAT YOU WANT THIS TO BE ABOUT WHO OWNS THE

17   TRADEMARK AND WHETHER OR NOT WE HAVE THE RIGHTS, WE DO, BUT

18   ALLOWING THEIR TRADEMARK CLAIMS TO REMAIN IN, THAT'S WHAT PUTS

19   THEM IN THE MINDSET OF A REMARK THAT YOUR HONOR MADE ABOUT

20   ROLLING THE DICE IN FRONT OF THE JURY, AND THESE TRADEMARK

21   CLAIMS ARE PART OF WHY THEY HAVE STARS IN THEIR EYES ABOUT

22   DAMAGES.  AND --

23        THE COURT:  BUT THE QUESTION IS WHETHER IT IS BETTER

24   RESOLVED ON SUMMARY JUDGEMENT.

25        MS. CARUSO:  WELL YOUR HONOR, AT A MINIMUM, YOU COULD

1    ASK THEM TO PLEAD SECONDARY MEANING FACTS IF THEY ARE ABLE TO

2    DO SO CONSISTENT WITH THEIR OBLIGATIONS TO THIS COURT, AND IF

3    THEY ARE NOT THEN THAT CAN RESOLVE THE ISSUE AT THE OUTSET.

4            THE COURT:  ALL RIGHT.  I WILL THINK ABOUT THAT.

5            MS. CARUSO:  THANK YOU.

6            MR. NUNO:  YOUR HONOR, AS THIS COURT JUST RECOGNIZED,

7    THIS IS NOT SOMETHING THAT SHOULD BE RESOLVED ON A MOTION TO

8    DISMISS.

9            THE COURT:  MY QUESTION IS WHY ARE YOU AVOIDING

10   PLEADING SECONDARY MEANING?  I SENSE YOU ARE BECAUSE YOU DON'T

11   HAVE ANYTHING TO PLEAD, WHICH IS WHY I WAS PREPARED TO THROW IT

12   OUT -- PREPARED TO THROW THAT ONE OUT.  BUT LIKE I SAID, I AM

13   NOT SURE THAT I WILL, THAT IT'S PRUDENT TO TAKE THAT SHORTCUT.

14           MR. NUNO:  RESPECTFULLY, YOUR HONOR, TO THE EXTENT

15   THAT THE COURT IS INCLINED TO DISMISS, WE WOULD RESPECTFULLY

16   REQUEST LEAVE TO AMEND TO BETTER ALLEGE THE SECONDARY MEANING

17   ISSUE.

18           THE COURT:  ALL RIGHT.  SUBMITTED.

19           MS. CARUSO:  THANK YOU.

20           THE COURT:  WE ARE ADJOURNED.

21       (THE PROCEEDINGS WERE CONCLUDED AT 1:28 P.M.)

22

23

24

25

1

2

3

4                  **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 8/20/24