United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OPENAI, INC.,**<br>    **Plaintiff,**<br>    vs.<br>**OPEN ARTIFICIAL INTELLIGENCE, INC. AND GUY RAVINE,**<br>    **Defendants.** | Case No. 4:23-CV-3918-YGR<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 109 and 116. |

Plaintiff OpenAI, Inc. ("OpenAI") initiated this action in 2023, alleging trademark infringement and fraudulent registration by defendants Open Artificial Intelligence and Guy Ravine. In May 2024, defendants filed several counterclaims against OpenAI, naming founders Samuel Altman and Gregory Brockman as additional counterclaim defendants. Collectively, OpenAI, Altman, and Brockman move to dismiss those counterclaims.[1] Having carefully considered the papers submitted and the pleadings in this action, for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND**.

### I.   BACKGROUND

In this trademark dispute, each party alleges that it is the senior user of its mark – plaintiffs' OpenAI (no space) versus defendants' Open AI (with a space). Both parties operate websites that utilize artificial intelligence tools. Both also have pending applications to register their respective marks with the United States Patent and Trademark Office; as of the date of this order, neither has been accepted for registration on the principal register.

While the substance of plaintiffs' claims has yet to be adjudicated, the Court granted plaintiffs' motion for a preliminary injunction on February 28, 2024. In so ordering, the Court found that "plaintiff is likely to succeed on the merits and be irreparably harmed" by defendants' continued use

---

[1] At Dkt. No. 116, Altman and Brockman filed a motion to dismiss in which they joined OpenAI's briefing in its entirety.

of their mark. (Dkt. No. 63 at 20.) Specifically, the Court made the following findings in its injunction order, based on the parties' filings until that point:

- Plaintiff "is likely to prove that it was a *bona fide* user of the disputed mark since at least September of 2022, if not earlier, and that its mark by that point was at least suggestive." (*Id.* at 16.)
- Plaintiff "has presented credible evidence that defendants did not use their mark in commerce, if at all, until recently" and that plaintiff likely "has the priority claim over the disputed mark." (*Id.* at 16, 18.)
- There is "substantial evidence [that] defendant only launched a competing product in November of 2022," and that "they have no protectible interest in their mark." (*Id.* at 20.)

Defendants' subsequently filed counterclaims and therein spill much proverbial ink pontificating about their view on artificial intelligence, most of which is not at all relevant to the actual legal claims. For instance, defendants state that Ravine spent "many years" thinking about AI, and "[t]hroughout 2015, . . . worked tirelessly to bring Open AI to life." (Dkt. No. 103, Open Artificial Intelligence, Inc. and Guy Ravine's Counterclaims ("Counterclaims"), ¶¶ 28, 40.) They further opine that "Altman and Brockman learned of Ravine's Open AI from mutual business contacts and saw within it a recipe to gain control of" the business, leading them to "misappropriate[] and duplicate[] Ravine's initiative, name, principles, mission, vision, domain, and statements . . . ." (*Id.*, ¶ 60.) Ultimately, the counterclaims allege false advertising and trademark infringement under both the Lanham Act and California state law. It is these claims that the Court analyzes without wading into the personal squabbles underlying this litigation.[2] As relief, defendants seek a combination of mark cancellation and declaratory judgment.

II. **LEGAL STANDARD**

In evaluating a motion to dismiss, the Court accepts factual allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra,*

---

[2] For instance, defendants demonstrate discontent after Ravine reached out to Altman and Sutskever for "collaboration" but was met with "indifference." (*Id.*, ¶¶ 88-91.)

898 F.3d 879, 886-87 (9th Cir. 2018.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).) Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. ANALYSIS

#### A. False Advertising Claims

Defendants bring counterclaims for false advertising under both federal and state law. 15 U.S.C. section 1125(a), a provision of the Lanham Act, provides a cause of action for parties wronged by false commercial speech. Specifically, the statute makes liable:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

15 U.S.C. § 1125(a)(1). To succeed on this cause of action, a plaintiff must show:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071-72 (9th Cir. 2014) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

The state law claims are similar. The statute declares in relevant part:

3

> It is unlawful for any . . . corporation . . . to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

California Bus. & Prof. Code § 17500. To state a claim for false advertising under the statute, "a plaintiff must allege: (1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.,* 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009).

