QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
  bobfeldman@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
  margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000

Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Aaron H. Perahia (Bar No. 304554)
  aaronperahia@quinnemanuel.com
865 S. Figueroa St., 10th Fl.
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

Sam S. Stake (Bar No. 257916)
  samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:     (415) 875-6600

Dylan I. Scher (*pro hac vice*)
  dylanscher@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

*Attorneys for OpenAI, Inc.*

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000

Brian M. Lutz (Bar No. 255976)
  blutz@gibsondunn.com
Rosemarie T. Ring (Bar No. 220769)
  rring@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     (415) 393-8200

*Attorneys for OpenAI, Inc., Samuel Altman, and Gregory Brockman*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| OPENAI, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 4:23-cv-03918-YGR<br><br>Assigned to the Hon. Yvonne Gonzalez Rogers<br><br>**MOTION TO DISMISS DEFENDANTS' SECOND AMENDED COUNTERCLAIMS**<br><br>Date:    December 3, 2024<br>Time:    2:00 p.m.<br>Place:   Courtroom 1 (4th Fl.)<br>             1301 Clay St.<br>             Oakland, CA 94612 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 3, 2024, at 2:00 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 1 (4th Floor), 1301 Clay Street, Oakland, California 94612, Plaintiff OpenAI, Inc. ("OpenAI") will, and hereby does, move the Court to dismiss certain counterclaims, and strike certain allegations, in the second amended counterclaims filed by Defendants Open Artificial Intelligence, Inc. and Guy Ravine (together, "Defendants"), pursuant to Rule 12 of the Federal Rules of Civil Procedure and Civil Local Rules 7-2 and 7-4, as detailed in the Proposed Order submitted with this Motion.

This Motion is made on the grounds that Defendants' purported counterclaims fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and/or should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and all matters of which the Court may take judicial notice, all other pleadings on file in this action, and any other written or oral argument or evidence that OpenAI may present to the Court.

DATED: October 28, 2024   QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Robert P. Feldman*
Robert P. Feldman
Attorneys for OpenAI, Inc.

**ISSUE TO BE DECIDED**

Pursuant to Local Civil Rule 7-4(a)(3), Plaintiff identifies the following issue to be decided:

1.  Should Defendants' trademark infringement counterclaims (Counts 1, 2, and 3) be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Second Amended Counterclaim's ("SACC") new allegations, far from remedying the defects that plagued the prior counterclaims, only render Defendants' trademark claims even more deficient and implausible?

2.  Should Defendants' counterclaims against individual counterclaim-defendants Mr. Altman and Mr. Brockman be dismissed because the SACC contains no plausible allegations which would support holding either of them personally liable for trademark infringement?

3.  Should the Court strike the irrelevant and inflammatory allegations of the SACC, which concern the dismissed false advertising and misdescriptiveness cancellation counterclaims, as well as other irrelevant matters, because they have no bearing on the remaining trademark issues and were improperly re-pled in violation of the Court's prior Order?

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND .........................................................................................................................2

LEGAL STANDARD .................................................................................................................3

ARGUMENT ...............................................................................................................................4

I.    DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ................................................................................4

     A.    Defendants' Allegations Foreclose Any Viable Reverse Confusion Theory Of Trademark Infringement. ...............................................................4

     B.    Defendants' Allegations Foreclose Any Claim That They Have Valid Trademark Rights. ......................................................................................6

II.   DEFENDANTS' CLAIMS AGAINST MR. ALTMAN AND MR. BROCKMAN PERSONALLY SHOULD BE DISMISSED WITH PREJUDICE ..........................8

III.  THE COURT SHOULD STRIKE DEFENDANTS' IMPROPER LEGACY ALLEGATIONS ........................................................................................................10

CONCLUSION..........................................................................................................................13

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000) ............................................................................................... 7

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1995) ................................................................................................ 7

*Apple Hill Growers v. El Dorado Orchards*,
   2019 WL 5827365 (E.D. Cal. Nov. 7, 2019) ...................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 9

*Barajas v. Carriage Services, Inc.*,
   2020 WL 1189854 (N.D. Cal. Mar. 12, 2020) .................................................................. 10

*Dali Wireless, Inc. v. Corning Optical Communications LLC*,
   638 F. Supp. 3d 1088 (N.D. Cal. 2022) ............................................................................ 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ............................................................................................................ 13

*Day Crush, LLC v. Ehren Jordan Wine Cellars*,
   2017 WL 6383269 (N.D. Cal. May 5, 2017) ...................................................................... 7

*Deckers Outdoor v. Bright Trading*,
   2014 WL 12564124 (C.D. Cal. Apr. 28, 2014) ................................................................... 8

