| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Robert P. Feldman (Bar No. 69602)<br> bobfeldman@quinnemanuel.com<br>Margret M. Caruso (Bar No. 243473)<br> margretcaruso@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065-2139<br>Telephone:   (650) 801-5000<br><br>Robert M. Schwartz (Bar No. 117166)<br> robertschwartz@quinnemanuel.com<br>Aaron H. Perahia (Bar No. 304554)<br> aaronperahia@quinnemanuel.com<br>865 S. Figueroa St., 10th Fl.<br>Los Angeles, California 90017-2543<br>Telephone:   (213) 443-3000<br><br>Sam S. Stake (Bar No. 257916)<br> samstake@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111-4624<br>Telephone:   (415) 875-6600<br><br>Dylan I. Scher (*pro hac vice*)<br> dylanscher@quinnemanuel.com<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone:   (212) 849-7000<br><br>*Attorneys for OpenAI, Inc.* | GIBSON, DUNN & CRUTCHER LLP<br>Orin Snyder (*pro hac vice*)<br> osnyder@gibsondunn.com<br>200 Park Avenue<br>New York, NY 10166<br>Telephone:   (212) 351-4000<br><br>Brian M. Lutz (Bar No. 255976)<br> blutz@gibsondunn.com<br>Rosemarie T. Ring (Bar No. 220769)<br> rring@gibsondunn.com<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111-3715<br>Telephone:   (415) 393-8200<br><br>*Attorneys for OpenAI, Inc., Samuel Altman, and Gregory Brockman* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| OPENAI, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual,<br><br>              Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 4:23-cv-03918-YGR<br><br>Assigned to the Hon. Yvonne Gonzalez Rogers<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' SECOND AMENDED COUNTERCLAIMS**<br><br>Date:    December 3, 2024<br>Time:   2:00 p.m.<br>Place:   Courtroom 1 (4th Fl.)<br>            1301 Clay St.<br>            Oakland, CA 94612 |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT ........................................................................................................................................2

I.  PLAINTIFF'S MOTION TO DISMISS WAS TIMELY FILED ............................................2

II. DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..........................................................................................2

   A. Defendants' Allegations Foreclose Any Viable Reverse Confusion Theory Of Trademark Infringement. ...................................................................................3

   B. Defendants' Allegations Foreclose Any Claim That They Have Valid Trademark Rights. ..................................................................................................4

III. DEFENDANTS' CLAIMS AGAINST MR. ALTMAN AND MR. BROCKMAN PERSONALLY SHOULD BE DISMISSED WITH PREJUDICE ..........................................7

IV. THE COURT SHOULD STRIKE DEFENDANTS' IMPROPER LEGACY ALLEGATIONS ....................................................................................................................10

CONCLUSION ...................................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Apple Hill Growers v. El Dorado Orchards*,
  2019 WL 5827365 (E.D. Cal. Nov. 7, 2019) ............................................................................. 7, 8

*Art Attacks Ink, LLC v. MGA Entertainment, Inc.*,
  2007 WL 935655 (S.D. Cal. Mar. 5, 2007) .................................................................................. 5

*Banff, Ltd. v. Federated Department Stores, Inc.*,
  841 F.2d 486 (2d Cir. 1988) ........................................................................................................ 5

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ................................................................................................... 5, 6

*Committee for Idaho's High Desert, Inc. v. Yost*,
  92 F.3d 814 (9th Cir. 1996) ......................................................................................................... 9

*Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc.*,
  214 F.3d 432 (3d Cir. 2000) ........................................................................................................ 5

*Day Crush, LLC v. Ehren Jordan Wine Cellars*,
  2017 WL 6383269 (N.D. Cal. May 5, 2017) ............................................................................... 7

*Digby Adler Group LLC v. Image Rent a Car, Inc.*,
  79 F. Supp. 3d 1095 (N.D. Cal. 2015) ......................................................................................... 9

*Dobeck v. Cobra Engineering, Inc.*,
  2017 WL 5495152 (C.D. Cal. Feb. 27, 2017) ............................................................................. 2

