December 19, 2024
The Honorable Alex G. Tse
Magistrate Judge of the Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re: *OpenAI, Inc. v. Open Artificial Intelligence, Inc. et al.*, Case No. 23-cv-03918-YGR

Dear Magistrate Judge Alex G. Tse,

    Pursuant to Individual Rule 8(b), Plaintiff OpenAI ("Plaintiff") and Defendants Open Artificial Intelligence, Inc., and Guy Ravine (collectively, "Defendants") submit this joint letter brief regarding an open discovery dispute concerning Plaintiff's deficient responses to Defendants' Requests for Production of Documents (Sets One and Two) (the "RFPs") and corresponding document production.

    Counsel for Plaintiff and Counterclaim-Defendants (Margret Caruso, Aaron Perahia, Dylan Scher, and Rosemary Ring) met and conferred with counsel for Defendants (Jason Wilson, David Harris, Breeanna Brewer, and Josh Masur) via Zoom on November 27. Counsel for Plaintiff and counsel for Defendants held additional meet-and-confers via Zoom on December 16, 17, and 18. The parties have also communicated via email between November 24 and December 11.

    The parties were unable to resolve the issues discussed below.

**Defendants' Statement**

Defendants request that Plaintiff supplement its responses and/or produce further documents in response to RFP Nos. 4-6, 10, 21, 52, 67-73, and 79-81

**Background:** On March 11 and August 1, 2024, Plaintiff agreed to produce documents in response to 106 RFPs. *See* Brewer Decl. Exs. 1-4 (RFPs & Responses). As of November 24, Plaintiff had produced only 877 documents—consisting of approximately 23 internal emails, filings from this case, and mostly nonresponsive screenshots of publicly available websites post-dating this action. On November 24, Defendants sent a letter detailing the many categories of documents that Plaintiff had failed to produce, as well as the deficiencies in Plaintiff's RFP responses. Ex. 5. During a subsequent video conference on November 27, Plaintiff agreed to produce additional documents and speak with a client representative about the deficient responses. Thereafter, between December 3 and 13, Plaintiff produced 4,985 additional documents spanning 16,757 pages[1]. But these productions remained deficient. For example, Plaintiff produced two internal OpenAI brand awareness surveys but failed to produce any related internal communications, and also failed to produce other marketing surveys that Plaintiff's 30(b)(6) witness identified. Defendants repeatedly attempted to meet and confer with Plaintiff but were rebuffed. *Id.* ¶ 6, Ex. 6.

**RFP Nos. 79-81** request documents relating to consumer perception and brand awareness of Plaintiff and its products. In a trademark case brand awareness surveys are relevant to proving secondary meaning of a mark. In its responses served on ***August 1,*** Plaintiff agreed to produce responsive documents. As of November 24, Plaintiff had not produced any responsive documents other than documents prepared and filed by its expert in this matter. *See* Ex. 5. On December 3 (four months after Plaintiff had agreed to produce documents and just days before the first 30(b)(6) deposition), Plaintiff finally produced two surveys ██████████████████████████████████████████████████ Even then, Plaintiff took efforts to bury the surveys by producing them within a document dump of over 4,110 documents[2] ████████████████████████████████████████████████████████████████████████████████ Since Defendants uncovered the surveys, Plaintiff has blocked all efforts to obtain additional information. Plaintiff's 30(b)(6) witness, Mr. Dyett, ██████████████████████████████████████████████████████████████████████████████ *Id.* ¶ 12, Ex. 9 at 157-166, 170-176. ██████████████████████████ Ex. 9 at 168-169. Now, Plaintiff refuses to search for and produce additional responsive documents such as internal emails, memoranda, and/or research about the results of the surveys ████████████████████████ it even refuses to produce the additional surveys identified by Mr. Dyett. *Id.* ¶¶ 12-13.

**Final compromise:** Plaintiff should produce documents related to the two surveys, including related communications, memoranda, and/or reports about the results. Plaintiff should produce documents related to any other brand perception surveys/studies, including the marketing studies referenced in Mr. Dyett's deposition. Plaintiff should supplement its responses to RFP Nos. 79-81

---

[1] 80% of Plaintiff's documents were produced on December 3 or later.
[2] Approximately 3,199 documents in that production consisted of .jpg and .mp4 files, which appear to be publicly available articles/images on Plaintiff's social media.

which improperly limit its production to "documents sufficient to show consumer survey results regarding the OpenAI Mark." See Ex. 4.

