December 19, 2024
The Honorable Alex G. Tse
District Judge of the Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re: *OpenAI, Inc. v. Open Artificial Intelligence, Inc. et al.*, Case No. 23-cv-03918-YGR

Dear Judge Tse,

Pursuant to Individual Rule 7(b), Plaintiff OpenAI ("Plaintiff") and Defendants Open Artificial Intelligence, Inc., and Guy Ravine (collectively, "Defendants") submit this joint letter brief regarding their dispute concerning the production of documents reflecting the identity of all investors, documents reflecting investor arrangements, and documents reflecting Defendants' communications with investors and potential investors.

Lead counsel for Plaintiff and Counterclaim-Defendants (Margret Caruso) and lead counsel for Defendants (Jason Wilson), along with other lawyers from their firms, participated in a video conference call via Zoom on December 16, 17, and 18, 2024.  Plaintiff and Counterclaim-Defendants assert that, during these calls, the parties met and conferred about all of the issues discussed below.  Defendants contend that the parties met conferred on only one of the issues discussed below, and that the other issue is not properly before the Court.

The parties are at an impasse.

**Plaintiff OpenAI's Statement**

Plaintiff seeks documents concerning investments in Defendants' business and litigation.

**Background:** On March 26, 2024, Defendants submitted a declaration from a purported third-party Tom Gruber in support of their motion for reconsideration of the preliminary injunction against them. *See* Dkt. 78. Defendants also solicited quotes from Gruber which he appears to have authorized for use in their successive rounds of counterclaims. *See, e.g.*, Dkt. 138 at 12-13. However, Defendants' initial disclosures (served on October 20, 2023) did not disclose Gruber. *See* Bishop Decl. ¶ 2. Not until their November 27, 2024, amended disclosures did Defendants add Gruber to their Rule 26 disclosures as having knowledge about Defendants' "companies and entities, and their technology, goods, and services." Ex. A at 3.[1] There was also no disclosure of Gruber as having an interest in the outcome of the case per Civil Local Rule 3-15.

After Plaintiff noticed Gruber's deposition in November 2024, Defendants arranged counsel for Gruber. This counsel, a former colleague of Defendants' counsel, produced no documents prior to the deposition, claiming that the documents Gruber found were in a zip file that counsel could not access. These documents still have not been produced. During his December 6 deposition, Gruber disclosed that (1) he "loan[ed]" Defendant Guy Ravine "a hundred thousand dollars" "to monetize" the trademark and, further, that loan "is now an investment" in "the entity that is involved in this lawsuit," (2) "if there's a settlement, [Gruber] would participate in the settlement," (3) documents reflect that loan, and (4) "the hundred thousand dollar loan is now an investment." Ex. B (Gruber Tr.) at 76:3-77:6; 81:13-22. Gruber further testified that he had spoken with other potential investors backing Defendants in this litigation—none of whom are disclosed in any documents produced prior to Gruber's deposition by either Gruber or Defendants. *Id.* at 10:11-14:25. Ravine later confirmed in his December 10 deposition that Defendants had additional investors. Ex. C (Ravine Tr.) at 48:18-49:4. Before this testimony, Plaintiff had no notice that Defendants had any investors in this lawsuit—and, of course, were not able to apprise Judge Rogers of this fact regarding Gruber when Defendants submitted his declaration.

Contrary to Defendants' claim, the parties met and conferred about this issue. The parties' discussions centered on the funding that Defendants have received in 2023, and Gruber's testimony reflects that it is impossible to distinguish "pure" litigation funding from what was pitched to third parties as investments to "monetize" Defendants' trademark, especially without the production of any documents on the matter. That communications about these investments occurred ***before*** this lawsuit was filed by Plaintiff OpenAI reflects that discussions about these investments are intertwined, as counsel for Plaintiff expressly stated during at least one meet and confer yesterday.

