**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **OPENAI, INC.**, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> **OPEN ARTIFICIAL INTELLIGENCE, INC. AND GUY RAVINE,** <br><br> Defendants and Counterclaim Plaintiffs. | Case No.: 4:23-CV-3918-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS DEFENDANTS' SECOND AMENDED COUNTERCLAIMS** <br><br> Re: Dkt. Nos. 140, 142. |

Pending before the Court is plaintiff/counterclaim-defendant OpenAI, Inc.'s (OpenAI's) motion to dismiss Defendants' Second Amended Counterclaims to Complaint ("2ACC").[1]

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss without leave to amend.[2]

**I.    BACKGROUND**

The Court presumes the parties' familiarity with the facts of this case and recounts only those newly relevant to the instant motion.

On September 25, 2024, the Court granted in part OpenAI's motion to dismiss defendants' initial countercomplaint. The Court dismissed with leave to amend the false advertising and

---

[1] At Dkt. No. 142, counterclaim-defendants Samuel Altman and Gregory Brockman filed a motion to dismiss in which they joined OpenAI's briefing in its entirety. The Court refers to all counterclaim-defendants in the singular as "plaintiff" or "OpenAI."

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

trademark infringement claims, holding that as to the latter, the "counterclaims [were] devoid of any nonconclusory statement showing [consumer] confusion." (Dkt. No. 127 at 6.) However, the Court also held that OpenAI's arguments on distinctiveness and secondary meaning concerned "factual questions that in this case, lie at the heart of the parties' dispute" and as such were inappropriate for the motion to dismiss stage. (*Id.*) The Court thus permitted defendants to replead their trademark infringement claims "should they be able to allege actual evidence of customer confusion." (*Id.*)

As amended, the 2ACC alleges consumer confusion specifically around OpenAI's ChatGPT tool first announced on November 30, 2022. (*See* Dkt. No. 138, ¶ 119.) Defendants allege that Ravine and his company Open Artificial Intelligence have received an influx of consumer communication since that time evidencing mistaken belief that defendants' company was in fact, plaintiff. Those allegations include:

- "In the 24 hours following Counterclaim-Defendants' announcement of ChatGPT, Ravine's open.ai website experienced an approximately 1,100% increase in traffic, indicating that users wrongly believed that the domain hosted Counterclaim-Defendants' ChatGPT application." (*Id.*, ¶ 120.)
- "Ravine and Open Artificial Intelligence Inc. now routinely receive emails from users who mistakenly believe that they are associated with or connected to Counterclaim-Defendants." (*Id.*, ¶ 121.)
- "The confusion is not limited to emails. It also extends to the use of the open.ai website itself. For example, in 2023 alone, users who visited Counterclaimants' open.ai website ended up typing the words 'chatgpt' or 'chat gpt' into the prompt for the website's generative AI image tool over 6,500 times." (*Id.*, ¶ 126.)

Defendants attach as exhibits to the 2ACC several emails from apparent visitors to defendants' website complaining of products that are actually offered by plaintiff. (*See id.*, Exs. 4-11.) The theory advanced in the 2ACC is that of so-called reverse confusion, which "occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Surfvivor Media, Inc. v. Survivor Productions,* 406 F.3d 625, 630 (9th Cir. 2005).

1   The 2ACC alleges unfair competition under the Lanham Act, trademark infringement under both the Lanham Act and California common law, and seeks declaratory judgement that: defendants' own use of the "Open AI mark" does not infringe any other mark, that they are the true and rightful owners of the disputed mark, and that OpenAI's mark is impermissibly misdescriptive and therefore invalid.[3] The unfair competition and trademark infringement claims are brought against OpenAI, Altman, and Brockman; the claims for declaratory relief are brought against OpenAI.

Plaintiff moves to dismiss the trademark infringement claims under Federal Rule of Civil Procedure 12(b)(6), or, at a minimum, the claims against the individual counterclaim defendants. Plaintiff also seeks to strike certain statements in the 2ACC under Federal Rule of Civil Procedure 12(f).

## II.   LEGAL STANDARD

In evaluating a motion to dismiss, the Court accepts factual allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Motions to strike are disfavored. *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014). This Court rarely grants them. At best, the purpose of a 12(f) motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up). Whether to grant a motion to strike ultimately lies within the discretion of the district court. See *id.*

---

[3] The claims for declaratory relief were pled in the initial counterclaim complaint and survived the Court's prior order.

