**FILED UNDER SEAL**
January 22, 2024
The Honorable Alex G. Tse
District Judge of the Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re: *OpenAI, Inc. v. Open Artificial Intelligence, Inc. et al.*, Case No. 23-cv-03918-YGR

Dear Judge Tse,

    Pursuant to Individual Rule 7(b), Plaintiff OpenAI ("Plaintiff") and Defendants Open Artificial Intelligence, Inc., and Guy Ravine (collectively, "Defendants") submit this joint letter brief regarding their dispute concerning the continued deposition of Guy Ravine.

    Lead counsel for Plaintiff and Counterclaim-Defendants (Margret Caruso) met and conferred with counsel for Defendant (David Harris), along with other lawyers from their firms, via Zoom on January 16, 2025. The parties were unable to resolve their dispute.

**Plaintiff OpenAI's Statement**

Plaintiff OpenAI requests that Defendant Guy Ravine continue his deposition for an additional 2.5 hours due to Ravine's obstreperous behavior at his continued deposition. *See generally* Ex. A (Ravine 1/15/25 Tr.).[1] This Court granted Plaintiff OpenAI an additional 2.5 hours to depose Ravine after the first day of his deposition, and stated that "OpenAI may renew its request to compel" if "Ravine unreasonably refuses to answer" questions on various topics identified by OpenAI. *See* Dkt. 176. He did.

A "court must allow additional time … if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1); *see also, e.g.*, *Highlander Holdings, Inc. v. Fellner*, 2020 WL 3498174, at *6 (S.D. Cal. June 29, 2020) (granting additional deposition time where defendant "impeded the examination repeatedly," including by "refus[ing] to answer simple questions"); *Johnson v. Couturier*, 261 F.R.D. 188, 190 (E.D. Cal. 2009) (granting six additional hours for deposition where the "deponent took extensive time to purview each document as it was submitted to him notwithstanding that the question to be asked often did not require extensive review" and "the sheer number of 'I don't recall' responses, and the like, stretched the limits of credulity"); *see also Robinson v. De Niro*, 2022 WL 274677, at *3 (S.D.N.Y. Jan. 26, 2022) (granting five additional hours of deposition time where "Plaintiff was uncooperative in her refusal to answer [] certain questions that sought information that is clearly relevant, not privileged, nor overly broad or unduly burdensome"). Indeed, a "court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Independently, good cause exists for additional deposition time when parties need "additional time for full exploration of the theories upon which the witness relies" or where "new information [came] to light triggering questions that the discovering party would not have thought to ask at the first deposition." *See, e.g.*, *C.R. by & through Roe v. Elk Grove Unified Sch. Dist.*, 2024 WL 3890080, at *2 (E.D. Cal. Aug. 21, 2024). Courts liberally grant sufficient time to fairly examine a deponent who is a key witness. *See JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 WL 1338152, at *6 (N.D. Cal. Apr. 5, 2010) (granting additional time for deposition where deponent was a "key witness"); *see also Smith Grybowski v. Hewlett-Packard Co.*, 2015 WL 9294572, at *2 (D. Nev. Dec. 21, 2015) (granting additional time for deposition where deponent "is an important witness and possesses information relevant to each of Plaintiffs' claims"); *Securities and Exchange Comm. v. Aqua Vie Beverage Corp.*, 2006 WL 2457525, at *4 (D. Idaho Aug. 23, 2006) (witness' role as "important player" in litigation justified additional time for his deposition).

Ravine's behavior impeded a fair examination. Within the first five minutes of the deposition, he claimed his repeated failures to answer a follow-up question about his testimony were because he was "not in the mindset of a deposition." *See* Ex. A at 5:10-7:13. When asked to explain positions he took in his own counterclaims, Ravine refused to answer on the basis that it would be speculative to say what his own belief was. *See id.* at 23:1-25:19. He repeatedly refused to answer questions about an email his counsel produced that identified Ravine as the

---

[1] Plaintiff OpenAI's referenced exhibits are attached to the Declaration of Dylan I. Scher.

sender unless the questioning attorney would represent that Ravine actually sent the email. *See id.* at 48:2-20. He continuously demanded proof of where he had previously said something, even when simply being asked about his current understanding. *Id. at* 5:14-6:12, 23:1-8, 46:12-47:2; 86:15-87:14. He interrupted and argued with counsel. *See id.* at 21:25-22:2, 31:3-20, 70:6-11, 87:15-88:22. He refused to answer questions that he claimed required an "expert" opinion. *See, e.g., id.* 22:6-25:19 (whether he though OpenAI was misdescriptive, as he alleged); 81:21-82:2 (whether he was concerned the alliance he proposed with Meta and Google and Amazon called "Open AI Alliance" would create confusion with his products and services"). He did this even when asked to explain what his own testimony meant. *See id.* at 59:23-60:8 ("A. … your client was encroaching on our market. Q: How was OpenAI, Inc. encroaching on your market? A. How was it encroaching -- I mean -- … I don't know. I'm not an expert [].") ; *id.* at 63:14-65:6.

