QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
 bobfeldman@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
 margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000

Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Aaron H. Perahia (Bar No. 304554)
 aaronperahia@quinnemanuel.com
865 S. Figueroa St., 10th Fl.
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

Sam S. Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone:     (415) 875-6600

Dylan I. Scher (*pro hac vice*)
 dylanscher@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

*Attorneys for Plaintiff OpenAI, Inc.*

WILLENKEN LLP
Jason H. Wilson (Bar No. 140269)
 jwilson@willenken.com
Ashley L. Kirk (Bar No. 291012)
 akirk@willenken.com
David S. Harris (Bar No. 255557)
 dharris@willenken.com
Breanna N. Brewer (Bar No. 312269)
 bbrewer@willenken.com
Michelle K. Millard (Bar No. 298245)
 mmillard@willenken.com
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:     (213) 955-9250

*Attorneys for Defendants Open Artificial Intelligence, Inc. and Guy Ravine*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENAI, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation; and GUY RAVINE, an individual,<br><br>　　　　　Defendants. | Case No. 4:23-cv-03918-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date:　　March 17, 2025<br>Time:　　2:00 p.m.<br>Place:　　Zoom Videoconference<br><br>Action Filed:　　August 4, 2023 |

**JOINT CASE MANAGEMENT STATEMENT**

Counsel for Plaintiff OpenAI, Inc. ("OpenAI" or "Plaintiff") and counsel for Defendants Open Artificial Intelligence, Inc., and Guy Ravine (together, "Defendants") hereby jointly submit this Case Management Statement pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9 and the Standing Order for All Judges in the Northern District of California.

**I.    JURISDICTION AND SERVICE**

The parties' position that jurisdiction and venue are proper have not changed. All Defendants have been served.

**II.    FACTS**

**A.    Plaintiff's Statement**

Plaintiff brought this lawsuit to stop Defendants from making confusing uses of "Open AI" and open.ai, which leads consumers, the public, and business associates into mistakenly believing that Defendants have any connection to, association with, or sponsorship by OpenAI.

Discovery has confirmed that OpenAI has valid trademark rights in its name. OpenAI's continuous use of the "OpenAI" mark in connection with research, code, APIs, and other products and services, consumers' use and purchase of those products and services, and the renown it has generated, leave no doubt that a substantial segment of the relevant consumers associated the OpenAI mark with a single source of goods and services and that it developed a national reputation before Defendants introduced their infringing products beginning in November 2022. In contrast, Defendants have been unable to prove bona fide use in commerce of their virtually identical name, "Open AI," at any time before November 2022, much less sufficient recognition and use to establish trademark rights. Unsurprisingly, Defendants' use of "Open AI" as a trademark for the artificial intelligence products they offered beginning on November 16, 2022, caused significant confusion. As a result, OpenAI is entitled to prevail on its infringement claims, and lacking any senior trademark rights, Defendants' counterclaims all fail.

Discovery also confirmed that laches and/or other equitable defenses would bar any relief Defendants might otherwise be entitled to given Guy Ravine's knowledge of Plaintiff's use of

1  OpenAI going back to 2015, his communications with OpenAI's CEO and President in which he
2  never challenged OpenAI's use, and his admission of being aware of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
3       Discovery also revealed that Defendants' sole damages theory is based on a reasonable
4  royalty theory—as set forth in the six-page report Defendants' damages expert submitted.
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
15      Further, discovery confirmed that Defendants' registration on the Supplemental Register
16 was based on a specimen that did not reflect genuine use in commerce; what was presented to the
17 USPTO as user-generated content was cut and pasted by an agent of Defendants. Defendants'
18 resulting registration should be cancelled because the USPTO would regard such manufactured
19 specimens as fraudulent.
20     **B.**    **Defendants' Statement**
21      This is a simple reverse confusion trademark case. Plaintiff, a large company with far more
22 resources than Defendants, seeks to accomplish through litigation what it has been attempting since
23 2015: the forced acquisition of a valuable trademark from a smaller competitor who used the name
24 "Open AI" long before Plaintiff's company was formed or adopted the name "OpenAI." Since
25 December 2015, Plaintiff has been "playing a medium-term game" to acquire the open.ai domain
26 and force Defendants to change their name. In February 2022, long before filing this case, Sam
27 Altman emailed Guy Ravine about "acquiring the open.ai domain name and related IP rights." Since
28 2016, Plaintiff has also repeatedly tried (and failed) to register a trademark for "OpenAI" with the

