

707 Wilshire Blvd.
Suite 4100
Los Angeles, CA 90017

TEL 213.955.9240
FAX 213.955.9250

willenken.com

**VIA CM/ECF FILING**

March 14, 2025

The Honorable Yvonne Gonzalez Rogers
United States District Judge
Northern District of California
Oakland Courthouse
Courtroom 1 - 4th Floor
1301 Clay Street
Oakland, California 94612

    Re:    *OpenAI Inc. v. Open Artificial Intelligence, Inc. et al.*, Case No. 23-cv-03918-YGR

Your Honor:

Defendants Open Artificial Intelligence, Inc. and Guy Ravine ("Defendants") respectfully submit this opposition to Plaintiff OpenAI, Inc.'s ("Plaintiff") request for leave to move for summary judgment. As the Court is aware, "[s]ummary judgment is generally disfavored in the trademark arena." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quotations omitted). This case is not the exception. To be sure, each of the causes of action identified by Plaintiff involves countless disputed factual issues that cannot be decided without weighing the evidence and credibility of witnesses. The case must therefore go to the jury.

### I.    PLAINTIFF'S CLAIMS

First, Plaintiff claims that it is entitled to summary judgment on its infringement claims because it is supposedly undisputed that it owns a valid protectable mark. But nothing could be further from the truth. The evidence shows that *Defendants* were the first to use the "Open AI" mark. Indeed, multiple fact witnesses have testified that Defendants began using the mark in *March 2015* (*i.e.*, nine months before Plaintiff announced its existence) and thereafter continued to use the mark in connection with its AI-related tools and software. Indeed, at least two of Plaintiff's high-ranking employees have *admitted* at deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And expert forensic analysis and testimony have confirmed that Defendants' tools and software were online and actively being used between April 2015 and March 2024. Plaintiff also claims that "there can be no reasonable dispute" that the "OpenAI" mark has come to be associated with Plaintiff and thereby acquired secondary meaning, but it failed to conduct an expert survey for this case and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Given this record, there is no way for Plaintiff to establish that it owns the mark on summary judgment.

Second, Plaintiff claims that it is entitled to summary judgment on its claim for cancellation of Defendants' registration on the Supplemental Register because Defendants supposedly provided a "fraudulent" specimen. However, Defendants dispute that the specimen is problematic given



that the evidence (including witness testimony and expert analysis) has established that the mark was being used at the time the specimen was submitted.

## II. DEFENDANTS' COUNTERCLAIMS

First, Plaintiff claims that Defendants' counterclaims fail because they cannot establish senior trademark rights. In making this argument, Plaintiff does not dispute that Defendants were the first to adopt the "Open AI" mark; nor could Plaintiff make such an argument given that the evidence shows that Defendants registered the open.ai domain name and placed the "Open AI" mark on their website nearly nine *months* before Plaintiff even announced its formation. Instead, Plaintiff more narrowly argues that Defendants cannot show "bona fide use in the ordinary course of trade" prior to 2022 because they supposedly "abandoned" the mark after Guy Ravine met with Greg Brockman in 2015. As with most issues in trademark cases, "[e]valuating whether a use is in 'the ordinary course of trade' is often an intensely factual undertaking," and generally not amendable to summary judgment. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 940 (9th Cir. 2006). This is true here. Defendants dispute that they did not use the mark in the ordinary course of trade (for the reasons above) and further dispute that they somehow "abandoned" the mark after meeting with Brockman. In fact, the evidence shows that ███████████████████████████████████████████████████████████ These are not the words of individuals who believed Defendants had abandoned the mark.

Second, Plaintiff claims that Defendants cannot establish that their mark acquired secondary meaning. But Defendants do not need to establish secondary meaning to prevail on their counterclaims; instead, they can prevail by showing that the "Open AI" mark is suggestive (as opposed to descriptive). There is ample evidence to support this. Indeed, Plaintiff's own expert witness—Michael Mitzenmacher—opined in his initial report and at deposition ███████████████████████████████████ Defendants' expert, Robert A. Leonard, similarly opined that the mark "Open AI" does not describe Defendants' products and is therefore suggestive. Regardless, whether the mark is descriptive or suggestive is (like all the other issues identified by Plaintiff) ultimately a fact question for the jury. *See, e.g., Fortune Dynamics, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010) ("we think a jury should assess the conceptual strength of [the] mark in the first instance").

Third, Plaintiff claims that it has "trademark-specific defenses" to Defendants' counterclaims. But these defenses are fact-based and there is ample evidence to refute them. For example, Plaintiff claims that "there is no evidence that could support a finding that Defendants acquired rights before the release of OpenAI's first products in April 2016." This is not true. As discussed above, the evidence shows that Defendants began using the mark in connection with their open.ai domain name in *March 2015* and thereafter continued to use the mark in connection with a series of software tools related to the development of artificial intelligence. (There is also evidence—including ███████████████—showing that ███████████████████████████████████████████████████ In the alternative, Plaintiff contends



that, even if Defendants acquired trademark rights in certain "market segments," they did not acquire such rights in connection with "generative AI-related products" prior to Plaintiff's launch of its image generator. According to Plaintiff, this means that it has superior rights to use the mark in this particular market segment. But all of these facts are disputed too. To be sure, Defendants dispute that "generative AI-related products" are a separate market segment, that Plaintiff launched such a product "years prior" to November 2022, and that Plaintiffs were the first to launch such a product. Regardless, Defendants' trademark rights are not limited to directly competing goods; rather, their rights extend to goods that are in the proximity of and related to their products. *See, e.g., Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008). Here, the evidence shows that Plaintiff's generative AI-related products are related to Defendants' AI-related collaboration tools—and, as the senior user, Defendants therefore have the right to prevent Plaintiff from using a confusingly similar mark.

Fourth, Plaintiff claims that Defendants' counterclaims are barred by laches. "Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." *In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002) (internal quotations omitted). Even if laches were appropriate to apply on summary judgment, it would not apply here. Under the doctrine of "progressive encroachment," a trademark owner is not obligated to bring suit until the "junior user redirects or expands its business into different regions or markets bringing it into direct competition with the trademark owner." *Sal Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1114 (N.D. Cal. 2008). Here, the evidence shows that, for most of its existence, Plaintiff ███████████████ ███████████████ (whereas Defendants were involved in pursing the development of AI-related tools and software). It was not until sometime ███████████████ ███████████████ Defendants were not legally obligated to sue a non-profit research organization that was not deploying any software applications or tools—and they did not unreasonably delay once that organization began shifting from research papers to product launches. Moreover, Plaintiff cannot establish any prejudice to support a claim of laches given that ███████████ ███████████████

Fifth, Plaintiff claims that Defendants' do not have evidence of damages. This is false. Defendants' expert, Dr. Alan Goedde, has opined on the reasonable royalty rate that should be used as the basis for calculating damages in this case. *See, e.g., Adidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at * (D. Or. Sept 12, 2008) (reasonable royalty rate appropriate where, among other things, it was consistent with "royalties between third parties"). Regardless, even if Defendants did not have evidence of damages (which they do), they would still be entitled to proceed to trial on their counterclaims for, at a minimum, nominal damages and injunctive relief—just like Plaintiff is doing. Summary judgment is inappropriate.

Respectfully submitted,

WILLENKEN LLP

/s/ *Jason H. Wilson*
Jason H. Wilson
Counsel for Defendants Open Artificial
Intelligence, Inc. and Guy Ravine
