# EXHIBIT 7

**Brewer Declaration ISO Defendants' Opposition to Plaintiff's Motion for Summary Judgment**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                     OAKLAND DIVISION
 4    OPENAI, INC., a Delaware
      corporation,
 5                 Plaintiff,
            vs.
 6    OPEN ARTIFICIAL INTELLIGENCE,
      INC., a Delaware corporation;   Case No.
 7    and GUY RAVINE, an individual,  4:23-cv-03918-YGR
 8                 Defendants.
      _____/
 9    OPEN ARTIFICIAL INTELLIGENCE,
      INC., a Delaware corporation;
10    and GUY RAVINE, an individual,
11         Counterclaimants,
            vs.
12    OPENAI, INC., a Delaware
      corporation; SAMUEL ALTMAN,
13    an individual; and GREGORY
      BROCKMAN, an individual,
14         Counterclaim-Defendants.
      _____/
15    AND RELATED COUNTERCLAIMS.
      _____/
16         -- CONFIDENTIAL - ATTORNEYS' EYES ONLY --
17
18      VIDEO-RECORDED Federal Rule 30(b)(6) DEPOSITION OF
19         OPENAI, INC., BY REBECCA MCCURRY, ESQ.
20               Remote Zoom Proceedings
21             Redwood Shores, California
22              Friday, December 6, 2024
23    REPORTED BY:
24    LESLIE ROCKWOOD ROSAS, RPR, CSR 3462
25    Pages 1 - 145                    Job No. 7055674

                                            Page 1
```

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3                        OAKLAND DIVISION
 4
     OPENAI, INC., a Delaware
 5   corporation,
                     Plaintiff,
 6           vs.
     OPEN ARTIFICIAL INTELLIGENCE,
 7   INC., a Delaware corporation;   Case No.
 8   and GUY RAVINE, an individual,  4:23-cv-03918-YGR
                  Defendants.
 9   _____/
     OPEN ARTIFICIAL INTELLIGENCE,
10   INC., a Delaware corporation;
11   and GUY RAVINE, an individual,
         Counterclaimants,
12           vs.
     OPENAI, INC., a Delaware
13   corporation; SAMUEL ALTMAN,
     an individual; and GREGORY
14   BROCKMAN, an individual,
         Counterclaim-Defendants.
15   _____/
     AND RELATED COUNTERCLAIMS.
16   _____/
17           -- CONFIDENTIAL, ATTORNEYS' EYES ONLY --
18           Video-recorded Federal Rule 30(b)(6) deposition
19   of OPENAI, INC., BY REBECCA MCCURRY, ESQ., taken on
20   behalf of Defendants and Counterclaimants, Remote Zoom
21   Proceedings from Redwood Shores, California, beginning at
22   9:25 a.m. Pacific Standard Time and ending at 3:16 p.m.
23   Pacific Standard Time, on Friday, December 6, 2024,
24   before Leslie Rockwood Rosas, RPR, Certified Shorthand
25   Reporter No. 3462.
```

Page 2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    APPEARANCES:

2

3    FOR OPENAI, INC.:

4         QUINN EMANUEL URQUHART & SULLIVAN LLP

5         BY: MARGRET M. CARUSO, ESQ.

6         555 Twin Dolphin Drive, 5th Floor

7         Redwood Shores, California 94065-2139

8         (650) 801-5000

9         margretcaruso@quinnemanuel.com

10            -and-

11        BY: AARON H. PERAHIA, ESQ.

12        865 South Figueroa Street, 10th Floor

13        Los Angeles, California 90017-2543

14        (213) 443-3000

15        aaronperahia@quinnemanuel.com

16

17   FOR OPEN ARTIFICIAL INTELLIGENCE, INC., and GUY RAVINE:

18        WILLENKEN LLP

19        BY: ASHLEY L. KIRK, ESQ.

20            BREEANNA N. BREWER, ESQ.

21        707 Wilshire Boulevard, Suite 4100

22        Los Angeles, California 90017

23        (213) 955-9240

24        akirk@willenken.com

25        bbrewer@willenken.com
```

Page 3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES (Continued):

 2

 3    FOR OPEN ARTIFICIAL INTELLIGENCE, INC., and GUY RAVINE:

 4         HALEY GUILIANO LLP

 5         BY: JOSHUA MASUR, ESQ.

 6         111 North Market Street, Suite 900

 7         San Jose, California 95113

 8         (669) 213-1056

 9         joshua.masur@hglaw.com

10             -and-

11         ARLENBACH LEGAL

12         BY: SPENCER GUSICK, ESQ.

13         315 Montgomery Street, Suite 1000

14         San Francisco, California 94104

15         (415) 994-7996

16         sg@arlenbach.com

17

18

19    Also Present:

20         Soseh Kevorkian, Videographer

21

22

23

24

25

                                                Page 4
```

5

1                     I N D E X

2

3      Friday, December 6, 2024

4

5      WITNESS                              EXAMINATION

6

7      OPENAI, INC., BY REBECCA MCCURRY, ESQ.

8

9         BY MS. KIRK                          11

10        BY MS. CARUSO                        139

11

12

13

14          QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

15                    PAGE          LINE

16                     53            12

17                     90            12

18

19

20

21

22

23

24

25

Page 5

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          Redwood Shores, California; Friday, December 6, 2024

 2                   9:25 a.m. Pacific Standard Time

 3                           PROCEEDINGS

 4

 5                           --oOo--                        09:24:44

 6          THE VIDEOGRAPHER:  Good morning.  We are going

 7     on the record at 9:25 a.m. on December 6, 2024.

 8          Please note this deposition is being conducted

 9     virtually.  Quality of recording depends on the quality

10     of the camera and internet connection of participants.  09:25:16

11     What is seen from the witness and heard on screen is what

12     will be recorded.

13          Audio and video recording will continue to take

14     place unless all parties agree to go off the record.

15          This is Media Unit 1 of the video-recorded        09:25:29

16     deposition of Rebecca McCurry, taken by counsel for

17     Defendant and Counterclaimants, in the matter of OpenAI,

18     Incorporated, versus Open Artificial Intelligence

19     Incorporated, et al., and related counterclaims, filed in

20     the United States District Court, Northern District of    09:25:49

21     California.  Case Number 4:23-cv-03918-YGR.

22          My name is Soseh Kevorkian representing

23     Veritext.  I'm the videographer.  Our court reporter is

24     Leslie Rosas also from the firm Veritext.

25          At this time would counsel and all present       09:26:09
```

Page 9

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    please state your appearances and affiliations for the

 2    record, and we'll begin with the noticing attorney.

 3           MS. KIRK:  This is Ashley Kirk on behalf of Open

 4    Artificial Intelligence, Inc., and Guy Ravine.  From

 5    Willenken LLP.  Sorry.                              09:26:27

 6           MR. MASUR:  And Joshua Masur from Haley Guiliano

 7    LLP, also representing the Defendants.

 8           MS. BREWER:  Breeanna Brewer from Willenken,

 9    also representing the Defendants.

10           MS. CARUSO:  Margret Caruso from Quinn Emanuel  09:26:44

11    Urquhart & Sullivan LLP, representing Plaintiff OpenAI,

12    Inc.

13           THE VIDEOGRAPHER:  Thanks.

14           When you're ready, Leslie.

15           THE REPORTER:  Thank you.                     09:27:06

16           If you would raise your right hand, please,

17    Ms. McCurry.  Thank you.

18           You do solemnly state and affirm that you will

19    tell the truth, the whole truth, and nothing but the

20    truth?                                              09:27:08

21           THE WITNESS:  Yes, I do.

22           THE REPORTER:  Thank you.

23           You may proceed, Counsel.

24    ///

25    ///                                                 09:27:12
```

Page 10

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   BY MS. KIRK:   So what kind of services do you

2    provide to OpenAI as a trademark attorney?

3              MS. CARUSO:   Objection.   Beyond the scope.

4              And the witness should not answer in a way that

5    divulges attorney-client communications.            10:16:33

6              THE WITNESS:   We assist with their trademark

7    applications, registrations, maintenance.   We also -- my

8    firm also has -- it handles their enforcement work.

9      Q.   BY MS. KIRK:   And you say "enforcement."   What

10   type of enforcement work do you do?                 10:17:00

11     A.   We are -- my firm focuses on the trademark

12   registries, the watch services that we receive when an

13   application is published or is filed from various

14   trademark offices.

15     Q.   Okay.   And so -- so we just went through like   10:17:19

16   the watch services like conversation, and I didn't get

17   like from our discussion a whole lot of enforcement.

18             So -- and forgive me.   I'm not -- I'm not a

19   trademark lawyer.   But by "enforcement," do you mean like

20   opposition proceedings?                             10:17:44

21     A.   Yes.

22     Q.   Okay.   And do you mean cancellation proceedings?

23     A.   Yes.   I don't know if we filed a cancellation

24   proceeding.   Sorry.   But that would, yes, fall under the

25   registry work.                                      10:18:04

Page 38

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            MS. CARUSO:  Objection.  Vague.  Beyond the

 2       scope.

 3            And I instruct the witness not to answer to the

 4       extent it discloses attorney-client communications.

 5            THE WITNESS:  Yes, I have.                    10:19:55

 6       Q.  BY MS. KIRK:  Do you know if your firm has

 7       produced any documents related to trademark acquisitions

 8       in this litigation?

 9       A.  I don't believe we have.

10            MS. KIRK:  Okay.                              10:20:31

11            Can we go off the record.

12            MS. CARUSO:  Sure.

13            THE VIDEOGRAPHER:  We're going off the record at

14       10:20 a.m.

15            (Recess.)                                     10:26:05

16            (Mr. Spencer Gusick joined the deposition.)

17            THE VIDEOGRAPHER:  We are on the record at

18       10:30 a.m., and this is the beginning of Media 3 in the

19       deposition of Rebecca McCurry.

20       Q.  BY MS. KIRK:  So Ms. McCurry, you stated that    10:30:27

21       you began your representation of OpenAI in December of

22       2021; is that correct?

23       A.  Yes.

24       Q.  So do you know who was representing OpenAI in

25       their trademark matters from 2015 to 2021?           10:30:42
```

Page 40

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1         A.  I -- I don't know that entire time period.  The

2    firm that transferred us the work was Goodwin Procter in

3    2021, December of 2021.

4         Q.  Are you familiar with the trademark prosecution

5    from 2015 to 2021?                                    10:31:08

6         MS. CARUSO:  Objection.  Vague.

7         THE WITNESS:  I have reviewed the file wrapper

8    for the -- sorry, I think it was the 2016 application

9    that was filed.

10        Q.  BY MS. KIRK:  Are you familiar with any other    10:31:41

11   work that Goodwin Procter did on behalf of OpenAI between

12   2015 and 2021?

13        MS. CARUSO:  Objection.  Compound question, but

14   assumes facts not in evidence.

15        THE WITNESS:  Yes.                                10:31:57

16        Q.  BY MS. KIRK:  And so other than the application

17   in 2016, what other materials did you review?

18        MS. CARUSO:  Objection.  Vague and -- vague as

19   to time and potentially calls for attorney-client

20   privileged information.                               10:32:22

21        MS. KIRK:  So Margret, I believe she's the

22   designated witness for the period of time -- the

23   corporate witness for 2015 to 20 -- or to the present.

24        So, I mean, if you want to stand on

25   attorney-client privilege for your 30(b)(6) witness, it's    10:32:40

                                                          Page 41

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   right.  I'll reask the question.
 2       Q.  Are you familiar with any trademark searches
 3   that were done on behalf of OpenAI between January 1st,
 4   2016, and December of 2021?
 5       A.  No.                                    10:34:35
 6           MS. CARUSO:  Can you repeat the question,
 7   please.
 8           MS. KIRK:  Yes.
 9           Can the court reporter read it back for me.
10           My memory's not that good, Margret, so...  10:34:42
11           MS. CARUSO:  You know what?  It's fine.  We can
12   move on.
13       Q.  BY MS. KIRK:  Do you know if any trademark
14   searches were performed on OpenAI's behalf from
15   January 1st, 2016, to December of 2021?          10:34:58
16       A.  Yes.  There were no trademark searches performed
17   that I'm aware of.
18       Q.  Okay.  So there were two responses there, and I
19   just want to make sure that I'm clear on them.
20           The first response was you said there was no --  10:35:19
21   there were no trademark searches.
22           Did I hear that correctly?
23       A.  That's correct.
24       Q.  And then you said -- the second part was "that
25   I'm aware of."                                   10:35:31
```

Page 43

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          MS. CARUSO:  Objection.  Beyond the scope.

2     Vague.

3          THE WITNESS:  I believe it is, but I would have

4     to look at the specific wording to confirm.

5          Q.  BY MS. KIRK:  Okay.  So when was ChatGPT          11:02:12

6     released?

7          MS. CARUSO:  Objection.  Beyond the scope.

8     Vague.

9          THE WITNESS:  ChatGPT was released on

10    November 30th of 2022.                                    11:02:34

11         MS. KIRK:  Okay.  My apologies.  We're like --

12    I'm like asking questions and reorganizing my outline at

13    the same time.

14         We're on Exhibit 49.  I know I forgot one so I

15    just want to...                                           11:04:35

16         THE REPORTER:  Yes, we're on Exhibit 49.

17         MS. KIRK:  All right.  Perfect.  Thank you.

18         (Exhibit 49, Trademark/Service Mark Application,

19          Principal Register, OpenAI, Inc., 01/26/22, was

20          marked for identification by counsel               11:04:39

21          electronically.)

22         Q.  BY MS. KIRK:  So do you see the exhibit,

23    Ms. McCurry?

24         A.  Yes.

25         Q.  And if you scroll down a little bit, I believe   11:05:46

Page 60

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    it is page 4 that has your name; is that correct?

2        A.  Yes, my name is in the attorney information

3    section.

4        Q.  Okay.  And if I'm looking at this correctly,

5    this is an application for the trademark OpenAI; is that    11:06:22

6    correct?

7        A.  Yes, that's correct.

8        Q.  And can you tell me what class of goods and

9    services you filed the trademark OpenAI in?

10       A.  Yes.  This was in classes 9 and class 42.    11:06:47

11       Q.  Okay.  And what exactly is class 9?

12       A.  Class 9 --

13           MS. CARUSO:  Objection.  Beyond the scope.

14   Vague.

15           THE WITNESS:  Class 9 covers a wide -- very wide    11:07:05

16   variety of goods.  Sorry, there's a lot that could be

17   covered.  Downloadable software --

18       Q.  BY MS. KIRK:  Okay.

19       A.  -- is one of them.

20       Q.  And I believe under the class 9, it has    11:07:29

21   identification of goods and services.

22           Am I reading that correctly?

23       A.  Yes.

24       Q.  And can you read for the record what

25   identification of goods and services are?    11:07:40

Page 61

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              (Reporter clarification.)

 2          THE WITNESS:  I'm sorry, 1(a) as in April.

 3      Q.  BY MS. KIRK:  And what is meant by Section 1(a)

 4  filing basis?

 5      A.  It means that the mark is in use in commerce.    11:09:40

 6      Q.  Okay.  And so underneath that --

 7          MS. CARUSO:  I'm sorry to interrupt.  I just

 8  want to make sure the record is clear as to what that

 9  answer was.  Because the real-time is showing, "It means

10  that the mark isn't in use in commerce."                 11:09:57

11          THE REPORTER:  Can you clarify, please.

12          MS. KIRK:  Okay.  I'll reask the question.

13      Q.  What is meant by a Section 1(a) filing basis?

14      A.  A Section 1A filing basis is for a mark that is

15  in use in commerce.                                      11:10:27

16      Q.  Okay.

17      Q.  And so underneath the filing date, filing basis,

18  there is a box that says "First Use Anywhere Date."

19          Did I read that correctly?

20      A.  Yes, that's correct.                             11:10:46

21      Q.  And what is the "First Use Anywhere Date" for

22  the trademark application?

23      A.  For class 9, it is at least as early as

24  April 27th, 2016.

25      Q.  Okay.  And then it says "First Use in Commerce   11:11:05
```

Page 63

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Date."   What is a "First Use in Commerce Date"?

2        A.  It says, "At least as early of April 7th, 2016."

3        Q.  And so what is the difference between the first

4    use anywhere date and the first use in commerce date?

5        A.  They are the same in this application.        11:11:26

6        Q.  Okay.  But why are -- why are there different --

7    different designations or different identifications that

8    you have to make with a trademark application?

9            MS. CARUSO:  Objection.  Beyond the scope.

10   Calls for speculation.                                 11:11:42

11           THE WITNESS:  There is a variety of situations.

12   I believe that State trademark use could clarify as an

13   earlier first use anywhere date, but it's -- so this is

14   the Federal first use in commerce date.

15       Q.  BY MS. KIRK:  Okay.  So is the first use in      11:12:06

16   commerce date the first use in interstate commerce?

17       A.  Correct.

18       Q.  Okay.  And so this application states that the

19   goods and services, downloadable computer programs and

20   downloadable computer software using artificial          11:12:29

21   intelligence for natural language processing, generation,

22   understanding, and analysis has a first use date of

23   April 27, 2016; is that correct?

24       A.  That is somewhat incorrect.  That is the first

25   use date for class 9.                                    11:12:50

                                                      Page 64

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   Okay.  So it is not the first use date for all

 2   of the goods and services?

 3        A.   Correct.

 4        Q.   Okay.  Can you identify which of these goods and

 5   services has a first use date of April 27th, 2016?          11:13:05

 6        A.   Yes.  If you go to page -- I'm scrolling down.

 7   The miscellaneous statement.  The first use date for this

 8   class 9 applies to "downloadable computer programs and

 9   downloadable computer software for artificial

10   intelligence, namely, computer software for developing,    11:13:30

11   running, and analyzing algorithms that are able to learn,

12   to analyze, classify, and take actions in response to

13   exposure to data, and downloadable computer software for

14   simulation environments for the purpose of testing

15   artificial intelligence agents, algorithms, or programs."   11:13:47

16        Q.   Okay.  So the April 27th, 2016 date applies only

17   to downloadable computer programs and downloadable

18   computer software for artificial intelligence, namely,

19   computer software for developing, running, analyzing

20   algorithms that are able to learn to analyze, classify,     11:14:15

21   and take action in response to exposure to data; is that

22   correct?

23             MS. CARUSO:  Objection.  Mischaracterizes the

24   record.

25             MS. KIRK:  I think I read the record verbatim,    11:14:28
```

Page 65

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.  So did you submit a specimen of use for all of

2   the goods and services or just particular goods and

3   services?

4      A.  Just particular goods and services, I believe.

5      Q.  Okay.  And do those specimens of use reflect the        11:16:47

6   specimens as of the first-use date?

7      A.  No.  They would have been pulled concurrently

8   with the application.

9      Q.  Okay.  So it's typical when you file an

10  application for trademark registration to pull the            11:17:07

11  specimen from whatever the current application is at the

12  time?

13          MS. CARUSO:  Objection.  Beyond the scope.

14  Calls for expert opinion.

15          THE WITNESS:  Yes, generally.                          11:17:22

16      MS. KIRK:  Okay.  So again.

17      (Exhibit 50, Webpage, OpenAI, 01/24/22, was

18      marked for identification by counsel

19      electronically.)

20          MS. KIRK:  I'd like to introduce Exhibit Number        11:18:21

21  50.  If you could take a look, please.

22          THE WITNESS:  Okay.

23      Q.  BY MS. KIRK:  Do you recognize this document,

24  Ms. McCurry?

25      A.  Yes.                                                   11:18:39

Page 67

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        Q.  And to your recollection, what is this document?

2        A.  This appears to be the specimen that we -- one

3    of the specimens that we submitted in connection with the

4    OpenAI application in January of 2022.

5        Q.  Okay.  And I don't know if you can see this.        11:19:00

6    It's a little small on my screen, but I think that this

7    particular application is something called "gym."  Is

8    that correct?

9            MS. CARUSO:  Objection.  Vague.

10           THE WITNESS:  I'm sorry, can you repeat the        11:19:17

11   question?

12       Q.  BY MS. KIRK:  I believe this particular

13   application is for a product at OpenAI called "gym."  Is

14   that correct?

15           MS. CARUSO:  Objection.  Vague as to the meaning   11:19:29

16   of application.

17           THE WITNESS:  The exhibit I'm seeing is not

18   specific to gym.

19       Q.  BY MS. KIRK:  It's not specific to gym.  Okay.

20           So in this first box, I believe the first box in  11:19:48

21   the repository, it has "gym," and then under "Pinned," it

22   has "gym"; is that correct?

23       A.  Yes, that's correct.

24       Q.  Okay.  And do you know what "gym" is?

25       A.  Yes.                                               11:20:07

Page 68

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.  Can you describe "gym"?

2      A.  Gym is an open source tool for developing, and

3  it says here basically like, you know, reinforcing

4  learning algorithms.

5      Q.  Do you recall what date gym was introduced?      11:20:42

6      A.  I believe it was introduced on April 27th, 2016.

7      Q.  So is gym the basis for the first-use allegation

8  in the application for trademark?

9          MS. CARUSO:  Objection.  Vague.  Asked and

10  answered.                                               11:21:18

11          THE WITNESS:  I believe so, yes.

12      Q.  BY MS. KIRK:  Okay.  And if you could -- I mean,

13  it's really, really hard to see.  So if you could scroll

14  all the way down, there's a download date here from

15  GitHub.                                                 11:22:06

16          Do you see that?

17          MS. CARUSO:  Counsel, do you have numbered

18  versions of these exhibits?  The local rules require that

19  the exhibits have page numbers on them.

20          MS. KIRK:  I don't know.  I downloaded them from  11:22:23

21  the USPTO.

22          MS. CARUSO:  Right.  So then...

23          MS. KIRK:  The record -- the record itself or

24  the production copies of the record were illegible.  You

25  couldn't see them, so...                                11:22:38

Page 69

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MS. CARUSO:  When that's the case, then you need
 2      to apply the number to them before using them as exhibits
 3      in depositions.  But maybe that can be done going
 4      forward.
 5              MS. KIRK:  Okay, well, we can take a break, and     11:22:54
 6      I can have my staff do that if you would like, Margret,
 7      but I can also just ask questions about this particular
 8      exhibit, and then we can do that at a break.  I kind of
 9      want to get through this.
10              MS. CARUSO:  Sure, sure.                            11:23:11
11         Q.  BY MS. KIRK:  Okay.  All right.
12              So if you scroll down.  Can you scroll down to
13      this second page.  And can you read that date for me?
14              MS. CARUSO:  Objection.  Vague.
15              THE WITNESS:  The -- the -- the date in the         11:23:25
16      stamp from -- is January 24th of 2022.
17         Q.  BY MS. KIRK:  Okay.  And so that January 24,
18      2022 date, would that have been the date that you
19      downloaded this specimen?
20         A.  Yes.                                                 11:23:48
21         Q.  Okay.
22         A.  Or my -- or a paralegal or somebody.
23         Q.  And so after you downloaded this specimen on
24      January 24th, 2022, then you submitted it as a specimen
25      of use in the OpenAI trademark application; is that       11:24:02
```

Page 70

CONFIDENTIAL - ATTORNEYS' EYES ONLY

 1    correct?

 2        A.  Yes.

 3        Q.  Okay.  And you submitted this particular

 4    specimen that was downloaded on January 24th, 2022, as a

 5    specimen of use for a first-use date of April 27th, 2016;    11:24:22

 6    is that correct?

 7        A.  Yes.

 8        Q.  Is this how gym was displayed or offered for

 9    sale in April 27th, 2016?

10            MS. CARUSO:  Objection.  Vague.                     11:24:45

11            THE WITNESS:  I don't know.

12        Q.  BY MS. KIRK:  So you don't know if gym was

13    offered for sale by OpenAI in this particular format on

14    April 27th, 2016?

15            MS. CARUSO:  Objection.  Vague.                     11:25:05

16            THE WITNESS:  I do know it was available and on

17    GitHub, but I don't -- yeah.

18        Q.  BY MS. KIRK:  You don't know if it was in this

19    format?

20            MS. CARUSO:  Objection.  Vague.                     11:25:20

21            THE WITNESS:  I don't know, but...

22            MS. KIRK:  All right.  I think we can take a

23    break, and I'll make sure to number all of those

24    exhibits, Margret.

25            MS. CARUSO:  Thank you.                             11:25:30

                                                        Page 71

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                THE VIDEOGRAPHER:  We're going off the record at

 2     11:25 a.m.

 3                (Recess.)

 4                THE VIDEOGRAPHER:  We are on the record at

 5     12:10 p.m., and this is the beginning of Media 4 in the      12:10:48

 6     deposition of Rebecca McCurry.

 7                MS. KIRK:  Hi, Ms. McCurry.  My apologies for

 8     the delay.  I'm going to share with you.

 9                (Exhibit 51, Trademark Application Nonfinal

10                Office Action for OpenAI Mark, 02/23/23, was      12:10:59

11                marked for identification by counsel

12                electronically.)

13                MS. KIRK:  Let me know when you can see that

14     exhibit.

15                THE WITNESS:  Exhibit 51?                         12:11:40

16        Q.  BY MS. KIRK:  Yes.

17                Can you see it?  Is it up on your Exhibit Share?

18        A.  Yes.

19        Q.  Okay.  And so Ms. McCurry, do you recognize this

20     particular document?                                        12:12:02

21        A.  Yes.

22        Q.  And can you describe this document, please?

23        A.  Yes.  This is an Initial Office Action from an

24     examining attorney on February 23rd, 2023.

25        Q.  Is this the initial --                               12:12:25
```

Page 72

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.  Oh, I'm sorry.  It's not.  This is the -- well,

2    it is -- it is a Preliminary Office Action from

3    February 23, 2023.

4    Q.  And by "Preliminary," what do you mean by

5    "Preliminary"?                                    12:12:43

6    A.  Just nonfinal.

7    Q.  Okay.  And what's the difference between Final

8    and Nonfinal?

9    A.  A Nonfinal Office Action, you have an

10   opportunity to respond to the examining attorney.  And   12:12:54

11   then the Final Office Action is where the examining

12   attorney is maintaining their objection.  You do still

13   have an opportunity to convince them to change their

14   mind, but another option is to file an appeal with the

15   Trademark Trial and Appeal Board.                 12:13:14

16   Q.  Okay.  And so was this the first Nonfinal Office

17   Action in this particular trademark matter?

18   A.  On this application?

19   Q.  Yes.

20   A.  No.                                           12:13:31

21   Q.  So there was a previous Office Action for this

22   particular trademark application?

23   A.  Yes.

24   Q.  Okay.  And if you scroll down a little bit, do

25   you see the heading on page 2 where it says Section 2(d),   12:13:45

Page 73

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    "Refusal, Likelihood of Confusion"?

2        A.   Yes.

3        Q.   And so what is the basis for that likelihood of

4    confusion rejection?

5        A.   The examining attorney is citing Registration    12:14:06

6    5258002.

7        Q.   So -- and so registration 5258002, that is the

8    trademark registration of Mr. Guy Ravine; correct?

9        A.   Yes, I believe.  I don't recall the entity.  I

10   think it's changed.    12:14:30

11       Q.   Okay.  And so was this the first time that you

12   learned of US Registration Number 5258002?

13       A.   No.

14       Q.   When was the first time you learned of

15   Registration Number 5258002?    12:14:49

16       A.   I learned of this registration in December of

17   2021, I believe, when we first began representing.

18       Q.   And what were the facts and circumstances around

19   how you learned of Registration Number 5258002?

20       A.   I learned of it during a preliminary clearance    12:15:19

21   search on -- for the OpenAI mark.

22       Q.   And do you have any records or reports of that

23   clearance search that you ran in December of 2021 on US

24   Registration Number 5258002?

25           MS. CARUSO:  Objection.  Vague.    12:15:45

                                                    Page 74

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            THE WITNESS:  I'm sorry, can you rephrase the

 2    question or restate it?

 3        Q.  BY MS. KIRK:  Yes.

 4            So do you have any records regarding the

 5    preliminary clearance search that you performed on the      12:15:58

 6    OpenAI mark in December 2021?

 7            MS. CARUSO:  I caution the witness not to

 8    disclose attorney-client communications, but you can

 9    answer this question "yes" or "no."

10            THE WITNESS:  Yes, I do.                             12:16:15

11        Q.  BY MS. KIRK:  And do you know if any record of

12    that clearance search has been produced in this

13    litigation?

14        A.  I do not know all of the documents that have

15    been produced.                                              12:16:27

16        Q.  Has Pirkey Barber provided that clearance search

17    for production?

18        A.  No.

19            MS. CARUSO:  Objection.  Vague.

20        Q.  BY MS. KIRK:  Okay.  So if you scroll down a        12:16:48

21    little bit further -- my apologies.  I have the wrong

22    Office Action.  We'll move on from this.

23            So you mentioned earlier that this was not the

24    first Nonfinal Office Action that you had received for US

25    Application Serial Number 97238896 for the OpenAI mark;     12:17:43
```

Page 75

1    is that correct?

2        A.   Correct, yes.

3        Q.   And what was the basis for the rejection in the

4    previous Office Action for US Application Serial Number

5    97238896 for the OpenAI mark?                          12:18:00

6        A.   The examining attorney's objection in the first

7    Office Action was an objection based on descriptiveness.

8    Mere descriptiveness, I believe.  I don't know if any

9    other issues were raised.  I could recall if you show me

10   the document.  I just don't remember if there were any    12:18:22

11   like ID issues or something like that as well.

12       Q.   Okay.  So you said mere descriptiveness.  What

13   did -- strike that.

14            You said mere descriptiveness.  What did the

15   examining attorney mean by the phrase "mere             12:18:40

16   descriptiveness"?

17            MS. CARUSO:  Objection.  Calls for speculation.

18            THE WITNESS:  An examining attorney is alleging

19   mere descriptiveness that the -- the -- the trademark

20   describes a feature or function, something about the    12:18:58

21   goods or services that are in the application.

22       Q.   BY MS. KIRK:  So what did the examining attorney

23   for US Application Serial Number 97238896 for the mark

24   OpenAI describe as the basis for the mere descriptiveness

25   rejection?                                              12:19:21

                                                            Page 76

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.  The -- I would have to pull up the exact

 2   wording, but the examining attorney alleged that "open"

 3   was shorthand for "open source" and that "AI" was an

 4   abbreviation for "artificial intelligence," and that

 5   accordingly, OpenAI was merely descriptive of the          12:19:43

 6   software and software services in our application, in

 7   OpenAI's application.

 8        Q.  And did you respond to that rejection?

 9        A.  We did, yes.

10        Q.  And what was your response to that rejection?     12:20:00

11        A.  We responded asserting that we disagreed with

12   the examining attorney's findings, but in the

13   alternative, we were amending to include a Section 2(f)

14   claim, which is based on five years of continuous and

15   substantial use, which is -- essentially means that the    12:20:22

16   mark has secondary meaning.

17        Q.  And what do you mean by the phrase "secondary

18   meaning"?

19        A.  "Secondary meaning" is basically means consumers

20   understand the word to be associated with a particular     12:20:39

21   provider.

22        Q.  Is it provider or is it goods and services?

23        A.  It is goods and service specific, generally.

24   But it's -- yeah, they associate it with one -- I don't

25   want to say entity because it could be an individual --    12:20:57
```

Page 77

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    like -- they associate it with one source.

 2         Q.  One source for a particular goods and services;

 3    correct?

 4         A.  Correct.

 5         Q.  Okay.  So -- so how did you -- did you -- strike    12:21:09

 6    that.

 7              So did you present for the examiner any evidence

 8    of secondary meaning?

 9              MS. CARUSO:  Objection.  Vague as to time.

10    Asked and answered.                                          12:21:40

11              MS. KIRK:  Okay.

12         Q.  So after you received a rejection from the

13    examiner for Application Serial Number 97238896 for the

14    mark OpenAI, did you provide any evidence of secondary

15    meaning?                                                     12:21:58

16              MS. CARUSO:  Objection.  Vague.  Asked and

17    answered.

18              THE WITNESS:  We did provide evidence of

19    secondary meaning in a response to the trademark office.

20         Q.  BY MS. KIRK:  So what sorts of evidence did you    12:22:09

21    provide as evidence of secondary meaning in response to

22    the rejection from the examiner for Application Serial

23    Number 97238896 for the trademark OpenAI?

24              MS. CARUSO:  Objection.  Vague.

25              THE WITNESS:  Our evidence consisted of news      12:22:26
```

Page 78

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    articles, references in television shows, podcasts,

2    social media references, and as well as, you know,

3    statements about how long the mark been used and just how

4    it's used on the client's website, things of that nature.

5        Q.  BY MS. KIRK:  Okay.  And did those news          12:22:57

6    articles, podcasts, social media references, et cetera,

7    use the mark OpenAI that is in Application Serial Number

8    97238896 in a trademark way?

9            MS. CARUSO:  Objection.  Vague.

10           THE WITNESS:  Yes.                              12:23:19

11       Q.  BY MS. KIRK:  So they used the mark OpenAI as

12   applying for an application 97238896 in a trademark

13   manner?

14           MS. CARUSO:  Objection.  Asked and answered.

15   Vague.                                                 12:23:38

16           THE WITNESS:  Yes.

17           MS. KIRK:  I'd like to introduce at this time

18   Exhibit Number 52.

19           (Exhibit 52, Exhibit C, ChatGPT Reportedly

20           Reached 100 Million Users in January, 02/02/23,  12:24:44

21           was marked for identification by counsel

22           electronically.)

23           MS. KIRK:  If you could take a look at Exhibit

24   Number 52 and let me know when you're done looking at it.

25           THE WITNESS:  Yes.                             12:25:07

                                                           Page 79

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    question or repeat it?

2        Q.  BY MS. KIRK:  Okay.  My apologies.

3            You did not need to review the letters of

4    protest from the USPTO to learn about Mr. Ravine or Open

5    Artificial Intelligence, Inc.; correct?              12:39:19

6            MS. CARUSO:  Objection.  Compound.  Vague.

7            THE WITNESS:  Correct.

8        Q.  BY MS. KIRK:  Okay.  Because -- and if I recall,

9    your earlier testimony was that you learned about

10   Mr. Ravine and the Open Artificial Intelligence, Inc.,   12:39:34

11   parties in December of 2021; correct?

12           MS. CARUSO:  Objection.  Mischaracterizes the

13   witness' testimony.

14           THE WITNESS:  I learned of Mr. Ravine in

15   December of 2021 and his registration.              12:39:51

16       Q.  BY MS. KIRK:  Do you know what was -- strike

17   that.

18           So after you learned of Mr. Ravine and the Open

19   Artificial Intelligence parties in 2021, did you do any

20   further research into his trademark or his company?    12:40:25

21           MS. CARUSO:  Objection.  Mischaracterizes the

22   witness' testimony and the record.  Assumes facts not in

23   evidence.

24           THE WITNESS:  We conducted a search -- or sorry,

25   not a search, an investigation into the supplemental     12:40:40
```

Page 88

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    registration.

2        Q.  BY MS. KIRK:  And what did that investigation

3    into the supplemental registration entail?

4        A.  We -- I reviewed the file wrapper from the --

5    or, you know, just the -- the application history on the    12:40:58

6    USPTO website.  I reviewed the -- the main that is shown

7    in the -- in the subdomains that are shown in the

8    specimens associated with the application or the

9    registration.  I also just did some kind of like general

10   internet searching.    12:41:31

11       Q.  And in general, what did you learn about

12   Mr. Ravine and the Open Artificial Intelligence, Inc.,

13   parties --

14           MS. CARUSO:  Objection.

15       Q.  BY MS. KIRK:  -- during your investigation?    12:41:46

16           MS. CARUSO:  Objection.  Assumes facts not in

17   evidence.  Mischaracterizes the witness' testimony.

18           THE WITNESS:  From my investigation, I found

19   that the initial specimen that was filed by Mr. Ravine

20   was -- in my opinion, did not demonstrate use of    12:42:10

21   trademark usage that the examining attorney had objected

22   to the specimen as well.

23           I found that the domains that were shown in the

24   specimen had the same -- sorry -- the -- that OpenAI --

25   Open.AI was redirecting to OpenAI's -- at my client's    12:42:46

Page 89

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    website.

2         I found that the hub.open.ai content was the

3    same as that in the specimen that was filed, I believe in

4    2016, the subsequent specimen that Mr. Ravine filed.

5         I found that the content in the specimen that      12:43:06

6    Mr. Ravine filed in 2016 appeared to copy posts from the

7    website GitHub by various individuals on that website.

8         Q.  BY MS. KIRK:  Okay.  And do you recall the date

9    that you found this information?

10        A.  I believe that night, that was in January of      12:43:36

11   2022.

12        Q.  And what action did you take after discovering

13   this information in January 2022?

14            MS. CARUSO:  Objection.  Vague.

15            I instruct the witness not to disclose any      12:43:53

16   attorney-client communications as part of answering this

17   question.  If you can answer it otherwise.

18            THE WITNESS:  I saved records or tried to save

19   screen shots of what I found during the investigation.

20        Q.  BY MS. KIRK:  And do you know if those records      12:44:18

21   have been produced?

22        A.  Yes, I believe they have been produced.

23        Q.  Okay.  So did you tell Mr. Altman or

24   Mr. Brockman about any of your research into Guy Ravine

25   or the Open Artificial Intelligence, Inc., parties?      12:45:09

Page 90

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MS. CARUSO:  Objection.  Mischaracterizes the
 2      record.  Assumes facts not in evidence.  And calls for
 3      attorney-client communications.
 4              MS. KIRK:  Okay.  So Margret, I'd really like to
 5      get this question in a clean way.  So could we just for    12:45:26
 6      this one just not do the speaking objection.  And you can
 7      object on the record, but let's just -- let's just
 8      object.
 9              So I'm going to ask it again.
10              MS. CARUSO:  Well, if you want it to be clear,     12:45:40
11      maybe just don't talk about Open Artificial Intelligence,
12      Inc., which didn't even exist at this point in time.
13              But ask the question.  I'm going to object as I
14      see fit to, you know --
15              MS. KIRK:  I don't think that -- I mean,           12:45:57
16      typically spoken objections aren't allowed, but I will
17      rephrase the question if you would like.
18         Q.  So, Ms. McCurry, did you speak to Mr. Altman or
19      Mr. Brockman about Guy Ravine, the OpenAI trademark, the
20      OpenAI trademark application, or the Open.AI website      12:46:18
21      after you did your investigation of Mr. Ravine's
22      trademark?
23         A.  No.
24              MS. CARUSO:  Hold on.
25              I instruct the witness not to disclose            12:46:34
```

Page 91

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    attorney-client communications, but if she can answer

 2    without doing, so you can answer the question she asked.

 3              THE WITNESS:  No.

 4        Q.  BY MS. KIRK:  No, you did not speak to

 5    Mr. Ravine -- excuse me.  Strike that.          12:46:50

 6              You did not speak to Mr. Altman or Mr. Brockman

 7    about Mr. Ravine, the OpenAI trademarks, or Open.AI web

 8    page?

 9        A.  No.

10              MS. KIRK:  Okay.                        12:47:08

11              (Exhibit 54, Whois Record for OpenAI, 12/29/21,

12              was marked for identification by counsel

13              electronically.)

14              MS. KIRK:  Let me know when you can see this

15    exhibit.                                          12:48:46

16              THE WITNESS:  Yes, I can see it.

17        Q.  BY MS. KIRK:  So do you recognize this document,

18    Ms. McCurry?

19        A.  Yes.

20        Q.  And can you describe this document, please.   12:49:17

21        A.  This is a Whois record for Open.AI captured on

22    December 29th, 2021.

23        Q.  Okay.  And is this part of your research into

24    Mr. Ravine and Mr. Ravine's OpenAI trademark?

25        A.  No.                                       12:49:41
```

Page 92

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        Q.   Okay.  How do you recognize this document?

2        A.   I believe at the time when I took this, it

3    was --

4             MS. CARUSO:  I'd just caution the witness not to

5    disclose any attorney-client privileged information in      12:50:03

6    her answer.  If she can answer without disclosing

7    attorney-client communication, you can answer the

8    question.

9             THE WITNESS:  I was trying to see if this domain

10   was owned by the client.                                    12:50:18

11       Q.   BY MS. KIRK:  Okay.  So it would be fair to say

12   that as of December 29, 2021, you learned that the

13   Open.AI domain name was owned by Mr. Ravine?

14            MS. CARUSO:  Objection.  Mischaracterizes the

15   record.                                                     12:50:52

16            THE WITNESS:  I don't know that I found out on

17   the 29th of -- sorry, December 29th, 2021.  I believe

18   this initial printout, it just wasn't really clear to me

19   that -- who the domain belonged to.

20       Q.   BY MS. KIRK:  Okay.  But it was clear from you    12:51:26

21   from this printout from the Whois that the Open.AI domain

22   name was not owned by OpenAI?

23       A.   I actually don't believe it was at the time

24   because sometimes domains will be registered by like some

25   employee or -- yeah, that like didn't put it in the        12:51:45

                                                                 Page 93

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1      that correct?

2              MS. CARUSO:  Objection.  Vague.

3              THE WITNESS:  There -- there is -- yes, the

4      Whois has an address section for those different parties.

5          Q.  BY MS. KIRK:  Okay.  And if you look at the      12:53:50

6      email address, the email address is jefflarson@gmail.com;

7      is that correct?

8              MS. CARUSO:  Objection.  Mischaracterizes the

9      record.

10             THE WITNESS:  Again, are we talking about --      12:54:09

11     sorry.  The email address for the registrant, the admin,

12     the tech, and the billing is jeffblarson@gmail.com.

13         Q.  BY MS. KIRK:  Thank you.  I didn't see the "B."

14     I don't have my glasses on.  I apologize.

15             So did you investigate who Jeff B. Larson was      12:54:27

16     when you discovered this record for Open.AI?

17         A.  I believe I did.  I don't know if it was in

18     congruence with looking at this Whois record, though.  I

19     know I did investigate it later.  I just don't know if it

20     was at the exact time that I was looking at this Whois      12:54:54

21     record.

22         Q.  And do you have any records of that

23     investigation?

24         A.  Yes.

25         Q.  And have you produced those records in this      12:55:00
```

Page 95

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    litigation?

2         A.   Again, I don't know all of the documents that

3    have been produced.  I did provide a document.

4         Q.   Did you follow up with OpenAI to determine

5    whether or not Jeff Larson was associated with OpenAI,      12:55:25

6    Inc.?

7         A.   Yes.

8         Q.   Okay.  And what did you learn?

9         A.   I'm sorry, can I correct -- correct my previous

10   answer?  I don't know that I necessarily mentioned Jeff      12:55:42

11   Larson, but I did follow up about whether they owned this

12   domain name, and so that's a more correct answer to the

13   last question.

14              (Exhibit 55, An fatal error when using

15              Scala-pkg, 02/21/22, OPENAI-RAV-00013776 - 782,   12:55:57

16              was marked for identification by counsel

17              electronically.)

18         MS. KIRK:  Let me know when you can see that.

19         So Ms. McCurry, can you see this exhibit?

20         A.   This is 55, Exhibit 55?                           12:58:44

21         Q.   Yes.

22         A.   Yes.

23         Q.   And do you recognize this exhibit?

24         A.   Yes.

25         Q.   And can you generally describe this exhibit?     12:59:06

                                                    Page 96

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          A.  It is a printout that I took when trying to

 2     preserve evidence of the copying from -- the copying that

 3     I recognized when I was reviewing the specimen, Guy

 4     Ravine specimen, the 2016 specimen.

 5          Q.  How did you recognize copying?  I'm sorry.  I --   12:59:39

 6     I did computer programming a long time ago so I'm having

 7     a hard time understanding how you went from a specimen

 8     to -- to -- I think several -- several pages of computer

 9     code and recognized copying.

10          So if you could describe that process, please.       12:59:59

11          A.  Yeah.  So I just copied and pasted the text that

12     was on hub.open.ai.  It was -- I -- still identical

13     content to that that was shown in the specimen that were

14     being submitted.  I put that in Google, and it pulled up

15     these GitHub posts that had almost identical content.     13:00:22

16          Q.  Okay.  And what exactly is GitHub?

17              MS. CARUSO:  Objection.  Vague.

18              THE WITNESS:  Gosh, I'm probably not the best

19     person to explain it.  But it's a website where users can

20     share and build off of computer code, exchange -- it's my  13:00:47

21     understanding, you know, have conversations about, you

22     know, building computer products, software.

23          Q.  BY MS. KIRK:  Okay.  So is it kind of like a

24     chat room?

25              MS. CARUSO:  Objection.  Lacks foundation.       13:01:08
```

Page 97

1      A.  That is the repository, yes.

2      Q.  Repository, yes.

3          And so is it possible that a particular post

4  could be in different repositories?

5          MS. CARUSO:  Objection.  Calls for speculation.    13:02:38

6  Lacks foundation.

7          THE WITNESS:  Yeah, I really don't know.

8      Q.  BY MS. KIRK:  You don't know.

9          So do you know for certain that this is the only

10 place that this chat appeared in August 31st, 2016?          13:02:50

11     A.  I don't know.

12     Q.  Okay.  And can you read the date at the very top

13 of this page.

14     A.  The -- the stamp from when I printed out the web

15 page, if that's what you're referring to, is          13:03:17

16 February 21st of '22.

17     Q.  Okay.  So approximately six years later, you

18 found this chat in a repository called

19 apache/incubator/mxnet; is that correct?

20         Six years -- pardon me.  I'll clarify.          13:03:45

21         So approximately six years after this particular

22 chat was posted in apache/incubator/mxnet, you discovered

23 the chat; correct?

24     A.  That's when I preserved it, yes.

25     Q.  It's also when you discovered it; correct?          13:04:04

Page 99

```
 1        A.  I don't know that it's exactly when I discovered

 2   it.  This is when I preserved it.

 3        Q.  Okay.  And you cannot say for certain that on

 4   August 31st, 2016, that this is the only place where this

 5   particular code was posted in any repository; correct?    13:04:24

 6            MS. CARUSO:  Objection.  Asked and answered.

 7            THE WITNESS:  No, I cannot.

 8        Q.  BY MS. KIRK:  Okay.  So you can't make any

 9   conclusions with regard to whether or not Mr. Ravine

10   could have had a similar chat posted in his repository,    13:04:40

11   can you?

12            MS. CARUSO:  Objection.  Vague.

13            THE WITNESS:  I feel like I can make

14   conclusions, yes.

15        Q.  BY MS. KIRK:  No, I'm asking can you say for      13:04:55

16   certain that on August 31st, 2016, there were not similar

17   chats or code or questions posted in any repository of

18   Mr. Ravine?

19        A.  Sorry, can you repeat the question?

20        Q.  When you say that on August 31st, 2016, there     13:05:19

21   were not similar chats posted in any repository

22   associated with Mr. Ravine?

23            MS. CARUSO:  Objection.  Vague.

24            THE WITNESS:  I can't be sure of that, no.

25            MS. KIRK:  Thank you.                             13:05:36
```

Page 100

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    you can view the exhibit.

2         THE WITNESS:  Okay.  I have Exhibit 56.

3      Q.  BY MS. KIRK:  Okay.  We're going to introduce

4    Exhibit 56.

5         Do you recognize this document?               13:54:30

6      A.  Yes.

7      Q.  Okay.  And did you download this particular

8    document, Ms. McCurry?

9      A.  Yes.  This is a screen shot that I took.

10      Q.  Okay.  And what was the date that you downloaded   13:54:46

11    this particular screen shot?

12      A.  February 21st, 2022.

13      Q.  Okay.  And can you describe what this is a

14    screen shot of?

15      A.  Yes, this is a screen shot of a subdomain,      13:55:00

16    hub.open.ai.

17      Q.  Okay.  So Ms. McCurry, did you visit the

18    subdomain hub.open.ai on February 21st, 2022?

19      A.  Yes.

20      Q.  And so the subdomain hub.open.ai was in         13:55:24

21    operation on February 21st, 2022; correct?

22      A.  It was resolving, yes.

23      Q.  Okay.  So there was content on the subdomain

24    hub.open.ai on February 21st, 2022?

25      A.  Yes.                                            13:55:44

Page 102

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   Okay.   Thank you.

 2             And I was told by my team I need to go back in

 3   time to ask a question about a particular document.   So

 4   if you bear with me, I'm going to pull up an exhibit that

 5   I already took down.                                    13:56:17

 6             If you could go to marked Exhibit 46, please.

 7        A.   Okay.

 8             MS. KIRK:   I don't think it's marked Exhibit 46.

 9   I think that's an error as I pulled it up.   Let's go to

10   marked exhibit -- I think it's going to be 49.          13:56:56

11        Q.   Do you see that?

12        A.   Yes.   Are we looking at the trademark

13   application for serial number ending in 896?

14        Q.   Yes.

15        A.   Yes.                                          13:57:19

16        Q.   That is what we are looking at.

17             You can tell this is the end of the deposition

18   because I can't find any of my documents, anymore.   They

19   were all originally very organized, but now -- okay.

20             So the document ending in -- the trademark      13:57:35

21   serial number ending in 896, do you recognize this

22   document?

23        A.   Yes.

24        Q.   Okay.   So you were involved in the prosecution

25   of Trademark Serial Number 97238896; is that correct?   13:57:50
```

Page 103

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1       A.  Yes.

 2       Q.  Okay.  Did you consult with OpenAI prior to

 3   filing Application Number 97238896?

 4           MS. CARUSO:  I object to the question as vague

 5   and instruct the witness not to reveal the contents of      13:58:19

 6   any attorney-client communications, but the question can

 7   be answered "yes" or "no."

 8           THE WITNESS:  Yes.

 9       Q.  BY MS. KIRK:  Did anyone with OpenAI, Inc.,

10   approve of the filing of the application 97238896?          13:58:33

11       A.  Yes.

12       Q.  Did you speak with Mr. Altman or Mr. Brockman

13   about Guy Ravine or his trademark OpenAI prior to filing

14   Application Serial Number 97238896?

15       A.  No.                                                 13:59:00

16       Q.  Did anyone at your firm speak to Mr. Altman or

17   Mr. Brockman about Guy Ravine or his trademark, OpenAI,

18   prior to filing Application Serial Number 97238896?

19       A.  I'm sorry, could you repeat your question?

20       Q.  Sorry, sorry.  I'm like reading.                   13:59:20

21           So did anyone from your firm speak with

22   Mr. Altman or Mr. Brockman about Guy Ravine or his

23   trademark OpenAI prior to filing Application Serial

24   Number 97238896?

25       A.  No.                                                 13:59:38
```

Page 104

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MS. KIRK:   Thank you.

 2              (Exhibit 57, Trademark Application OpenAI 2017,

 3              Application Filing Date 09/21/16, was marked for

 4              identification by counsel electronically.)

 5         Q.  BY MS. KIRK:   Okay.   This will be Exhibit Number    14:00:50

 6    57.  So let me know when you can see it.

 7         A.  Okay.

 8         Q.  Are you familiar with this particular document?

 9         A.  Yes.

10         Q.  And this is the application for registration of    14:01:31

11    the mark OpenAI filed on September 21st, 2016; is that

12    correct?

13         A.  Yes.

14         Q.  And the serial number for that application is

15    87178985; correct?                                          14:01:52

16         A.  Yes.

17         Q.  Okay.   And if you go down to "Correspondence

18    Information," do you see that?

19         A.  Yes.

20         Q.  So who was the filer of Application Serial         14:02:09

21    Number 87178985?

22              MS. CARUSO:  Objection.   Vague.

23              THE WITNESS:  The -- the application is filed in

24    the name of OpenAI, Inc., and the correspondent's

25    information is OpenAI, Inc.                                  14:02:36
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.  Okay.  And what is the date of first use?

2      A.  The date of first use in commerce listed in the

3   application is April 4th -- I'm sorry, April 27th, 2016.

4      Q.  Okay.  And did this -- did Application 87178985

5   for the mark OpenAI ever issue as a trademark          14:04:41

6   registration?

7      A.  No, it did not receive registration.

8      Q.  Do you know what happened with the application

9   for Serial Number 87178985 for the mark OpenAI?

10     A.  Yes.                                             14:05:04

11     Q.  And what is the prosecution history for the mark

12   OpenAI Serial Number 87178985?

13     A.  It's in the file wrapper here.  So the initial

14   Office Action issued on January 5th of 2017, and there

15   were a few issues raised, Prior Pending Application      14:05:32

16   Advisory, a Section 2(e)(1) Refusal, Supplemental

17   Register Advisory, and an Identification of Goods

18   objection.

19     Q.  Okay.  So I believe we are on -- if I can scroll

20   down a little bit -- page 5, I think is where we are.    14:05:54

21   And I see there's a big heading that says "Prior Pending

22   Application Advisory."

23         Do you see that?

24     A.  Yes.

25     Q.  And so an application was identified as a prior    14:06:17

Page 107

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    pending application.

2            MS. CARUSO:  Is there a question?

3        Q.  BY MS. KIRK:  Yeah, I think I said, "What prior

4    pending application was identified in the Office Action

5    for Application Number 87178985 for the mark OpenAI?         14:06:37

6        A.  Application Serial Number 86847151.

7        Q.  And that application was attached to the Office

8    Action; correct?

9        A.  Yes.

10       Q.  And I believe if you scroll down to page 9, you     14:06:55

11   see that application; correct?

12       A.  Yes.

13       Q.  And can you identify what application was -- was

14   mentioned by the USPTO in the prosecution history of US

15   Serial Number 87178985 for the mark OpenAI?                 14:07:23

16           MS. CARUSO:  Objection.  Asked and answered.

17           THE WITNESS:  The -- the one that's identified

18   on page 9 is -- this is the Serial Number 86847151 for

19   OpenAI -- Open, space, AI by Guy Ravine.

20       Q.  BY MS. KIRK:  Okay.  So what is the date of         14:07:50

21   first use for Mr. Ravine's mark for Open AI in the

22   Application Number 86847151?

23           MS. CARUSO:  Objection.  Vague.  Calls for

24   speculation.  Lacks foundation.

25           THE WITNESS:  In the application, Mr. Ravine         14:08:12
```

Page 108

1      Mischaracterizes the record.

2              THE WITNESS:  I'm sorry, I have not really

3      reviewed or focused on when he registered the domain.

4          Q.  BY MS. KIRK:  Okay.

5          A.  But I did believe it to be associated with him.    14:10:01

6          Q.  Okay.  And so would it be unusual for someone to

7      register a domain name -- strike that.

8              So as of the date, if you scroll back up to the

9      Office Action response, or the Office Action, what is the

10     date that the Office Action for US Application Serial        14:10:36

11     Number 87178985 was mailed to OpenAI, Inc.?

12             MS. CARUSO:  Objection.  Vague.

13             THE WITNESS:  The initial Office Action issued

14     on -- I'm sorry, let me make sure I get the right date --

15     January 5th, 2017.                                           14:11:04

16         Q.  BY MS. KIRK:  Okay.  So as of January 5th, 2017,

17     OpenAI was aware of Mr. Ravine's trademark application;

18     correct?

19             MS. CARUSO:  Objection.  Mischaracterizes the

20     record.                                                      14:11:22

21             THE WITNESS:  I don't know what day exactly they

22     became aware of the Office Action.

23         Q.  BY MS. KIRK:  Okay.  So what was OpenAI's

24     response to the Office Action dated January 5th, 2017,

25     for Application Serial Number 87178985 for the mark          14:11:40

                                                       Page 110

1    OpenAI?

2         A.   They did not respond to the Office Action.

3         Q.   Okay.  Did OpenAI receive a Notice of

4    Abandonment for its application for the mark OpenAI with

5    the Serial Number 87178985?                          14:11:59

6         A.   I'm sorry, can you repeat that?

7         Q.   Yeah, sorry.

8              Did -- did OpenAI, Inc., receive a Notice of

9    Abandonment for its application 87178985 for the mark

10   OpenAI?                                              14:12:26

11        A.   Yes.  The application was abandoned.

12        Q.   And what was the date that the -- that the

13   application was abandoned?

14             MS. CARUSO:  Objection.  Vague.

15             THE WITNESS:  Make sure I get the right date  14:12:40

16   here.  The abandonment notice was sent from the USPTO on

17   August 4th of 2017 for the application.

18        Q.  BY MS. KIRK:  Okay.  And then I have one more

19   question, and I think that is on page 5.

20             So there wasn't just a Prior Pending Application  14:13:15

21   Advisory.  There was also a 2(e)(1) refusal as merely

22   descriptive; correct?

23        A.   Yes, that's correct.

24        Q.   And what was the basis for the 2(e)(1) refusal

25   as merely descriptive?                               14:13:34

                                              Page 111

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.  The examiner alleges that "open" is shorthand

2    term for open source, and then that "AI" is an

3    abbreviation for artificial intelligence, and that "open

4    source artificial intelligence" is merely descriptive of

5    software.                                        14:14:03

6      Q.  And did that examiner cite to evidence for the

7    basis for its 2(e) rejection?

8      A.  Yes.  The examiner includes evidence in their

9    Office Action.

10     Q.  And the basis for the rejection of Application   14:14:27

11   US Serial Number 87178985 for OpenAI is similar to the

12   basis for the rejection of the later filed Serial Number

13   97238896 also for OpenAI; correct?

14         MS. CARUSO:  Objection.  Mischaracterizes the

15   record.  Compound.                               14:14:50

16         THE WITNESS:  The -- I'm sorry, the

17   application -- the date's here.  Both applications

18   received initial objections on grounds of mere

19   descriptiveness, yes.

20     Q.  BY MS. KIRK:  Okay.  So in the later filed    14:15:13

21   application -- I believe it's Serial Number 97238896 for

22   OpenAI -- has the examiner ever withdrawn his rejection

23   of the mark as merely descriptive?

24     A.  No.  It's still pending.

25     Q.  Okay.  If you could go to page 31.           14:15:34

                                              Page 112

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    question since it's a little bit more clear now of like

2    where this document is.

3              So -- so if you go up to page 32, do you

4    recognize page 32 as the file history for Trademark

5    Serial Number 87178985 for OpenAI?                    14:17:49

6        A.   Yes.

7        Q.   Okay.  And if you scroll down to the next page,

8    you see something that says original PDF image file.

9              Do you see that box?

10       A.   Yes.                                          14:18:08

11       Q.   And across from it, there's a link.  Do you see

12   that?

13       A.   Yes.

14       Q.   And what is that link?

15       A.   That's a link to the specimen.               14:18:20

16       Q.   And what is the specimen?

17       A.   That is the printout that's shown on page 38.

18       Q.   Okay.  And so what is the printout on page 38?

19       A.   That appears to be a printout from the GitHub

20   repository for OpenAI's gym product.                  14:18:46

21       Q.   Okay.  And is this the same specimen that was

22   used in the later filed application for US Serial Number

23   97238896 for the mark OpenAI?

24       A.   No, I don't believe we used this specimen.

25       Q.   Okay.  And so if you look at the very top of    14:19:09

Page 114

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    this particular specimen, you see that it has like

 2    certain -- like certain identifiers; right?  It says,

 3    "Commitments, branch, releases, contributors."

 4          Do you see that?

 5    A.   Yes.                                    14:19:24

 6    Q.   And how many contributors are there for the

 7    specimen for OpenAI?

 8    A.   This shows seven contributors.

 9          MS. KIRK:  Okay.  Thank you.

10          (Exhibit 58, Trademark/Service Mark Application,  14:19:38

11          Principal Register, Filing Date 05/24/2003, was

12          marked for identification by counsel

13          electronically.)

14          MS. KIRK:  We're at Exhibit 58.  Please let me

15    know when you can see that.                  14:20:29

16          THE WITNESS:  Okay.

17    Q.   BY MS. KIRK:  Okay.  And so Exhibit 58.

18    Exhibit 58, do you recognize this document?

19    A.   Yes.

20    Q.   And what is this particular document?      14:20:55

21    A.   This is the application for OpenAI that was

22    filed on May 24th, 2023.

23    Q.   May 24th, 2023.

24          And can you read what the international class is

25    or the international classes are for US Serial Number  14:21:25
```

                                        Page 115

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    98010861 for the mark OpenAI.

 2        A.  Yes.  This application covers classes 38 and 45.

 3        Q.  Okay.  So in class 38, what are the goods and

 4    services that are identified?

 5        A.  In class 38, the services are identified as:       14:21:48

 6    "Providing access to databases; providing internet chat

 7    rooms; providing online forums; computer services,

 8    namely, providing access to databases featuring news and

 9    information in the fields of artificial intelligence,

10    machine learning, and software development; providing     14:22:06

11    online chat rooms and bulletin boards for transmission of

12    messages among computer users concerning artificial

13    intelligence, machine learning, and software development;

14    providing forums -- sorry, some of it's cut off by the

15    exhibit --                                                 14:22:21

16        Q.  My apologies.

17        A.  Yeah.

18        "Forum.  Transmission of messages among computer

19    users."  I believe that's what it says.  Something,

20    "artificial intelligence, machine learning, and" --       14:22:34

21    blank.  "Development providing user access to computer

22    programs in data networks; provision of access to global

23    computer network; communication services, namely,

24    electronic transmission of data and documents among

25    computer users; streaming of data; transmission of        14:22:54
```

Page 116

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    digital files; transmission of electronic mail; providing

 2    online bulletin boards over the internet; electronic mail

 3    and messaging services; transmission of news."

 4        Q.  Okay.  And what is the filing basis for Serial

 5    Number 98010861?                                    14:23:12

 6        A.  That is a 1(b) basis for class 38.

 7        Q.  For class 38, can you explain what a 1(b) filing

 8    basis is?

 9        A.  1(b) filing basis is an intent to use filing

10    basis.  So you're not providing evidence of use at the    14:23:34

11    outset.

12        Q.  Okay.  And so the 1(b) filing basis, would you

13    say that that is an intention to use the mark in the

14    future in commerce?

15        A.  Sometimes it is.  Sometimes it is just used    14:23:52

16    because we don't have the time to gather the specimens or

17    the date of first use and put that into the application,

18    or the client has another reason they just want to have

19    the application examined before they file the Statement

20    of Use.                                              14:24:14

21        Q.  Okay.  So there is no Statement of Use that has

22    been filed for Application 98010861; correct?

23        A.  Correct.

24        Q.  And Application 9801086 was filed on an

25    intent-to-use basis; correct?                        14:24:34
```

Page 117

1       A.   Yes.   And so I believe there's another class

2   listed.   It's class 45.

3           MS. CARUSO:   Just -- I'm sorry, I want to make

4   sure the record is clear.   The application you just asked

5   about, did you mean to say 98010861?                    14:24:52

6           MS. KIRK:   Yes.   I can reask the question so

7   that it's clear.   Thank you.   It's late in the day.

8       Q.   So for Application Serial Number 98010861, did

9   you file that application in class 38 on an intent-to-use

10  basis?                                                  14:25:17

11      A.   Yes.

12      Q.   Okay.   And then I believe that there was another

13  filing class, class 45; is that correct?

14      A.   Yes.

15      Q.   And what was the identification of goods and     14:25:29

16  services in class 45?

17      A.   The identification of services in class 45 are:

18  "Online social networking services; online social

19  networking services in the fields of artificial

20  intelligence, machine learning, and software and" -- "and  14:25:46

21  software and application development; content moderation

22  for internet chat rooms.

23      Q.   And what was the basis for filing the

24  application for OpenAI in international class 45?

25      A.   This is also a 1(b), intent-to-use basis.        14:26:04

                                                    Page 118

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.  Okay.  So -- and just so that I have something,
 2   for Application Serial Number 98010861, you filed this
 3   application on an intent-to-use basis?
 4        A.  Yes.
 5        MS. KIRK:  Okay.  All right.  Can I have a quick   14:26:26
 6   break to circle around with our associate, and it will
 7   just be like five minutes so I can make sure that I have
 8   everything.  And then if -- if I don't, there will be
 9   like a few more questions and probably documents, and
10   then we can wrap up.                                    14:26:42
11        MS. CARUSO:  Okay.
12        THE WITNESS:  That sounds good.
13        THE VIDEOGRAPHER:  We're going off the record at
14   2:26 p.m.
15        (Recess.)                                          14:27:36
16        THE VIDEOGRAPHER:  We are on the record at
17   2:34 p.m., and this is the beginning of Media 6 in the
18   deposition of Rebecca McCurry.
19        Q.  BY MS. KIRK:  Okay.  So my apologies,
20   Ms. McCurry.  My associate informed me that I missed a   14:34:15
21   couple of questions for Exhibit 57.  So if you could
22   reopen Exhibit 57.
23        A.  Okay.
24        Q.  And so before filing US Serial Number 87178985,
25   did OpenAI conduct a clearance search?                   14:34:52
```

Page 119

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MS. CARUSO:  Objection.  Outside the scope to

 2     the extent that you're referring to anything from 2015.

 3         Q.  BY MS. KIRK:  Okay.  From January 1st, 2016 to

 4     the filing date of this application, September 21st,

 5     2016, did OpenAI conduct any sort of trademark clearance      14:35:15

 6     search?

 7              MS. CARUSO:  Objection.  Asked and answered.

 8              THE WITNESS:  No, they did not.

 9         Q.  BY MS. KIRK:  So if you go down to -- if you go

10     down to correspondent -- pardon me.  Strike that.            14:36:10

11              If you go down to page 33 for me, please.

12         A.  33.

13         Q.  Yes.  The very bottom.  It's in the trademark

14     application.

15         A.  Yes.                                                 14:36:42

16         Q.  And do you see where it says "Signature

17     Information"?

18         A.  Yes.

19         Q.  And who signed the application for Serial Number

20     87178985 for the mark OpenAI?                                14:36:58

21         A.  The signatory's name is Chris Clark.

22         Q.  And do you know who Chris Clark is?

23         A.  He signed as COO.

24         Q.  Okay, and did -- do you know if documents were

25     collected from Chris Clark in this matter?                   14:37:16
```

                                                        Page 120

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1          A.  I do not know.

2          Q.  Okay.  Did you collect documents from Mr. Clark

3     at any time during your representation of OpenAI for its

4     trademark matters?

5          A.  No.                                      14:37:32

6          Q.  Okay.  Did you review any documents from USPTO

7     at OpenAI.com during your representation of OpenAI?

8          A.  I'm sorry, could you repeat your question?

9          Q.  Did you review any documents from email address

10    uspto@openai.com?                                  14:37:52

11         A.  No, I did not.

12         Q.  Were you aware of this -- strike that.

13             Were you aware of Application Serial Number

14    87178985 prior to filing your trademark application in

15    January of 2021?                                   14:38:17

16         A.  I was aware of this -- I'm sorry, I was aware of

17    Application Serial Number 87178985 prior to filing our

18    application in January of 2022.

19             MS. KIRK:  Okay.

20             (Exhibit 59, Welcome to OpenAI, Build

21             Collaborative AI Projects, OPENAI-RAV-00013575,

22             was marked for identification by counsel

23             electronically.)

24             MS. KIRK:  Okay.  Let me know when you can see

25    this exhibit.  I believe it's marked as Exhibit 59.    14:39:28
```

Page 121

```
 1              THE WITNESS:  Okay.

 2        O.  BY MS. KIRK:  Okay.  And do you recognize this

 3   document?

 4        A.  Yes.

 5        Q.  Did you print this document out?              14:39:53

 6        A.  Yes.  This is a printout that I saved.

 7        Q.  And what was the date of the printout?

 8        A.  The date is August 18th of 2022.

 9        Q.  Okay.  And why -- and I believe this is a

10   printout of a web page; correct?                       14:40:21

11        A.  Yes.

12        Q.  So why did you visit this particular web page?

13        A.  I wanted to preserve this evidence.

14        Q.  Okay.  And this particular evidence is on one of

15   Mr. Ravine's subdomains; correct?                      14:40:46

16        A.  Yes.  It says, "decentralized.open.ai."

17        Q.  Decentralized.open.ai?

18            So how did you find the subdomain

19   decentralized.open.ai?

20        A.  There is a website -- and I'm sorry.  Let me see 14:41:07

21   if I can remember what it's called.  But it allows you to

22   see different subdomains and email -- MX records

23   associated with different domains.  And I used that to --

24   to see if there were any other subdomains associated with

25   Open.AI.                                               14:41:35
```

Page 122

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.  And so if you scroll down, it looks like there's

2   quite a bit of content for this particular subdomain;

3   correct?

4          MS. CARUSO:  Objection.  Vague.

5          THE WITNESS:  I don't know that I would say it's    14:41:47

6   quite a bit of content.  I don't know.

7      Q.  BY MS. KIRK:  But there's content for the

8   subdomain for "decentralized"; correct?

9      A.  The subdomain does resolve to content.

10     Q.  Okay.  And I believe if you scroll down to the    14:42:03

11  last page, there is kind of a ribbon on the left.

12          Do you see that ribbon to the left?

13          MS. CARUSO:  Objection.  Vague.

14          THE WITNESS:  Sorry, we're on the last page; is

15  that correct?                                            14:42:27

16     Q.  BY MS. KIRK:  Yes.

17     A.  And can you repeat the question?  I'm sorry.

18     Q.  So you see that there is a ribbon to the left;

19  correct?

20          MS. CARUSO:  Objection.  Vague.                  14:42:35

21          THE WITNESS:  Are you referring to the --

22  there's kind of some squares?

23     Q.  BY MS. KIRK:  Okay.  So let's go up to -- one

24  page.  And so the second page that you printed out has

25  various letters.  What are -- with like titles underneath  14:42:49

Page 123

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    them; correct?  So one is "GP, General Purpose Face ID."

2    Another is "AS, Automated Store."  Another is "AS, AI

3    Super Renderer."

4            Do you see that?

5        A.  Yes.                                         14:43:06

6        Q.  So those look like, in my mind, links that you

7    can click to go to a particular application; correct?

8            MS. CARUSO:  Objection.  Calls for speculation.

9    Vague.

10           MS. KIRK:  You know, Margret, she visited the      14:43:23

11   website so --

12           MS. CARUSO:  Your question is so to your mind,

13   this is what they look like.  She does not know to your

14   mind what they look like.  You can ask her --

15           MS. KIRK:  Okay.                                   14:43:31

16       Q.  So when you visited the website

17   decentralized.open.ai, and you got to this particular

18   menu, do these boxes labeled "GP, General Purpose Face

19   ID, "AS, Automated Store, AS, AI Super Renderer, do these

20   link to applications within Mr. Ravine's website?         14:44:00

21           MS. CARUSO:  Objection.  Vague.

22           THE WITNESS:  I don't know what they link to.

23       Q.  BY MS. KIRK:  Did you click any of the links on

24   this page?

25       A.  Yes.  I clicked on the first button.              14:44:09

                                              Page 124

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.  So you only clicked on the first button?

2    A.  I believe so.  I don't --

3    Q.  And that button is labeled "GP, General Purpose

4    Face ID."  Correct?

5    A.  Yes.                                         14:44:24

6    Q.  Okay.  So we go to the third page.  Do you see

7    the third page?

8    A.  Yes.

9    Q.  And if you look at the ribbon on the left, there

10   is a "GP" with a blue bar next to it.              14:44:37

11        Do you see that?

12   A.  Yes.

13   Q.  And so does this represent what happened when

14   you clicked on the link "GP"?

15   A.  Yes, I believe it took me to the -- the GP, when  14:44:51

16   I clicked on the button, it took me to this -- this

17   website -- this -- I'm sorry, this sub-page.  That's what

18   this capture is.

19   Q.  Okay.  And on this sub-page, there is a title

20   "General Purpose Face ID."  Correct?             14:45:08

21   A.  Yes.

22   Q.  And General Purpose Face ID, there's content

23   under that; correct?

24   A.  Yes.

25   Q.  And the content under that says, "A face      14:45:17

Page 125

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    recognition system."  Correct?

2              MS. CARUSO:  Objection.  Vague.

3              THE WITNESS:  The paragraph begins -- yes, with

4    the sentence, "A face recognition system."

5        Q.  BY MS. KIRK:  All right.  I'll ask it again.    14:45:31

6              So under the title "General Purpose Face ID,"

7    the paragraph says, "A face recognition system."

8    Correct?

9        A.  Yes, it starts with that.

10       Q.  And if you go up a little bit, there is another    14:45:45

11   link under what says "Discussion."

12             Do you see that?

13       A.  There appears to be a link, yes.

14       Q.  Okay.  And so did you follow that link?

15       A.  No.                                                14:46:00

16       Q.  Okay.  So if you go to the left side of this

17   screen, underneath the "GP" box, there's another box,

18   "AS."

19             Do you see that?

20       A.  Yes.                                               14:46:12

21       Q.  Did you click on the box for "AS"?

22       A.  I don't believe so, no.

23       Q.  Okay.  To the left under the first box for

24   "AS" -- or strike that.

25             To the left under the box for "AS," there's a   14:46:24

Page 126

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     second box called "AS."

2              Do you see that?

3        A.   Yes.

4        Q.   Did you click on that box?

5        A.   I don't believe so.                    14:46:34

6        Q.   Okay.  Under the second "AS" box, there's a box

7     for "TM."

8              Do you see that?

9        A.   Yes.

10       Q.   Did you click on that box?           14:46:42

11       A.   I don't believe so.

12       Q.   Under the box for "TM," there's another box

13    called "TN."

14             Do you see that?

15       A.   Yes.                                 14:46:52

16       Q.   Did you click on that box?

17       A.   No.  Or I don't believe so.

18       Q.   Okay.  Under the box for "TN," there's another

19    box called "RE."

20             Do you see that?                    14:47:02

21       A.   Yes.

22       Q.   Did you click on that box?

23       A.   I don't believe so.

24       Q.   Okay.  And under the box "RE," there's another

25    box "L."  Correct?                           14:47:12

                                          Page 127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1          A.   Yes.

2          Q.   Did you click on the box for "L"?

3          A.   I don't believe so.

4          Q.   Okay.  So under "General Purpose ID" -- we're

5     going to move to the next column.  I see several folders.   14:47:22

6              Do you see those?

7              MS. CARUSO:  Objection.  Vague.

8          Q.   BY MS. KIRK:  Okay.  There's a title bar that

9     says "General Purpose Face ID."

10             Do you see that?                              14:47:37

11         A.   Yes.

12         Q.   And under that, there is the heading "Issues."

13             Do you see that?

14         A.   Yes, it appears there.

15         Q.   Did you click on that folder?                14:47:49

16             MS. CARUSO:  Objection.  Mischaracterizes the

17    record.

18             THE WITNESS:  I don't believe so.

19         Q.   BY MS. KIRK:  Did you click underneath

20    "Issues" -- well, strike that.                          14:47:57

21             Underneath the folder for "Issues," there's

22    another box that says "discuss this."

23             Do you see that?

24             MS. CARUSO:  Objection.  Mischaracterizes the

25    record.                                                 14:48:06
```

Page 128

1          THE WITNESS:  I see -- yes, I see "discuss

2   this."  I don't know what that is.

3        Q.  BY MS. KIRK:  Okay.  Did you click "discuss

4   this"?

5        A.  No.                                    14:48:18

6        Q.  Underneath "discuss this," there is another

7   prompt that says "this page here."

8            Do you see that?

9        A.  Yes.

10       Q.  Did you click "this page here"?        14:48:26

11       A.  No, I did not.  Or I don't believe so.

12       Q.  Under "this page here," there's another box

13   that's called "Concept."

14           Do you see that?

15       A.  Yes.                                   14:48:37

16       Q.  Did you click "Concept"?

17       A.  I don't believe so.

18       Q.  Underneath "Concept," there's another box.  It's

19   called "Examples."

20           Do you see that?                       14:48:46

21       A.  Yes.

22       Q.  Did you click "Examples"?

23       A.  I don't believe so.

24       Q.  Underneath "Examples," there is another tab that

25   says "Roadmap."                                14:48:54

Page 129

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              Do you see that?
 2         MS. CARUSO:  Objection.  Mischaracterizes the
 3    record.
 4         THE WITNESS:  I do see the word "Roadmap."  I
 5    don't know what that is.                          14:49:03
 6    Q.  BY MS. KIRK:  Okay.  Did you click on "Roadmap"?
 7    A.  No.
 8    Q.  Okay.  Underneath "Roadmap," which it looks to
 9    be some sort of drop-down menu because there's an arrow.
10         Do you see the arrow?                         14:49:16
11    A.  I do see an arrow --
12    Q.  Okay.
13    A.  -- next to the word "Roadmap," yes.
14    Q.  Okay.  So underneath that, it says "Roadmap
15    discussion."                                       14:49:26
16         Do you see that?
17    A.  Yes.
18    Q.  Did you click on "Roadmap discussion"?
19    A.  No, I did not.
20    Q.  Okay.  So let's go up.                         14:49:33
21         And do you see above the big heading that says
22    "General Purpose Face ID," then there's a tab.  It almost
23    looks like a tab.  It says "General Purpose Face ID," and
24    there's little circles next to that tab.
25         Do you see that?                              14:49:53
```

Page 130

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        A.   Yes.

2        Q.   And what -- and so did you see that when you

3    downloaded or visited the decentralized web page?

4        A.   Yes.

5        Q.   And so all of those little circles, they have        14:50:07

6    letters or pictures in them; correct?

7             MS. CARUSO:   Objection.   Mischaracterizes the

8    record.

9             THE WITNESS:   I see four circles -- well, sorry.

10            MS. KIRK:   So I'll ask it a little bit              14:50:22

11   differently for Margret.

12       Q.   So next to the tab that says "General Purpose

13   Face ID," there are circles.   There is the letter A,

14   there is a photograph, it looks like there's a letter

15   "MT," and there's another letter "A."                        14:50:37

16            Do you see that?

17       A.   Yes.

18       Q.   And are those users of the decentralized web

19   page?

20            MS. CARUSO:   Objection.   Lacks foundation.        14:50:46

21   Calls for speculation.

22            THE WITNESS:   I have no idea.

23       Q.   BY MS. KIRK:   You have no idea.

24            So you did not investigate whether the circles

25   next to General Purpose Face ID that have the letter A, a    14:50:58

                                                      Page 131

1   photograph, another circle with a photograph, the letters

2   MT, and another letter A, were users of Mr. Ravine's

3   website?

4        A.   No, I did not.

5        Q.   Okay.  And so again, let's just go up and look        14:51:12

6   at the date of this.

7             Can you tell me what the date of this printout

8   is?

9        A.   This printout was captured, Exhibit 59, on

10  August 18th of 2022.                                            14:51:37

11            MS. KIRK:  All right.  I think my associate told

12  me there's one more document that I'm going to try to

13  get, and then we're going to wrap up.

14            This should be fast because I'm going -- my

15  associate sent me a script that I'm very grateful for        14:52:38

16  so...

17            All right.

18            MS. CARUSO:  So I just want to remind you that

19  we told the other deposition to start with Exhibit 60.

20            MS. KIRK:  This is our last exhibit.  I          14:53:05

21  apologize.

22            MS. CARUSO:  But they've probably already marked

23  it.  So you might want to do like Exhibit 100 or

24  something just to make sure we don't have an overlapping.

25            MS. KIRK:  There's --                           14:53:14

Page 132

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            MS. BREWER:  There's two exhibits, actually.

 2            MS. KIRK:  There's two exhibits.  Okay.  Can we

 3    change -- I am going to change this to 100.  I like the

 4    Courts where you can do like 100 and then a thousand

 5    because it prevents this problem, so...            14:53:41

 6            (Exhibit 100, License Agreement (Trademark),

 7            03/01/19, OPENAI-RAV-00014184 - 188, was marked

 8            for identification by counsel electronically.)

 9            MS. KIRK:  So I'm going to introduce

10    Exhibit 100.                                        14:53:50

11            All right.  Let me know when you can see this.

12            THE WITNESS:  It's still spinning, but -- okay,

13    it's up now.

14        Q.  BY MS. KIRK:  Okay.  My apologies.

15            Okay, do you recognize this particular document?  14:54:15

16        A.  Yes.

17        Q.  And what is this document?

18        A.  This is a license agreement between OpenAI,

19    Inc., and OpenAI, L.P.

20        Q.  And if I recall, OpenAI, L.P., is the entity    14:54:33

21    that was created in 2018; is that correct?

22        A.  Yes.  I believe they were created in 2018.

23        Q.  And so as of March 1st, 2019, this agreement is

24    entered into, and it's a transfer of certain license

25    marks; correct?                                      14:55:02
```

Page 133

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MS. CARUSO:  Objection.  Mischaracterizes the

 2      record.

 3              THE WITNESS:  Yeah.  I don't think it transfers

 4      any.

 5         Q.  BY MS. KIRK:  Oh, I'm sorry.  My apologies.      14:55:10

 6              So it licenses to OpenAI, L.P., the use of

 7      particular marks?

 8         A.  Yes.

 9         Q.  Okay.  And what marks were licensed under this

10      particular agreement?                                  14:55:26

11         A.  The marks that are licensed in the agreement are

12      OpenAI and the logo which is found in Registration Number

13      5448123.

14         Q.  Okay.  And were there any other license

15      agreements entered into between OpenAI, Inc., and any    14:55:49

16      other party for the mark OpenAI?

17         A.  I'm not aware of any.

18         Q.  Okay.  Has your firm licensed any -- strike

19      that.

20              Has your firm been involved in a licensing of    14:56:09

21      any OpenAI mark owned by OpenAI, Inc.?

22         A.  No.

23              MS. KIRK:  And did -- and then I think -- I

24      think, Margret, I have a couple of questions about the

25      exhibit that was just produced, I think, and I will      14:56:38
```

Page 134

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   introduce this as, I guess, 101.

 2              (Exhibit 101, Cyber Background Checks, Guy

 3              Ravine, 12/08/22, OPENAI-RAV-00017801 - 803, was

 4              marked for identification by counsel

 5              electronically.)                          14:56:49

 6              MS. KIRK:  Okay.  And I will introduce this as

 7   Exhibit 101.  And let me know when you can see it.

 8              THE WITNESS:  Okay.

 9       Q.  BY MS. KIRK:  Okay.  So do you recognize this

10   document?                                            14:57:50

11       A.  Yes.

12       Q.  And what is this document?

13       A.  It is a printout that I saved on August -- I'm

14   sorry, December 8, 2022, from a website called Cyber

15   Background Checks.                                    14:58:08

16       Q.  Okay.  And so you conducted a -- strike that.

17              So I see Mr. Ravine's name.  Do you see that?

18       A.  Yes, Guy Ravine's name is on the website.

19       Q.  And did you conduct a background check of Guy

20   Ravine?                                               14:58:31

21       A.  I did not, no.

22       Q.  Okay.  So why did you print out this particular

23   document that shows a background check of Guy Ravine?

24       A.  I don't think this is a full background check or

25   anything.  This was just a website I found that showed  14:58:46
```

Page 135

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  the email address that was listed on the Open.AI, who is

2  the jeffblarson@gmail.com that showed -- it listed that

3  domain -- sorry, email address being associated with Guy

4  Ravine.

5      Q.  Okay.  So you searched on the Whois email          14:59:08

6  address for Larson and you got hits for Guy Ravine.

7          MS. CARUSO:  Objection.

8      Q.  BY MS. KIRK:  Correct?

9          MS. CARUSO:  Mischaracterizes the record and the

10  witness' testimony.                                        14:59:27

11     Q.  BY MS. KIRK:  Okay.  So -- but I do want to get

12  like a clear statement just so I can understand because

13  it is a new document that we haven't seen.

14          So once you got the Whois report, did you do a

15  search for any of the information in the Whois report?     14:59:45

16     A.  Yes.

17     Q.  Okay.  And what information in the Whois report

18  did you search?

19     A.  I searched the email address, Jeff B. Larson.

20     Q.  And when you searched the email address Jeff B.     15:00:04

21  Larson, what were the results?

22     A.  I believe that it pulls -- a Google search for

23  that email address pulled this website.

24     Q.  Okay.  So when you searched for Jeff B. Larson,

25  you found this website with Guy Ravine's name; correct?    15:00:24

Page 136

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          A.   I believe so.

 2          Q.   And when you saw this website with Guy Ravine's

 3     name, did you recognize who Guy Ravine was?

 4              MS. CARUSO:   Objection.  Vague.

 5              THE WITNESS:   I knew the name Guy Ravine, yes.      15:00:47

 6          Q.   BY MS. KIRK:   So when you saw the Cyber

 7     Background Checks web page printout with Guy Ravine's

 8     name, you knew who Guy Ravine was; correct?

 9              MS. CARUSO:   Objection.  Vague.

10              THE WITNESS:   I saw this web page as associating   15:01:02

11     this email address with a person named Guy Ravine.

12          Q.   BY MS. KIRK:   Okay.  And when you saw Guy

13     Ravine's name on this particular web page, did you

14     recognize him as the owner of the registration that was

15     cited against the OpenAI trademarks in 2017?  I believe   15:01:26

16     that's US Serial Number 87178985?

17          A.   I -- I believed that this was the Guy Ravine

18     that owned the application that was raised as a potential

19     objection in that initial Office Action for that

20     application, yes.                                          15:01:55

21          Q.   Did OpenAI conduct any other research into Guy

22     Ravine, Open.AI, or OpenA -- or Open Artificial

23     Intelligence, Inc.?

24              MS. CARUSO:   Objection.

25              MS. KIRK:   I'll state that more clearly,          15:02:23
```

Page 137

1    Margret, because I knew you were going to get me.  Sorry,

2    it's the end of the day.

3        Q.  So did you conduct any other research into Guy

4    Ravine, Open.AI, or Open Artificial Intelligence, Inc.?

5            MS. CARUSO:  Objection.  Outside the scope to        15:02:42

6    the extent that it seeks information from before

7    January 1st, 2016.

8            MS. KIRK:  So let me rephrase.  Let me rephrase.

9        Q.  After January 1st, 2016, did you conduct any

10   other research into Guy Ravine, Open Artificial              15:03:00

11   Intelligence, Inc. or Open.AI?

12           MS. CARUSO:  Objection.  Asked and answered.

13           THE WITNESS:  I -- I believe I did some other

14   research.  I -- I don't know what all we're categorizing

15   as all the research.                                          15:03:23

16       Q.  BY MS. KIRK:  And have you provided all of that

17   research for production in this litigation?

18       A.  Yes.  I've provided everything that I

19   documented.

20           MS. KIRK:  Okay.  I do not think I have any          15:03:40

21   further questions.

22           MS. CARUSO:  Okay.  If we could have five

23   minutes just for me to check and see if we have anything.

24           MS. KIRK:  Okay.

25

                                                    Page 138

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              (Recess.)                              15:04:00

 2

 3              THE VIDEOGRAPHER:  We are on the record at

 4    3:15 p.m., and this is the beginning of Media 7 in the

 5    deposition of Rebecca McCurry.

 6

 7                        EXAMINATION                   15:15:09

 8    BY MS. CARUSO:

 9        Q.  Ms. McCurry, earlier you were asked about

10    whether OpenAI, Inc., has license agreements with any

11    other entities to use the OpenAI mark on their goods and

12    services.                                        15:15:27

13              Do you remember that?

14        A.  Yes.

15        Q.  Is there anything further you would like to say

16    on that issue?

17        A.  Yes.  I previously answered that I didn't know  15:15:35

18    if there were any other licenses of the OpenAI mark, and

19    I've now confirmed that there are no other licenses.

20              MS. CARUSO:  Thank you.  No further questions.

21              THE REPORTER:  Nothing further from you,

22    Counsel?                                         15:15:58

23              MS. KIRK:  No.

24              THE VIDEOGRAPHER:  Okay.  So we are going off

25    the record at 3:16 p.m., and this concludes today's
```

Page 139

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    testimony given by Rebecca McCurry.  The total number of

2    media units used was seven and will be retained by                15:16:09

3    Veritext.

4            (Time noted: 3:16 p.m. Pacific Standard Time.)

5                        --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 140

```
1    STATE OF CALIFORNIA    ) ss:

2    COUNTY OF MARIN        )

3

4         I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3452, do

5    hereby certify:

6         That the foregoing deposition testimony was

7    taken before me at the time and place therein set forth

8    and at which time the witness was administered the oath;

9         That testimony of the witness and all objections

10   made by counsel at the time of the examination were

11   recorded stenographically by me, and were thereafter

12   transcribed under my direction and supervision, and that

13   the foregoing pages contain a full, true and accurate

14   record of all proceedings and testimony to the best of my

15   skill and ability.

16        I further certify that I am neither counsel for

17   any party to said action, nor am I related to any party

18   to said action, nor am I in any way interested in the

19   outcome thereof.

20        IN WITNESS WHEREOF, I have subscribed my name

21   this 18th day of December, 2024.

22

23

24   LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462

25
```

Page 141

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    MARGRET M. CARUSO, ESQ.

2    margretcaruso@quinnemanuel.com

3                                        December 19, 2024

4    RE: Openai, Inc v. Open Artificial Intelligence, Inc

5    12/6/2024, Rebecca McCurry, Esq., (#7055674).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20       Contact Veritext when the sealed original is required.

21    __ Waiving the CA Code of Civil Procedure per Stipulation of

22       Counsel - Original transcript to be released for signature

23       as determined at the deposition.

24    __ Signature Waived - Reading & Signature was waived at the

25       time of the deposition.
```

Page 142

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    xx Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2        Transcript - The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, notating the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 143

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          I declare under the penalty of perjury under the

2    laws of the State of California that the foregoing is

3    true and correct.

4          Executed on _____, 2024, at

5    _____, _____.

6

7

8

9

10

11          _____

12                SIGNATURE OF THE WITNESS

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 144

```
 1    Openai, Inc v. Open Artificial Intelligence, Inc

 2    Rebecca McCurry, Esq. (#7055674)

 3

 4                    E R R A T A   S H E E T

 5    PAGE_____ LINE_____ CHANGE_____

 6    _____

 7    REASON_____

 8    PAGE_____ LINE_____ CHANGE_____

 9    _____

10    REASON_____

11    PAGE_____ LINE_____ CHANGE_____

12    _____

13    REASON_____

14    PAGE_____ LINE_____ CHANGE_____

15    _____

16    REASON_____

17    PAGE_____ LINE_____ CHANGE_____

18    _____

19    REASON_____

20    PAGE_____ LINE_____ CHANGE_____

21    _____

22    REASON_____

23

24    _____       _____

25    (Rebecca McCurry, Esq.)            Date
```

Page 145