QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert P. Feldman (Bar No. 69602)
 bobfeldman@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
 margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000

Robert Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Aaron Perahia (Bar No. 304554)
 aaronperahia@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

Sam Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Telephone: (415) 875-6600

Dylan Scher (*pro hac vice*)
 dylanscher@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016-7103
Telephone: (212) 849-7000

*Attorneys for Plaintiff OpenAI, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| OPENAI, INC., a Delaware corporation, | Case No. 4:23-cv-03918-YGR |
| Plaintiff, | The Hon. Yvonne Gonzalez Rogers |
| vs. | **PLAINTIFF OPENAI, INC.'S RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation, and GUY RAVINE, an individual, | |
| Defendants. | Date:     June 17, 2025 |
| | Time:     2:00 pm |
| AND RELATED COUNTERCLAIMS. | Place:    Courtroom 1 (4th Floor) |
| . | 1301 Clay Street |
| | Oakland, California 94612 |
| | Trial Date:          October 20, 2025 |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' ADDITIONAL MATERIAL FACTS

Pursuant to the Court's Standing Order in Civil Cases, Plaintiff OpenAI, Inc. ("OpenAI") submits this Response to Defendants' Statement of Additional Material Facts in Opposition to Plaintiff's Motion For Summary Judgment.[1]

| ISSUE | DEFENDANTS' ADDITIONAL MATERIAL FACTS | | PLAINTIFF OPENAI'S RESPONSE |
|---|---|---|---|
| 1 | **Fact 81:** Ravine is an entrepreneur who has been involved in various companies within the tech industry for the last twenty-five years. | Ravine Decl. ¶¶2-4. | Fact 81 presents an immaterial statement. Because of that, Fact 81 does not raise a genuine issue of material fact for purposes of this motion. *Immaterial:* This general statement of Ravine's employment history is immaterial to the validity or timing of Defendants' asserted trademark rights. |
| 1 | **Fact 82:** In 2012 Ravine launched a tool called "Wikineering," a not-for-profit online platform for engineers and researchers to collaborate on various ideas and projects. | Dkt. 38-2 ¶5; Brewer Decl. Ex. 29; Ravine Decl. ¶7, Ex. 2. Tenery Decl. Ex. 2 ¶¶73, 77, 111-113. | Fact 82 presents an immaterial statement. Because of that, Fact 82 does not raise a genuine issue of material fact for purposes of this motion. *Immaterial:* Wikineering branding is irrelevant to the validity or timing of Defendants' asserted trademark rights in the "Open AI" Mark. Ravine's Wikineering tool was not at the open.ai domain, and in 2012, it was not operated under the "Open AI" Mark.  *See* RUF 25; Ravine Decl. ¶ 12 (describing 2015 "rebrand[ing]" of Wikineering site "with the mark 'Open AI'"). |
| 1 | **Fact 83:** In mid to late-2014, Ravine expanded Wikineering by launching an AI- | Ravine Decl. ¶10; Tenery Decl. Ex. 1 ¶¶72-78, 80-84; Ex. 2 ¶¶73-84. | Fact 83 presents an immaterial statement. Because of that, Fact 83 does not raise a genuine issue of material fact for purposes of this motion. |

---

[1]  As used herein, "SUF" refers to Plaintiff's corrected statement of undisputed fact (Dkt. 242); "RUF" refers to Defendants' corrected response (Dkt. 271) to Plaintiff's corrected statement of undisputed fact (Dkt. 242); "S/RUF" refers collectively to Plaintiff's corrected statement of undisputed fact (Dkt. 242) and Defendants' corrected response (Dkt. 271); "RAF" refers to Plaintiff's response to Defendants' additional material fact herein; and "S/RAF" refers collectively to Defendants' additional material fact and Plaintiff's response thereto herein.

| | | | | |
|---|---|---|---|---|
| | | specific discussion page on the platform. | | *Immaterial:* Wikineering branding is irrelevant to the validity or timing of Defendants' asserted trademark rights in the "Open AI" Mark. Ravine's Wikineering tool was not at the open.ai domain, and in 2014, it was not operated under the "Open AI" Mark. *See* RUF 25; Ravine Decl. ¶ 12 (describing 2015 "rebrand[ing]of Wikineering site "with the mark 'Open AI'"). |
| | 1, 3 | **Fact 84:** By early 2015 Ravine began to focus on AI more than generalized engineering issues and on March 25, 2015, he rebranded AI content on Wikineering as "OpenAI" (in the upper lefthand corner) and the tool became known as the "Initial Collaboration Tool." | Ravine Decl. ¶12-17; Brewer Decl. Ex. 1 at 17:21-18:9; 19:17-20:17; 20:21-21:10; 27:19-28:13, Brewer Decl. Exs. 62-63; Belkin Decl. ¶5; McMurray Decl. ¶¶5-6; Gaer Decl. ¶¶5-6; Tenery Decl. Ex. 1 ¶¶80-84. | Fact 84 presents an immaterial statement, which is unsupported as to "the tool became known as the 'Initial Collaboration Tool.'" Because of that, Fact 84 raises no genuine issue of material fact for the purpose of this motion. *Immaterial:* Statements about Ravine's "focus" are immaterial to the validity and timing of Defendants' asserted trademark rights. Ravine's "rebranding" of AI content on Wikineering as "OpenAI" is immaterial to establishing continuing use in commerce in light of the discontinuation of the Initial Collaboration Tool in February 2016 and Defendants' conceded non-use of "OpenAI" in commerce between February 2016 and the start of September 2016. *See, e.g.*, S/RUF 31, 32, 59-61; Ravine Decl. ¶ 19 (Ravine admitting he "now know[s]" that his sign-up page in December 2015 was an "improper specimen of [his] use of the Open AI Mark"). *Unsupported:* The cited evidence does not support that the tool "became known" as the Initial Collaboration Tool except during this litigation. *See* Gaer Decl. ¶ 5 ("It is my understanding that the project I saw on the Wikineering site in 2015 has been referred to as the 'Initial Collaboration Tool' in this lawsuit"). |
| | 1 | **Fact 85:** Testimony (from at least 5 witnesses) and documents from 2015 confirm that the Initial Collaboration | Brewer Decl., Ex. 1 at 17:21-18:9, 19:17-20:17; 20:21-21:10; 27:19-28:13; 98:9- | Fact 85 presents an immaterial and unsupported statement. Because of that, Fact 85 does not raise a genuine issue of material fact for purposes of this motion. |

| | | | |
|---|---|---|---|
| | Tool existed in 2015, prominently featured the OpenAI Mark, and had users. | 19; 101:5-14, Exs. 62-63; Belkin Decl. ¶4; McMurray Decl. ¶¶5-7; Gaer Decl. ¶¶5-6; Ravine Decl. ¶¶12-17. | **Immaterial:** The display of the OpenAI Mark on the Initial Collaboration Tool is immaterial in light of the discontinuation of the Initial Collaboration Tool in February 2016. *See* R/SUF 31. Any display of the OpenAI Mark from March 25, 2015 to February 2016 predates Defendants' conceded non-use of "Open AI" in commerce between February 2016 and the start of September 2016. *See, e.g.*, S/RUF 31, 32, 59-61; Ravine Decl. ¶ 19. Even if the evidence showed use in commerce, it would be immaterial to establishing continuous use in commerce.

**Unsupported:** The cited evidence does not support that the Initial Collaboration Tool "had users" beyond direct employees and associates of Ravine.
  - Sergey Belkin and Nikita Gaer were developers hired by Ravine. Belkin Decl. ¶¶ 3-6 (Belkin "worked with" and was "hired" by Ravine); Gaer Decl. ¶ 3 (Gaer began working for Ravine in "May 2014" and "generally worked for him 40 hours per week"); Scher Decl. Ex. D (Ravine Tr.) at 10:19-11:19 (Ravine referring to Gaer as an employee).
  - Kirk McMurray "worked on" Wikineering with Ravine. McMurray Decl. ¶ 3 ("we worked on a number of different projects over the next decade").
  - Deborah Reynolds was Ravine's landlord and an investor in Ravine's initiatives, including at least the We Communicate and Video.io, and also facilitated others' investments in Ravine's projects. Scher Decl. Ex. G (Reynolds Tr.) at 64:9-13, 74:24-76:1. Invoices cited by Ravine show that Video.io and We Communicate sometimes paid expenses related to Ravine's Open AI websites. Scher Decl. Ex. A. Ravine has referred to McMurray and Reynolds as ████████ Perahia Decl. Ex. 10 (Ravine Tr.) at 55:4-22; *see also* Scher Decl. Ex. G (Reynolds Tr.) at 134:18-136:10 |

| | | | | (discussing hosting Ravine for holidays, attending birthday parties, and claiming he has been to her home "probably more than 50" times); 139:2-8 (in 2024, "we checked in with each other once a month or something").<br><br>None of these witnesses (aside from Ravine) testified that he or she used the Initial Collaboration Tool for its intended purpose, *i.e.* to create and share content. Reynolds testified that the pages she saw on Wikineering were pages that "he [Ravine] created."  Brewer Decl. Ex. 1 at 21:1-4.<br><br>The cited documents include screenshots from the Initial Collaboration Tool (or a similar website) taken by Ravine, and do not establish that the Initial Collaboration Tool "had users" or was used in commerce. |
| 1 | **Fact 86:** Results from a forensic analysis confirm that the websites that hosted the Initial Collaboration Tool were continuously used from April 2014 through 2016. | Tenery Decl. Ex. 1 ¶¶72-78, 80-84; Ex. 2 ¶¶44-46, 64. | Fact 86 presents an immaterial unsupported statement.  Because of that, Fact 86 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>It is immaterial whether websites without "Open AI" branding and goods and services were "used."  There is no evidence Defendants used "Open AI" in 2014.<br><br>It is immaterial whether websites with "Open AI" branding and goods and services were used before February 2016 given Defendants' discontinuation of the Initial Collaboration Tool in February 2016 and Defendants' conceded non-use of "OpenAI" in commerce between February 2016 and the start of September 2016.  *See, e.g.*, S/RUF 31, 32, 59-61; RAF 84-85; Ravine Decl. ¶ 19.<br><br>*Unsupported:*<br>None of the cited evidence supports that the Initial Collaboration Tool was "continuously used" during this period.  To the contrary, the cited forensic report indicates Defendants' expert was "unable to confirm the appearance of the Initial Collaboration Tool on the Wikineering |

| | | | | |
|---|---|---|---|---|
| 1 | | | | page with the OpenAI brand." Tenery Decl. Ex. 1 ¶ 83.

The cited evidence does not support Defendants' asserted continuous use in connection with "Open AI" branding. Exhibit 1 to the Tenery Declaration discusses two "unique users" who visited the "Initial Collaboration Tool" between September 13, 2014 to December 17, 2014 (Tenery Decl. Ex. 1 ¶ 82-83), but it is undisputed that the Initial Collaboration Tool did not exist in 2014. *See* S/RAF 83-84 (referring to an "AI-specific discussion page on the [Wikineering] platform" in 2014, which was "rebranded" as Open AI and became what is now referred to as the Initial Collaboration Tool in 2015).

The cited expert reports do not support that any of the approximately 140 US-based users of Wikineering (many of whom visited Wikineering *before* the Initial Collaboration Tool was created (*compare* Tenery Decl. Ex. 1, Exhibit K, Figure 3 *with* S/RAF 83-84)) encountered the Initial Collaboration Tool after it became available on the Wikineering website.

None of the cited evidence supports that the Initial Collaboration Tool was used after February 2016. *Cf.* S/RUF 31. |
| 18 | 1 | **Fact 87:** On March 26, 2015 (*i.e.*, the day after launching the Open AI-branded Initial Collaboration Tool), Ravine purchased the domain name "open.ai" to use as a website for his Open AI brand. | Brewer Decl. Ex. 60; Tenery Decl. Ex. 1 at ¶60; Dkt. 38-2 at ¶6.; Ravine Decl. ¶13, Exs. 4, 5. | Fact 87 presents an immaterial statement. Because of that, Fact 87 does not raise a genuine issue of material fact for purposes of this motion.

*Immaterial:*
The purchase of a domain name is immaterial to the validity and timing of Defendants' asserted trademark rights. Defendants do not tie the purchase of this domain to any goods or services that were actually offered, much less any existed after the conceded non-use of Open AI in commerce between February 2016 and the start of September 2016. *See, e.g.*, S/RUF 31, 32; 59-61; RAF 84-85; Ravine Decl. ¶ 19. |
| 27 | 1 | **Fact 88:** Ravine hired Sergey Belkin to design the Open AI | Belkin Decl. ¶4; Ravine Decl. ¶15. | Fact 88 presents an immaterial statement. Because of that, Fact 88 does not raise a |

| | | | |
|---|---|---|---|
| logo and the landing page for the open.ai website. | | | genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>Creation of a logo is immaterial to the validity and timing of Defendants' asserted trademark rights.<br><br>Creation of a landing page and logo for an initiative that was never launched and did not constitute a use in commerce is immaterial to the validity and timing of Defendants' asserted trademark rights. *See* Perahia Decl. Ex. 10 (Ravine Tr.) at 159:4-12 ("Q. When you said in -- on the page of open.ai, 'Announcement will be made soon, what kind of announcement were you referring to? A. I was referring to a wider announcement. The initiative was already in existence. And the wider announcement I was referring to is, we're going to close a bunch of money from -- from Google or some other company. Once that happens, we're going to make the announcement."), 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"), Ex. 13 (Gaer Tr.) at 166:4-8 ("Q. When did you next put something on this website? A. Oh, I don't remember what -- so I think most of the time it was this -- this kind of announcement page."); Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); *see also* S/RUF 24, 59-61; RAF 83-85; Ravine Decl. ¶ 19. |
| 1 | **Fact 89:** On or around April 9, 2015, the open.ai website went live. | Dkt. 38-2 ¶6; Brewer Decl. Ex. 23. | Fact 89 presents an immaterial statement. Because of that, Fact 89 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>The date and fact that a website "went live" is immaterial to the timing and validity of Defendants' asserted trademark rights because Defendants do not tie the |

| | | | |
|---|---|---|---|
| | | | cited evidence to any goods or services that were actually offered in commerce. Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"), Ex. 13 (Gaer Tr) at 166:4-8 ("Q. When did you next put something on this website? A. Oh, I don't remember what -- so I think most of the time it was this -- this kind of announcement page."); Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); *see also* S/RUF 24, 59-61; RAF 83-85; Ravine Decl. ¶ 19. |
| 1 | **Fact 90:** Duplicate Fact 90 omitted. | | No response required. |
| 1 | **Fact 90:** Documents and testimony from at least 6 witnesses confirm that the landing page of open.ai prominently displayed the Open AI Mark, explained the purpose of the initiative, and enabled users to sign up via email. | Ravine Decl. ¶15; Belkin Decl. ¶4; Gaer Decl. ¶¶5-7; Iavarone Decl. ¶4; Brewer Decl. Ex. 1 at 24:25-25:7, 28:23-29:7, Ex. 41, Ex. 51 at Response to RFA 3. | Fact 90 presents an immaterial statement. Because of that, Fact 90 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>Defendants' described landing page, which was not a use in commerce, is immaterial to the validity or timing of their asserted trademark rights. Perahia Decl. Ex. 10 at 160:21-161:1 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"), Ex. 13 (Gaer Tr) at 166:4-8 ("Q. When did you next put something on this website? A. Oh, I don't remember what -- so I think most of the time it was this -- this kind of announcement page."); Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the |

| | | | |
|---|---|---|---|
| | | | picture."); *see also* S/RUF 24, 59-61; Ravine Decl. ¶ 19.<br><br>Defendants' assertion that their landing page "enabled users to sign up via email" is immaterial to their attempts to show use in commerce.  Gaer testified that the "only functionality available to the public was to insert their e-mail address."  Scher Dec. Ex. 13 (Gaer Tr.) at 164:6-13.  These individuals were not "users" in any meaningful or commercial sense—they received no product, no communication, and no service.  Defendants' decision to label passive email sign-ups as "users" illustrates their tendency to stretch basic facts beyond recognition. |
| 1 | **Fact 91:** Ravine pitched Open AI to leaders in the tech industry, including, but not limited to, Google's CEO, Siri's co-founder, and Stripe's CEO. | Ravine Decl. ¶16 & 20; Brewer Decl. Ex. 1 at 25:8-23, Ex. 8 at 38:8-39:25, Ex. 42, Ex. 43 ¶¶6-11, 61-63, Ex. 65. | Fact 91 presents an immaterial statement.  Because of that, Fact 91 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>The fact and its cited evidence is immaterial because it does not connect the pitch activity to any use in commerce or any good or service ever offered in commerce.  It also predates Defendants' conceded non-use of "Open AI" in commerce between February 2016 and September 2016.  *See, e.g.*, S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19.  The pitched initiative never launched.  *See* S/RUF 25. |
| 1 | **Fact 92:** Ravine attended various conferences in an effort to generate interest in Open AI. | Ravine Decl. ¶16; Brewer Decl. Exs. 42, 43 ¶¶7-8 | Fact 92 presents an immaterial and unsupported statement.  Because of that, Fact 92 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>The fact and its cited evidence is immaterial because it does not connect Ravine's attendance at any conference to the use in commerce or any good or service ever offered in commerce.  The "initiative" (Brewer Decl. Ex. 43 ¶ 48) that Ravine attempted to generate interest in was never launched.  *See* S/RUF 25, 32; Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this |

| | | | | |
|---|---|---|---|---|
| | | | | specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"); Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture.").<br><br>Even if the evidence showed use in commerce, it would be immaterial to establishing continuous use in commerce. The evidence relating to conference attendance predates Defendants' conceded non-use of "Open AI" in commerce between February 2016 and the start of September 2016.  *See, e.g.*, S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19; *see also* Ravine Decl. ¶ 16 (referring to conference in May 2015); Brewer Decl. Exs. 42, 43 (describing activity in March and April 2015).<br><br>*Unsupported:*<br>The evidence that Ravine attended a party in connection with the "TED" conference (Brewer Decl. Ex. 42) does not support that Ravine attended this conference. Brewer Exhibit 43 does not mention any conferences.  At most, these exhibits refer to a single discussion Ravine had. |
| 1 | **Fact 93:** Third party testimony and documents confirm Ravine's efforts to promote the Open AI brand before December 11, 2015. | Brewer Decl. Ex. 1 at 25:8-23, Ex. 8 at 38:8-39:25, Ex. 43 ¶¶7-11, Exs. 61-63. | | Fact 93 presents an immaterial statement. Because of that, Fact 93 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>The fact is immaterial to showing continuous use in commerce because Ravine's cited efforts to promote Open AI predate Defendants' conceded non-use of "Open AI" in commerce between February 2016 and September 2016.  *See, e.g.*, S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19.<br><br>Defendants' fact is immaterial to showing use in commerce because the cited evidence does not establish any promotion efforts related to any good or service ever offered in commerce.  Deborah Reynolds testified that Ravine gave a presentation about the "Open AI project" to Google. |

| | | | | |
|---|---|---|---|---|
| | | | | Brewer Decl. Ex. 1 (Reynolds Tr.) at 25:8-23.  Tom Gruber testified that Ravine proposed the Open AI "initiative" to Larry Page, and that he held discussions with Ravine about the "Open AI initiative." Gruber Decl. ¶¶ 8-9.  Brewer Exhibits 62 and 63 relate to Ravine's "potential idea" for an "AI School."  Ravine Decl. ¶ 17.  None of these "projects," "initiatives," or "ideas" were ever launched.  Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"); Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture.").<br><br>The fact of Defendant's 2015 activity is also immaterial to establishing continuous use in commerce because it predates Defendants' conceded non-use of "Open AI" in commerce between February 2016 and the start of September 2016.  *See* S/RUF 24, 59-61; RAF 83-85; Ravine Decl. ¶ 19. |
| 1, 5 | **Fact 94:** In 2015, Ravine spent $50,000 on his efforts to get his Open AI initiative off the ground, including software development costs, marketing costs, and fundraising activities. | Ravine Decl. ¶¶16, Exs. 6-9; Gaer Decl. ¶8, Ex. 1 & ¶10. | | Fact 94 presents an unsupported and immaterial statement.  Because of that, Fact 94 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Unsupported:*<br>The cited evidence does not support that Ravine's "OpenAI initiative [got] off the ground" or offered goods or services in commerce.  The undisputed evidence shows the OpenAI initiative never "got off the ground."  *See* Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. |

| 1 | | | | We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]")); *see also* S/RUF 24, 59-61; RAF 83-85; Ravine Decl. ¶ 19. |
|---|---|---|---|---|

We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]")); *see also* S/RUF 24, 59-61; RAF 83-85; Ravine Decl. ¶ 19.

*Immaterial:*
Because the initiative never got off the ground, this statement is immaterial to any issue in this motion.

Amounts spent developing software are immaterial to the validity and timing of Defendants' asserted trademark rights or any other issue raised by Plaintiff's motion.

Expenditures made on marketing in 2015 are immaterial to Defendants' claimed rights because Defendants cannot show any continuous use in commerce that began before December 11, 2015 (*see, e.g.*, S/RUF 31, 32). As discussed above, the 2015 initiative was not launched.

The cited bank records from 2015 (Gaer Decl. Ex. 1 at 2-289) do not mention "Open AI" and list the ordering customers as "We Communicate." and "Upwork Escrow Inc." *See also* Scher Decl. Ex. A.

---

**1**

**Fact 95:** By December 10, 2015, Defendants' open.ai website had attracted the attention of a modest but proportionally meaningful portion of the AI research community. At least 393 unique users had visited the website, and about 149 had signed up with their emails.

Tenery Decl. Ex. 1 ¶¶60-66, 72-78, 80-84.; Ex. 2 ¶¶50, 74.; Brewer Decl. Ex. 61

Fact 95 presents an immaterial and unsupported statement. Because of that, Fact 95 does not raise a genuine issue of material fact for purposes of this motion.

*Immaterial:*
It is immaterial that Defendants website "attracted attention" without any showing of use of goods or service, press mentions, social media posts, or any other evidence showing association of "Open AI" with a single source of goods.

User activity as of December 10, 2015 is immaterial to establishing Defendants' trademark rights given Defendants' conceded non-use of "Open AI" in commerce between February 2016 and the start of September 2016. *See* S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19.

Email signups as of December 10, 2015 in connection with an initiative that was never launched are immaterial to use in commerce or the validity of Defendants'

asserted trademark rights. *See* RAF 90; Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]").

It is immaterial that anyone signed up to receive an email about an announcement that was never made, as there is no evidence that anyone who signed up ever received an email from Defendants. *See id.*; Perahia Decl. Ex. 13 (Gaer Tr.) at 166:4-9 (Gaer admitting he could not recall whether any email was ever sent to those addresses).

*Unsupported:*
None of the cited evidence supports that Defendant's open.ai website received "attention" from a "proportionally meaningful portion of the AI research community." The cited expert report reflects that only 41 users who visited open.ai by December 10, 2015 were from the US. Tenery Decl. Ex. 2 ¶ 74. No evidence is offered that any of these 41 users were members of the AI research community (as opposed to, for example, accidental visitors, visits by agents or friends of Ravine, or visits by automated web scrapers).

None of the cited evidence concerns the size of the AI research community as of December 10, 2015, or how many AI researchers would constitute a "modest but proportionally meaningful portion" of this community.

Even if all 41 U.S. users were part of the AI research community, that is not "a proportionally meaningful portion" of the AI research community as of December 2015. *See, e.g.*, Lipson Decl. Ex. A, ¶¶ 12-21; *id.* at 12 (graph showing that attendance at major AI conferences

| | | | | exceeded 20,000 people by 2016); Brewer Decl. Ex. 3 at 41:22-42:1 ("But the entire AI community -- the tens or hundreds of thousand who write, who are interested in AI, who write code using AI or use AI to solve problems -- that community was well aware of -- of OpenAI [in 2016]"). |
|---|---|---|---|---|
| | **Fact 95:** [Fact omitted] [sic] | | | No response required. |
| 1 | **Fact 96:** Plaintiff had settled on the name just days before December 11, 2015, had not filed a trademark registration, and had no goods or services to offer. | Brewer Decl. Exs. 27, 28, 66, Ex. 11 at 108:17-24. | | Undisputed for purposes of this motion. |
| 1 | **Fact 97:** On December 11, 2015, a colleague who knew about Ravine's Open AI notified Ravine that Plaintiff had announced that it was forming OpenAI, Inc. | Ravine Decl. ¶19, Ex. 10. | | Undisputed for purposes of this motion. |
| 1,3 | **Fact 98:** To protect the Open AI brand, Ravine filed an application to register the Open AI mark with the USPTO that same day without assistance of counsel. | Ravine Decl. ¶19; Brewer Decl. Ex. 44. | | Fact 98 is undisputed as to its claim that Ravine filed an application to register "Open AI" on December 11, 2015, but unsupported as to its claim that Ravine had an "Open AI mark" capable of being registered. Because of that, Fact 98 does not raise a genuine issue of material fact for purposes of this motion. <br><br> *Unsupported:* <br> The cited evidence does not support that Ravine had trademark rights in OpenAI in December 2015. <br><br> The USPTO examiner determined that Defendant Ravine's December 11, 2015 application "does not show the applied-for mark in use in commerce" and "does not show the mark used in reference to or in connection with the services in the application." *See* S/RUF 59-61; *see also* Ravine Decl. ¶ 19. |
| 1, 4 | **Fact 99:** [Fact omitted] | | | No response required. |

| 1, 4 | **Fact 100:** On December 12, 2015, Brockman visited www.open.ai and verified that it was an operating website. | Brewer Decl. Ex. 51 at Response to RFA 3. | Fact 100 is undisputed as to Brockman visiting www.open.ai on or around December 15, 2015, but the remainder is immaterial and unsupported. Because of that, Fact 100 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Unsupported:*<br>The cited evidence reflects that Mr. Brockman visited www.open.ai after receiving an email from Mr. Ravine with that domain name and saw the webpage reflected in the Internet Archive's capture of it in December 2015, a copy of which is attached to the Scher Declaration as Exhibit R (filed at Dkt. 46-3); *see also* Scher Decl. Ex. Q (Dkt. 46), ¶ 5. As that image reflects, the website at that time did not reflect use in commerce or any goods or services being offered. *See also* S/RUF 59-61; RAF 83-85; Ravine Decl. ¶ 19. This does not support that Mr. Brockman "verified it was an operating website."<br><br>*Immaterial:*<br>Even if Defendants use "operating" to mean nothing more than what Mr. Brockman confirmed, it is immaterial to establishing trademark rights that a website is "operational" if it is not offering goods and services or promoting goods and services that are eventually offered–which the December 15, 2015 website was not doing. *See* RAF 90; Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"); S/RUF 59-61; RAF 83-85; Ravine Decl. ¶ 19. |
| 1, 4 | **Fact 101:** On December 16, 2015, Brockman met Ravine in person and asked Ravine to | Brewer Decl. Ex. 11 at 69:19-70:5, Ex. 30, Ex. 55; | Undisputed for purposes of this motion. |

| | | | | |
|---|---|---|---|---|
| | | change his venture's name to something other than Open AI—but Ravine declined. | Ravine Decl. ¶¶20-21. | |
| 1, 4 | | **Fact 102:** Out of Ravine' presence, Altman admitted he wanted Defendants to "change their name," and Brockman assured Altman he was "working on it" and "playing a medium-term game." | Brewer Decl. Ex. 30. | Undisputed for purposes of this motion. |
| 1 | | **Fact 103:** By April 27, 2016, Ravine's website had received over 17,000 interactions for thousands of unique users and nearly 1,000 verified email signups. | Tenery Ex. 1 ¶63 (17,384 interactions, 2,629 unique users, 998 email signups). | Fact 103 presents an immaterial statement. Because of that, Fact 103 does not raise a genuine issue of material fact for the purpose of this motion. *Immaterial:* User activity as of April 2016 is immaterial to establishing Defendants' trademark rights given Defendants' conceded non-use of "Open AI" in commerce between February 2016 and the start of September 2016. *See* S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19. As such, even if the evidence showed use in commerce, it would be immaterial to establishing continuous use in commerce. Verified email signups as of April 2016 in connection with an initiative that was never launched are immaterial to the validity of Defendants' asserted trademark rights. *See* RAF 90; Dkt. 100 ¶ 125 ("Relying on these [2015] assurances Ravine stopped pursuing the OpenAI initiative because as Brockman implied, it was indeed true that they stole the thunder of the original OpenAI now that there is one with Musk's $1 billion in the picture."); Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25 ("Q. Okay. And so you didn't -- you ultimately never did make the announcement that was referenced in this specimen, right? A. No. We couldn't -- we didn't get funding, ultimately, for the Open AI initiative[.]"); *see also* S/RUF 59-61; Ravine Decl. ¶ 19. |

| | | | | It is immaterial that anyone signed up to receive an email about an announcement that was never made, as there is no evidence that anyone who signed up ever received an email from Defendants. *See* Perahia Decl. Ex. 10 (Ravine Tr.) at 160:21-25, Ex. 13 (Gaer Tr.) at 164:6-13 (Gaer admitting he could not recall whether any email was ever sent to those addresses). |
| | | | | The cited evidence concerning the number of "interactions" a website had is not material to establishing Defendants' asserted trademark rights. Mr. Tenery's measure of "interactions" is not a proxy for web traffic, the number of registered or unregistered users, or the number of times the claimed services offered by any website were used; rather, it includes any "requests made of the web server," which separately counts whenever a server loads asset files, such as an image, script, or stylesheet that is contained within a broader webpage. Mr. Tenery testified that "a single web page visit" by one user "could generate 10 or more interactions in [his] counts." Scher Decl. Ex. I (Tenery Tr.) at 138:23-139:1. |
| 1 | **Fact 104:** Hub had numerous features, for collaboration and sharing, and cost $45,000 to develop. | Ravine Decl. ¶26; Response to Facts 33-35. | Fact 104 presents an immaterial and unsupported statement. Because of that, Fact 104 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Development costs associated with creating a website and the numerosity of its features are immaterial to Defendants' trademark rights, which require actual, bona fide use.<br><br>*Unsupported:*<br>The cited evidence does not support that Hub cost $45,000 to develop. Ravine "approximat[es]" that he paid $45,000 to Nikita Gaer to develop Hub. Ravine Decl. ¶ 25. Defendants' fact is not similarly qualified.<br><br>The bank records submitted by Gaer (Gaer Decl. Ex. 1) do not mention "Open AI"; most records from 2015 through November 2016 list the ordering customer |

| | | | | |
|---|---|---|---|---|
| | | | | as "We Communicate" (e.g., *id.* at 27, 30, 33, 36, 39), with records from December 2016 listing the ordering customer as "Upwork Escrow Inc." (*e.g., id.* at 90, 93, 96, 99, 102, 105). *See also* Scher Decl. Ex. A. |
| | 1, 4 | **Fact 105:** On January 5, 2017, the USPTO issued a non-final Office Action rejecting Plaintiff's 2016 trademark application, partially on the grounds that there was a "likelihood of confusion" with Ravine's Open AI Mark and then Plaintiff abandoned the application. | Brewer Decl. Ex. 7 at 107:1-3, 11-18, 108:3-19, 110:23-111:2, 111:8-17; Ex. 19 at 4-30. | Fact 105 is undisputed as to Plaintiff's abandonment of its 2016 application following the USPTO's January 5, 2017 non-final office action, but the remainder of Fact 105 is immaterial and unsupported. Because of that, Fact 105 does not raise a genuine issue of material fact.<br><br>*Unsupported:*<br>The cited evidence does not support Defendant's fact. Brewer Exhibit 19 reflects that the USPTO office action stated that Ravine's "*pending application may* present a bar to registration," such that "*[i]f* the mark in the referenced application registers, applicant's mark *may* be refused … because of a likelihood of confusion." Brewer Decl. Ex. 19 at 6 (emphasis added). It stated that Plaintiff "may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application, and that Plaintiff's "election not to submit arguments at this time in no way limits applicant's right to address this issue later." *Id.* Nothing in the cited testimony (Brewer Ex. 7) contradicts this.<br><br>*Immaterial:*<br>The cited evidence is immaterial to the timing or validity of Defendants' asserted trademark rights or Plaintiff's laches defense. *See* SUF 31-34, 58-63, 69, 71-77; McCurry Decl. ¶ 6 ("Nothing in my investigation showed that Guy Ravine had made a use in commerce of the 'Open AI' mark in March of 2015 or at any time before I filed OpenAI's applications with the PTO to register its 'Open AI' trademarks."). |
| | 1, 4 | **Fact 106:** In response to the Office Action, Plaintiff's then-COO Chris Clark emailed Brockman, asking | Brewer Decl. Ex 58. | Undisputed for purposes of this motion. |

| | | | | |
|---|---|---|---|---|
| | | about Ravine's trademark. Brockman responded: "Yes, I've met him. He's a bit weird. Had been trying to make open.ai into a thing. May be willing to give up on open.ai now though." | | |
| | 1, 4 | **Fact 107:** Brockman visited Ravine's open.ai website and confirmed that it could still be accessed but took no action to contact Ravine or the USPTO about Ravine's trademark. | Brewer Decl. Ex 11 at 87:12-19. | Fact 107 presents an immaterial statement. Because of that, Fact 107 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>The fact that Defendants' website could be "accessed" in March 2017 is immaterial to Defendants' trademark rights or Plaintiff's laches defense.  Scher Decl. Ex. B (Brockman Tr.) at 87:8-15, 87:25-88:6.  At that time, the open.ai website displayed "the same thing that had been there before" (*id.* at 87:13-15); *i.e.*, the open.ai landing page in December 2015 (*see id.* Ex. Q (Dkt. 46-3), Ex. R (Dkt. 46) ¶ 5 ("The appearance of the webpage when I visited Mr. Ravine's webpage in December 2015 was consistent with Mr. Ravine only having 'idea[s]', not a product or service he was actually offering.")).  Without evidence that Brockman knew of Ravine's use in commerce, it is immaterial that he "took no action" about Ravine's claimed trademark. |
| | 1, 4 | **Fact 108:** When Plaintiff filed its January 26, 2022 trademark applications, it knew about Ravine's registration and that Defendants' open.ai website and subdomains were still in use. | Brewer Decl. Ex. 7 at 70:11-21, 89:2-90:19 | Fact 108 is undisputed as to Plaintiff being aware of the fact of Defendants' Supplemental Registration and open.ai webpage on January 26, 2022, but the remainder is immaterial and unsupported. Because of that, Fact 108 does not raise a genuine issue of material fact for purposes of this motion.<br><br>*Immaterial:*<br>That a trademark attorney acting on behalf of Plaintiff OpenAI became aware of Defendants' registration and certain webpages in December 2021 (*see* Scher Decl. Ex. C (McCurry Tr.) at 12:13-13:6, 37:17-20) is immaterial to Defendants' rights or Plaintiff's laches defense— |

PLAINTIFF OPENAI'S RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS

| | | | | |
|---|---|---|---|---|
| | | | | particularly because she did not believe that Defendants' websites were being used in commerce. *See* McCurry Decl. ¶ 6 ("Nothing in my investigation showed that Guy Ravine had made a use in commerce of the 'Open AI' mark in March of 2015 or at any time before I filed OpenAI's applications with the PTO to register its 'Open AI' trademarks."); Brewer Decl. Ex. 7 at 90:2-7 (content on hub.open.ai "appeared to copy posts from the website GitHub").<br><br>*Unsupported:*<br>The cited evidence does not support that Defendants' open.ai website and subdomains were used in commerce, much less that Plaintiff knew of it. *Cf.* SUF 33, 34, 62.<br><br>The cited testimony does not support that McCurry–or anyone else associated with Plaintiff–was aware of more than one "subdomain" of open.ai on January 26, 2022 (let alone all of its subdomains). The only subdomain discussed in the cited testimony is hub.open.ai, which Ravine's specimen identified. *See* SUF 62; *see also* SUF 33, 34. |
| 1, 4 | **Fact 109:** After Altman failed to purchase Ravine's "IP rights," Plaintiff continued to monitor Defendants' website and tools. | Brewer Decl. Ex. 7 at 102:3-16, 122:2-25; 123:7-9; 124:23-125:24;126:10-131:4, 135:6-138:15, Ex. 18, Ex. 26. | | Fact 109 presents an immaterial and unsupported statement. Because of that, Fact 109 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>The fact that an attorney representing Plaintiff visited one of Ravine's webpages at some point in 2022 is immaterial to any party's trademark rights or laches. Rebecca McCurry, the attorney whose testimony (Brewer Ex. 7) and documents (*id.*, Ex. 18, 26) are cited, did not believe that Ravine's website or tools were being used in commerce. McCurry Decl. ¶ 6 ("Nothing in my investigation showed that Guy Ravine had made a use in commerce of the 'Open AI' mark in March of 2015 or at any time before I filed OpenAI's applications with the PTO to register its 'Open AI' trademarks."); *see* Scher Decl. Ex. C (McCurry Tr.) at 101:20-102:16, 134:23-135:15 (testifying regarding Exs. 18 & 26). |

| | | | | |
|---|---|---|---|---|
| | | | | *Unsupported:*<br>Brewer Exhibit 26 does not reflect any "monitoring" of "Defendants' website or tools," but information from a Google search. Neither does Brewer Ex. 18, which reflects a February 2022 screen capture of the hub.open.ai webpage identified in Defendants' 2016 PTO specimen.<br><br>None of the cited exhibits establishes a pre-existing "monitor[ing]" of Defendants' website or tools that was "continued." |
| 1, 3, 4 | **Fact 110:** Plaintiff did not consistently and prominently display its OpenAI Mark in connection withs its most popular products, DALL-E and ChatGPT. | Response to Fact 4; Chiagouris Decl. ¶¶26-28 & Ex. 1 ¶¶56-63, Ex. 2 ¶¶23-29, ¶¶36-39; Brewer Decl. Exs. 33, 35, 36, 56, 57, 59 (no OpenAI branding). | Fact 110 presents an immaterial and unsupported statement. Because of that, Fact 110 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Whether Plaintiff "consistently" (as opposed to continuously) and "prominently" displayed its mark in connection with ChatGPT and DALL·E 2 (or DALL·E) is immaterial to whether Plaintiff used its mark in commerce, whether the mark acquired secondary meaning at the relevant time, laches, or Defendants' fraudulent registration.<br><br>The cited evidence does not support the stated fact. It reflects isolated examples from which Defendants and their expert argue the OpenAI Mark was not displayed "consistently" or "prominently" at a given moment. Defendants mischaracterize the evidence they rely upon, stating the mark is not displayed when it is, and providing incomplete portions of documents. *See* Scher Decl. ¶¶ 20-23, Exs. S, T.<br><br>From the initial launch of DALL·E 2 and ChatGPT, Plaintiff has continuously used the OpenAI Mark in connection with DALL·E 2 and ChatGPT. *See, e.g.,* Brockman Decl. Ex. B at 316 (DALL·E 2 Blog Post); Dyett Decl. Ex. K at 6 (ChatGPT Blog Post); Ex. L at 1, 2 (ChatGPT Plus Blog Post); *see generally* Brockman Decl. Ex. B; SUF 4. |

| 1 | **Fact 111:** Defendants spent an estimated $2,000,000 on their Open AI business. Defendants spent $50,000 on marketing before December 11, 2015, $45,000 on work related to OpenAI in 2016, $15,000 developing Hub; $15,000 developing Evolved; $100,000 developing Decentralized; $1,000,000 developing Boom, and $20,000 developing its precursor woahhh! | Ravine Decl. ¶¶16, 22, 26, 29, 32, 36, 41, 43; Brewer Decl. Ex. 9 at 44:19-45:12, Exs. 45-49; Gaer Decl. ¶¶8-10 & Exs. 1-2; Belkin ¶7; Iavarone Decl. ¶11 & Ex. 1. | Fact 111 presents an immaterial and unsupported statement. Because of that, Fact 111 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Amounts spent developing software do not establish use in commerce and are not material to Defendants' trademark rights.<br><br>Amounts spent on marketing before December 11, 2015 are immaterial to proving continuous use in commerce as that predates Defendants' conceded non-use of "Open AI" in commerce between February 2016 and September 2016. *See, e.g.*, S/RUF 31, 32, 59-61; RAF 83-85; Ravine Decl. ¶ 19.<br><br>*Unsupported:*<br>The cited evidence does not support that Defendants "spent $50,000 on marketing before December 11, 2015." Defendant Ravine estimated that he spent $50,000 "on activities related to ***the development and*** marketing of my Open AI business" in 2015. Ravine Decl. ¶ 16 (emphasis added). Ravine establishes, at most $1,000 in marking costs in 2015. *See id.* & Exs. 8, 9; RAF 94. None of the other cited evidence references any marketing expenses.<br><br>The cited invoices and bank records (Gaer Decl. Exs. 1-2; Iavarone Decl. Ex. 1) do not mention "Open AI" or "Open Artificial Intelligence" until November 2022. *See also* Scher Decl. Ex. A. Only one of the tax documents for Yedam Rachel Park mentions "Open AI" or "Open Artificial Intelligence." *See id.* |
| 1, 2, | **Fact 112:**  | Chiagouris Decl. ¶¶15-23, 32-33, Ex. 1 at ¶¶28-50 & 65 & Ex. 2 at ¶¶25-28, 34, 39; Brewer Decl. Exs. 37 (" | Fact 112 presents an immaterial and an unsupported legal conclusion. Because of that, Fact 112 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Whether Plaintiff's OpenAI mark had secondary meaning *as of the date this lawsuit was filed* is not material to any issues raised in Plaintiff's motion, |

| | | | | including the seniority of its trademark rights.<br><br>*Unsupported:*<br>Defendants' cited evidence fails to support an absence of secondary meaning because their evidence and conclusions are not based on the relevant universe for determining secondary meaning–i.e., Plaintiff's consumers–or the relevant question for determining secondary meaning–i.e., whether Plaintiff's consumers recognize "OpenAI" as an indicator of source versus a description of goods and services—not whether the general population can name who created ChatGPT or immediately call to mind the name "OpenAI" in connection with AI products and companies. *See* Reply, Section I.A. |
| 1, 2 | **Fact 113:** Plaintiff did not consistently and prominently display the OpenAI Mark in association with its goods and services or promotion thereof. | Brewer Decl. Ex. 14; Chiagouris Decl. Ex. 1 ¶¶56-64, Ex. 2 ¶¶13-39; Response to Fact 4. | Fact 113 presents an immaterial and unsupported statement. Because of that, Fact 113 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Whether Plaintiff "consistently" (as opposed to continuously) and "prominently" displayed its mark is immaterial to whether Plaintiff's mark acquired secondary meaning or the issue of confusion.<br><br>*Unsupported:*<br>The evidence Defendants cite does not support their stated fact. Defendants and their expert provide a handful of examples (spanning at least a 5-year time period) in which they contend the OpenAI Mark was not displayed "consistently" or "prominently" at a given moment. This mischaracterizes the evidence they rely upon. *See* Scher Decl.¶¶ 20-23, Exs. S, T.<br><br>*Contradicted by the evidence:*<br>Plaintiff has continuously used the OpenAI mark in connection with its products, and it has prominently displayed the mark–i.e., in |

| | | | | a manner that users and likely users are likely to see it. *See, e.g.*, Scher Decl.¶¶ 20-23, Exs. S, T; Brockman Decl. Ex. B; Dyett Decl. Ex. K, L; *see generally* SUF 4. |
|---|---|---|---|---|
| 1, 2 | **Fact 114:** Plaintiff's OpenAI Mark did not have secondary meaning by August 4, 2023. | Chiagouris Decl. & Exs. 1-2; Ex. 6 at 25:3-5, 25:12-26:6. | | Fact 114 presents an immaterial and unsupported legal conclusion. Because of that, Fact 114 does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Immaterial:*<br>Whether Plaintiff's OpenAI mark had secondary meaning *by August 4, 2023* is immaterial to any issues raised in Plaintiff's motion, including the seniority of its trademark rights.<br><br>*Unsupported:*<br>The evidence Defendants cite is insufficient to support their stated "fact." As the Chiagouris Declaration does not contain an Exhibit 6, presumably Defendants intend to cite to Exhibit 6 of the Brewer Declaration, but the cited testimony of Plaintiff's confusion survey expert that he did not *also* conduct a secondary meaning survey does not support Defendants' claimed "fact."<br><br>As discussed in RAF 112, *supra*, the Chiagouris Report is immaterial to the issue of secondary meaning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and "prominence" of branding.<br><br>To the extent the Chiagouris Declaration offers opinions beyond those expressed in his reports, it is improper.<br><br>*Contradicted by the evidence:*<br>Plaintiff's OpenAI mark did acquire secondary meaning by August 4, 2023. *See generally* SUF 1-21. |
| | **Fact 115:** The Open AI Mark is suggestive. | Leonard Decl. Ex. 1; Brewer Decl. Ex. 15 ¶26, Ex. 11 at | | Fact 115 presents an unsupported legal conclusion, which is also untimely because it was not included in Defendants' April 30, 2025 filing. Because of that, Fact 115 |

| | | | 39:24-40:9, 41:1-9, 104:17-105:7; Ex. 5 at 93:16-94:14. | does not raise a genuine issue of material fact for the purpose of this motion.<br><br>*Unsupported:*<br>The evidence Defendants cite is insufficient to support their stated "fact," which improperly contradicts Ravine's prior declaration and Defendants' own counterclaims, which describe Defendants as operating "a literally open AI company." Dkt. 100 ¶ 189; SUF 45.<br><br>The Leonard report fails to provide an opinion that addresses the relevant legal standard for suggestiveness, as it improperly focuses on the definition of "open" to mean "open source." *See* Leonard Decl. Ex. 1 at ¶¶ 63-64. In addition, Leonard does not have the technological credentials required to assess whether "open source" describes any quality or characteristic of Defendants' goods and services (*id.* ¶ 2 (he was "informed by counsel for Defendants that the products/services provided by Defendants were not literally open-source nor non-proprietary"), and he ignored evidence of Defendants' own use of "open" to describe their goods and services.<br><br>Testimony that there are multiple meanings of "open" and not one "universally accepted definition or understanding" (Brewer Decl. Ex. 5 at 93:16-94:14), and that "open" is "open-ended in terms of how you could interpret it," and does not correspond to a single "particular meaning," but rather has "many meanings in the dictionary" (*id.*, Ex. 11 at 39:24-40:9, 41:1-9, 42:1-9, 104:17-105:7) does not support the legal conclusion of non-descriptiveness–i.e., that no meaning of "open" describes the qualities or characteristics of Defendants' goods and services.<br><br>*Contradicted by the evidence:*<br>SUF 45, S/RUF 46 (admitting that the USPTO found the "Open AI" mark descriptive); McCurry Decl. ¶ 3, Ex. A (USPTO 3/22/2017 Office Action stating "registration is refused because the applied-for mark merely describes a feature of applicant's services"). |

1    Pursuant to this Court's Standing Order in Civil Cases, I attest that the evidence cited

2  herein fairly and accurately supports the facts as asserted.

3

4  DATED:  May 14, 2025                    Respectfully submitted,

5                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
6

7

8                                          By     */s/ Margret M. Caruso*
                                               Margret M. Caruso
9                                              *Attorneys for Plaintiff OpenAI, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF OPENAI'S RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS