UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OPENAI, INC.**, *Plaintiff,* v. **OPEN ARTIFICIAL INTELLIGENCE, INC. AND GUY RAVINE**, *Defendants.* | Case No.: 4:23-cv-3918-YGR <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE; AND GRANTING IN PART DEFENDANTS' MOTION TO STRIKE** <br><br> Re: Dkt. Nos. 225, 290, 294 |
| AND RELATED COUNTERCLAIMS | |

Pending before the Court is plaintiff and counterclaim-defendant OpenAI, Inc.'s ("OpenAI") motion for summary judgment on each of its claims and each of defendant Open Artificial Intelligence, Inc. ("Open AI") and Guy Ravine's (for clarity, collectively, "Ravine's") counterclaims. Each insists that they have a valid trademark interest in their identically named—but for a space—artificial intelligence ("AI") companies. The parties also filed motions to strike in response to the other's briefing. Having carefully considered the parties' briefing, evidence, and argument at the July 8, 2025 hearing, the Court **GRANTS** OpenAI's motion for summary judgment, **GRANTS IN PART** Ravine's motion to strike, and **DENIES** OpenAI's motion to strike.

**I.    BACKGROUND**

OpenAI was founded nearly a decade ago in December 2015. (Declaration of Greg Brockman ("Brockman Decl."), Dkt. No. 243, ¶ 2 and Ex. A). By all accounts, OpenAI was a leader in AI research and development from its founding. Prominent publications, including *The New York Times* and *The Wall Street Journal* featured the company before it had launched a single product. (Declaration of Aaron Perahia ("Perahia Decl."), Dkt. No. 233, Ex. 86.)

Before OpenAI's founding, a relatively unknown entity named Open AI was in the works. Guy Ravine, Open AI's founder, hoped to create tools that would allow those interested in artificial intelligence to collaborate on new developments. He purchased the "open.ai" domain name in March 2015—months before OpenAI's founding. (Declaration of Breeanna Brewer ("Brewer Decl."), Dkt. No. 258, Ex. 60.) The day after OpenAI's founding, Ravine applied to register the trademark Open AI with the U.S. Patent and Trademark Office ("USPTO"). (Perahia Decl., Ex. 72 at 1, 7–8.) The USPTO rejected Ravine's application because the mark was descriptive and Ravine had not demonstrated use in commerce, so Ravine filed a substitute specimen—an image of the home screen for Ravine's product "Hub." (Declaration of Guy Ravine ("Ravine Decl."), Dkt. No. 256, ¶ 29; Perahia Decl., Ex. 72 at 31.) The USPTO again rejected Ravine's application and Ravine elected to register the mark on the Supplemental Register. (Perahia Decl., Ex. 72 at 88.)

In the meantime, OpenAI continued to develop commercially. It launched its first product—OpenAI Gym—in April 2016. (Brockman Decl., ¶ 13, Ex. B at 6.) OpenAI continued to research and develop successful AI products, including ChatGPT (a generative AI chatbot) and Dall-E 2 (an image generator). (Brockman Decl. ¶ 37; Declaration of James Dyett ("Dyett Decl."), Dkt. No. 228, ¶¶ 16–21.) OpenAI was also not able to register its mark with the USPTO: one, because the mark was descriptive and, two, because Ravine actively opposed. (Brewer Decl., Exs. 19, 25; Declaration of Rebecca McCurry, ("McCurry Decl."), Dkt. No. 229, ¶¶ 7, 8 and Ex. G.)

After the success of OpenAI's ChatGPT and Dall-E 2, Ravine launched similar chatbot and image generator products on his open.ai domain. (Ravine Decl., ¶¶ 45–50.) OpenAI then filed this action in August 2023 to litigate the parties' trademark rights and stop customer confusion.

The salient facts relevant to the resolution of the pending motions are cited in Court's analysis section of this Order. The Court omits those facts here to expedite this Order given looming trial deadlines.

**II.   LEGAL FRAMEWORK**

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party and "may not weigh the evidence or make credibility determinations." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) and *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008), respectively. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Because of the "intensely factual nature of trademark disputes," summary judgment is generally disfavored in trademark cases and should be granted sparingly. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012).

### III. ANALYSIS

A dozen claims are in dispute. OpenAI advances five claims against Ravine: (1) federal trademark infringement and unfair competition (Lanham Act, 15 U.S.C. § 1125(a)); (2) common law trademark infringement; (3) fraudulent registration; (4) cancellation—no bona fide use; and (5) cancellation—misrepresenting source. Ravine advances seven counterclaims against OpenAI: (1) Lanham Act, 15 U.S.C. § 1125(a); (2) Lanham Act, 15 U.S.C. § 1114; (3) common law trademark infringement; (4) declaratory judgment of non-infringement of trademark under the Lanham Act, (5) declaratory judgment of non-infringement of common law trademark, (6) declaratory judgment of ownership of Open AI mark; and (7) declaratory judgment of trademark invalidity. The Court will group its analysis of those twelve claims into two categories: cancellation and trademark infringement.

#### A. Cancellation of Ravine's "Open AI" Mark (Claims 3, 4, and 5; Counterclaim 2)

A party may seek to cancel a registered trademark that was procured based on fraud. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). The moving party must prove, by clear and

3

convincing evidence, "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Id.*; *OTR Wheel Engg, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1119 (9th Cir. 2018); *see also In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *Bose*, 580 F.3d at 1245.

OpenAI moves to cancel Ravine's trademark on the Supplemental Register. Ravine argues that genuine disputes of material fact exist about whether Ravine submitted false representations to the USPTO and whether Ravine intended to deceive the USPTO. He does not dispute that plaintiff's factual record satisfies the remaining elements.

### 1. False Representation to the USPTO

Submitting a false specimen to the USPTO is a material misrepresentation. *Look Cycle Int'l v. Kunshan Qiyue Outdoor Sports Goods Co.*, 2024 WL 3739358, at *16 (T.T.A.B. Aug. 9, 2024) ("The falsity of the specimens is a material misrepresentation, as they must be accepted by the Examining Attorney to demonstrate use in commerce for a Section 1(a) use-based application before being passed to publication and eventual registration."). That includes submitting a specimen that does not illustrate actual use in commerce. *Dimas v. Matilde*, 2015 WL 5768341, at *1, *4 (C.D. Cal. Sept. 30, 2015) (granting summary judgment of mark cancellation where defendant did not rebut that specimens were "fakes" that were "created solely to present to the USPTO.") Ravine argues that factual disputes remain because the specimen Ravine submitted to the USPTO was not a "mock-up" and was "online" and "for use by the public." (Oppo. at 19.) Those arguments are irrelevant to the claim before the Court.

The following record evidence reflects that Ravine made two misrepresentations to the USPTO: (1) that his product Hub existed in 2015 when he applied for the "Open AI" trademark; and (2) that Hub was used in commerce:

- Plaintiff submitted evidence showing that Guy Ravine applied for a trademark on December 11, 2015, the day OpenAI announced its founding. (Perahia Decl., Ex. 72 at

4

1.) That application depicted Ravine's Open AI "landing page" found at www.open.ai, which stated that an "announcement would be made soon." (*Id.* at 7–8.)

- On March 29, 2016, the USPTO responded to Ravine's trademark application. (*Id.* at 12.) The USPTO rejected Ravine's application "because the specimen does not show the applied-for mark in use in commerce . . . ." (*Id.* at 13.) Six months later, just before his filing deadline, Ravine submitted a "substitute specimen" which was an image of Hub's home screen. (Ravine Decl., ¶ 29; Perahia Decl., Ex. 72 at 31–32.) Ravine admits that he had just released Hub to the public, meaning that Hub was not available as of the date of Ravine's initial filing. (Ravine Decl., ¶¶ 28–29; Perahia Decl., Ex. 72 at 34.) That substitute filing required Ravine to represent that "[t]he substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application." (Perahia Decl., Ex. 72 at 34.)

- The hub specimen also included planted comments from Ravine's employee Nikita Gaer, who designed Hub, which does not demonstrate actual use in commerce. (Ravine Decl., ¶ 28; McCurry Decl., Exs. B, C, D, E; Perahia Decl., Ex. 16, Deposition of N. Gaer ("Gaer Tr.") at 226:18-231:2; 245:20–15.) Nor does Ravine state that anyone used Hub other than the planted posts. Instead, he argues that Hub was available for use. (Ravine Decl. ¶¶ 29, 30.)

- On March 22, 2017, the USPTO rejected Ravine's second application because the Open AI mark "merely describes a feature of the applicant's services." (Perahia Decl., Ex. 72 at 62.) On August 1, 2017, Ravine registered the Open AI mark on the USPTO's Supplemental Register. (Reg. No. 5,258,002; Perahia Decl. Ex. 72 at 62–63, 88.)

No genuine dispute of material fact exists relating to Ravine's actual misrepresentations to the USPTO. Hub was not available in 2015, nor did the specimen show actual use in commerce.

## 2. *Knowledge and Intent to Induce Reliance and Mislead the USPTO*

In trademark cases, "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *Bose*, 580 F.3d at 1245. District courts in the Ninth Circuit have applied a "knowledge" standard and have not lowered the bar to "reckless disregard." *La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*, 2024 WL 1973468, at *3 (N.D. Cal. May 3, 2024). The following record evidence reflects that Ravine acted with knowledge and intent to deceive the USTPO:

- Ravine submitted the substitute specimen shortly after Hub was created. (Perahia Decl., Ex. 72 at 33–38, Ex. 10, Deposition of Guy Ravine ("Ravine Tr."), at 228:23-230:16; Ravine Decl., ¶¶ 28–29.) Ravine cannot argue in good faith that he did not know the content of what he submitted.

5

- Ravine submitted a version of Hub which did not include (or had removed) date stamps. (*Compare* Perahia Decl., Ex. 72 at 33–38 *with* Perahia Decl., Ex. 84.) Including those dates would have shown that the substitute specimen was not available in December 2015.

Ravine's arguments that he did not know that his actions violated the law are not supported by the contemporaneous record. The Court need not credit self-serving declarations given the evidence presented. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Further, deflective arguments that attorneys regularly submit false information to the USPTO do not persuade. Two wrongs do not make a right. After considering the evidence, the Court finds that no genuine dispute of material fact exists as to OpenAI's cancellation claims.

The Court thus **GRANTS** OpenAI summary judgment as to its affirmative claims (3) fraudulent registration; (4) cancellation—no bona fide use; and (5) cancellation—misrepresenting source and Ravine's corresponding counterclaim (2) Lanham Act, 15 U.S.C. § 1114.[1]

B. **Trademark Infringement Claims**

To prove a federal or common law trademark infringement claim, a party must show (1) a protectible ownership interest in a valid mark, and (2) that defendant's use of the mark, or a substantially similar mark, is likely to cause consumer confusion. *Network Automation Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); *see also Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are "substantially congruent" with federal claims and thus lend themselves to the same analysis.") Both parties concede that the two marks (OpenAI vs. Open AI) are likely to, and already have, caused customer confusion. The pending Lanham Act and common law trademark infringement claims, then, will hinge on whether either OpenAI or Ravine has a protectible ownership interest in a valid mark. The Court will first consider Ravine's counterclaims and then turn to OpenAI's affirmative infringement claims.

---

[1] Ravine's Lanham Act (Count 2, 15 U.S.C. § 1114) claim cannot succeed without a registered mark. The Court has cancelled that mark.

       *1.* **_Ravine's Trademark Infringement Counterclaims (Counterclaims 1, 3, and 6)_**

Plaintiff moves for summary judgment on Ravine's remaining counterclaims for trademark infringement under the Lanham Act (counterclaim 1) and common law (counterclaim 3), and declaratory judgment (counterclaim 6).

To show a protectible ownership interest under the Lanham Act, the trademark owner must have used the mark in commerce. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). "[I]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* When, as here, a trademark is not registered, or found not to have been properly registered, a party may have a valid mark if it is (1) inherently distinctive, or (2) descriptive but has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).[2]

                  *a)* <u>**_Ravine's Open AI mark is not inherently distinctive._**</u>

Ravine first argues that the Open AI mark is suggestive, not descriptive, and thus is inherently distinctive. A descriptive mark describes some aspect or characteristic of a product, whereas a suggestive mark requires imagination or multi-stage reasoning. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1198 (9th Cir. 2009).

The Court concurs with the USPTO's determination that Ravine's Open AI mark was "descriptive" because it "merely describes a feature of the applicant's services." (Perahia Decl., Ex. 72 at 62–63.) While not necessary here, district courts may defer to the USPTO's classification. *Lahoti*, 586 F.3d at 1199 (9th Cir. 2009) ("Deference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue."); *OpenAI, Inc. v. Open A.I., Inc.*, No. 24-1963, 2024 WL 4763687, at *2 (9th Cir. Nov. 13, 2024) (same); *see also Kifle v. YouTube LLC*, 2022 WL 326613, at *5 (N.D. Cal. Feb. 3, 2022) (same).

Ravine did not dispute the USPTO's classification as a descriptive mark when Ravine elected to register his mark on the supplemental register. (Reg. No. 5,258,002; Perahia Decl. Ex. 72 at 69.) Proceeding with the supplemental register is an "admission against interest" that the mark is

---

[2] *See also*, Ninth Circuit Model Civil Jury Instruction 15.9–Infringement–Elements–Validity–Unregistered Marks and cases cited therein.

7

not distinctive or a protectable trademark. *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 670 F. Supp. 3d 946, 951 (N.D. Cal. 2023); 2 McCarthy on Trademarks and Unfair Competition § 19.43 (5th ed. 2023) ("An application for registration on the Supplemental Register is an implied admission that the term is not inherently distinctive.") Moreover, throughout the litigation, Ravine has admitted that the Open AI mark is descriptive. (*See e.g.* Dkt. No. 100, Open AI Counterclaim, ¶ 189 (claiming that OpenAI, Inc. stole Open AI's term "from a literally open AI company that has used it to pursue a truly open AI."); Dkt. No. 138, Second Amended Counterclaim, ¶ 35 ("When people heard the words 'Open AI,' they understood what the organization was about.'"); *Id.* ¶ 33 ("What Ravine eventually realized is that he could build on the ideology of his open collaboration platform. . . . researchers were actually motivated by the ideology of open sharing.")

Ravine maintains that the Open AI mark's classification is best left for a jury, citing to an expert report from Dr. Leonard, a linguist, who opined on the meaning of the terms "Open" and "AI." Dr. Leonard's report does not create a genuine dispute of material fact. Dr. Leonard opines that the term Open AI does "not describe the products/services provided by [Ravine's Open AI]" because the term open conveys many potential specialized meanings. (Leonard Rept., ¶¶ 61–63, 67.) Dr. Leonard misses the point. That there are *other* possible meanings of the term "open" that do not describe Open AI's features, does not detract from the (at least) one meaning that *does* describe Ravine's product. *Lahoti*, 586 F.3d at 1201. The correct inquiry is "whether, when the mark is seen on the goods or services, it immediately conveys information about their nature." *Id.* Dr. Leonard ignores, and otherwise fails to refute, the USPTO's finding that "open" is descriptive as applied to Ravine's mark because "it indicates that the applicant's website allows public or non-proprietary information sharing." (Perahia Decl., Ex. 72 at 63.) Ravine personally attested to USPTO about the nature of his collaboration tools. An expert's opinion which ignores the evidence in the case does not create a genuine dispute of material fact.

Taken together, the Court concludes that no reasonable juror could find, based on the evidence presented, that Ravine's Open AI mark is suggestive.[3]

---

[3] Because the Court finds that the Open AI mark is descriptive, the Court need not resolve whether the market penetration test applies to inherently distinctive marks. Those common law

8

### b) *Ravine's descriptive mark has not acquired secondary meaning.*

A descriptive mark "can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (citation omitted). Here, "[a] plaintiff must show its mark achieved secondary meaning *before* a defendant first used the mark." *OpenAI, Inc.*, 2024 WL 4763687, at *1 (emphasis supplied) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) ("Strauss was required to prove that the tab as used on shirts had acquired secondary meaning by 1976, when Blue Bell began using a protruding label on shirts.") In the Ninth Circuit, courts analyze the following relevant factors: (1) consumer perception and whether purchasers of the product associate the trademark with the producer; (2) advertising; (3) length and manner of use; (4) whether the use has been exclusive; (5) copying; and (6) actual confusion. *Yellow Cab*, 419 F.3d at 930.[4]

Here, Ravine cites *no* evidence to suggest that his Open AI mark acquired secondary meaning at any point in time. Rather, Ravine merely submits the conclusory statement that "a reasonable jury could still conclude that Defendants acquired secondary meaning through their use and promotion of the mark." (Oppo. at 19, n. 5.) Argument alone is insufficient to withstand a motion for summary judgment. *Olivier v. Baca*, 913 F.3d 852, 857 (9th Cir. 2019) (Where "the opposing party will have the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case.")

No genuine disputes of material fact remain about Ravine's Lanham Act and common law trademark infringement claims. On that basis, the Court **GRANTS** OpenAI's motion for summary

---

based territorial and market considerations are intertwined with a descriptive mark's secondary meaning test.

[4] *See also*, Ninth Circuit Model Jury Instructions, § 15.11 Infringement—Elements—Validity—Distinctiveness—Secondary Meaning and cases cited therein; *P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (considering copying and consumer confusion)

9

judgment as to counterclaims (1) Lanham Act, 15 U.S.C. § 1125(a), (3) common law trademark infringement, and (6) declaratory judgment that Ravine owns the mark.[5]

### 2. *OpenAI's Trademark Infringement Claims (Claims 1 and 2, Counterclaims 4, 5, and 7)*

OpenAI advances two trademark infringement claims against Ravine: Lanham Act (15 U.S.C. § 1125(a)) and common law trademark infringement. The Court analyzes whether plaintiff has a protectible interest in the OpenAI trademark.

Here, OpenAI does not dispute that its mark is descriptive. Based on the law cited above, the Court's infringement analysis, then, will turn on whether OpenAI acquired secondary meaning, and if so, its scope and timing. More precisely, the Court must determine whether OpenAI acquired secondary meaning *before* Ravine first used the Open AI mark in commerce. *OpenAI, Inc.*, 2024 WL 4763687, at *1.

OpenAI offers two dates by which it argues that it acquired secondary meaning: *first*, November 2022, by which time it submits that OpenAI acquired nationwide secondary meaning and *second*, January 2017, by which time it asserts secondary meaning amongst AI researchers. The Court considers the evidence submitted. Because the Court finds that OpenAI acquired nationwide secondary meaning by at least November 2022, it need not address the January 2017 period.

#### a) *Use of the Mark, Scope, and the Legal Framework.*

Ravine argues that he is the first user of the descriptive mark, and thus, cannot be liable for trademark infringement.

The law, however, "does not protect or permit a 'first user's' expansion beyond its original product line into an area occupied by an 'intervening junior user' who has established its own rights in the mark." *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 371 (4th Cir. 2021) (citing 4 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 24:20 (5th ed. 2020); *Fuller Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 775 (7th Cir. 1962) ("[P]rior use of a [descriptive] mark affords no protection for expansion of trade to goods other than those of the

---

[5] The Court notes that the second counterclaim (Lanham Act, 15 U.S.C. § 1114) would also separately fail under this analysis.

same descriptive properties as the goods with which the mark has become identified by such prior use."). Said differently, the parties are each limited to the original product line and the natural zone of expansion. *Id*. Ravine cites no law or evidence justifying an expansion of his use of the mark to the *entire* AI industry.

*RXD Media v. IP Application Development* instructs. There, the Fourth Circuit affirmed the district court's grant of summary judgment where two companies each used the "ipad" mark. *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361 (4th Cir. 2021). In 2007, plaintiff RXD released "ipad.mobi," which allowed users to make simple, online lists on an internet-based notepad. *Id.* at 366. Then in January 2010, defendant Apple released its touch-screen tablet called the "iPad." *Id.* A few years later, in October 2016, RXD launched a "rebranded" website using the "ipad" name which offered "cloud storage" services that allowed users to upload photographs, videos, music, and documents. *Id.* at 367. RXD filed suit, seeking declaratory judgment that its use of the "ipad" mark did not infringe Apple's rights because RXD's use of the mark "preceded Apple's use and Apple's establishment of a secondary meaning in a descriptive mark, precluding any possible infringement by RXD." *Id.* at 368. The Fourth Circuit sided with Apple, in part because Apple achieved secondary meaning in its descriptive mark before October 2016—the date RXD rebranded and offered new services. *Id.* at 371. The court concluded that RXD's "wholly altered use of the mark on its 'ipadtoday.com' website in 2016, on the heels of Apple's commercial success in releasing the iPad device" was not entitled to trademark protection. *Id.* Although prior users are generally permitted to "continuing using a mark in the manner that was legal when first used", RXD had expanded "beyond its original product line into an area occupied by an 'intervening junior user' who had established its own rights in the mark." *Id.*

The evidence in this case is similar. Initially, OpenAI and Ravine operated in different lanes, using their respective marks for different purposes. Ravine admits the same. Although his argument vacillates on each party's "agreed" offerings, he cannot escape his admission that plaintiff's concurrent use of the Open AI mark was acceptable to him because "both parties would use their respective marks for their respective goods and services." (Ravine Decl., ¶ 20.)

11

The record evidence shows that Open AI's initial offerings—the Initial Collaboration Tool, Hub, Decentralized, and the Evolved Collaboration Tool—were the equivalent of information or message-sharing platforms, were never a commercial concern, and were limited to collaboration and communication tools for people interested in *talking* about AI development. (Ravine Decl., ¶¶ 7, 12, 20, 25, 30–31, 35; Ex. 11.) OpenAI, on the other hand, was *developing* generative AI tools as an AI research company. (Brockman Decl., ¶¶ 13, 15, 17–37; Ex. B.)

The Court finds that OpenAI and Ravine—while both related to AI—offered different types of products (or services) in different segments.

### b) *OpenAI and Secondary Meaning in November 2022.*

In November 2022, Ravine pivoted away from messaging platforms and launched "Boom," an AI image generator. (Ravine Decl., ¶ 45.) Several months prior, OpenAI had launched its own AI image generator, Dall-E 2. (Brockman Decl., ¶ 37; Dyett Decl., ¶ 11.)

The Court finds that even assuming that Ravine was first to use the Open AI mark in commerce (which is highly debatable), when Ravine launched Boom, he launched "a product much different and much more sophisticated" than his previous collaboration tools. *RXD Media*, 986 F.3d at 372. That pivot makes November 2022 the relevant date by which OpenAI must have acquired secondary meaning as the intervening junior user which had historically used the mark for different products or services.

For the reasons set forth below, the Court finds that no reasonable juror could conclude that OpenAI did not acquire secondary meaning by November 2022. Each factor considered in the Ninth Circuit[6] weighs in favor of secondary meaning:

---

[6] *Yellow Cab*, 419 F.3d at 930 (9th Cir. 2005) ("To determine whether a descriptive mark has secondary meaning, a finder of fact considers: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive."); *P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (considering copying and consumer confusion); *Snap Inc. v. Vidal*, 750 F. Supp. 3d 1120, 1156–57 (C.D. Cal. 2024) (same).

**Factor 1: Consumer Perception.** The following facts demonstrate that there are no genuine disputes of material fact as to whether the people who purchase or use OpenAI's products associate the OpenAI mark with OpenAI:

- By April 2019, OpenAI's website averaged over 1 million visitors per month in the preceding six months. (Dyett Decl. ¶ 26, Ex. S.) By September 2022, over 1.5 million users were creating over 2 million images per day with Dall-E 2. (*Id.* ¶ 14, Ex. I.) In November 2022, those numbers increased to 3 million users creating 4 million images per day. (*Id.* ¶ 15.)

- In March 2022, search engines like Google and Bing exclusively associated the term "OpenAI" with plaintiff on the first page of results, featuring information panels about the company and suggesting only OpenAI-related searches. (Perahia Decl., Ex. 63.) In March 2022, OpenAI was listed among Time's "100 Most Influential Companies of 2022." (*Id.*, Ex. 65.)

- GitHub data from November 2022 shows that tens of thousands of users (i.e. other AI developers) saved personal copies of OpenAI's products for their building repository. (Brockman Decl., Exs. D, E.) OpenAI's expert, Dr. Lipson, states that people in the AI industry frequently used OpenAI Gym, and many research papers were written based on the product. (Declaration of Hod Lipson, ("Lipson Decl."), Dkt. No. 231, Ex. A at ¶¶ 22–24, 26, 27.)

- On November 15, 2022, OpenAI announced the release of ChatGPT, which was an instant hit. (Dyett Decl., ¶¶16–21.) Tech journals referred to ChatGPT as "one of the fastest growing services ever" with over 100 million weekly users and 2 million developers using OpenAI's API. (Perahia Decl., Ex. 68.) Others described Open AI—since launching ChatGPT—as a "viral sensation" and "household name." (*Id.*, Ex. 57.)

Ravine, for his part, attempts to argue that the following three points in the record create a genuine dispute of material fact. The Court disagrees.

One, OpenAI did not commission a consumer survey. True, but "[c]onsumer survey evidence is not required." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 20-35369, 2021 WL 3630225, at *1 (9th Cir. Aug. 17, 2021). Ravine did not commission a consumer survey either.

Two, an internal brand survey supposedly shows that OpenAI had low brand awareness in 2023. (Brewer Decl., ¶ 37.) The survey, however, studied a legally irrelevant population. The Court agrees with OpenAI that the correct inquiry is whether *consumers* of OpenAI's products associate

the mark with OpenAI, not the opinions of people who have never heard of, or do not use, OpenAI's products (which the survey included).

Three, Ravine offered an expert opinion. That each side's experts rendered opinions on the above-mentioned internal survey does not change the fact that the survey is not relevant in the first instance. Dr. Chiagouris opines that the internal survey shows that OpenAI had not acquired secondary meaning in 2023. (Chiagouris Decl., Ex 1.) OpenAI's expert, Dr. Steckel, analyzed the underlying survey data and determined that when a consumer responded that they *used* an OpenAI product (like ChatGPT), rather than having "heard" of the product, concluded that 60% recognized OpenAI. Generally, figures over 50% are regarded as clearly sufficient to satisfy the test, but figures of 46%, 48%, 39% and 37 percent have also been found sufficient. *See* 5 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed. 2025).

**Factor 2: Advertisement.** The following facts demonstrate that there are no genuine disputes of material fact as to whether OpenAI advertised under the OpenAI trademark:

- OpenAI launched popular AI products (Gym, Universe, API, Roboschool, Baselines, Gym Retro, Spinning Up, Dota 2, GPT, ChatCPT, DALL-E). Those products were widely publicized and covered in national media and online. (Brockman Decl., Exs. B, C, D, E, G and J; Perahia Decl., Ex. 86.)

- OpenAI participated in, and sponsored, leading AI industry conferences. (Brockman Decl., Exs. M, H.)

- OpenAI was active on social media, YouTube, its blog, and in publishing industry leading research papers. (Brockman Decl., Exs. F, G, H, J, K.)

Ravine argues that OpenAI did not engage in traditional advertising, but that argument does not create a genuine dispute of material fact, especially in a nascent industry. Ravine cites no law that indicates that "traditional" advertising is required in all cases. It is more appropriate to evaluate metrics in the industry at issue.

**Factor 3: Extent of Use.** The following facts demonstrate that there are no genuine disputes of material fact that OpenAI used the OpenAI mark for a sufficient period of time:

- OpenAI announced its founding in December 2015. (Brockman Decl., Ex. A.) OpenAI first used the mark in commerce, by launching its first product OpenAI Gym, on April 27, 2016. (*Id*. ¶ 13, Ex. B at 6.)

- Since April 2016, OpenAI has since released over 20 AI products or services. (*Id*., ¶¶ 13–38.)

- By November 2022, OpenAI had used its mark in continuous commerce for just under seven years. "[S]ubstantial and continuous use of a mark in commerce for five years is prima facie evidence of secondary meaning." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1216 (9th Cir. 2023).

Ravine does not dispute that for the 2022 period, length of use weighs in favor of secondary meaning. Ravine merely attacks OpenAI's evidence by claiming that the use referenced was not "prominently displayed." Ravine cites to no law to indicate that the Court should use this additional characterization. Accordingly, the argument does not persuade and in many ways is contrary to the record cited above.

**Factor 4: Exclusivity.** With respect to this factor, exclusivity of use means "whether the trademark owner's use of the mark was *substantially* exclusive." *Converse, Inc. v. International Trade Commission Skechers USA, Inc.*, 909 F.3d 1110, 1122 (Fed. Cir. 2018) (emphasis supplied.)

All of OpenAI's evidence, cited above, demonstrates that by 2022, OpenAI was using the mark in commerce in its field of use.

Ravine argues that OpenAI's use was not exclusive because he released several tools (the Initial Collaboration, Hub, the Evolved Collaboration Tool, and Decentralized) during the relevant period. An analysis of the evidence, however, demonstrates that few, if any, people actually used those tools.[7]

---

[7] Much of the "use" evidence Ravine cites in support of his opposition comes in the form of witness declarations. Those witnesses are exclusively former employees, friends, or investors in Ravine's litigation. Nikita Gaer, Sergey Belkin, Mattia Iavarone, and Kirk McMurray are former Ravine employees. (Gaer Decl., ¶ 3; Belkin Decl., ¶¶ 5–6; Iavarone Decl., ¶ 3; McMurray Decl., ¶ 3.) Deborah Reynolds was Ravine's "friend" who hosted Ravine on more than 50 occasions and invested $450,000 in Ravine's company "We Communicate." (Declaration of Dylan Scher, (Scher Decl., Ex. G) Reynolds Tr. 74:7–76:1; 135:1–136:10.) Tom Gruber is funding Ravine's litigation against OpenAI. (Dkt. No. 177.) Ravine does not submit any evidence from genuine third-party users.

15

- Ravine does not dispute that Open AI stopped hosting the Initial Collaboration Tool in February 2016, meaning Ravine's use was not continuous. (Dkt. No. 279-3, RSUF, Fact 31).

- Ravine has not presented evidence that Hub was used in commerce. Hub was a "discourse-based project" that "included features such as a message board where users could post problems and solutions related to AI." (Ravine Decl., ¶ 25, Ex. 11.). There is no evidence of genuine third-party users on Hub. (Declaration of Luke Tenery ("Tenery Decl."), Dkt. No. 277, Ex. A at ¶¶ 85–86; Perahia Decl., Ex. 14, Deposition of L. Tenery, at 152:3–14.) The only evidence of use proffered consisted of 40 comments, but those comments were from Ravine's own Open AI employee Nikita Gaer. (Declaration of Seth Nielson, ("Nielson Decl."), Dkt. No. 230, Ex A at ¶ 114; (Gaer Decl., ¶ 15; Perahia Decl.; Ex. 13 at 215:20-216:7, 225:1-24; 231:3-231:10, 172:2-11, 257:3-5; McCurry Decl., Exs. B–E.) OpenAI's expert concludes that Hub was not a functional website accessible to third-party users. (Nielson Decl., Ex A at ¶ 116.)

- Ravine's expert admits that, despite that Ravine may have created the Evolved Collaboration Tool in 2017, it did not have a registered user until June 19, 2020. (Tenery Decl., ¶ 94.) At best, as Ravine admits, the Evolved Collaboration Tool had a mere **37** U.S. users. (RSUF Fact 37.) OpenAI's expert states that the timing coincides with the launch of OpenAI's API and suggests that any users likely inadvertently visited Ravine's cite. (Nielson Decl., Ex. A ¶ 154.) Further, at one point, the Evolved Collaboration Tool redirected to OpenAI's website. (Perahia Decl. Ex. 10, Ravine Dep. Tr. 185:23–186:10; Gaer Decl. ¶ 18.)

- Ravine's next tool, Decentralized, was released in October 2017. Ravine's forensic expert admits that between October 25, 2017 and November 16, 2022, only **10** "unique editors" used Decentralized. (Tenery Decl. Ex. A ¶ 96.) OpenAI's expert concluded that those "unique editors" included Ravine's administrators, test accounts, and foreign registrants that appear to be spam, or otherwise fake, accounts (i.e. mike@mike.com). (Nielson Decl., Ex. A at ¶¶ 117–143.)

The Court finds as a matter of law that the minimal use presented does not rise to a level to raise a genuine dispute of material fact that OpenAI used the mark exclusively or substantially exclusively.

**Factors 5 and 6: Copying and Actual Confusion.**[8] Neither party contests that there was actual confusion.

---

[8] OpenAI does not submit evidence of "demonstrated utility" or that OpenAI used the mark to increase the sales of its product. The Court finds that this evidence is not necessary in light of the other factors.

16

- The record is replete with evidence of, and admissions that, OpenAI customers were confused by Ravine's company. (Perahia Decl., Ex. 12, Deposition Transcript of Guy Ravine, at 42:13–15) ("Q: When did you first notice that confusion? A: People started -- well, you know, back in 20- -- 2016, even, there was confusion."); *id.*, Exs. 2, 41; Ravine Decl., ¶ 58.)

- After OpenAI launched Dall-E 2 and ChatGPT, Ravine launched an image generator ("Boom") and a chat bot ("Ava.") (*Compare* Ravine Decl. ¶¶ 45–50 *with* Brockman Decl. ¶ 37.). Similar products present direct evidence of copying.

Accordingly, the Court finds no genuine disputes of material fact that Ravine's use of Open AI led to actual confusion among customers. Nor is there a genuine dispute of material fact that Ravine copied OpenAI. Because Ravine drifted into OpenAI's market segment through launching Boom and Ava—products OpenAI had offered months prior—Ravine is deemed to have copied the mark.

**Summary.** In sum, even viewing the evidence in the light most favorable to Ravine, the Court concludes that OpenAI acquired secondary meaning by at least November 2022. By using the Open AI mark for Boom and Ava after that point, Ravine infringed OpenAI's trademark.

Accordingly, the Court **GRANTS** OpenAI's motion for summary judgment as to its claims for trademark infringement (claims 1 and 2) and Ravine's remaining counterclaims (4, 5, and 7).[9]

### IV.   MOTION TO STRIKE

Ravine moved to strike "new" evidence and arguments asserted in OpenAI's reply, along with counsel's evidentiary objections. (Dkt. No. 290.) In response, OpenAI moved to strike Ravine's motion to strike as an unauthorized sur-reply. (Dkt. No. 294.) The Court finds that OpenAI's reply evidence was properly submitted in response to Ravine's opposition. The Court, however, will strike OpenAI's evidentiary objections inasmuch as those objections violate Civil Local Rule 7-3(a). ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.") The Court will consider OpenAI's evidentiary objections only if those objections were asserted in the parties' briefing or at oral argument. In any event, the Court only considers admissible evidence.

---

[9] In light of the Court's finding, it need not decide whether secondary meaning was established among a narrower segment by January 2017.

Accordingly, the Court **GRANTS IN PART** Ravine's motion to strike, and **DENIES** OpenAI's motion to strike.

### V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** plaintiff's motion for summary judgment in full, **GRANTS IN PART** defendants' motion to strike, and **DENIES** plaintiff's motion to strike.

**THE COURT ORDERS AS FOLLOWS:**

The Court permanently enjoins defendants from using the Open AI mark. Defendants, and each of their officers, directors, employees, agents, servants, representatives, and affiliates are enjoined and restrained from:

    a. Using Defendant's Open AI mark, or any other logo, design, or word mark that is a colorable imitation of, or similar to, it, including without limitation "Open AI" and "open.ai," in connection with the display, advertising, development marketing, production, promotion, sale, and/or distribution of any artificial intelligence products or services, including the results generated by such products or services;

    b. Using any Infringing Mark in connection with any website, app, or social media account, including as a domain name or social medial handle; and

    c. Representing in any manner or by any method whatsoever that goods, services, or other products branded with any Infringing Marks are sponsored, approved, or authorized by, or originate from, OpenAI, or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship, or certification of such goods, products, or services.

2. All those acting in active concert or participation at the direction of, or in contractual privity with the above-enjoined parties, including domain name registrars, web hosting services, and social media platforms, are enjoined and restrained from facilitating, permitting, or otherwise enabling defendants to engage in any of the actions restrained by this Order, including allowing anything to be displayed on https://open.ai other than a notice of suspension.

3. Defendants, within 30 days after service of this Order with notice of entry thereof upon them, to be required to file with the Court and serve upon OpenAI's attorneys a written report under oath setting forth in detail the manner in which defendants have complied with the above-mentioned orders.

The trial date and all related deadlines are vacated. The parties shall provide a form of judgment, approved as to form, within seven (7) business days of this Order.[10]

This terminates Dkt. Nos. 225, 290, 294.

**IT IS SO ORDERED**.

Date: July 21, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10] The form of judgment should address OpenAI's requests for relief, including nominal monetary damages, interest, attorneys' fees, and costs. (*See* Dkt. No. 205 at 7.)

19