GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY TABANDEH (Cal. Bar No. 287583)
VERSO LAW GROUP LLP
565 Commercial Street, 4th Fl.
San Francisco, CA 94111
Telephone: (415) 534-0495
Email: greg.gilchrist@versolaw.com
         ryan.bricker@versolaw.com
         sophy.tabandeh@versolaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| OPENAI, INC., a Delaware corporation, | Case No. 4:23-cv-03918-YGR |
| Plaintiff, | The Hon. Yvonne Gonzalez Rogers |
| vs. | **DEFENDANTS' STATEMENT REGARDING PROPOSED FORM OF JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO THE COURT'S ORDER (DKT. 326)** |
| OPEN ARTIFICIAL INTELLIGENCE, INC., a Delaware corporation, and GUY RAVINE, an individual, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

The parties agreed to most of the form of judgment except for Plaintiff's proposed Paragraphs 9 and 10, modified as Defendants' proposed Paragraph 9. Despite good-faith efforts, the parties were unable to reach agreement on those provisions. When Defendants objected to Plaintiff's statement, received at 10:15 pm addressing issues that were joined five days earlier, and proposed that the parties submit the proposed Judgments timely as the Court requested, to be followed by a joint statement of their positions the next day, Plaintiff refused. Accordingly, Defendants submit with this statement their proposed form of judgment as Exhibit B (believing that Plaintiff will call its proposed form, Exhibit A).

The agreed parts of the proposed form of judgment cover all elements of the Court's injunction, as they were stated in the Court's summary judgment ruling. The Court's broad language already prevents any party acting in concert with the Defendants from permitting Defendants to violate or facilitating any violation of the injunction. See Proposed Paragraphs 6 and 7, Ex. B. Plaintiff, however, proposed adding two new paragraphs that go beyond the Court's summary judgment ruling.

The first (Paragraph 9 of Plaintiff's form) restricts the sale of Defendants' assets, even if they have nothing whatsoever to do with any use of the Open AI trademark (the object of the Court's injunction). The Plaintiff's proposed Paragraph 9 would bind non-parties who acquire Defendants' assets – in whatever business they may be engaged – to a permanent injunction. There are no grounds for this waterfall injunction. Since the preliminary injunction, the Defendants have operated their artificial intelligence business at www.superintelligence.co, using "Ava" as the chatbot name. They also own and operate Video.io, a company that operates a SaaS platform that provides scalable video ingestion and hosting infrastructure. The permanent injunction should not burden an arms-length purchaser of these assets to be bound by a permanent injunction when there are unquestionably a wide variety of uses to which the assets can be put that do not implicate the Court's summary judgment ruling, or any infringement claims, in any respect.

During the meet and confer, Defendants asked for an explanation why a buyer of Defendants' admittedly non-infringing assets should be permanently enjoined in any manner. Plaintiff responded that the new paragraph was necessary to implement the Court's injunction. This does not follow. There is no reason why a party who buys non-infringing assets needs to be enjoined to prevent Defendants – who have operated under an injunction for two years without incident – from violating the injunction.

The second new paragraph (paragraph 10 of Plaintiff's form) expressly forbids Defendants from selling the www.open.ai domain name – except to Plaintiff. The domain undisputedly was purchased by Guy Ravine before Plaintiff existed. There are without question non-infringing uses to which the valuable domain might be put (e.g. a travel agency in Anguilla, the home country for which .ai is the country TLD). Defendants tried to compromise (paragraph 9 of Exhibit B) by

offering to provide notice of the Court's injunction to any party that buys or otherwise receives any interest in the domain. This proposed provision, rejected by Plaintiff, should avoid any legitimate concern. There is no basis for Plaintiff's effort to permanently anoint itself as the only lawful buyer of Defendants' domain. Under Defendants' proposal, any buyer will have knowledge of the injunction.

At the eleventh hour, Plaintiff suggested it is a "standard" safeguard to, *in addition to the provision enjoining those acting in concert with defendants*, to enjoin arms-length purchasers. It cites, in support of this "standard" practice, an 80-year-old precedent involving enforcement against a family business trying to evade an injunction. See *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 675, 64 S. Ct. 826, 828, 88 L. Ed. 1001 (1944) (addressing "[w]hether a family business, such as this one appears to be, has successfully avoided all responsibility for compliance with the judgment entered against the family corporation, by the simple expedient of dissolving it and continuing the business under the individual control of members of the family, as appears to have taken place here…."). This is not authority to permanently enjoin a purchaser of assets that have nothing to do with the adjudged infringement.

Plaintiff's citations in favor of paragraph 10 are no better. With one exception, none of the multiple authorities Plaintiff cites has anything to do with the issues related to the narrow dispute facing the Court. In the exception, *Entrepreneur Media, Inc. v. Alfonso*, No. 821CV00644DOCJDEX, 2021 WL 2941983, at *6 (C.D. Cal. July 12, 2021), cited by Plaintiff, the court ordered that the defendant, whose domain names were held to have traded on the plaintiff's goodwill, "shall, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names … if the Enjoined Parties have not already done so." Here, the Court did not order any transfer and there are no grounds for the Court to do so. *Entrepreneur Media* does not involve a domain name that was acquired by the infringer before the purported trademark owner was in business. The decision does not involve prior use before secondary meaning was supposedly acquired in a house mark, even though one of the trademarks on which the housemark's secondary meaning supposedly piggybacks itself has no secondary meaning according to the PTO. See Gilchrist Declaration in Support of Proposed Form of Judgment ("Gilchrist Dec."), Ex. D. The case

does not involve an injunction obtained in one court on grounds that the mark or domain name was descriptive, while pursuing directly contrary positions that the mark was "suggestive" in another tribunal.  Gilchrist Dec, Exs. A-C (attaching OpenAI's oppositions to third party trademarks on grounds that OpenAI is a "suggestive" mark while simultaneously arguing in this Court the mark was "descriptive," up to and including the day before the summary judgment motion was argued). *Entrepreneur Media* involved a default judgment that addressed the *ongoing* deliberate violation of the owner's trademark rights. *Entrepreneur Media*, 2021 WL 2941983, at *3.

The other decisions Plaintiff cites are even farther afield from any justification for a permanent injunction that sets plaintiff up as the only party who can acquire Defendants' domain name.  See *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2328471, at *14 (S.D. Cal. May 23, 2018) (holding a "tailored preliminary injunction is proper" to guard against "absconding from the company with control of its social media and thus, access to its customers, as well as possession of money and products belonging to Plaintiff and then using them to re-create and takeover a summer wrestling tournament at the same location during the same time period as the Plaintiff."); *Sinhdarella, Inc. v. Vu*, No. C 07-04353 WHA, 2008 WL 410246, at *8 (N.D. Cal. Feb. 12, 2008) (short-quoted by Plaintiff ) (the injunction "is intended to proscribe *infringers* who have been caught "red handed," as it were, from using a name intended to continue to profit from the goodwill established by the trademark owner.") (emphasis added to illustrate that the case has nothing to do with arms-length purchasers); 4 McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed.) ("In the context of a contempt proceeding, the [safe distance] rule prevents an *infringer* from evading an injunction or consent decree against trademark infringement by making an insignificant change in the infringing mark") (emphasis added to show that the citation relates to the defendant's actions to evade an injunction, not a third party which is not subject to the unbriefed, until now, "safe distance" rule); *Brookfield Comm's, Inc. v. W. Coast Entm't Corp.*, 1999 U.S. Dist. LEXIS 23247, at *30 (C.D. Cal. Sep. 8, 1999 (irrelevant dicta in a district court opinion that was reversed by the Ninth Circuit); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) ("Toeppen engaged in a scheme to register Panavision's trademarks as his

domain names on the Internet and then to extort money from Panavision by trading on the value of those names.").

Defendants owned the domain names before Plaintiff existed; they did not buy the domain to "extort" OpenAI. Plaintiff transparently wants the domain, but adulterating the proposed judgment to force a sale is not proper.

For these reasons, Defendants, while reserving all other rights regarding the Judgment, respectfully only approve the form of judgment that is attached as Exhibit B.

DATED: July 30, 2025                             VERSO LAW GROUP


                                                 By   /s/
                                                    Greg Gilchrist
                                                    Attorneys for Defendants Open Artificial
                                                    Intelligence, Inc. and Guy Ravine