Thus, an essential component of any false advertising claim, state or federal, is the identification of commercial speech intended to function as an advertisement. Whereas non-traditional forms of advertisement may be actionable, the speech at issue must, at a minimum, promote some product. In *Prager University v. Google LLC,* the Ninth Circuit dismissed plaintiffs' Lanham Act claims resting on defendant YouTube's statements about various company policies. 951 F.3d 991, 999-1000 (9th Cir. 2020). In holding the statements did not qualify as commercial speech, the Ninth Circuit found that commercial advertising or promotion did not include statements "made to explain a user tool [and which were] not for a promotional purpose to penetrate the relevant market . . . ." *Id.* at 1000 (internal cites omitted). Further:

> YouTube's braggadocio about its commitment to free speech constitutes opinions that are not subject to the Lanham Act. Lofty but vague statements like "everyone deserves to have a voice, and that the world is a better place when we listen, share and build community through our stories" or that YouTube believes that "people should be able to speak freely, share opinions, foster open dialogue, and that creative freedom leads to new voices, formats and possibilities" are classic, non-actionable opinions or puffery. . . . Similarly, YouTube's statements that the platform will "help [one] grow," "discover what works best," and "giv[e] [one] tools, insights and best practices" for using YouTube's products are impervious to being quantifiable, and thus are non-actionable puffery.

*Id.* (internal cites omitted.)

1  Here, defendants fail to identify any actionable commercial speech. The Court noted at oral
2  argument that even taking a broad view of this requirement, "there isn't a single statement in the
3  complaint that tethers itself to the specific promotion of goods or services." (Dkt. No. 123 at 7:16-18.)
4  As both the federal and state claims require commercial speech to make a false advertising claim
5  actionable, the motion to dismiss these claims is **GRANTED.** *See Power Quality Elec. Sys., Inc. v. BP*
6  *West Coast Prods. LLC,* 2017 WL 119041 at *3 (N.D. Cal. 2017) ("Since the claim does not concern
7  advertising, the allegedly false statements made by the sales representatives are not actionable under
8  section 17500."); *Prager,* 951 F.3d at 999-1000.

### B.  Trademark Infringement

Defendants' trademark infringement claims are similarly brought under both the Lanham Act and California state law. The claim alleges that the name "OpenAI" will confuse users of plaintiff OpenAI's products, who will be misled into thinking the company relies on open-source technology.

The Lanham Act provides a cause of action for those injured by the infringement of another. As the law defines it, in relevant part, the prohibition applies to the "use in commerce [of] any reproduction . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a).[3]

The Ninth Circuit has held that common law trademark infringement claims closely mirror their federal counterparts. *Rise Basketball Skill Dev., LLC v. K Mart Corp.,* 2017 WL 2775030 at *3 (N.D. Cal. 2017) ("The Ninth Circuit has held that a common law unfair competition claim for

---

[3] Defendants fold unfair competition and false designation claims under the Lanham Act into their first cause of action for Lanham Act false advertising. Claims for unfair competition and false designation under the Lanham Act are analyzed under a likelihood of confusion framework that is identical to the trademark infringement analysis. *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC,* 165 F. Supp. 3d 937, 949 (S.D. Cal. 2016) ("Even though the [false designation and unfair competition] allegations in this case do not involve trademark infringement, in order to determine the likelihood of confusion, courts use the trademark infringement analysis."); *see also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 781 (1992) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?") (Stevens, J., concurring). Thus, to the extent defendants first cause of action raised Lanham Act claims beyond false advertising, those are analyzed in this section of the Court's order.

5

trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard."). The Court thus analyzes both infringement claims together.

"To prevail on a claim of trademark infringement . . . a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Syst. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir. 2011) (internal cites omitted). As the Ninth Circuit has stated, "the *sine qua non* of trademark infringement is consumer confusion . . . ." *Id.* at 1149.

The counterclaims are devoid of any nonconclusory statement showing confusion. When pressed at argument to identify evidence of confusion in the counterclaims, counsel pointed to two paragraphs containing complaints that the OpenAI mark was misdescriptive. Not only are the statements of two individuals insufficient to allege even a likelihood of confusion, in this case, the cited portions of the counterclaims demonstrate the opposite. Said differently, they identify individuals who, far from being confused, are keenly aware of the distinction between being "open" versus not. Put simply: knowledge and complaints do not equal confusion. The counterclaims seek to turn defendants' dissatisfaction with OpenAI's business decisions into evidence of customer confusion. An affirmative claim requires more.

The Court is not prepared to grant a motion to dismiss on the additional grounds plaintiffs raise. First, fact issues tend to predominate questions of laches and statute of limitations. All the more so with arguments of distinctiveness and secondary meaning, which are factual questions that in this case, lie at the heart of the parties' dispute. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) ("Whether a particular trade dress has acquired secondary meaning is a question of fact . . . .") (internal cites omitted). Finally, with respect to the waiver argument, plaintiffs overreach. There is insufficient basis in the record to find an intentional relinquishment.

As such, plaintiffs' motion regarding the trademark infringement claims is **GRANTED.** However, since this is the Court's first ruling on the topic, the order is **WITHOUT PREJUDICE** to defendants ability to replead such claims should they be able to allege actual evidence of customer confusion. Counsel shall be mindful of their obligations under Rule 11.

### C. Declaratory Relief

Defendants seek declaratory relief in the form of judgment that:

- Defendants' "use of the Open AI Mark does not infringe, either directly or indirectly, any trademark rights of Counterclaim-Defendant OpenAI, Inc. under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a), and that the Counterclaimants are not liable for any damages or other relief." (Counterclaims, ¶ 167.)
- Defendants "have not violated and are not infringing any trademarks under the laws of the State of California and are not liable for any damages or other relief." (*Id.*, ¶ 172.)
- Defendants are "the true and rightful owners of trademark rights for the Open AI Mark." (*Id.*, ¶ 177.)
- Plaintiff OpenAI's "[i]nfringing Mark is impermissibly misdescriptive and that Counterclaim-Defendant OpenAI, Inc. thus owns no valid trademark rights in the Infringing Mark." (*Id.*, ¶ 183.)

At argument, the Court explained, and the parties acknowledged, that the claims for declaratory relief are "the opposite side of the coin" from plaintiffs' own claims. (Dkt. No. 123 at 33:10-11.) Litigating the one will necessarily involve litigating the other. Plaintiffs even attested to having "no significant objection" to keeping those claims alive. (*Id.* at 34:1.) As such, the motion is **DENIED** with respect to the claims for declaratory relief.

### D. Cancellation

Finally, defendants ask this Court to cancel plaintiff OpenAI's mark. A district court may cancel a mark that is deceptively misdescriptive.

"Cancellation of a trademark registration is proper 'when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing.'" *Synoptek, LLC v. Synaptek Corp.,* 309 F. Supp. 3d 825, 834 (C.D. Cal. 2018) (quoting *Star–Kist Foods, Inc. v. P. J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984)). To demonstrate standing, "the cancellation petitioner must plead and prove facts showing a 'real interest' in the proceedings." *Id.* (*Hokto Kinoko Co. v. Concord Farms, Inc.,* 810 F. Supp. 2d 1013, 1034 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013)).

The conclusory statements contained throughout the counterclaims are wholly insufficient to demonstrate valid ground why OpenAI's trademark should be cancelled. With respect to the cancellation claim, the motion is therefore **GRANTED WITHOUT PREJUDICE** to defendants' ability to replead such claims showing that such valid ground exists and consistent with Rule 11.

### IV. CONCLUSION

For the reasons stated herein, plaintiffs' motion is **GRANTED** with respect to the false advertising, trademark infringement, and cancellation claims, and **DENIED** with respect to the claims for declaratory relief.

Within fourteen days of this order, defendants may file amended counterclaims *consistent with Rule 11 obligations*. If so, defendants must comply with paragraph 13 of this Court's standing order. Further, defendants must simultaneously file a separate statement identifying (i) the specific "false statement(s) of fact by the plaintiffs in a commercial advertisement" and (ii) the specific "commercial speech intended to function as an advertisement" upon which they proceed. The statement must strictly adhere to the allegations and may not include any new or supplemental information or explanation. This approach is consistent with paragraph 14 of this Court's standing order.

Within fourteen days thereafter (or filing), whichever comes first, plaintiffs shall respond. Plaintiffs shall not renew arguments already made and considered and shall not include arguments which could have been made in the first instance.[4]

This terminates Docket Nos. 109 and 116.

**IT IS SO ORDERED.**

**Date**: September 25, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] For the reasons stated on the record at argument, plaintiffs' request for judicial notice is **DENIED** with the exception of two blog posts referenced in the counterclaims, of which the Court takes notice pursuant to the doctrine of incorporation by reference. Defendants oppose plaintiffs' request, and argue that those posts lack sufficient indicia of reliability. The Court notes that defendants themselves rely on these posts in their counterclaims, and their objection is at odds with their own heavy reliance on the posts' content. As such, the Court will take judicial notice of the blog posts. *See A.S. v. SelectQuote Ins. Servs.,* 2024 WIL 3881850 (S.D. Cal. 2024) (collecting cases).