*Diamond S.J. Enter., Inc. v. City of San Jose*,
   395 F. Supp. 3d 1202 (N.D. Cal. 2019), *aff'd*, 100 F.4th 1059 (9th Cir. 2024) ............. 3, 4

*Dreamwerks Prod. Grp. v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) ............................................................................................ 5

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ................ 10

*Hosseinzadeh v. Werlin*,
   2015 WL 13918008 (C.D. Cal. Sept. 22, 2015) .................................................................. 7

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
   2 F.4th 1150 (9th Cir. 2021) ............................................................................................... 5

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir. 1998) ............................................................................................ 6

*Lansdown v. Bayview Loan Servicing, LLC*,
  2023 WL 411348 (N.D. Cal. Jan. 25, 2023) ................................................................................ 9

*Lawson v. Gen. Elec. Co.*,
  2015 WL 7710296 (N.D. Cal. Nov. 30, 2015) ........................................................................... 4

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) ................................................................................................... 6

*Love v. Permanente Medical Group*,
  2013 WL 1402890 (N.D. Cal. Apr. 5, 2013) ........................................................................... 10

*Malletier v. The Flea Market, Inc.*,
  2009 WL 1625946 (N.D. Cal. June 10, 2009) .......................................................................... 9

*Metamorfoza D.O.O. v. Big Funny, LLC*,
  2021 WL 4572039 (C.D. Cal. July 27, 2021), *aff'd*, 2022 WL 16756362 (9th
  Cir. Nov. 8, 2022) ...................................................................................................................... 6

*Mogan v. Sacks, Ricketts & Case LLP*,
  2022 WL 94927 (N.D. Cal. Jan. 10, 2022) ................................................................................ 5

*Mullis v. U.S. Bankranktupcy Court*,
  828 F.2d 1385 (9th Cir. 1987) ................................................................................................... 5

*Network Automation Inc. v. Advanced System Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ................................................................................................... 6

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*,
  2007 WL 2600746 (N.D. Cal. Sept. 10, 2007) ........................................................................ 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ..................................................................................................... 5

*Siegel v. Scripps Networks Interactive, Inc.*,
  2016 WL 10968138 (C.D. Cal. May 18, 2016) ........................................................................ 9

*In re Social Media Adolescent Addiction/Personal Injury Product Liability
  Litigation*,
  2024 WL 1786290 (N.D. Cal. Apr. 15, 2024) ........................................................................... 3

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) ................................................................................... 8, 9

iv   CASE NO. 4:23-CV-03918-YGR
PLAINTIFF OPENAI, INC.'S MOTION TO DISMISS DEFENDANTS' SECOND AMENDED COUNTERCLAIMS

**Rules/Statutes**

Fed. R. Civ. P. 11 ................................................................................................................... 3, 4, 12

Fed. R. Civ. P. 12 ........................................................................................................................ 3, 4

Fed. R. Evid. 201 ............................................................................................................................ 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Despite multiple opportunities to amend, a fifth set of attorneys, and explicit instructions from this Court, Defendants persist in their deeply flawed approach to alleging counterclaims. Their Second Amended Counterclaim (Dkt. 138, "SACC") attempts to cure the deficiencies of the trademark infringement allegations in the First Amended Counterclaims (Dkt. 103, "FACC"). However, the SACC's new allegations confirm Defendants' inability to plead any viable trademark infringement claim. Further, even with the false advertising claims now out of the case, the SACC continues to pursue claims against Plaintiff's executives in their personal capacities. Yet the SACC fails to allege any facts that support trademark infringement claims against them in their individual capacity. The SACC also continues to assert irrelevant and inflammatory allegations that are unrelated to trademark infringement, including the improper allegations that underpinned the now-dismissed counterclaims for false advertising and cancellation based on misdescriptiveness. Defendants' improper allegations should not remain in the case. Plaintiff requests that the Court take the following steps:

*First*, the Court should dismiss the trademark infringement claims in their entirety. Defendants' new allegations, which focus on reverse confusion that they allege began with the November 2022 release of Plaintiff's ChatGPT chatbot, concede Defendants' inability to allege likelihood of confusion or a valid trademark before that date. Defendants contend that Plaintiff's *chatbot* directly competed with the *image generator* on Defendants' website. But it is undisputed, as Defendants' previous filings in this case recognize, that Plaintiff had introduced its own *image generator*, DALL·E, before Defendants' website offered an image generator. Because Defendants cannot allege a reverse confusion case based on a theory that ignores that Plaintiff first used "a nearly identical mark in connection with nearly identical products marketed to nearly identical users" (SACC ¶ 119) *before* Defendants even introduced a competing product, their trademark infringement claims fail. Further, even if November 30, 2022 were the correct date by which to assess the validity of Defendants' rights, Defendants' allegation that ChatGPT's release immediately "overwhelmed" any association between their products and the "Open AI" name demonstrates they lacked the

required secondary meaning before the alleged confusion began. This affirmatively pleads them out of being able to establish secondary meaning.

*Second*, even if Defendants had stated a viable claim for trademark infringement against Plaintiff OpenAI, they have not done so against the individual counterclaim-defendants Mr. Altman and Mr. Brockman. The SACC fails to allege facts showing that they personally directed or participated in any alleged infringement involving the OpenAI Mark—particularly regarding ChatGPT's November 2022 release, on which Defendants now base their trademark infringement claims. In the SACC's allegations that follow the first headline about trademark infringement (SACC at 35:10-11 ("OpenAI Willfully Infringes Ravine's Trademark…")), the SACC contains no allegations concerning any actions by either of these two individuals, other than referencing Mr. Altman's alleged announcement of the founding as a time reference for actions taken by others. The allegations against Mr. Altman and Mr. Brockman concern only the SACC's irrelevant accusations about an alleged "theft" from "humanity" and "stolen recipes." These do not even concern, much less suffice to plead, trademark infringement against any individual.

*Third*, the Court should strike all allegations related to false advertising, false statements, misdescriptiveness, fraud, misrepresentations, and similar concepts. The Court dismissed the FACC's false advertising and cancellation for misdescriptiveness counterclaims, and the SACC does not replead those claims. The Court should excise these irrelevant and prejudicial assertions, which serve no legitimate purpose regarding the remaining claims.

Defendants' spurious allegations have kept the pleadings unsettled for over a year. Granting Plaintiff's motion will streamline this litigation and facilitate the conclusion of discovery. For those reasons, and as set forth more fully below, Plaintiff respectfully requests that the Court grant Plaintiff's motion to dismiss.

## BACKGROUND

Over a year after answering the Complaint (Dkt. 42), and after churning through five sets of attorneys, Defendants continue their campaign of meritless counterclaims. Initially, Defendants filed sprawling 110-page counterclaims (Dkt. 100), which they later withdrew and replaced with the FACC (Dkt. 103). The Court then dismissed most of the FACC's counterclaims, including false

advertising (with prejudice) and trademark infringement and cancellation based on misdescriptiveness (with leave to amend). Dkt. 127 ("MTD Order") at 6, 8. Critically, the Court granted Defendants leave to amend the trademark infringement claims "should they be able to allege actual evidence of customer confusion," while reminding Defendants' counsel "of their obligations under Rule 11." *Id.* at 6.

Now, the SACC attempts to resurrect Defendants' deficient trademark infringement counterclaims (Counts 1-3) based on a new theory that "reverse confusion" began after ChatGPT's release on November 30, 2022. SACC ¶¶ 113-136. This theory relies on the premise that ChatGPT, a *text-based chatbot*, is "nearly identical" to Defendants' *image generator* (*id.* ¶¶ 56, 119, 126), while ignoring DALL·E, Plaintiff's competing image generator, introduced *before* Defendants' display of an image generator on their website. Further, Defendants now allege that ChatGPT's release "overwhelmed" any pre-existing recognition of their alleged mark, effectively admitting a lack of secondary meaning and a valid protectable trademark interest before that time. *Id.* ¶ 132.

The SACC also attempts an end-run around the dismissal of the false advertising and misdescriptiveness cancellation claims. While not formally re-asserting these counterclaims, the SACC nonetheless advances most of the very same factual allegations underlying those dismissed claims. *Compare, e.g.*, FACC ¶¶ 1-112, *with* SACC ¶¶ 1-112; *see also* Declaration of Aaron Perahia dated October 28, 2024 ("Perahia Decl."), Ex. A (redline comparison). Defendants' repackaging of previously rejected theories, combined with the demonstrably unfounded trademark infringement allegations, reveals a disregard for the Court's prior order and raises Rule 11 concerns.

## LEGAL STANDARD

Defendants' "allegations must suggest that their claim has at least a plausible chance of success" to survive a motion to dismiss. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2024 WL 1786290, at *3 (N.D. Cal. Apr. 15, 2024). This Court need not accept as true "conclusory statements or unreasonable inferences." *Id.*

The Court has wide discretion to strike "any redundant, immaterial, [or] impertinent" matter from the SACC. Fed. R. Civ. P. 12(f); *accord Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1216 (N.D. Cal. 2019), *aff'd*, 100 F.4th 1059 (9th Cir. 2024). Matters are

"immaterial" if they have "no essential or important relationship to the claim for relief" and "impertinent" if they are "not necessary" to "the issues in question." *Lawson v. Gen. Elec. Co.*, 2015 WL 7710296, at *1 (N.D. Cal. Nov. 30, 2015) (quotations omitted). Rule 12(f) motions serve to "avoid the expenditure of time and money that must arise from litigating spurious issues." *Id.* (quotations and brackets omitted). The motion is appropriate where it may make "trial of the action less complicated" or "streamlin[e] the ultimate resolution of the action." *Id.* (quotations omitted). The motion is also appropriate where the matter has "no possible bearing on the subject of the litigation." *Diamond S.J. Enter.*, 395 F. Supp. 3d at 1216.

## ARGUMENT

### I. DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

The Court should dismiss Defendants' trademark infringement claims. *See* SACC, Counts 1, 2, & 3. Not only do the SACC's newly pled allegations fail to cure the deficiencies identified in the MTD Order, but they also introduce new factual contradictions that establish the implausibility of their claims.

#### A. Defendants' Allegations Foreclose Any Viable Reverse Confusion Theory Of Trademark Infringement.

The Court granted Defendants leave to amend these claims *solely* if they can "allege actual evidence of customer confusion" consistent with their "obligations under Rule 11." MTD Order at 6. Unable to allege any confusion caused by any of Plaintiff's actions or product releases before November 30, 2022, Defendants have now pivoted to alleging that *reverse* confusion began due to Plaintiff's release of ChatGPT on November 30, 2022. SACC ¶ 119 (alleging Plaintiff's announcement of ChatGPT on November 30, 2022 "generated a lot of confusion" and involved "a nearly identical mark," "with nearly identical products," "marketed to nearly identical users," resulting in confusion among "a substantial number of users"); *see also id*. ¶¶ 118-121, 126 (referring to confusion allegedly caused by ChatGPT), ¶ 133 ("Counterclaim-Defendants[] … knowingly and willfully became a direct competitor of Counterclaimants").

This dooms Defendants' trademark infringement claims because a reverse confusion claim is not possible when the alleged junior user introduced a directly competitive product using the challenged mark *before* the alleged senior user did. Rather, reverse confusion is premised on a junior user's *commencement* of an offering that is likely to cause confusion with the senior user's *existing* product or service. *See, e.g.*, *Ironhawk Techs., Inc. v. Dropbox, Inc*., 2 F.4th 1150, 1159 (9th Cir. 2021) (vacating summary judgment for defendant in reverse confusion case where plaintiff began marketing its "SmartSync" software in 2004, and defendant introduced its "Smart Sync" feature in 2017); *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1128 (9th Cir. 1998) (vacating summary judgment for defendant where plaintiff began using "Dreamwerks" for its entertainment services ten years before defendant began using the name "DreamWorks").

Defendants' reverse confusion theory therefore fails because Plaintiff introduced an image generator *before* Defendants did. The SACC alleges Defendants made an image generator available on their open.ai website beginning on November 16, 2022. SACC ¶ 56. As reflected in the declaration of Defendant Ravine himself, it is beyond dispute in this action that Plaintiff released its image generator product, DALL·E, before that. *See, e.g.*, Dkt. 80 (Ravine Decl.) ¶ 19 (declaring that "Plaintiff released their AI image generator on September 28, 2022," and Defendants released theirs "on November 16, 2022"); *see also* Dkt. 63 ("PI Order") at 15 (DALL·E released in 2020, DALL·E 2 released in September 2022). Indeed, Defendants have described "their" image generator as one that "that competes directly with Plaintiff's DALL·E image generator." Dkt. 38 at 14 ("In November 2022, Defendants publicly launched their Open AI Image Generator at open.ai, an AI image generator product that competes directly with Plaintiff's DALL·E image generator.").[1] Accordingly,

---

[1] "The Court may take judicial notice of matters … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may 'take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.'" *Mogan v. Sacks, Ricketts & Case LLP*, 2022 WL 94927, at *1 (N.D. Cal. Jan. 10, 2022) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 & n.6 (9th Cir. 2006)). The Court may take judicial notice that Plaintiff released its competing image generator product, DALL·E, before November 16, 2022, because those are undisputed facts in Defendants' filings and declaration. *See* Dkt. 38 at 14; Dkt. 80 (Ravine Decl.) ¶ 19. Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct*., 828 F.2d 1385, 1388 (9th Cir. 1987).

Defendants cannot use their allegation of reverse confusion to support their trademark infringement claim, and it must be dismissed. As Defendants have already attempted to plead this claim three times, the dismissal should be with prejudice.

### B. Defendants' Allegations Foreclose Any Claim That They Have Valid Trademark Rights.

Defendants' new allegations concerning reverse confusion also plead them out of being able to establish secondary meaning.[2] Plaintiff is mindful not to "renew arguments" or make arguments that "could have been made in the first instance." MTD Order at 8. But the SACC does not merely fail to plead secondary meaning (*cf.* Dkt. 109 at 18-19); its new allegations preclude it.

Defendants newly allege that Plaintiff has "overwhelmed" Defendants' association with their purported mark in the *same* market in which they allege the parties compete. SACC ¶ 132 ("OpenAI, Inc. … has overwhelmed Ravine and his Open AI venture"); *id*. at 2:11-13 ("Counterclaim-Defendants … then leveraged their greater resources to overwhelm Ravine … and make it seem as though they were the originators and owners of the mark."); *id*. ¶¶ 133, 129-131 ("Counterclaim-Defendants[] … became a direct competitor of Counterclaimants," offering "substantially similar goods and services," to "identical" customers, through "identical" channels of trade). Accepting this allegation as true, as is required at the pleading stage, means there could not have been "mental association by a ***substantial segment*** of consumers and potential consumers 'between the alleged mark and [Defendants as] a single source of the product.'" *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1354 (9th Cir. 1985) (emphasis added). Indeed, the SACC's allegation that there were 7,200 unique users of the "open.ai domain" in the two weeks before ChatGPT's release (SACC

---

[2] *See* PI Order at 12 (quoting *Network Automation Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) for proposition that to prevail on a claim of trademark infringement, a "plaintiff 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) ("[A]n identifying mark is distinctive and is capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning.") (quotations omitted); *Metamorfoza D.O.O. v. Big Funny, LLC*, 2021 WL 4572039, at *5 n.2 (C.D. Cal. July 27, 2021), *aff'd*, 2022 WL 16756362 (9th Cir. Nov. 8, 2022) ("an owner of a descriptive mark must demonstrate that the mark had acquired secondary meaning *before* its competitor commenced use of the mark.").

¶ 118) contrasts sharply with Defendants' recent assertion to the Ninth Circuit, made after Plaintiff filed its prior motion to dismiss, that even 1.5 million users are "woefully insufficient" to prove secondary meaning. *See* 9th Cir. Dkt. 27.1 at 8, 17.

The validity of Defendants' asserted mark is particularly important given the SACC's reverse confusion allegations. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 233-34 (3d Cir. 2000) ("[T]he existence of reverse confusion might disprove a plaintiff's claim that its descriptive mark has secondary meaning"). As the court explained in *J.T. Colby & Co. v. Apple Inc.*:

> [T]o the extent a senior user has invested so little in its mark that it has failed to create an association in the minds of consumers between the mark and a source, there is correspondingly less reason to protect the mark. After all, "[t]he chief danger inherent in recognizing reverse confusion claims is that innovative junior users, who have invested heavily in promoting a particular mark, will suddenly find their use of the mark blocked by plaintiffs who have not invested in, or promoted, their own marks."

2013 WL 1903883, at *16 (S.D.N.Y. May 8, 2013) (quoting *A&H Sportswear, Inc,* 237 F.3d at 228)). Here, while Defendants allege confusion flowing from Plaintiff OpenAI to them, they allege no facts showing that customers seeking Defendants' services have mistakenly accessed Plaintiff OpenAI's website (*i.e.*, forward confusion). While the instance of reverse confusion that Defendants allege show that *Plaintiff OpenAI* has secondary meaning, they do not show that Defendants have secondary meaning. *See, e.g.*, *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 987 (9th Cir. 1995) (noting evidence that some customers confused plaintiff for defendant, rather than vice versa, would suggest that defendant, not plaintiff, established secondary meaning).

Because the SACC fails to make a plausible allegation of trademark validity but instead makes new allegations undermining the validity of the asserted rights, Defendants' trademark infringement counterclaims should be dismissed on this independent ground. *See Day Crush, LLC v. Ehren Jordan Wine Cellars*, 2017 WL 6383269, at *4 (N.D. Cal. May 5, 2017) (dismissing complaint that did not "adequately allege[] that the DAY WINES mark is inherently distinctive or that it has acquired a secondary meaning such that it is protectable"); *Hosseinzadeh v. Werlin*, 2015

WL 13918008, at *3 (C.D. Cal. Sept. 22, 2015) (dismissing complaint where "Plaintiff has not alleged facts sufficient to demonstrate that she has a valid and protectable trademark").

## II. DEFENDANTS' CLAIMS AGAINST MR. ALTMAN AND MR. BROCKMAN PERSONALLY SHOULD BE DISMISSED WITH PREJUDICE

The SACC's allegations are insufficient to establish individual liability against Mr. Altman and Mr. Brockman for trademark infringement, especially since Defendants now allege infringement did not begin until ChatGPT's introduction in November 2022. *See, e.g.*, SACC ¶¶ 119-121, 140. The SACC does not allege Mr. Altman or Mr. Brockman engaged in any alleged acts related to the marketing and promotion of ChatGPT—much less that either one personally directed or participated in the alleged infringement itself. Rather, the new allegations relating to trademark infringement lump the individuals together with the company as "Counterclaim-Defendants." *See, e.g.*, *id.* ¶¶ 137-150, 155, 156, 158-162, 167-172. As to the legacy allegations regarding the individuals as distinct from the company, they generally fall under headings regarding "snatch[ing] Open AI from humanity" (*id.* ¶¶ 58-62), "misappropriat[ing] the recipe for AGI from humanity" (*id.* ¶¶ 63-85), "becom[ing] the ill-gotten guardians of humanity's property" (*id.* ¶¶ 90-93), "misappropriation of the AGI ingredients from humanity (*id.* ¶¶ 94-101), "the diversion of humanity's property" (*id.* ¶¶ 102-104). Once the SACC pivots to allegations of trademark infringement, the legacy allegations make no mention of Mr. Altman or Mr. Brockman. *See id.* at 35:10-11 (beginning with the heading "OpenAI Willfully Infringes Ravine's Trademark…"). The only factual allegations against Mr. Altman and Mr. Brockman individually that plausibly relate to trademark infringement are that they knew of Ravine's domain name and his claim to be planning to use the name "Open AI." This does not suffice to plead Defendants' trademark claims against them (Counts 1, 2, and 3).

Individual liability for trademark infringement requires more than merely holding a corporate office. Plaintiffs must plead and prove that the officer personally "directed or participated in the infringement directly." *United Tactical Sys., LLC v. Real Action Paintball, Inc*., 143 F. Supp. 3d 982, 1016 (N.D. Cal. 2015). Conclusory allegations of control, approval, or financial benefit are insufficient. *See Deckers Outdoor v. Bright Trading*, 2014 WL 12564124, at *2 (C.D. Cal. Apr. 28, 2014) (finding allegations that individual defendants were "members or officers" and the "moving

force" behind the infringement insufficient); *Apple Hill Growers v. El Dorado Orchards*, 2019 WL 5827365, at *3-4 (E.D. Cal. Nov. 7, 2019) (dismissing individual defendants where the complaint, despite alleging ownership and corporate roles, lacked specific facts connecting them to the infringing conduct). Here, the SACC alleges no actions by Mr. Altman or Mr. Brockman after February 2022 relating to the purported infringement. General allegations that they are officers of Plaintiff, or that they had discussions with Ravine before the alleged infringement, are not enough. *See, e.g.*, *United Tactical Sys., LLC*, 143 F. Supp. 3d at 1017 (holding plaintiff failed to state a claim against owners where there are no allegations that they "actually played any role in directing or participating in" the infringement).

Likewise, boilerplate allegations of agency and willful infringement (*e.g.*, SACC ¶¶ 13, 133, 158) are insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The SACC's agency allegation—that "each of the Counterclaim Defendants was the agent of the other" (SACC ¶ 13)—mirrors the deficient allegation in *Malletier v. The Flea Market, Inc*. that "each of the Defendants was the agent of the other Defendants," which the court held was conclusory and failed to provide fair notice of the basis of the claim. 2009 WL 1625946, at *3 (N.D. Cal. June 10, 2009). Similarly, in *Lansdown v. Bayview Loan Servicing, LLC*, the court dismissed a conclusory agency allegation that stated each defendant "was the agent and/or employee of each of the remaining Defendants" as insufficient "boilerplate language." 2023 WL 411348, at *8 (N.D. Cal. Jan. 25, 2023); *see also Siegel v. Scripps Networks Interactive, Inc*., 2016 WL 10968138, at *3 (C.D. Cal. May 18, 2016) (dismissing claims based on boilerplate that "fail[s] to plead facts demonstrating agency," as they are "nothing more than legal conclusions of the type prohibited by *Iqbal* and *Twombly*").

In short, the SACC fails to allege any facts demonstrating that Mr. Altman and Mr. Brockman personally directed or participated in the alleged trademark infringement. The SACC's conclusory allegations of agency and willfulness—devoid of any factual support—are insufficient to state a claim against them individually. Accordingly, the Court should dismiss all claims against these individuals.

## III. THE COURT SHOULD STRIKE DEFENDANTS' IMPROPER LEGACY ALLEGATIONS

By including more than 100 legacy allegations that do not relate to trademark infringement, the SACC seeks to do exactly what the Court stated at the motion to dismiss hearing should not be done—*i.e.*, use the legacy allegations that relate to the stricken (and not re-pled) counterclaims, as a basis for trying to keep irrelevant issues alive in the case. During the hearing, Plaintiff's counsel flagged the issue, explaining:

> So if the complaint was trimmed, we would want to be very clear that [the declaratory judgment claims] do not revive any of those allegations that have nothing to do with the declaratory relief claims but have to do with these other [claims] …, for example, false advertising.
> …
> We don't want someone to say that … because these declaratory relief claims reincorporate everything else in the counterclaim, that hypothetically if the only things left after Your Honor rules are the declaratory relief claims, that discovery and other behavior on everything that is in the counterclaim is therefore fair game.
> …
> So if, hypothetically, Your Honor granted our motion with respect to some or all of the entire counterclaim other than the declaratory relief claims, I could see someone saying that discovery on … the paragraphs that you've knocked out, would be appropriate. And that would be unfortunate, since as I take Your Honor's intention, it's to leave these claims in because they mirror our claims, the flip side of our claims.

Dkt. 123 at 37:1-38:3. The Court replied: "Okay. I agree with that." *Id*. at 38:4-5. Consistent with that objective, all the allegations irrelevant to the trademark claims should be stricken as set forth in Exhibit A to the proposed order submitted herewith.

Courts routinely strike irrelevant or extraneous allegations, particularly those rendered immaterial by the dismissal of related claims. *See, e.g.*, *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (affirming motion to strike to streamline the litigation and focus on material issues), *rev'd on other grounds*, 510 U.S. 517 (1994); *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1101 (N.D. Cal. 2022) (striking allegation with "no possible bearing on the current litigation"); *Barajas v. Carriage Servs., Inc*., 2020 WL 1189854, at *5 (N.D. Cal. Mar. 12, 2020) (striking paragraphs as irrelevant after dismissing contract and fraud claims); *Love v. Permanente Med. Grp.*, 2013 WL 1402890, at *3 (N.D. Cal. Apr. 5, 2013) (striking

immaterial statutory references after dismissal of related claim); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) (striking "immaterial, impertinent, and inflammatory" allegation in a trade secrets and trademark case).

The SACC is replete with such immaterial, impertinent, and extraneous allegations carried over from the dismissed FACC. This Court should strike these allegations from the SACC to streamline the litigation and prevent undue prejudice, as they have no bearing on the counterclaims re-pled in the SACC. For ease of review, Plaintiff has submitted a redline identifying the allegations that the Court should strike. *See* Proposed Order submitted herewith, Ex. A (proposing to strike the entirety of SACC ¶¶ 1, 4, 7, 18-25, 29, 31-33, 59, 61, 69, 79, 81, 82, 84-85, 93, 94-100, 102-104, 111, 112, 191 (in whole), and portions of SACC ¶¶ 2, 3, 5, 6, 26, 58, 60, 62, 74, 75, 77, 80, 86, 90, 91, 105, 140, 146, 190, 192 (in part)). This includes allegations related to this case, if at all, only to false advertising, misdescriptiveness, and personal attacks on the individual counterclaim-defendants.

**The False Advertising Allegations.** The SACC retains unchanged allegations from the FACC that Defendants offered in support of their now-dismissed false advertising claims. *See* SACC ¶¶ 1, 18-25, 29, 31-33, 59, 61, 79, 81, 93-98, 111, and 112 (in whole); *id*. ¶¶ 2, 3, 6, 58, 60, 62, 77, 80, 90, 91, 105, 140, and 146 (in part). Defendants argued these same allegations were relevant in opposing Plaintiff's motion to dismiss the FACC (Dkt. 112 at 6-14), but the Court found them insufficient and dismissed the false advertising counterclaims with prejudice (MTD Order at 3-5). These allegations, primarily focused on purported misrepresentations about Plaintiff's corporate form, funding commitments, and open-source principles, have nothing to do with the remaining trademark counterclaims. Nor does Plaintiff's alleged conduct toward "humanity" or "investors" or "employees" or "directors." The continued inclusion of these allegations, as well as language about Plaintiff's purportedly "false" and "misleading" conduct (*see* SACC ¶¶ 140, 146), violates the Court's MTD Order, which confirmed this case is about *trademark* claims. *See* Dkt. 123 at 38:21-24.

**The Misdescriptiveness Allegations.** The Court should strike the SACC's legacy misdescriptiveness allegations, both the conclusory allegations included in the general allegations (*see* SACC ¶¶ 99, 100, 112) and those referenced as a ground for declaratory relief of invalidity (*id*.

¶¶ 190-92). The Court previously dismissed Defendants' misdescriptiveness-based cancellation claim because the "conclusory statements contained throughout the counterclaims are wholly insufficient to demonstrate valid ground why OpenAI's trademark should be cancelled." MTD Order at 8. The Court conditioned the grant of leave to replead a cause of action based on misdescriptiveness on "defendants' ability to replead such claims showing that such valid ground exists and consistent with Rule 11." *Id.* Not only did Defendants fail to add *any* allegations to support cancellation or invalidity based on misdescriptiveness, but they actually deleted the majority of the allegations that previously related to it. *See* Perahia Decl., Ex. A (redline showing deletion of FACC ¶¶ 116, 134, 135).

Defendants should not be permitted to substantively challenge the validity of Plaintiff's trademark (Count 9) by relying on a theory for which the allegations were held to be "wholly insufficient" (MTD Order at 8)—especially as it is now "supported" by even fewer allegations than those previously found deficient. Doing so would allow Defendants to evade the expressed intent of the Court's Order, which was to allow the declaratory relief claims to be litigated to the extent they "are 'the opposite side of the coin' from plaintiffs' own claims. … Litigating the one will necessarily involve litigating the other." MTD Order at 7. Having misdescriptiveness as grounds for invalidity introduces a new substantive issue far beyond those that are core to the parties' disputes about bona fide use in commerce, secondary meaning, and seniority of ownership. Practically, it involves the exact type of unwarranted expansion of the case through the declaratory relief claim that the Court stated should not occur. Dkt. 123 at 37:1-38:5. The Court should strike these allegations as a transparent attempt to relitigate dismissed claims and unduly expand the proper scope of the case.

**The Irrelevant Allegations and Personal Squabbles.** The Court should strike the numerous irrelevant allegations and other inflammatory allegations targeting Mr. Altman and Mr. Brockman personally. The SACC persists in alleging "stealing," "deceit," "manipulation," and a "deceptive plan," all aimed at baselessly painting these individuals as bad actors. *See, e.g.*, SACC ¶¶ 1, 4, 7, 59, 61, 69, 79, 81, 82, 84, 85, 94-98, and 102-104 (in whole); *id.* ¶¶ 2, 5, 6, 26, 58, 60, 74, 75, 80, 86, 90, and 91 (in part). These are personal disputes, not cognizable legal claims, and certainly not *trademark* claims. *Cf.* Dkt. 123 at 4:22-23 ("there's an awful lot of extra allegations that have nothing

to do with anything"). Defendants' core allegation seems to be that Mr. Altman and Mr. Brockman somehow "took Ravine's recipe" for Open AI, including its purported mission and vision. SACC ¶ 59. But there is no such thing as a claim for idea theft under the Lanham Act. *See* 3 McCarthy on Trademarks and Unfair Competition § 25:6 (5th ed.) ("An idea creator cannot use the Lanham Act as a legal tool to assert 'idea theft' by arguing that defendant stole her idea."). Trademark law is concerned with consumer confusion, not who came up with the "recipe" for a business or concept. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32-33 (2003) (explaining that "the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers," such as who "came up with the idea for the product"). Defendants' allegations are both baseless and irrelevant to whether consumers are likely to be confused between Open AI and OpenAI. These allegations, bearing no relevance to the narrow trademark issues before the Court, constitute the very "personal squabbles" the Court previously criticized. MTD Order at 2. The Court should strike them.

## **CONCLUSION**

For the reasons above, Plaintiff OpenAI, Inc. respectfully requests that this Court grant this motion, including: (i) dismissing Defendants' trademark infringement counterclaims (Counts 1, 2, and 3) with prejudice, (ii) dismissing all of Defendants' counterclaims against Mr. Altman and Mr. Brockman individually with prejudice, and (iii) striking from the second amended counterclaims the allegations shown stricken in Exhibit A to the Proposed Order, including the entirety of paragraphs 1, 4, 7, 18-25, 29, 31-33, 59, 61, 69, 79, 81, 82, 84, 85, 93-100, 102-104, 111, 112, and 191, and portions of paragraphs 2, 3, 5, 6, 26, 58, 60, 62, 74, 75, 77, 80, 86, 90, 91, 105, 140, 146, 190, and 192.

DATED: October 28, 2024                     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Robert P. Feldman*
Robert P. Feldman
Attorneys for OpenAI, Inc.