*Elizabeth Taylor Cosmetics Co., Inc. v. Annick Goutal, S.A.R.I.*,
  673 F. Supp. 1238 (S.D.N.Y. 1987) ............................................................................................ 5

*Foreverendeavor Music, Inc. v. S.M.B., Inc.*,
  701 F. Supp. 791 (W.D. Wash. 1988) ......................................................................................... 9

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Manufacturing*,
  1995 WL 552168 (N.D. Cal. Aug. 30, 1995) .............................................................................. 9

*Ho Yin Wong v. CherryRoad Technologies Inc.*,
  2020 WL 2476755 (D. Haw. May 13, 2020) .............................................................................. 2

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ....................................................................................................... 3

*South California Darts Association v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) ....................................................................................................... 6

*Southern California Darts Association v. Southern California Darts Association, Inc.*,
  2013 WL 12121536 (C.D. Cal. Feb. 22, 2013) ...............................................................................6

*Social Technologies LLC v. Apple Inc.*,
  4 F.4th 811 (9th Cir. 2021) ..........................................................................................................6

*Southern California Darts Association v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) .......................................................................................................6

*Symantec Corp. v. Logical Plus, Inc.*,
  2009 WL 3416178 (N.D. Cal. Oct. 20, 2009) .............................................................................9

*Tanning Research Laboratories, Inc. v. Worldwide Import & Export Corp.*,
  803 F. Supp. 606 (E.D.N.Y. 1992) ..............................................................................................9

*Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*,
  2010 WL 11520159 (C.D. Cal. Sept. 20, 2010) ..........................................................................6

**Rules/Statutes**

Federal Rule of Civil Procedure 6 ........................................................................................................2

Federal Rule of Civil Procedure 11 ....................................................................................................10

Federal Rule of Civil Procedure 12 ....................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants' Opposition (Dkt. 143 ("Opp.")) fails to justify the SACC for several reasons.

First, Defendants' claim that Plaintiff's motion was untimely filed lacks merit and ignores this Court's extension of the filing deadline, which was occasioned by Defendants' request for an even longer extension.

Second, Defendants do not salvage their implausible trademark infringement claims. Defendants have—for the first time—claimed that the alleged reverse confusion started with Plaintiff's November 2022 release of ChatGPT. This new allegation forecloses Defendants' reverse confusion claim because their pleading now asserts—for the first time—a claim that specifically arose *after* the parties had allegedly competing products. Defendants cannot point to a single case where such a claim was permitted. Nor have Defendants explained how their new allegations concerning the timing of confusion are otherwise consistent with establishing protectable trademark rights.

Third, Defendants' claims against Mr. Altman and Mr. Brockman, individually, should also be dismissed with prejudice. Liability for trademark infringement cannot be premised merely on the fact that an individual has served as a company's CEO or President. The SACC is devoid of any specific, non-conclusory factual allegations demonstrating these individuals' personal involvement in the purported trademark infringement. Defendants' attempt to bolster these claims by pointing to alleged conduct predating the alleged infringement is equally unavailing, as those allegations do not establish that Mr. Altman or Mr. Brockman had knowledge of Defendants' purported trademark rights or actual use of the mark in commerce *at the time of the alleged infringement*, a critical element for establishing individual liability.

Finally, the Court should strike Defendants' extensive allegations improperly carried over verbatim from the First Amended Counterclaims ("FACC"). These extraneous and inflammatory allegations relate—if at all—to previously dismissed claims and have no bearing on the remaining alleged trademark claims; if permitted, they would serve only to prejudice Plaintiff while dramatically expanding the scope of the case. Striking these irrelevant and prejudicial allegations

1  will streamline the litigation, reduce unnecessary costs, and help ensure that the jury focuses on the
2  relevant issues.
3       For those reasons, as set forth in the Motion, Plaintiff OpenAI respectfully requests that the
4  Court grant Plaintiff's Motion.

## ARGUMENT

### I.    PLAINTIFF'S MOTION TO DISMISS WAS TIMELY FILED

Defendants' lead argument that Plaintiff's motion to dismiss was untimely filed (Opp. 5-6) is without merit.  The Court's September 25, 2024 Order granting Plaintiff's motion to dismiss stated that Defendants may file amended counterclaims "[w]ithin fourteen days of this order" and that "[w]ithin fourteen days thereafter (or filing), whichever comes first, plaintiffs shall respond."  Dkt. 127 ("MTD Order") at 8.  The Court subsequently ordered that "a two-day extension on the filing deadline is granted and any subsequent response."  Dkt. 137.  Therefore, Plaintiff had 16 days from the filing of Defendants' amended counterclaims to file its motion.  Because the sixteenth day from Defendants' October 11 filing fell on Sunday, October 27, Plaintiff's motion was due on Monday, October 28.  *See* Fed. R. Civ. P. 6(a)(1)(C) ("if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").  Defendants themselves relied on this same rule in filing their Opposition not 14 days after Plaintiff's motion, which was a legal holiday, but 15 days later.  Defendants' cited cases (Opp. 6) do not hold otherwise; they merely address situations in which a party's filing was untimely and there was no reasonable basis to believe otherwise.  *See Dobeck v. Cobra Engineering, Inc.*, 2017 WL 5495152, at *1 (C.D. Cal. Feb. 27, 2017); *Ho Yin Wong v. CherryRoad Technologies Inc.*, 2020 WL 2476755, at *1 (D. Haw. May 13, 2020).

### II.    DEFENDANTS' TRADEMARK INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Defendants' opposition to the dismissal of their trademark infringement claims mischaracterizes Plaintiff's arguments.  Plaintiff's position is not, as Defendants present it, that their alleging reverse confusion is new (Opp. 6-7), but that Defendants have newly claimed that reverse confusion *began* with the November 2022 release of Plaintiff's ChatGPT chatbot.  Defendants'

Opposition confirms these allegations are made for the first time by admitting that the "new allegations" served to "identify when … infringing use of the OpenAI mark began to generate significant reverse confusion (*i.e.*, when they announced ChatGPT)." Opp. 7; *see also id.* at 8 ("it was [Plaintiff's] advertising of ChatGPT (not the image generator) that caused the reverse confusion"), *id.* at 10 ("launch of ChatGPT under the OpenAI mark caused reverse confusion as to all of Counterclaimants' products and services"). It is these new allegations that have established that Defendants do not have viable trademark claims and form the basis for Plaintiff's motion.

### A. Defendants' Allegations Foreclose Any Viable Reverse Confusion Theory Of Trademark Infringement.

Defendants fail to cite any legal authority allowing a claim for trademark infringement that is premised on infringement allegedly *starting* months *after* the alleged junior user had already introduced a product that directly competed with one of the alleged senior user's products. *See* Dkt. 140 ("Mot.") at 5. But that is what Defendants' counterclaims now allege: that infringement began with the introduction of Plaintiff's ChatGPT on November 30, 2022—months *after* Plaintiff had already introduced DALL·E (by at least September 2022), which directly competed with the image generator on Defendants open.ai website as of November 16, 2022. *See* Mot. 5-6; Opp. 8. Defendants' inability to plead confusion resulting from any of Plaintiff's pre-ChatGPT products dooms their trademarks claims.

Defendants' argument that infringement can be found even when the products at issue do not directly compete (Opp. 8-9) ignores that Plaintiff's motion is not premised on the idea that reverse confusion can only apply to directly competitive products. Rather, the motion proceeds from the premise that a trademark infringement claim cannot arise from conduct occurring *after* the parties already have competing products. Mot. 4-5. Defendants fail to distinguish Plaintiff's cited authority or identify any legal principle that would allow them to select their own convenient day to determine the start of the alleged infringement after the parties' already have *competing* products. *Cf., e.g.*, *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (reversing summary judgment for defendant where plaintiff began marketing its "SmartSync" software in 2004 more than a decade before defendant introduced its allegedly infringing "Smart Sync" feature) (Mot. 5).

Likewise, Defendants' allegation that they offered goods and services other than an image generator (Opp. 9-10) does not salvage their claims. Defendants did not allege that any users of Defendants' other products were confused; nor did they allege any facts related to the *Sleekcraft* factors concerning those other goods and services, such as marketing channels used in connection with them, any characteristics of their users, or that those products are proximately related to any of Plaintiff's offerings. *Cf.* SACC ¶ 119 (alleging confusion from ChatGPT based on "use of a nearly identical mark in connection with nearly identical products marketed to nearly identical users"); Opp. 3 (similar). Further, the SACC alleges visitors to Defendants' website before November 30, 2022 were *not* confused. SACC ¶¶ 118 (alleging that "the open.ai website was attracting a steady and significant flow of traffic" before November 30, 2022). Accordingly, any alleged uses Defendants made before their introduction of the sole product for which they claim reverse confusion occurred (i.e., the image generator, *see* SACC ¶¶ 120) are irrelevant. Having made no allegations of any consumer confusion by users of the open.ai domain or any of their other purported products (Opp. 9) before November 30, 2022, they are left with a sequence of events that does not support a trademark infringement claim.

### B. Defendants' Allegations Foreclose Any Claim That They Have Valid Trademark Rights.

Defendants also do not explain how their new allegations concerning reverse confusion do not plead them out of being able to establish secondary meaning. As explained in Plaintiff's opening brief, this motion is based on the new allegations in the SACC that establish that Defendants have pled themselves out of having a protectable trademark right or secondary meaning based on the combination of when they are newly asserting that customer confusion occurred and the consumer use they newly allege they had at that time. These new allegations include in particular that Defendants had merely "approximately 7,200 unique users" for two weeks in November 2022 and saw an 1,100% increase in traffic from approximately 900 alleged users per day in "the 24 hours following [the] announcement of ChatGPT." SACC ¶¶ 118, 120. If true, these allegations are inconsistent with a mental association between Defendants' mark and a "substantial segment of consumers and potential consumers" as a single source of image generators. *See* Mot. 6-7 (citations

omitted). Defendants' various attempts to salvage the notion they have valid trademark rights are all without merit.

First, Defendants are incorrect that Plaintiff's argument concerning Defendants' trademark rights is a procedurally improper renewal of a previously made argument. Opp. 10-11. Rather, this motion is based on the SACC's *new* allegations concerning the timing of when alleged confusion occurred; it presents a different argument from Plaintiff's prior challenge to Defendants' trademark rights, which asserted that the FACC should be dismissed because Defendants did not even attempt to plead secondary meaning or inherent distinctiveness in even a conclusory fashion. Dkt. 109 at 18-19. Plaintiff acknowledges that the Court rejected that argument and are not re-raising it here.

Second, that Defendants cited a case in their original counterclaims for the legal proposition that a senior user in a reverse confusion case seeks to protect its business identity from being overwhelmed (*see* Opp. 11 (citing FACC ¶ 125)) does not nullify the newness of Defendants' allegations concerning the nature and timing of the purported reverse confusion—*i.e.*, that it is tied to ChatGPT—and the SACC is the first time Defendants factually alleged that Defendants' business *was* "overwhelmed" (SACC ¶ 132).

Third, Defendants attempt to defend their legally insufficient factual allegations by arguing that in a reverse confusion case their pleading burden to show secondary meaning is "somewhat lower" than in a forward confusion case. Opp. 11-12. They are incorrect. The cases they rely on are factually inapposite, as none of them address a situation where, as here, the USPTO found the asserted mark descriptive and registered it on the Supplemental Register as a merely descriptive mark. *Id.* (citing *Banff, Ltd. v. Federated Dep't Stores, Inc.,* 841 F.2d 486, 491 (2d Cir. 1988); *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 444 (3d Cir. 2000); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.6 (9th Cir. 2002); *Elizabeth Taylor Cosmetics Co., Inc. v. Annick Goutal, S.A.R.I.*, 673 F. Supp. 1238, 1248 (S.D.N.Y. 1987); *Art Attacks Ink, LLC v. MGA Ent., Inc.,* 2007 WL 935655, at *4 (S.D. Cal. Mar. 5, 2007)).

Further, Defendants' "lower standard" argument, premised on out-of-circuit authority, is illogical. *Id.* The sole Ninth Circuit case cited, *Cohn*, 281 F.3d 837, mentions this concept only in dicta, referring to the Third Circuit's statement regarding evidentiary burden via a parenthetical in a

footnote. *Id.* at 842 n.6. None of the authority cited explains why a party whose use has been *less* effective than is customarily required should be able to maintain an infringement case against a party whose use *has* created a customer association with a mark. Indeed, such a holding would contradict the Ninth Circuit's rule that a mark "is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817-18 (9th Cir. 2021) (quotations omitted). And it would exacerbate the "chief danger" of reverse confusion cases: blocking heavily promoted marks based on the marks of "plaintiffs who have not invested in, or promoted, their own marks." *See* Mot. 7 (citations omitted).

Even if Defendants were entitled to a "somewhat lower standard" of pleading secondary meaning, their allegations could not plausibly satisfy that either. They cite no authority to defend the sufficiency of the approximately 7,200 users they allege from November 18, 2022 through November 30, 2022 (Opp 12-13) to establish secondary meaning in any context. Neither of the two cases Defendants cite (Opp. 12) salvage their position because they involve far different facts. The plaintiff in *Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*, 2010 WL 11520159, at *5 (C.D. Cal. Sept. 20, 2010), had "engage[d] in some measure of advertising and 'promotional activities' such as fundraisers"—which Defendants do not allege here. And secondary meaning was not challenged in *South California Darts Association v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014), where the mark had been in use for "nearly fifty years," had "developed worldwide recognition," and defendant conceded that "he deliberately appropriated Plaintiff's Marks precisely because of their strong reputation in the darts community as being associated with Plaintiff." *S. California Darts Ass'n v. S. California Darts Ass'n, Inc.*, 2013 WL 12121536, at *3 (C.D. Cal. Feb. 22, 2013), *aff'd sub nom. South California Darts Association v. Zaffina*, 762 F.3d 921 (9th Cir. 2014). Defendants have alleged no remotely comparable facts.

Fourth, Defendants seek to lower their required showing of consumer association even further by arguing that their "intended audience was the 'nascent artificial intelligence industry.'" Opp. 12-13. This argument fails because at the time of the alleged confusion, the target audience for Defendants' offerings was not "nascent." The earliest that the SACC alleges that confusion occurred

is on November 30, 2022 (SACC ¶ 119)—seven years after what the SACC alleged was the "then-nascent artificial intelligence industry" in 2015 (SACC ¶ 53). The SACC alleged neither that the relevant consumer market in November and December 2022 was nascent, nor that it was niche. And Defendants plainly view the relevant audience in 2022 as neither, having argued that 1.5 million users for an artificial intelligence image generator in 2022 was "woefully insufficient" for Plaintiff to prove secondary meaning. *See* Mot. 6-7.

In sum, because Defendants' revised pleadings now reveal the inadequacy of consumer association with their asserted mark at the relevant time to establish valid trademark rights, Defendants' trademark infringement counterclaims should be dismissed. *See Day Crush, LLC v. Ehren Jordan Wine Cellars*, 2017 WL 6383269, at *4 (N.D. Cal. May 5, 2017) (dismissing complaint that did not "adequately allege[] that the DAY WINES mark is inherently distinctive or that it has acquired a secondary meaning such that it is protectable") (Mot. 8). While Defendants obliquely suggest that they may not need to prove secondary meaning (Opp. 13 n.2), they conspicuously did not allege that their asserted mark is inherently distinctive (e.g., arbitrary or suggestive) as would be required to maintain their claims. *Day Crush*, 2017 WL 6383269, at *4. And Defendants make no argument suggesting how else they could establish valid trademark rights, much less point to allegations supporting such an alternative.

## III. DEFENDANTS' CLAIMS AGAINST MR. ALTMAN AND MR. BROCKMAN PERSONALLY SHOULD BE DISMISSED WITH PREJUDICE

Defendants (Opp. 13-16) mischaracterizes the Court's prior order and the SACC to try to avoid dismissal of the claims against Mr. Altman and Mr. Brockman. The SACC's new allegations regarding the timing of the alleged infringement have crystalized that Defendants can assert no trademark claim against either individual.

The Opposition cites to general legal principles about when an officer may be liable (Opp. 14), but it ignores how courts apply those principles. *See* Opp. 14 (citing *Apple Hill Growers v. El Dorado Orchards*, 2019 WL 5827365, at *4 (E.D. Cal. Nov. 7, 2019), for a general proposition but neglecting to discuss its facts). If anything, Defendants' cited authority supports dismissal. In *Apple Hill Growers*, the court dismissed the plaintiff's claims that sought to hold two corporate

1  officers individually liable because the complaint contained only conclusory allegations about their
2  roles at the company and ownership, without facts specifically linking them to the infringing conduct.
3  2019 WL 5827365, at *3-4.  The SACC suffers from the same flaw.  It is devoid of factual allegations
4  demonstrating that Mr. Altman or Mr. Brockman personally directed or participated in the alleged
5  infringement.  *See* Mot. 8-9.  The SACC's vague and conclusory assertions about their knowledge
6  and corporate roles do not establish personal liability.  Any other conclusion would open the door for
7  every corporate officer to be individually named in every trademark infringement claim.  The law
8  does not allow this.

9  Defendants attempt to point to more specific allegations concerning Mr. Altman and
10 Mr. Brockman, but those relate to actions that allegedly occurred long before November 2022, when
11 the SACC alleges the infringement began.  *See* Opp. 14-15 (citing SACC ¶¶ 6, 78-80, 88, 90-92,
12 101).  None of those allegations state a plausible claim for individual liability because they do not
13 show Mr. Altman or Mr. Brockman knowingly directed or participated in the alleged trademark
14 infringement.  For example, purported knowledge of Mr. Ravine's "Open AI" "initiative" in
15 December 2015 is insufficient because there is no allegation that when Mr. Brockman acquired the
16 openai.com domain, or announced OpenAI's founding, he or Mr. Altman knew of any *trademark*
17 *rights* that Defendants allegedly possessed—much less *any* actual use in commerce of "Open AI" by
18 Mr. Ravine.  Opp. 14-15 (citing SACC ¶¶ 6, 78, 79, 80, 88, 90-92).  Similarly, Defendants' reliance
19 on the February 2022 email between Mr. Ravine and Mr. Altman (Opp. 15 (citing SACC ¶ 101))
20 does not save Defendants' claims.  That email reflects only that Defendants' open.ai website was
21 redirecting to Plaintiff's website at that time—a far cry from a bona fide use in commerce by
22 Defendants.  SACC ¶ 101.

23 The first use that Defendants allege caused confusion was until November 2022, with the
24 introduction of ChatGPT.  SACC ¶ 119.  But the SACC fails to allege that either Mr. Altman or
25 Mr. Brockman had knowledge at that time of Defendants having either valid trademark rights or any
26 actual use in commerce.  Rather, the sole allegation that Defendants rely on regarding ChatGPT
27 generically refers to "Counterclaim-Defendants" announcing ChatGPT—not any specific actions by
28 Mr. Altman or Mr. Brockman.  Opp. 15 (citing SACC ¶ 119).  Although Defendants argue that

PLAINTIFF OPENAI, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
DEFENDANTS' SECOND AMENDED COUNTERCLAIMS

Mr. Altman's "considerable influence over OpenAI" supports his liability for the alleged infringement, the sole allegation they cite (Opp. 15-16 (citing SACC ¶ 103)) clearly refers to Mr. Altman's "influence" in November *2023*—a year after the alleged infringement began. SACC ¶¶ 102-103. And, in all events, the allegation has nothing to do with Mr. Brockman.

The cases Defendants cite (Opp. 14-16) provide no support for their position. Defendants' cases all involve infringed marks protected by registrations on the Principal Register and/or the defendant's actual knowledge of the trademark owner's active use in commerce.[1] Neither circumstance applies here. Instead, the SACC relies on conclusory allegations about their corporate roles after November 2022. These allegations therefore cannot show they personally directed or participated in the alleged infringement. And the allegations about their knowledge show nothing more than awareness that Mr. Ravine had plans to use a name—not that he had valid trademark rights or used the "Open AI" name with any services consumers actually used.

Finally, Defendants' procedural argument that Plaintiff's challenge to the individual liability allegations is untimely (Opp. 14) also lacks merit. Plaintiff's motion relies on the SACC's new deficiencies, based on its new theory that reverse confusion—i.e., infringement—started with ChatGPT's November 2022 release. The Court's order on Plaintiff's prior motion to dismiss did not preclude Plaintiff from asserting new arguments based on new allegations.

---

[1] *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (officer liability for creating a business using the plaintiff's name to gain an advantage in separate litigation); *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1101, 1104–05 (N.D. Cal. 2015) (corporate defendants did not dispute trademark infringement, and officer admitted personal involvement in the infringement); *Symantec Corp. v. Logical Plus, Inc.*, 2009 WL 3416178, at *4 (N.D. Cal. Oct. 20, 2009) (owner liable for selling counterfeit Norton Antivirus software, despite receiving a cease and desist letter); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.*, 1995 WL 552168, at *1 (N.D. Cal. Aug. 30, 1995) (president and owner liability for selling counterfeit HP ink cartridges, including by participating in refilling used cartridges and repackaging them in original HP boxes); *Tanning Rsch. Lab'ys, Inc. v. Worldwide Imp. & Exp. Corp.*, 803 F. Supp. 606, 607-08 (E.D.N.Y. 1992) (owners liable for selling counterfeit Hawaiian Tropic sunscreen, despite receiving a cease and desist letter); *Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791, 793 (W.D. Wash. 1988) (president and majority owner liable for copyright infringement after learning of the need to obtain a license for playing copyrighted music and deliberately continuing infringement).

In sum, Defendants fail to point to any allegations in the SACC that suffice to plead claims against Mr. Altman and Mr. Brockman individually. The claims against them should be dismissed.

## IV. THE COURT SHOULD STRIKE DEFENDANTS' IMPROPER LEGACY ALLEGATIONS

Defendants' opposition (Opp. 16-20) fails to offer any legitimate purpose for retaining more than fifty paragraphs of irrelevant and inflammatory "legacy allegations" carried over from the FACC. These extraneous allegations should be struck under Rule 12(f) of the Federal Rules of Civil Procedure. They do not support any legal claim, and their dismissal will streamline the litigation and help prevent undue prejudice.

First, Defendants offer no substantive defense for pleading the same allegations that underlie their now-dismissed cancellation-for-misdescriptiveness claim. The Court held that Defendants may only re-allege the misdescriptiveness claim if they can plead facts showing "valid ground exists," consistent with Rule 11, that would support that theory. MTD Order at 8. Unable to meet that Rule 11 standard, Defendants attempt to use the "declaratory judgment" label to circumvent the Court's order and bring in the same underlying allegations the Court found deficient. Opp. 17-18. Defendants' attempt ignores the Court's unambiguous instruction *not* to revive the substance of dismissed claims through the declaratory judgment claims. *Compare* Mot. 10 (citing Dkt. 123 at 37:1-38:5 (agreeing that declaratory relief claims should not be used as a backdoor for dismissed substantive claims)), *with* Opp. 16-20 (failing to respond). Having repackaged the same deficient allegations previously rejected by this Court in connection with the cancellation-for-misdescriptiveness claim, the misdescriptiveness allegations should be struck. Defendants' declaratory judgment claim to invalidate Plaintiff's trademark rights should be limited to those reasons for invalidity that mirror Plaintiff's trademark infringement claim—i.e., issues of distinctiveness, priority, and confusion. *See* Mot. 12; MTD Order at 7 (allowing declaratory judgment claims because they are "the opposite side of the coin" from Plaintiff's own claims, and "[l]itigating the one will necessarily involve litigating the other").

Second, Defendants' assertions that the challenged allegations are relevant to their trademark claims (Opp. 18) lack any authority or logic. The allegations concerning Plaintiff's corporate

structure, funding, open-source principles, purported "theft" from humanity, and other similar accusations have no bearing whatsoever on the likelihood of consumer confusion or the validity of trademark rights, the central issues in a trademark infringement case. *See* SACC ¶¶ 1-3, 6, 58-62, 77, 79-81, 90, 91, 93-98. Nor do allegations relating to "secret sauce," a "recipe," or a "sacred obligation." *Id*. ¶¶ 2, 4, 7, 30, 31, 33, 35, 59, 60, 94. Tellingly, Defendants made no effort to explain how such allegations are relevant to any legal claim here. *Cf*. Opp. 16-20.

Instead, Defendants misstate Plaintiff's position about what should be stricken. Defendants argue that Plaintiff seeks to strike allegations relevant to Mr. "Ravine's development and use of the mark and name." Opp. 18. Not so. Plaintiff does not challenge allegations concerning Mr. Ravine's use of the "Open AI" name. *See* Dkt. 140-2 (Ex. A to Proposed Order). Rather, Plaintiff challenges the irrelevant and inflammatory allegations they have clearly identified. *See id*. For example, Plaintiff does not challenge the allegation in paragraph 2 of the SACC that Mr. Ravine may have created the Open AI name, but it does challenge the allegations of theft, misrepresentation, and cynical motives. *See id.* ¶ 2. Similarly, Plaintiff does not challenge the allegation in paragraph 6 of the SACC of copying the name, but it does challenge the allegation that Plaintiff falsely announced $1 billion in funding. *See id.* ¶ 6. And Plaintiff does not challenge the allegation in paragraph 26 of the SACC related to what Mr. Ravine claims to have set out to do in 2012, but it does challenge the allegations regarding "disturbing patterns," "manipulation," "insatiable pursuit," and "divert[ing] the control of these systems from humanity's command." *See id.* ¶ 26. The fact that Plaintiff has continued to allege facts and conclusions that were related, if at all, to the now-dismissed claims cannot be justified by their inclusion in paragraphs of the SACC that contain arguably more appropriate assertions.

Third, Defendants' attempts to justify their inflammatory allegations against Mr. Altman and Mr. Brockman by claiming these allegations are relevant to the question of personal liability likewise fail. Opp. 18 (citing SACC ¶¶ 1-3, 6, 59, 62, 79-83, 91, 94, 102-104). Most of these allegations, such as the accusation that Mr. Altman and Mr. Brockman lied about funding and their commitment to humanity (SACC ¶ 6), are barely related to the dismissed false advertising claims and have zero to do with trademark claims. Indeed, Defendants' reliance on a detailed and inflammatory account

of Mr. Altman's termination and reinstatement in paragraphs 102-104 of the SACC, replete with accusations of "legal intimidation" and "investor manipulation," exemplifies the type of "personal squabbles" the Court previously criticized.  MTD Order at 2.  Contrary to Defendants' argument, these allegations are plainly intended only for prejudice and should be struck.

Finally, Defendants' argument concerning undue burden is baseless.  Plaintiff's proposed order (Dkt. 140-2) precisely identifies each challenged allegation, which shows that striking them would not be unduly burdensome.  Defendants had the opportunity to rewrite their allegations after the Court's prior order; their failure to do so does not justify retaining irrelevant and prejudicial material.

Striking these allegations will not impede Defendants' ability to litigate their remaining trademark claims.  To the contrary, it will streamline the proceedings, reduce costs, and focus the jury on the relevant issues.  Plaintiff respectfully requests that the Court grant its motion to strike.

## CONCLUSION

For the reasons above, Plaintiff OpenAI, Inc. respectfully requests that this Court grant Plaintiff's motion.

DATED: November 19, 2024                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Robert P. Feldman*
Robert P. Feldman
Attorneys for OpenAI, Inc.