**RFP No. 52** requests documents "relating to any association between [Plaintiff's Marks] with inappropriate content, including but not limited to racist or pornographic content." Ex. 1. Such information is relevant and critical given that Plaintiff alleges that Defendants harmed Plaintiff's reputation because Defendants' image generator is unsafe, while Plaintiff's image generator Dall-E, "cannot be used to generate images depicting sexual, violent, or hate content." Dkt. 21 at 15. Plaintiff's response improperly narrows the documents it will produce to those "sufficient to show Plaintiff OpenAI's *efforts to combat association* between its marks and inappropriate content." Ex. 3 (emphasis added). Plaintiff's response must be supplemented and Plaintiff must produce the requested documents. For example, Plaintiff should collect internal communications and customer complaints about inappropriate content generated by ChatGPT and Dall-E.

**Final compromise:** Plaintiff should supplement its response to agree to produce documents relating to any association between Plaintiff's Marks with inappropriate content. Plaintiff should collect documents from its customer service department and from its Safety and Security Committee, which is responsible for making safety recommendations to Plaintiff's Board.

**RFP Nos. 4-6, 10, 21, 67-73** requests documents relating to Defendants' Mark ("Open AI"), Defendants, and Defendants' various websites such as open.ai. Exs. 1-2. In a reverse confusion trademark case, awareness of a senior use of a trademark is relevant to proving willful infringement and intent to overwhelm the mark. For months, Plaintiff produced very limited documents about these topics, including only two responsive email threads that were not sent to or from Mr. Ravine. Eventually, on December 3 (after Defendants raised this issue), Plaintiff produced a single email thread ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff did not explain why this document had not been collected and produced during its prior searches for responsive documents. Then, one of Plaintiff's 30(b)(6) witnesses, Rebecca McCurry, revealed during her deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Brewer Decl. ¶ 16, Ex. 13. Ms. McCurry then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 15, Ex. 12. After that deposition, on December 17, Plaintiff produced *some of* those documents, but refused to produce the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3] Plaintiff never explained why it had not previously searched for or produced Ms. McCurry's responsive documents. During Ms. McCurry's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 15, Ex. 12 at 95-96. Plaintiff did not ▮▮▮▮▮▮▮▮▮▮▮▮▮ in its Rule 26 disclosures. Nor had it produced any documents collected from ▮▮▮▮▮▮▮. After Ms. McCurry's deposition, Plaintiff produced a handful of documents collected from ▮▮▮▮▮▮▮,

---

[3] The only Corsearch results produced were generated in December of 2024. No documents were produced that relate to Defendants' Open AI trademark U.S. Reg. No. 5258002. Because of Corsearch's policy, records beyond 180 days would need to be collected from Ms. McCurry's email. Brewer Decl. ¶ 16. Also, without cover emails, there is no evidence of the dates that Plaintiff received alerts about potential conflicting trademarks.

███████████████████████████████████████████████████████ Plaintiff did not explain why it did not previously collect and produce this document especially when the email included ████████████, whose email had supposedly been searched for responsive documents. It is evident that a thorough and diligent search of Mr. Brockman, and other custodians, was not completed. Given that Plaintiff has repeatedly produced documents only *after* deponents revealed the existence of those documents, it appears that Plaintiff's initial efforts failed to collect various highly relevant documents specifically related to Mr. Ravine, the "Open AI" trademark, and the open.ai websites. The latest document productions suggest searches were not conducted for responsive material post-dating 2015. Plaintiff's response to RFP No. 67 attempts to improperly limit its production to documents "sufficient to show *first awareness of the open.ai domain* by anyone involved in the naming decision of Plaintiff OpenAI." Ex. 4 (emphasis added). Plaintiff must supplement its response to provide documents that reflect Plaintiff's awareness of open.ai. The documents should not be limited to a subgroup of the unidentified individuals who named Plaintiff's company or to a single point of first awareness of open.ai. Documents show other individuals, including ████████ were expressly discussing Mr. Ravine. Also, Plaintiff's continuous knowledge of Mr. Ravine and his trademark are relevant for laches arguments and to prove reverse trademark factors such as willful infringement.

**Final compromise:** The Court should order the parties to negotiate custodians, search terms, and targeted searches that Plaintiff should apply to identify and produce responsive documents, including documents post-dating 2015. Plaintiff should supplement its response to RFP 67 to agree to produce documents that reflect Plaintiff's awareness of the open.ai domain.

### Plaintiff's Statement

Plaintiff satisfied its discovery obligations and produced responsive, non-privileged documents after a reasonable and diligent search. Defendants' current complaints are the result of their own delay and refusal to cooperate in the discovery process. Last year, they repeatedly rebuffed Plaintiff's effort to negotiate an ESI protocol with agreed upon custodians and search terms. Perahia Decl. ¶ 2 & Ex. A. Accordingly, their speculative challenges to the sufficiency of Plaintiff's production and the appropriateness of Plaintiff's responses going back to March 2024 ring hollow. Defendants motion should be denied.

**Background:** From the start of discovery in October 2023, Plaintiff sought to agree on a reasonable ESI protocol with Defendants. Perahia Decl. ¶ 2. Defendants consistently refused, even after new counsel appeared in March 2024. *Id.* ¶¶ 2-3. Plaintiff timely served its objections and responses to Defendants first set of RFPs (Nos. 1-54) in March 2024, and to the second set, served in June (Nos. 55-121) on August 1, stating the basis for its objections and specifying what it would produce. *Id.* ¶¶ 4-5, Exs. B & C. Without an agreed ESI protocol, Plaintiff conducted a reasonable and diligent search for those documents. This included searching 22 custodians—significantly more than the five contemplated by the Model Order in this District—and thorough searches related to Defendants, their purported mark, and relevant websites, among other things. *Id.* ¶ 6. Plaintiff later disclosed this information, including its custodians and certain searches, to Defendants—even though they refused to do the same. *Id.* Plaintiff produced all responsive, non-privileged documents consistent with its responses.

Despite receiving Plaintiff's responses and initial document productions in March and August 2024, Defendants waited until November 24, 2024—a Sunday night during Thanksgiving week—to raise any concerns. Perahia Decl., ¶ 7. Defendants' belated correspondence, asserting deficient written responses and other deficiencies two weeks before the close of discovery, followed Defendants' service of an overbroad 30(b)(6) notice and disclosure and noticing of depositions for four new witnesses. *Id.* Although Plaintiff continued to produce additional discovery and attempted to resolve the purported deficiencies during several meet and confers, Defendants refused to engage meaningfully with Plaintiff's document proposals or provide any specific search terms, as Plaintiff suggested they do. *Id.* ¶ 8.

**Argument:** Defendants' speculative and dilatory requests should be denied. Defendants waited until the eve of the discovery cutoff to challenge the sufficiency of Plaintiff's responses and production. This delay alone warrants denial of their motion. *See KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) ("Untimeliness is sufficient ground, standing alone, to deny a discovery motion."). The ability to file a motion to compel does not give parties "carte blanche rights to demand sizeable discovery requests up to the last possible minute." *V5 Technologies v. Switch, Ltd.*, 332 F.R.D. 356, 363 (D. Nev. 2019). Plaintiff's March and August 2024 responses stated the scope of documents that Plaintiff agreed to produce. Defendants had ample opportunity to raise any concerns about perceived deficiencies. They failed to do so. Instead, they waited until two weeks before the discovery cutoff to raise these issues. Defendants' belated attempt to dramatically expand the scope of discovery at this late stage should be rejected.

**RFP Nos. 79-81 (Surveys and Consumer Association):** Plaintiff's responses and production concerning RFP Nos. 79-81, which seek documents relating to consumer perception and brand awareness, are sufficient and proportionate to the needs of this case. Plaintiff's August 1, 2024, responses identified its intended production: the results of consumer surveys asking about the OpenAI Mark (Nos. 79 & 80) and documents reflecting consumer association between the OpenAI Mark and OpenAI's products and services (No. 81). Plaintiff did what it said it would do, producing relevant expert survey documents for RFP Nos. 79 and 80 and hundreds of documents showing consumer association for RFP 81, such as media referring to consumer enthusiasm for OpenAI. Defendants' assertion that Plaintiff only produced expert materials is false.

The two additional consumer survey reports that Plaintiff produced were responsive but are nonetheless irrelevant. To the extent they refer to OpenAI at all (as opposed to ChatGPT, the primary focus of the surveys), they reflect *general population* perceptions from May 2024. These surveys are not probative of whether the *relevant consumers* of Plaintiff OpenAI's goods and services *before* ChatGPT was released in 2022 associated the OpenAI mark with a single source. *Compare Castaline v. Aaron Mueller Arts*, 2010 WL 583944, at *3 (N.D. Cal. Feb. 16, 2010) (secondary meaning requires "a strong association between the mark and its owner-in the mind of the relevant consumer population") *with Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571719, at *7 (N.D. Cal. June 30, 2012) ("The Ninth Circuit has recognized that fame requires a high standard of consumer awareness beyond the trademark owner's specific market—the mark should be a 'household name' or 'part of the collective national consciousness.'"). Additional discovery related to these irrelevant surveys, such as email communications concerning them, would be cumulative and disproportionate, especially given Defendants' months-long delay in raising this issue. Defendants' attempt to expand the RFP months after-the-fact to collect additional information about irrelevant documents should be rejected.

**RFP No. 52 (Inappropriate Content):** Defendants' challenge to Plaintiff's response to RFP No. 52, served in March 2024, is untimely and meritless. Plaintiff agreed to produce documents "sufficient to show Plaintiff OpenAI's efforts to combat association between its marks and inappropriate content." Perahia Decl., Ex. B. This appropriately narrowed Defendants' overly broad request, which sought all documents "relating to any association" between Plaintiff's marks and undefined "inappropriate content." *Id.* Complying with this expansive request would be unduly burdensome and disproportionate, requiring a massive, human review of all emails sent to customer support and an unspecified search of all Safety and Security Committee documents. *Id.* ¶ 9. This fishing expedition is unwarranted—as evidenced by Defendants' inability to identify search terms that would enable a proportionately appropriate collection. *Id.*

**RFP Nos. 4-6, 10, 21, 67-73 (Defendants, Their Mark, and Websites):** Defendants' speculation that Plaintiff's production is incomplete is unfounded. Plaintiff diligently searched and produced responsive, non-privileged documents related to Defendants, their purported mark, and their websites, as detailed in Plaintiff's responses served in March and July 2024. And Plaintiff has since gone beyond that, producing nonprivileged documents from any time before this action was filed that mention Ravine, "Open AI," open.ai, or any of the known subdomains of that website. A party's mere suspicion that additional documents exist is insufficient to compel production. *Hamilton v. Rhoads*, 2012 WL 4097748, at *2 (N.D. Cal. Sept. 17, 2012) ("suspicion that additional documents exist does not justify a motion to compel").

Defendants' arguments regarding the sequence of production are speculation under a different guise. *First*, certain emails between Mr. Brockman and Mr. Altman (*e.g.*, OPENAI_RAV-00014287) were collected from personal, non-OpenAI email accounts. Perahia Decl. ¶ 10. Their production *confirms* the thoroughness of Plaintiff's search, which extended beyond OpenAI corporate accounts to encompass their personal emails dating back nearly a decade. *Second*, the emails with Mr. Clark (*e.g.*, OPENAI_RAV-00022197) were produced later than other documents collected at the same time to allow for privilege review. *Id.* The fact that Mr. Clark handled Plaintiff's 2016 trademark application was not "revealed" during Ms. McCurry's deposition; it was publicly available on the PTO docket. *Id.*, Ex. D. *Third*, the Coresearch reports and summaries, requested by Defendants mere days before this brief, were produced the next day after Defendants requested them. *Id.*, ¶ 12. Defendants now seek the cover emails transmitting these reports. However, these emails contain no substantive content beyond links to the already-produced reports. Contrary to Defendants' argument that they cannot tell when they were received, the reports contain a generated date that reflects when they were created. *See, e.g., id.,* Ex. E. Producing them would be disproportionately burdensome, requiring extensive redactions of confidential information relating to other watched marks and non-U.S. reports. Since the cover emails provide no additional factual information, and only link to the responsive produced reports, further production is unwarranted.

**Conclusion:** Defendants' motion should be denied as untimely, speculative, and unwarranted, particularly given Defendants' obstruction of orderly ESI protocols.

1032169.1

Very truly yours,

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | WILLENKEN LLP |
| */s/ Margret M. Caruso* | */s/ Jason Wilson* |
| Margret M. Caruso | |
| *Counsel for Plaintiff OpenAI, Inc.* | *Counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine* |

1032169.1

## E-FILER'S ATTESTATION

Pursuant to Civil Local Rule 5.1(i)(3), the undersigned hereby attests that concurrence in the filing of this **JOINT LETTER** has been obtained from counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine and is electronically signed with the express permission of such counsel.

DATED: December 19, 2024              Willenken LLP


                                      By      */s/ Jason Wilson*
                                              Jason Wilson
                                              Counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine

1032169.1