**Argument:** All documents concerning investments, potential investments, or solicitations for investment in Defendants' business efforts concerning OPEN AI-branded goods or services or in this litigation should be produced, including documents that identify Defendants' investors and

---

[1] Plaintiff OpenAI's referenced exhibits are attached to the Declaration of Elizabeth Bishop.

1

potential investors, the dates they communicated with Defendants, the terms of their investments, and the contents of their communications with Defendants.

**First,** these documents are responsive to Plaintiff's discovery requests and within the scope of what Defendants *agreed* to produce—i.e., documents (i) reflecting or referring to communications with any third party concerning (a) this Action or OpenAI through May 2024, or (b) Defendants' business through August 3, 2023 (RFP 66), (ii) relating to third parties' intent to fund Defendants' Open AI Initiative (RFP 68); and (iii) commitments made by any potential funder or investor (RFP 75). *See* Bishop Decl. ¶¶ 6-8, Ex. D-E (Defendants' responses); Ex. F (Plaintiff's requests).

**Second,** these documents are directly relevant to the merits. A key issue in the case is Defendants' alleged use in commerce of OPEN AI, and consumers' perception, if any, of that mark. Discussions with investors would touch on these issues. 2023 investments in Defendants could have been used for their pretextual efforts to ramp up purported use in commerce prior to litigation. And the documents are critical to the evaluation of Gruber's credibility and bias.

The documents are also necessary to rebut Defendants' anticipated trial testimony. Ravine has held himself out as essentially minding his own business and ready to leave his AI activities behind when Plaintiff filed suit, reluctantly and surprisingly drawing him into this dispute. *See* bloomberg.com/news/features/2024-10-14/why-openai-is-at-war-with-a-guy-named-guy ("he started making plans to move to France and live in a remote cabin … [but] as he packed up his house on Aug. 11, 2023, he opened an email from a lawyer at the firm Quinn Emanuel"). Defendants do not disclaim the intent to present trial testimony on these issues. A just determination of this dispute requires disclosure of the true facts. *Cf. Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (party did "not have any third-party litigation financing").

**Third,** documents related to litigation funding may be ordered to be produced "when there is a sufficient factual showing of 'something untoward' occurring in the case." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019), *aff'd*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020). That Defendants concealed Gruber's financial interest in this litigation, refusing to produce the relevant agreed-upon discovery, while offering his factual testimony to Judge Rogers reflects "something untoward" and a "specific, articulated reason to suspect bias or conflicts of interest." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019).

**Fourth,** the requested documents are not protected work product because they serve an "independent business purpose" and appear to have been treated as business negotiations. *See Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1105-06 (N.D. Cal. 2016). Gruber testified that he originally gave Ravine money that was "meant to be a loan" that Ravine would "pay … back when he was able to monetize the trademark." Ex. B at 72:17-20. Ravine's testimony does not indicate that his investors and potential investors are exclusively lawyers, were approached or provided funding exclusively earmarked for litigation, or communicated (exclusively, if at all) with Defendants' trial lawyers. *See* Ex. C at 44:12-52:23. Indeed, Gruber himself testified that he communicated with potential investors. Ex. B at 10:16-14:25. Plaintiff is entitled to discovery about what "monetize the trademark," means, which is how Gruber described

2

his "loan" to Ravine. *Cf. Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*, 2016 WL 7665898, at *5 (S.D. Cal. Sept. 20, 2016) ("documents were created because litigation was expected").

Even if some of the litigation funding documents were protected work product, the materials are still discoverable because Plaintiff has a "substantial need for the materials." Fed. R. Civ. P. 26(b)(3). Plaintiff has no other means to obtain this evidence; the only evidence of the identity of Defendants' funders is currently Ravine's deficient testimony (liberally peppered with statements that he "[did not] recall" and "[was] not sure" about his answers, including whether the communications were before or after events like the filing of the lawsuit or the preliminary injunction order, as well as not knowing the corporate names or last names of several of the funders. *See* Ex. C at 48:21-52:23.

**Plaintiff's Final Proposed Compromise:** Defendants should produce documents reflecting the identity of all investors and potential investors (irrespective of the timing of their funding or approach), all documents reflecting investors arrangements, and all communications with actual or potential investors—i.e. anyone Defendants communicated with as part of a plan to obtain assistance monetizing the asserted OPEN AI mark.

### Defendants Open Artificial Intelligence, Inc. and Guy Ravine's Statement

Plaintiff's request should be denied for the reasons below.

**Background:** When they received Plaintiff's portion of this joint brief, Defendants were surprised to learn that Plaintiff is apparently seeking the production of not just one, but two different categories of documents—namely, documents related to (1) "investments in Defendants' business" and (2) "investments in Defendants' … litigation," *i.e.*, litigation funding documents. Although the parties extensively met and conferred prior to the filing of this joint letter brief, Plaintiff *never* raised (let alone meaningfully met and conferred about) documents related to investments in Defendants' business; rather, Plaintiff was focused solely on litigation funding documents.

On March 26, 2024, Defendants submitted a declaration from non-party Tom Gruber in support of their motion for reconsideration of the preliminary injunction, thereby putting Plaintiff on notice that Mr. Gruber was a witness. On December 6, 2024, Plaintiff took Mr. Gruber's deposition, during which he testified, among other things, about his minor role in funding this litigation.

After the deposition, Plaintiff's counsel sent three emails to Defendants' counsel on December 7, 9, and 11, demanding that Defendants produce documents related not only to Mr. Gruber's funding of the litigation (which Defendants agreed to produce), but also as to any other litigation funders. (*See* Email Chain (Harris Decl., Ex. A).) None of these three emails mentioned anything about general business investment documents. (*Id.*) During the parties' subsequent Zoom conference calls on December 16, 17, and 18 (which spanned many hours), Plaintiff's counsel repeated their demands for all litigation funding documents—but they never asked for, or even mentioned, general business investment documents. (*See* Harris Decl. ¶ 2.)

3

**Argument:**  Because Plaintiff wholly failed to meet and confer on the issue of business investment documents, their request as to those documents should be denied.  *See* Civil L.R. 37-1 ("The Court will not entertain a request … unless counsel have previously conferred."); *Ellis v. Woodford*, 2007 WL 1033477, at *1 (N.D. Cal. April 4, 2007) ("Plaintiff's motion to compel discovery is DENIED because he failed to meet and confer with defense counsel before filing the motion."); *Myron v. Terhune*, 2008 WL 4891046, at *1 (N.D. Cal. Nov. 12, 2008) ("To the extent that Plaintiff's motions seek to compel discovery, the motions are DENIED without prejudice for failure to comply with the meet-and-confer requirement.").  As for the issue of documents related to litigation funding, Plaintiff's request fails on the merits.

First, Plaintiff's contention that Defendants were required to disclose the existence of litigation funders under Local Rule 3-15 is false.  As set forth in the "Standing Order for All Judges of the Northern District of California," a party's Rule 3-15 Certification of Interested Entities or Persons is *only* required to include litigation funders "in proposed class, collective or representative action[s]."  *See* Standing Order ¶ 17; *see also* Email Chain (Harris Decl., Ex. A) at 2 (directing Plaintiff to this Standing Order and the relevant case law.)   In individual actions such as this one, neither Local Rule 3-15 nor any other rule requires such a disclosure.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (agreeing that "neither the federal rules nor local rules require the disclosure of litigation funding agreements except in class action suits").

Second, Plaintiff's contention that Defendants were required to produce any and all documents related to litigation funding is also false.  The case law maintains that litigation funding agreements (and related documents) are generally privileged as work product.  *See Odyssey Wireless, Inc. v Samsung Elecs. Co., Ltd.*, 2016 WL 7665898, at *5 (S.D. Cal. Sept. 20, 2016) ("Although there is a dearth of case law regarding the applicability of the work-product doctrine to litigation funding documents, the district courts that have addressed this issue have found this protection applicable.").  Plaintiff has failed to cite any case law to the contrary; indeed, the cases it cites regarding privilege do not even address litigation funding documents.  *See Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1103-06 (N.D. Cal. 2016).

Moreover, even if they were not privileged, litigation funding documents are almost never relevant.  *See, e.g.*, *Space Data Corp. v. Google LLC*, 2018 WL 3054797 (N.D. Cal. June 11, 2018) (finding the relevancy of litigation funding "contestable" and the issue of "*potential* litigation funding … a side issue at best").  As one court has noted:  "Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue."  *Yousefi v. Delta Elec. Motors,* 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015).

Because they are privileged and irrelevant, litigation funding documents are "generally discoverable *only when there is 'a specific, articulated reason to suspect bias or conflicts of interest*.'"  *See NantWorks, LLC v. Niantic, Inc.*, 2022 WL 1500011, at *2 (N.D. Cal. 2022) (emphasis added).  For example, such information may be discoverable when one of the litigation funders is also a witness.  *See MLC Intell. Prop., LLC*, 2019 WL 118595, at *2 (collecting cases); *see also Yousefi,* 2015 WL 11217257, at *2 (" If … Local 46 has not merely donated funds or expertise … but has an expectation of payment if and only if plaintiff prevails,

4

evidence of that financial interest may be relevant to determining the credibility and potential bias of Local 46 *witnesses*." (emphasis added)).

Here, as Defendants have informed Plaintiff, Mr. Gruber is the only litigation funder who is also a witness. Plaintiff has been aware that Mr. Gruber is a witness since at least March 2024, when he filed a declaration in support of Defendants' motion for reconsideration of the preliminary injunction.[2] During his deposition in November, Mr. Gruber provided details and information about his (minor) involvement in the funding of the litigation, and Plaintiff had the opportunity to question him at length on the subject. Moreover, Defendants have already agreed to produce documents related to Mr. Gruber, including documents sufficient to show the nature of his investment in the litigation. Nothing more is owed or required as to Mr. Gruber.

As to any other litigation funders, Plaintiff has not provided "a specific, articulated reason to suspect bias or conflicts of interest" given that those funders are not witnesses in this case. *NantWorks, LLC*, 2022 WL 1500011, at *2. To be sure, the only argument Plaintiff offers about relevancy is that the litigation funding documents could be used to disprove a Bloomberg article stating that Mr. Ravine had planned to move to a remote cabin in France. How exactly the requested documents would do that—and why it even matters—is entirely unclear. Plaintiff's request should be denied.

**<u>Defendants' Final Proposed Compromise:</u>** Defendants have already agreed to produce documents related to Mr. Gruber's funding of this litigation. Defendants will not produce any documents related any other individuals involved in the funding of this litigation. Nor will they produce additional documents related to general business investments (an issue on which the parties never met and conferred).

Very truly yours,

| QUINN EMANUEL URQUHART & SULLIVAN, LLP | WILLENKEN LLP |
|---|---|
| */s/ Margret M. Caruso* | */s/ Jason Wilson* |
| Margret M. Caruso | Jason Wilson |
| *Counsel for Plaintiff OpenAI, Inc.* | *Counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine* |

---

[2] Given this, there was no requirement that Defendants supplement their Rule 26(a) disclosures to identify Mr. Gruber. *See* Federal Rule of Civil Procedure 26(e) (a party must only supplement their disclosure "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"); *see also Nuance Comms., Inc. v. ABBYY Software House*, 2012 WL 2838431, at *2 (N.D. Cal. July 10, 2012) ("Defendants are correct that they did not have to supplement their disclosures with respect to witnesses that had been identified earlier through the discovery process.").

5

## E-FILER'S ATTESTATION

Pursuant to Civil Local Rule 5.1(i)(3), the undersigned hereby attests that concurrence in the filing of this **JOINT LETTER** has been obtained from counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine and is electronically signed with the express permission of such counsel.

DATED: December 19, 2024       QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Margret M. Caruso*
Margret M. Caruso
Attorneys for OpenAI, Inc.