### III. ANALYSIS

#### A. Trademark Infringement Claims

Under both the Lanham Act and common law, "[t]o prevail on a claim of trademark infringement . . . a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Syst. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (internal cites omitted). Where a mark is descriptive, as here, a party can demonstrate protectability by showing that its mark has acquired secondary meaning, but a "plaintiff must show its mark achieved secondary meaning before a defendant first used the mark." *OpenAI, Inc. v. Open Artificial Intelligence*, 2024 WL 4763687 at *1 (9th Cir. 2024).

OpenAI argues the trademark infringement claims cannot survive for two primary reasons: one related to timing and the other to reverse confusion.

First, it argues that "a trademark infringement claim cannot arise from conduct occurring *after* the parties already have competing products." (Dkt. No. 145, Plaintiff OpenAI, Inc.'s Reply in Support of Motion to Dismiss Defendants' Second Amended Counterclaims ("Reply") at 3 (emphasis in original).) More specifically, OpenAI launched an image generator tool in September 2022, after which defendants launched one such tool of their own on November 16, 2022. It was at this point, plaintiff urges, that the parties had competing products, and the 2ACC fails to allege consumer confusion at that moment in time. Therefore, allowing a claim of infringement based on the November 30, 2022 ChatGPT rollout, plaintiff argues, would allow defendants "to select their own convenient day to determine the start of the alleged infringement after the parties' already have *competing* products." (*Id.* at 3 (emphasis in original).)

The Court disagrees. Plaintiff construes defendants' counterclaims much too narrowly.[4] The allegations are based on a theory of a company founded years prior to the launch of ChatGPT,

---

[4] Defendants also argue that because the Court already ruled that secondary meaning is a question of fact, plaintiff violates its earlier directive not to re-raise arguments already addressed in the current round of briefing. Since the details of defendants' reverse confusion claim are raised for the first time in the 2ACC, the Court does not find that plaintiff has contravened its prior order.

4

and whose use of the mark dates back to 2015. Thus, it is plausible that the infringing activity began before November 2022, even if the *consumer confusion* began at this time.

Second, OpenAI argues that the new allegations of reverse confusion necessarily mean defendants cannot establish secondary meaning. Said differently, "there could not have been 'mental association by a substantial segment of consumers and potential consumers between the alleged mark and [defendants as] a single source of the product,'" as is required to demonstrate secondary meaning. (Dkt. No. 140, Plaintiff OpenAI, Inc.'s Motion to Dismiss Defendants' Second Amended Counterclaims ("Mtn.") at 6 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985).)

Defendants respond that were plaintiff to prevail on its reverse confusion argument, no claim for reverse confusion could ever survive:
> According to Counterclaim-Defendants, the [2ACC]'s allegation that they managed to "overwhelm" Counterclaimants' trademark proves that the mark was weak and never acquired a secondary meaning worth protecting. But this same logic would apply in all reverse confusion cases (which, by definition, always involve a smaller, senior user claiming that its use of a mark was overwhelmed by a larger, junior user). Counterclaim-Defendants are therefore effectively claiming that plaintiffs who allege infringement based on reverse confusion can never establish that their marks acquired secondary meaning. This is not the law.

(Dkt. No. 143, Counterclaimants' Opposition to Motion to Dismiss Second Amended Counterclaims ("Oppo.") at 11.) They further argue that given the nature of reverse confusion claims, the proper frame of reference for ascertaining secondary meaning is not the "entire consuming public, or even a large portion of the consuming public," but rather defendants' "intended audiences, which the case law recognizes can be particularly niche." (*Id.* at 12.) In this case, defendants ask the Court to consider the relevant community that of the "nascent artificial intelligence industry." (*Id.*)

---

Relatedly, defendants urge that plaintiff's motion is untimely, and plaintiff responds with its own interpretation of the Court's mandated timelines. Again, the Court will presume good faith on the part of both parties and finds plaintiff's interpretation of the deadlines at play to be reasonable. As such, the Court will entertain the motion.

5

1    The Court agrees and will not dismiss the trademark infringement claims. Defendants present a theory of reverse confusion that is at least cognizable: Ravine started using the disputed mark in 2015, has done so continuously since that time, developed a following of regular users of his tools within a small but growing industry, and had that following largely disrupted by the introduction of a competing and aggressively promoted mark in 2022. As such, it is possible that confusion first arose upon the launch of ChatGPT because of plaintiff's aggressive marketing of its new product and an ensuing influx of new users. This would be compatible, at least in theory, with defendants' argument that prior to that, its own use of the mark had acquired secondary meaning within the smaller community of individuals using AI tools. Ravine's proffered evidence of confusion is also of the sort expressly sanctioned by the Ninth Circuit. In assessing evidence of actual confusion in the reverse confusion context, courts "may consider whether merchants and non-purchasing members of the public, as well as actual consumers, were confused." *Surfvivor*, 406 F.3d at 633. Thus, emails from the general public evidencing a mistaken belief that their interactions with defendants – the alleged senior user – were actually interactions with plaintiff – the alleged junior user – are of the sort the Court would expect to see in a complaint alleging reverse confusion.

Plaintiff argues that the 2ACC refers to the AI industry as "nascent" in 2015, and that as such, it strains credulity to argue that the industry in 2022 was still small enough to support defendants' secondary meaning arguments. Perhaps so. But given the "intensely factual nature of the secondary meaning inquiry," dismissing a claim on this basis at the motion to dismiss stage "is generally disfavored. *See P and P Imports LLC v. Johnson Enters., LLC,* 46 F.4th 953, 961 (9th Cir. 2022 (internal cites omitted).)

In short, here, two elements are necessary to plead trademark infringement – secondary meaning and likelihood of confusion.  The Court ruled previously that the first presented a fact issue best reserved for the jury, and the earlier complaint lacked the latter. Having provided substantive allegations of confusion, the claim may proceed. Whether defendants can actually garner evidence of the same is a separate issue.

**B. Claims Against the Individual Defendants**

Plaintiff argues the 2ACC fails to support any claim for personal liability against Altman and Brockman. The issue centers on the specificity of the allegations against the individuals.

The Court begins by noting that parties are correct that specific and affirmative action is needed to hold a corporate officer personally liable for trademark infringement. *See Comm. for Idaho's High Desert, Inc. v, Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996) (". . .[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf. . . . A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation.") (internal cites omitted).

Defendants summarize the factual allegations they claim satisfy their pleading requirement:

- The 2ACC claims that Altman and Brockman knew of Ravine's earlier venture and "rushed" to incorporate and publicize their own business using the contested mark. (Oppo. at 14-15.)  These allegations are raised "on information and belief."
- Ravine alleges he emailed Altman in 2015, and that this email led to a meeting between them in which Altman asked Ravine to change the name of his business. (*Id.* at 15.)
- Ravine alleges that in 2022, Altman inquired about purchasing Ravine's "open.ai domain and related IP rights." (*Id.*)
- Finally, the 2ACC claims generally that "[d]espite never purchasing the IP rights, Counterclaimants proceeded to launch ChatGPT under the OpenAI mark nine months later on November 30, 2022," and that "Altman has exercised and continues to exercise considerable influence over OpenAI, Inc., and that the Board is effectively his 'puppet.'" (*Id.* at 15-16.)

The Court finds more is needed to hold Altman and Brockman personally liable. As an initial matter, statements made "on information and belief" without additional facts are too conclusory to credit even at this early stage. Second, the general statement that Altman is influential is likewise insufficient to demonstrate affirmative participation in the alleged infringement. In short, the Court is left with allegations that Altman received an email and met with Ravine once,

7

and that he later expressed interest in purchasing Ravine's IP rights. Neither of these gives rise to a colorable allegation that Altman "authorize[d] or direct[ed]" any infringing activity. As such, the motion to dismiss the claims against Altman and Brockman is **GRANTED**.

### C. Motion to Strike

As stated above, motions to strike portions of a complaint are rarely granted and unnecessarily tax limited judicial resources.

Plaintiff identifies three subsets of statements it feels merit striking, namely allegations related to: the dropped false advertising claim, claims of misdescriptiveness which plaintiff alleges defendants added nothing to support in the 2ACC, and personal and inflammatory accusations against Altman and Brockman personally.

Plaintiff fails to show any prejudice that would result from denying the motion. As the case proceeds, defendants are admonished to adhere to the claims which have survived and avoid taxing judicial resources by including in any future motion hyperbolic or extraneous allegations that are not necessary to the resolution of the dispute. The allegations are already in the public domain. The Court will not take the rare step of striking components of the complaint simply because certain paragraphs could be interpreted as irrelevant to the remaining causes of action.

The motion to strike is **DENIED.**

### IV. CONCLUSION

For the reasons set forth above, counterclaim defendants' motion is **GRANTED IN PART AND DENIED IN PART** without further leave to amend. The Court will not dismiss the trademark infringement claim, but the claims against the individual defendants are dismissed. Moreover, the motion to strike is **DENIED**. The counterclaim shall be answered within fourteen days of this Order.

This terminates Docket Nos. 140, 142.

**IT IS SO ORDERED**.

Date: February 6, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**