He gave answers that were meaningless without follow-up, such as, when asked about the functionality of his own product, "What? No. I don't know, probably not." Ex. A at 65:10. He repeatedly changed his testimony as the day went on. *E.g., compare id.* at 31:16-24, 33:11-19 (testifying he used DALL-E) *with* 57:12-13 ("I don't remember when I used DALL-E and how I reached it and if I used DALL-E."). And he repeatedly extended his responses with gratuitous attacks. *See, e.g., id.* at 27:4-11, 69:22-70:3. Questioning counsel took multiple breaks following the expressed hopes that Ravine's conduct would improve. *See id.* at 7:11-25, 41:4-43:8, 48:2-25. But even after the breaks, Mr. Ravine continued to waste time. *See, e.g., id.* at 49:5-50:19.

Ravine evaded questioning on 30(b)(6) topics, unduly extending the time required to question about them and preventing other topics from even being reached. For example, Ravine was unable to answer questions about Defendants' awareness of Plaintiff's goods and services. *See* Ex. B (Notice) at 8 (Topic 11); Ex. A at 49:20-57:2. He needed a break to come up with the answer to who was the target user of his products. Ex. A at 41:4-43:12. As the primary source of virtually all facts relating to Defendants' knowledge, Ravine should have to answer questions about other topics that he has been designated on, including the mechanics of signing up for any of Defendants' goods and services, facts supporting Defendants' claim that it has been damaged, confusion he was aware of, and efforts to obtain "Open AI"-formative domains and handles, as well as topics he improperly claimed privilege over (such as the duration of open.ai redirecting to openai.com). *See* Ex. B at 8-9 (Topics 7, 12, 15, 21, 24).

Ravine's deposition should also be continued so that he can be questioned about new information. After the deposition concluded, Defendants produced a privilege log disclosing for the first time that Ravine had had communications with PR agents and third parties who did not submit declarations in this case. *See* Ex. C (privilege log). This was surprising because Ravine had not identified any of these individuals when answering to whom he had spoken about the lawsuit. *See* Ex. D (Ravine 12/10/24 Tr.) at 55:4-57:3. Before the service of the privilege log, there was no indication that Ravine ever sought a declaration for this lawsuit from those third parties (LeCun, Tallin, and Brynjolfsson). Nor had the names of the PR agents (Sitrick and Kelkar) been mentioned at all. Production of those documents is now the subject of meet and confer efforts, but, at a minimum, Ravine should have to testify concerning non-privileged information about these communications, which may contain significant admissions or otherwise affect his claims for damages or injunctive relief.

**Plaintiff's Final Proposed Compromise:** Ravine should be instructed to answer questions responsively and without arguing with deposing counsel for 2.5 hours. Ravine is seeking to enjoin Plaintiff from using a name it has used over the past nine years and is now known around the world by. Given that he apparently gave a Bloomberg reporter more than 14 hours of his time (which was, presumably, far more cooperatively spent), *see* Ex. E (Bloomberg Article) at 6, this is not a disproportionate request.

## Defendants' Statements

Defendant Ravine has now sat for **10 hours** of testimony over two deposition sessions.[2] Plaintiff seeks an additional 2.5 hours of testimony without identifying any new, non-duplicative topics it intends to cover or explaining why it was unable to previously address those topics. *See Barajas v. Abbott Labs., Inc.*, 2018 WL 6248550, at *5 (N.D. Cal. Nov. 29, 2018) (the movant "does not identify any subject matter that it did not have the opportunity to cover. It is not enough . . . to simply assert that it requires more time."). Plaintiff's purported justifications for requesting additional time fail and reveal that the real motivation for a third deposition session is to ask the same questions and harass Ravine until he provides the exact soundbites Plaintiff desires to support a summary judgment motion.

*First*, Ravine's behavior did not impede a fair examination. Ravine invites the Court to review the transcript of the second deposition. Ex. 1. The proof is clear: Ravine repeatedly provided substantive answers.[3] Just a few examples: He testified as to when he first started using Open AI (early 2015). *Id.* at 5:10-13. Ravine answered that he chose Open AI because he liked the name. *Id.* at 5:14-18. When counsel asked why Ravine thought Open AI was an appropriate name he answered: "So, to me Open AI meant that there were lots of different possibilities." *Id.* at 19:3-9. Ravine flatly disagreed with Plaintiff's attempt to paint Open AI as a descriptive name. *Id.* at 20:25-21:6. He also provided a detailed explanation of the market for the goods and services of his mark. *Id.* at 43:22-44:10. In sum, Ravine provided answers to issues at the core of this lawsuit. In fact, Ravine answered 1461 questions over the course of his two deposition sessions (at least 450 in the second session). Declaration of Jason Wilson ¶¶ 2-4. And he answered those questions without a single speaking objection from counsel. *Id.* at ¶ 3 & *e.g.*, Ex 1 at 64:20, 81:25 (counsel only said "Objection, form"). The real issue here is that Ravine did not provide answers that were helpful to Plaintiff's quest for summary judgment—a quest that Plaintiff's counsel has alluded to in meet-and-confer sessions. *See* Wilson Decl. ¶ 5. For example, Ravine's answers on the meaning of "Open AI" refute Plaintiff's theory of the case that his mark is descriptive. In any event, Plaintiff's effort to elicit a case-ending soundbite is particularly inappropriate here because the Ninth Circuit has recognized that summary judgment is not appropriate for trademark cases. *Marketquest Group, Inc v. BIC Corp*, 862 F3d 927, 932 (9th Cir 2017) , ("We are mindful that

---

[2] [redacted]

[3] Plaintiff's case citations are inapposite. Plaintiff does not cite to any specific questions Ravine refused to answer unlike in *Highlander Holdings, Inc. v. Fellner*, 2020 WL 3498174, at *6 (S.D. Cal. June 29, 2020) or *Robinson v. De Niro*, 2022 WL 274677, at *3 (S.D.N.Y. Jan. 26, 2022). And unlike *Johnson v. Couturier*, Plaintiff does not claim Ravine took extensive time to review any documents during the deposition. 261 F.R.D. 188, 190 (E.D. Cal. 2009).

summary judgment is generally disfavored in the trademark arena due to the intensely factual nature of trademark disputes.") (cleaned up).

Further, any inefficiencies of the last deposition are the result of Plaintiff's, not Ravine's, conduct. For example, Plaintiff's counsel repeatedly refused to allow Ravine to review documents before asking him questions. *See e.g.* Ex. 1 at 50:3-24; 51:2-52:7. She then insisted that they move on to a new topic before he had read the document. *Id.* Plaintiff's counsel also cut off Ravine's responses and repeatedly interrupted him. *See e.g.* Ex. 1 at 53:10-19; 58:7-15; 72:20-73:6. Plaintiff's counsel repeatedly asked questions that evoked speculation and were equivalent to a memory test of thousands of pages of documents produced dating back many years (*see e.g.* Ex. 1 at 47:9-18 (asking about awareness as of 2019 without showing a document first). *See Corcoran v. CVS Health*, 2016 WL 11565649, at *3 (N.D. Cal. Dec. 9, 2016), *on reconsideration*, 2016 WL 11565647 (N.D. Cal. Dec. 13, 2016) ("Rule 30(b)(6) . . . does not require that the witness memorize large quantities of specific details."). Plaintiff's counsel, not Ravine, proffered that the parties take breaks. *See e.g.* Ex. 1 at 43:2-8; 48:22-49:1; 79:5. Further, while Plaintiff asserts Ravine should be ordered to answer questions about topics 7, 12, 15, 21, and 24, Plaintiff fails to identify any questions on these topics that were asked or that Ravine refused to answer. Plaintiff should not be given a third bite at the apple because it chose not to question Ravine on these topics during the first or second session of his deposition.

**Second**, it is not true that Plaintiff was unable to question Ravine on additional topics because of Ravine's evasiveness. Ravine responded to questions and Plaintiff fails to identify a single evasive response. Plaintiff argues (1) Ravine was unable to answer questions about his awareness of GPT-2, Codex, and DALL-E (citing Ex. A at 49:2-57:2); and (2) needed a break to answer questions about the targeted users of his products (citing Ex. A at 41:4-43:12)[4]. Both examples are taken out of context and mischaracterize Ravine's testimony. First, Plaintiff provided responses about his awareness of OpenAI's GPT-2 and Plaintiff does not cite to any specific evasive responses. Ravine explained he was not aware of OpenAI's GPT-2 product as of May 16, 2019 because at that point there was no product, it was only a concept. Ex. 1 at 47:3-8; 49:20-22. Similarly, he explained the email's reference to GPT-2 was likely about a research paper but he was not aware GPT-2 was a real product offered by OpenAI. *Id.* at 51:8-16. Ravine also answered questions and explained he is not aware of Plaintiff's product called Codex. *Id.* at 51:22-24. He also explained that although he had received an email dated August 10, 2021 from OpenAI, he does not remember if he ever subscribed to receive emails from OpenAI. *Id.* at 52:18-53:19. Plaintiff does not explain how these responses are evasive. Ravine also responded to questions about DALL-E. *Id.* at 53:23-57:2. He explained that he does not remember signing up for the DALL-E beta (*id.* at 55:19-23) and does not remember when he first used DALL-E (*id.* at 55:24-25). Ravine explained that he had been working on an image generator and had a beta version around the same time or before that July 2022 DALL-E email. *Id.* at 56:14-20. Plaintiff does not explain why these responses are evasive. Second, it is not true that Ravine needed a break to identify target consumers of his products. Before the break he testified that his target consumers

---

[4] Plaintiff's evidence accounts for approximately 14 minutes of testimony. Plaintiff does not explain why 14 minutes was a disproportionate amount of time to spend on the topics or why purported evasiveness resulting in 14 minutes of testimony prevented Plaintiff from questioning Ravine on other topics in the remaining two hours and 16 minutes of available deposition time.

initially consisted of AI researchers and later expanded to ordinary consumers including internet users. *Id.* at 41:25-42:11. Ravine suggested he needed to think more about the exact date and reason for his market expansion. Plaintiff's counsel suggested a break, not Ravine. *Id.* at 43:7-8. Plaintiff does not contend that Ravine evaded additional questions after the break. Nor does Plaintiff explain why it is relevant that a break was taken off the record.

*Third*, there was no new evidence produced after Ravine's deposition. Plaintiff argues it needs to question Ravine about "new information" purportedly divulged for the first time in Defendants' privilege log. First, the privilege log only contains entries for documents withheld *after* litigation commenced. Ravine was under no obligation to produce a log for entries that post-date commencement of the litigation, much less produce it before his deposition. *See Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, No. 19-CV-01356-VC (TSH), 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021) (citing various cases in the Ninth Circuit). Further, the privilege log contains no "new information" that merits further deposition time. Consultants, whose communications with Ravine were logged, were hired by Defendants' counsel, as detailed in the privilege log. Accordingly, all of Defendants' subsequent communications with him—regardless of whether any counsel were on such communications—are privileged materials and Ravine cannot be questioned on this subject. Fed. R. Civ. P. 26(b)(3). As for the "third parties who did not submit declarations in this case" (*viz.*, Yann LeCun, Jaan Tallinn, and Erik Brynjolfsson), contrary to Plaintiff's characterization, these individuals were not disclosed "for the first time" in the privilege log. Rather, their identity, as well as their involvement with Mr. Ravine's AI Initiative, have been known to Plaintiff for nearly eight months. Defendants' Counterclaims, filed on May 24, 2024, specifically name LeCun, Tallinn, and Byrnjolfsson among the "notable figures" with whom Mr. Ravine discussed his AI project and describe in detail communications and interactions with the individuals. Ex. 2 (Dkt. 103) at ¶¶ 41, 46, 48, 63–65.

Plaintiff has long been aware of the relevance of these third parties.[5] Plaintiff's discovery requests specifically asked for communications with LeCun and Tallinn. Ex. 3 (Supplemental Response to RFPs 66 and 67). Since Defendants' first production, Defendants have produced numerous communications with LeCun, Tallinn, and Brynjolfsson. *See, e.g.*, RAVINE0004204, RAVINE0004183–4. The fact that a small number of communications were conducted at the direction of counsel and, thus, subject to attorney work-product, does not merit additional deposition time. Plaintiff's present insistence that the inclusion of these names in Defendants' log posed any sort of surprise can only be taken as disingenuous. Plaintiff could have questioned Mr. Ravine on these matters at his prior depositions, but chose not to. Plaintiff cannot use its own omission to fabricate an excuse to further depose Mr. Ravine.

**Defendants' Final Proposed Compromise:** Ravine should not be required to sit for any further depositions.

---

[5] Plaintiff's counsel's thorough discovery efforts have been amply demonstrated in the instant case, including by Plaintiff's recent argument that documents relating to Defendants' litigation funding was "necessary" to rebut Defendants' anticipated testimony that he is planning to "move to France and live in a remote cabin." Dkt. 163 at 2.

Very truly yours,

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | WILLENKEN LLP |
| | |
| */s/ Margret M. Caruso* | */s/ Jason Wilson* |
| Margret M. Caruso | Jason Wilson |
| *Counsel for Plaintiff OpenAI, Inc.* | *Counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine* |

## E-FILER'S ATTESTATION

Pursuant to Civil Local Rule 5.1(i)(3), the undersigned hereby attests that concurrence in the filing of this **JOINT LETTER** has been obtained from counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine and is electronically signed with the express permission of such counsel.

DATED: January 23, 2025           QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Margret M. Caruso*
Margret M. Caruso
Attorneys for OpenAI, Inc.