USPTO, who rejected the applications based on a likelihood of confusion with Defendants' senior trademark. In August 2023, after eight years of failing to obtain senior trademark rights from Defendants or the USPTO, Plaintiff brought this lawsuit.

The evidence shows that Defendants have senior rights to the trademark "Open AI." Defendants began using the "Open AI" trademark in March of 2015, well before Plaintiff's formation or adoption of the name "OpenAI" in December 2015. Fact witnesses, including Deborah Reynolds, Nikita Gaer, Tom Gruber, Mattia Iavarone, Rachel Park, and Guy Ravine will testify at trial that Defendants have continuously used the "Open AI" trademark since March 2015. Further, expert Luke Tenery, has analyzed forensic data from logs, databases, and other files that confirm the existence and availability of Defendants' products from April 2015 through March 2024. And Sam Malek, Ph.D., has analyzed Defendants' products and will testify about the utility and innovation of those products, as well as the developmental effort involved in creating them. Further, Gregory Brockman, a founder of Plaintiff, admitted that he visited Defendants' open.ai domain in December 2015, and then again after he received a March 2017 email from Chris Clark, Plaintiff's COO, about Guy Ravine's "OpenAI" trademark. Plaintiff's 30(b)(6) witness Rebecca McCurry also visited Defendants' open.ai domain various times after December 2021. Despite Plaintiff's claims that Defendants did not make *bona fide* use of the mark and merely redirected visitors of open.ai to Plaintiff's website, in August of 2022, Ms. McCurry visited decentralized.open.ai, which was active and functioning and was not redirected to Plaintiff's website.

Evidence also demonstrates that Defendants' "Open AI" trademark is suggestive. Robert A. Leonard, Ph.D., Defendants' linguistics expert, conducted a linguistic analysis and found that the specialized meaning(s) in the computer/technology field of "Open AI" do not describe the products/services provided by Defendants.

If the Court finds that Plaintiff's "OpenAI" trademark is descriptive, then Plaintiff must prove its trademark acquired secondary meaning before Defendants' first use of its "Open AI" trademark. But evidence, including a report by Larry Chiagouris, Ph.D. (Defendants' marketing and branding expert) shows Plaintiff's "OpenAI trademark did not acquire secondary meaning before August 4, 2023. Further, Plaintiff's October 2023 and May 2024 internal brand awareness and

perception surveys show that OpenAI had not achieved high levels of brand awareness as of May 2024 (with only 2% of respondents associating OpenAI with AI products, tools, and companies as of October 2023 and 4% as of May 2024). In fact, even amongst the small number of respondents who had heard of ChatGPT, a majority of respondents (75% in October 2023 and 65% in May of 2024) responded that they did not know who owned Plaintiff's most popular product, ChatGPT, or believed Plaintiff's competitors owned it. Because Defendants' first use of their "Open AI" trademark was before Plaintiff's trademark had acquired secondary meaning, Defendants have a complete defense to Plaintiff's trademark infringement claim.

Plaintiff knows that its internal surveys are devastating, so it now proffers a theory previously undisclosed before the fact discovery cutoff that its "OpenAI" trademark acquired secondary meaning within a narrower AI community within a year of its founding. Yet, Plaintiff's Complaint and other filings repeatedly alleged the name "OpenAI" had achieved widespread recognition by the general public and not just the AI community. Plaintiff's likelihood of confusion similarly focused on the general public, not the AI community, and even screened out respondents who work in artificial intelligence. Notably, Plaintiff has intentionally chosen not to conduct a secondary meaning survey of the "OpenAI" trademark within either the general public or a narrower audience consisting of the technical AI community.

Finally, there is evidence regarding the appropriate damages attributable to infringement that should be awarded to Defendants. Specifically, Defendants' damages expert, Alan G. Goedde, Ph.D., who has testified in over 70 cases, calculated damages that are attributable to infringement based upon a reasonable royalty rate that he applied to Plaintiff's actual and estimated revenue from the beginning of the state of reverse confusion (11/30/2022) to the scheduled trial date (10/13/2025).

## III.   LEGAL ISSUES

The case involves the following disputed points of law: (1) which of the parties has valid trademark rights; (2) the respective seniority of the parties' uses of their marks; (3) whether the parties' marks are descriptive or suggestive; (4) whether either side's acts constitute trademark infringement; (5) whether as a result of Defendants' submission of an allegedly fraudulent specimen in connection with their application for trademark registration they are subject to civil liability under

1  15 U.S.C. § 1120 and/or cancellation of the resulting registration on the Supplemental Register
2  under 15 U.S.C. § 1119; (6) whether any party is entitled to damages and/or injunctive relief to
3  prevent irreparable harm; (7) whether Plaintiff is entitled to the transfer of Defendants' open.ai
4  domain to Plaintiff; and (8) whether any party's remedies are barred by any defense, such as laches,
5  waiver, estoppel, prior use, and/or acquiescence.

6  **IV.    MOTIONS**

7    *Preliminary Injunction.*  On February 28, 2024, the Court granted OpenAI's Motion for a
8  Preliminary Injunction, enjoining Defendants' use of the "Open AI" mark.  Dkt. 63.  The Court
9  denied Defendants' motion to alter or amend the judgment under. Dkt. 95.  Defendants appealed the
10 injunction, and the Ninth Circuit affirmed it.  *OpenAI, Inc. v. Open Artificial Intelligence, Inc.*, No.
11 24-1963, Dkt. No. 47.1, 2024 WL 4763687 (9th Cir. Nov. 13, 2024).

12   *Motions to Dismiss.*  Defendants filed counterclaims for trademark infringement under the
13 Lanham Act, California law, and common law.  Plaintiff's motion to dismiss was granted in part,
14 with leave to amend. Dkt. 127.  Defendants filed amended counterclaims, which Plaintiff and
15 counterclaim defendants, Greg Brockman and Sam Altman, moved to dismiss. Dkts. 138, 140, 142.
16 The Court granted OpenAI's motion to dismiss in part, and dismissed counterclaim defendants,
17 Greg Brockman and Sam Altman.  Dkt. 191. The Court, however, denied OpenAI's motion to
18 dismiss Defendants' trademark infringement claims as against OpenAI and denied OpenAI's motion
19 to strike. *Id.*

20   *Discovery motions*.  The parties filed several motions related to fact discovery, all of which
21 have now been resolved.  *See* Dkt. 155, Dkts. 175, Dkt. 181, Dkt. 186.  On December 3, 2024,
22 Magistrate Judge Alex G. Tse denied Plaintiff's request for a protective order to prevent the
23 depositions of five nonparty witnesses who were not disclosed in Defendants' initial disclosures.
24 Dkt. 155.  On January 6, 2025, Magistrate Judge Tse ordered Defendant Guy Ravine to testify for
25 an additional 2.5 hours. Dkt. 176.  On January 8, 2025, the Magistrate Judge Tse ordered Defendants
26 to produce documents related to investment and litigation funding from Tom Gruber, but rejected
27 OpenAI's demand that Defendants produce documents disclosing the identities of other investors
28 and potential investors or other litigation funders. Dkt. 177.  On January 24, 2025, Magistrate Judge

1  Tse ordered OpenAI to produce additional documents, including communications relating to its
2  brand-awareness surveys, cover emails related to Corsearch reports, and documents relating to
3  inappropriate content associated with OpenAI's mark (e.g., racist or pornographic content). Dkt.
4  186.  On February 12, 2025, Magistrate Judge Tse, again, ordered Guy Ravine to be deposed an
5  additional 2.5 hours.  Dkt. 196.  Expert discovery is scheduled to end by March 13, 2025, but the
6  parties have stipulated to taking certain expert deposition after the cutoff to be completed by March
7  21, 2025.

*Anticipated motions*.  Plaintiff intends to seek permission to move for summary judgment on its claims and Defendants' counterclaims.  Defendants intend to seek permission to move for a narrow partial summary judgment on the scope of remedies.  Plaintiff also intends to file *Daubert* motions with respect to at least some of Defendants' six experts.  Defendants intend to file *Daubert* motions with respect to certain of Plaintiff's seven experts.

Although the current schedule assumes *Daubert* motions will be heard at the same time as summary judgment motions, Plaintiff suggested, and Defendants do not oppose, that the deadline for hearing *Daubert* motions be extended to coincide with the motion *in limine* deadlines. Plaintiff believes this change in the schedule would avoid filing overlapping summary judgment and *Daubert* motions and the Court's ruling on summary judgment may well moot *Daubert* motions on a considerable number of the 13 expert witnesses in this case.  If, however, either party contends that opinions of more than three of their experts remain relevant after the Court's ruling on summary judgment, Plaintiff requests guidance on the Court's preferred mechanism for considering more than the three *Daubert* motions generally allowed per side. Defendants intend to follow the Court's limitations as to the number of *Daubert* motions permitted per side and do not believe that number should be exceeded.

**V.     AMENDMENT OF PLEADINGS**

OpenAI has until March 13, 2023 to amend its answer as of right, and it may do so.

**VI.    EVIDENCE PRESERVATION**

The parties previously stated that they have reviewed the Court's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), that counsel for the parties met

and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action, and that counsel for the parties have given their respective clients document retention instructions for all categories of all potentially relevant documents, including electronically stored information. Dkt. 41 (10/20/2023 Case Management Statement).

## VII.  DISCLOSURES

The parties exchanged initial disclosures.

## VIII.  DISCOVERY

### A.  Prior and Future Discovery

The parties have completed non-expert discovery, and expert discovery will be complete by March 13, 2025, except for the depositions of four experts the parties have stipulated to depose or finish deposing later that week.

### B.  Proposed Discovery Limits and Stipulations

The protective order in this case was signed. Dkt. 98.

## IX.  CLASS ACTIONS

Not applicable.

## X.  RELATED CASES

Not applicable.

## XI.  RELIEF

OpenAI seeks to convert the preliminary injunctive relief that the Court has granted (Dkt. 63) into a permanent injunction. OpenAI also seeks an order cancelling Defendants' "Open AI" registration on the Supplemental Register and transferring Defendants' https://open.ai domain name to OpenAI, as well as nominal monetary damages, interest, attorneys' fees, and costs.

Defendants request an order permanently enjoining Plaintiff's use of the junior "OpenAI" mark. Defendants also request declaratory judgment confirming that Open Artificial Intelligence is the rightful owner of the "Open AI" mark, that Defendants have not infringed any purported trademark rights of Plaintiff, and that Plaintiff does not have any valid trademark rights in the infringing "OpenAI" mark. Further, Defendants seek compensatory and consequential damages,

disgorgement of profits, statutory damages, a reasonable royalty, and punitive and exemplary damages, as well as interest, attorneys' fees, and costs.

## XII. SETTLEMENT AND ADR

The parties participated in mediation with Hon. S. James Otero (Ret.) on July 9, 2024. The parties are working on finding a date for a possible mediation with a different private mediator.

## XIII. OTHER REFERENCES

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

The parties have not agreed to narrow any issues at this time. Because Defendants present a reverse confusion theory and Plaintiff presents a forward confusion theory, Defendants believe that consumer confusion is an issue on which the parties should be able to agree upon by stipulation. Based on Defendants' reverse confusion theory, Plaintiff proposed that Defendants agree to jointly state at this time that "[t]he parties agree that as of at least November 30, 2022, consumers were likely to believe that Defendants' 'Open AI' branded products and services originated from and/or were associated with or sponsored by Plaintiff OpenAI." However, Defendants did not so agree.

## XV. EXPEDITED SCHEDULE

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

## XVI. SCHEDULING

The current remaining schedule is set forth below. However, Plaintiff proposes, and Defendants do not oppose, that due to intervening personal conflicts the deadlines for summary judgment briefing and hearing be pushed back one week so that the hearing deadline for motions for summary judgment will be June 17, 2025, and that, as set forth in Section IV (anticipated motions), the deadlines for *Daubert* briefing and hearings will conform to those for motions in limine:

| Event | Current Date | Proposed Date |
|---|---|---|
| Expert Discovery Cutoff | Thursday, March 13, 2025 | |
| Deadline to File Dispositive Motions | Wednesday, April 2, 2025 | Wednesday, April 9, 2025 |
| Deadline for Responses to Dispositive Motions | Thursday, April 24, 2025 | Thursday, May 1, 2025 |
| Deadline for Replies to Dispositive Motions | Thursday, May 8, 2025 | Thursday, May 15, 2025 |
| Dispositive Motions/ *Daubert* Motions to be Heard By | Tuesday, June 10, 2025 | Tuesday, June 17, 2025 (Dispositive Motions only) |
| Exchange of Exhibits and Pretrial Filings By | Thursday, July 17, 2025 | |
| Joint Pretrial Conference Statement | Friday, September 12, 2025 | |
| Compliance Deadline | Friday, September 19, 2025 | |
| Pretrial conference | Friday, September 26, 2025 | |
| Trial | Monday, October 13, 2025 | Tuesday, October 14, 2025 (October 13 is a court holiday) |

## XVII. TRIAL

OpenAI has requested a jury trial on all claims so triable as a matter of right. OpenAI expects this entire case to be resolved on summary judgment. If the case goes to trial with all disclosed experts, OpenAI currently anticipates that the trial will require five to six days. Plaintiff proposes that time limits should be assessed after the Court rules on summary judgment.

Defendants have also requested a jury trial on all claims so triable. Defendants propose a time limit of 14 hours per side.

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

All parties have filed disclosures pursuant to Civil Local Rule 3-15. Dkts. 3, 10. OpenAI again certifies that there is no financial or non-financial interest in the subject matter in controversy for OpenAI to report. Defendants restate Open Artificial Intelligence's certification that there is no

financial or non-financial interest in the subject matter in controversy for Open Artificial Intelligence to report.

Plaintiff notes that Defendant's witness Tom Gruber invested in one of Ravine's companies and signed an agreement with Ravine to invest in the "monetization" of his "Open AI" trademark. Plaintiff also notes that Gruber then signed a declaration in this case in March 2024 without disclosing his investment, and that Defendants listed Gruber as a witness without disclosing his investment in their amended Rule 26 disclosures.

## XIX. PROFESSIONAL CONDUCT

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XX. OTHER

The parties are unaware of other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

DATED: March 10, 2025

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

  */s/ Margret M. Caruso*

Margret M. Caruso
Counsel for Plaintiff OpenAI, Inc.

DATED: March 10, 2025

WILLENKEN LLP

  */s/ Jason Wilson*

Jason Wilson
Counsel for Defendants Open Artificial Intelligence, Inc. and Guy Ravine

**CIVIL LOCAL RULE 5-1 ATTESTATION**

I, Margret M. Caruso, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Jason Wilson concurred in the filing of this document.

DATED: March 10, 2025                    */s/ Margret M. Caruso*
                                          Margret M. Caruso

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:

HON. YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE